UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FARAH JEAN FRANCOIS,

    Plaintiff,

    -v-

VICTORY AUTO GROUP LLC D/B/A
VICTORY MITSUBISHI et al.,

    Defendants.

22-cv-4447 (JSR)

MEMORANDUM ORDER

JED S. RAKOFF, U.S.D.J.:

Farah Jean Francois alleges that a Mitsubishi car dealership set up by the corporate defendants Victory Auto Group LLC and Spartan Auto Group LLC, owned by co-defendants Philip and Diane Argyropoulos, and run by employee-codefendants Stavros Orsaris, Yessica Vallejo, and David Perez, facilitated her brother-in-law's theft of her identity by allowing him to purchase a car and seek associated financing in her name. See generally First Amended Complaint ("FAC")[1], Dkt. 26. She asserts claims under the Fair Credit Reporting Act ("FCRA") and for common law negligence. Defendants move to dismiss Francois' negligence claim, arguing it is preempted by the FCRA, duplicative of her FCRA claim, and that it fails to state a claim under New York common law.

---

[1] All capitalized terms here used refer to the definitions set forth in this order, unless otherwise specified. Also, all internal quotation marks, alterations, omissions, emphases, and citations have been omitted from all cited sources.

See Defs. Mem. Supp. Mot. Dismiss and Strike ("Defs. Mem."), Dkt. 40.[2] Defendants also move to strike various references in Francois' complaint to other cases or enforcement actions against defendants or affiliated entities. Id. For the reasons stated below, the Court denies defendants' motion to dismiss Francois' negligence claim but grants in part their motion to strike.

### I. Legal Standard

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted, the complaint must include "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009). A complaint must offer more than "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement" in order to survive dismissal. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 557 (2007). If the plaintiff has "not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. at 570. As to defendants' motion to

---

[2] In their motion to dismiss, defendants also argued that Francois' FCRA claims against the individual defendants should be dismissed on the theory that the FCRA does not provide for the liability of individual employees acting as Francois alleged the individual defendants did here. Defs. Mem. 7-8. In their reply, defendants have withdrawn this argument, apparently in recognition of statutory amendments that have abrogated the holdings of the cases they previously relied on. See Defs. Mem. Reply Mem. Supp. Mot. Dismiss and Strike ("Defs. Reply") at 1 n.1, Dkt. 44. As defendants have withdrawn this argument, the Court does not address it.

strike, such motions "are disfavored and should not be granted 'unless there is a strong reason for so doing.'" Prout v. Vladeck, 326 F.R.D. 407, 409 (S.D.N.Y. 2018).

**II. Whether to dismiss Francois' negligence claim.**

Defendants argue that Francois' allegations of negligence are preempted in part by the FCRA and that she otherwise fails to state a claim for negligence because her negligence claim is supposedly duplicative of her FCRA claim and because she otherwise fails to allege any injury that defendants had a duty to prevent and that was proximately caused by defendants' conduct. The Court addresses each argument in turn.

**A. Whether Francois' negligence claim is preempted by the FCRA.**

Defendants first argues that Francois' negligence claim is at least partially preempted by the FCRA. Defs. Mem. 8. Specifically, defendants point to 15 U.S.C. § 1681t(b), which provides that "[n]o requirement or prohibition may be imposed under the laws of any State . . . [w]ith respect to any matter regulated under . . . section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies. . . ." Section 1681s-2, in turn, provides that "[a] person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate," and provides for various responsibilities and mechanisms for consumers to notify such furnishers of their

3

information that the information provided is inaccurate and for them to take steps to correct it. 15 U.S.C. § 1681s-2(a)(1)(A).

"The FCRA places distinct obligations on three types of entities: consumer reporting agencies, users of consumer reports, and furnishers of information to consumer reporting agencies." Nguyen v. Ridgewood Sav. Bank, 66 F. Supp. 3d 299, 303 (E.D.N.Y. 2014). Here, Francois has alleged that defendants are "users" of her credit information under the FCRA, meaning that they obtained her credit report from a credit reporting agency (according to her, negligently and for no permissible purpose). FAC ¶ 14; 15 U.S.C. § 1681b(f). She does not allege that defendants are "furnishers" of credit information, in the sense that they "furnish[] information relating to consumers to one or more consumer reporting agencies for inclusion in a consumer report." 16 C.F.R. § 660.2; see also 15 U.S.C. § 1681s-2(b) (setting out the duties of furnishers). While defendants contend Francois "implicitly" alleges they are also furnishers of credit information because of various obligations she alleges they owed her,[3] Defs. Mem. 8, the only information Francois alleges defendants "furnished" any credit reporting agency is the information allegedly provided in order to obtain a credit report -- and the definition of "furnishers" explicitly

---

[3] Defendants do not, as users of credit information, have the statutory obligations that attach to "furnishers" of information to credit reporting agencies. 15 U.S.C. § 1681s-2(b). However, defendants made no argument in their motion to dismiss that Francois fails to state an FCRA claim against them even as users of credit information, and so the Court declines to address the adequacy of Francois' allegations as to defendants' use of her credit report.

4

excludes any entity that "[p]rovides information to a consumer reporting agency solely to obtain a consumer report. . . ." 16 C.F.R. § 660.2(c)(1). As such, no part of Francois' negligence claim is preempted by 15 U.S.C. § 1681t(b).

**B. Whether Francois fails to state a claim for negligence.**

Defendants also argue that Francois fails to adequately allege that defendants owed her any duty of care, that any injury she may have suffered was not proximately caused by defendants' conduct, and that Francois' negligence claim is in any event duplicative of her FCRA claim. The Court declines to dismiss Francois' negligence claim as duplicative. For one thing, while defendants cite some district court cases dismissing "duplicative claims . . . when they are based on identical conduct and seek the same relief," Sands Harbor Marina Corp. v. Wells Fargo Ins. Svcs. of Oregon, Inc., 156 F. Supp. 3d 348, 362 (E.D.N.Y. 2016), it is not altogether clear that this Court has authority to dismiss claims for failure to state a claim under Fed. R. Civ. P. 12(b)(6) merely because otherwise valid claims substantially overlap with other claims brought by the plaintiff.[4] Moreover, to the extent defendants are right that Francois' negligence claim is based on identical facts, requires an identical showing, and offers her identical or lesser relief to her FCRA claim, then it is also not at

---

[4] Such authority might more easily be traced to Fed. R. Civ. P. 12(f), which allows courts to "strike . . . any redundant, immaterial, impertinent, or scandalous material," although, as discussed above, motions to strike are disfavored. Prout, 326 F.R.D. at 409.

all clear what will be gained through dismissal, as the scope of discovery or trial would not be narrowed in any way.

More importantly, Francois' negligence claim is not, in fact, purely co-extensive with her FCRA claim. Her FCRA claim turns on defendants' allegedly willfully obtaining her credit report for an impermissible purpose and without her permission. FAC ¶¶ 165-73. But her negligence claim sweeps in a broader swath of related but not identical conduct, including defendants' allegedly facilitating an actual car sale, complete with associated financing and insurance, in her name but without her authorization. See FAC ¶¶ 29-134. According to Francois, this led not just to damage to her creditworthiness, FAC ¶¶ 123-34, but to a car being purchased in her name, leading to her receiving demands for payment in connection with car insurance and parking and speeding tickets for a car she never purchased, FAC ¶¶ 80-98. Francois alleges that, as a result, she incurred costs (including out-of-pocket costs) in connection with disputing these demands for payment and that not all of demands directed toward her have been resolved, potentially leaving her on the hook for various liabilities, FAC ¶¶ 99-105. Defendants dispute that, even taking Francois' allegations as true, they are liable for these consequences -- a question addressed further below. But Francois' negligence claim plainly covers conduct beyond that covered by her FCRA claim.

Defendants' other arguments are similarly unpersuasive. Defendants argue that Francois has failed to allege any injury because, for instance, she has not alleged she ultimately paid any money

6

associated with the parking and speeding tickets or insurance collection letters she received. Defs. Mem. 11. But Francois alleges both that she has incurred "significant costs" in connection with disputing these collection efforts and that many remain unresolved. FAC ¶¶ 104-05. Accepting these allegations as true and drawing all reasonable inferences in Francois' favor, it seems plausible that Francois both has already and may continue to incur direct financial costs in remediating the impact of the vehicle sale effectuated in her name.[5]

To be sure, other than emotional injury (which, outside specific circumstances not presented here, cannot by itself support a negligence claim under New York law, Mortise v. United States, 102 F.3d 693, 696 (2d Cir. 1996)), Francois' alleged costs are entirely economic in nature -- consisting in the expenses of disputing or satisfying collection efforts against her. While duties to take reasonable

---

[5] Defendants point out that Francois' most specific alleged injury -- relating to the costs of printing and postage, FAC ¶ 104 -- is very likely "minimal." Defs. Mem. 12. But defendants cite no authority suggesting that a complaint must allege a particular dollar amount of injuries, and the printing and postage costs alleged by Francois were provided by way of example. At least for the purposes of Article III standing, the Second Circuit has held that "where plaintiffs have shown a substantial risk of future identity theft or fraud, any expenses they have reasonably incurred to mitigate that risk likewise qualify as injury in fact." McMorris v. Carlos Lopez & Assocs., LLC, 995 F.3d 295, 303 (2d Cir. 2021). Here, given Francois' allegations of the steps she has needed to take to challenge various collection efforts from multiple actors, it is at least plausible that she has incurred real costs -- including but not necessarily limited to those of printing and postage.

precautions to avoid causing economic harm are considerably narrower than similar duties to prevent physical harm, such duties may arise in certain specific circumstances, such as by virtue of a professional or fiduciary relationship, <u>Assured Guar. (U.K.) Ltd. V. JP Morgan Inv. Mgmt. Inc.</u>, 80 A.D.3d 293, 306 (N.Y. App. Div. 2010), or where a commercial seller negligently induces reliance on false information or negligently performs a service on which another person relied, Restatement (Third) of Torts: Liability for Economic Harms §§ 5, 6 (Am. L. Inst. 2020). Similarly, New York courts have recognized that a duty of care may arise in commercial transactions that involve disclosure of customers' sensitive data. See <u>Daly v. Met. Life Ins. Co.</u>, 4 Misc. 3d 887, 892-94 (N.Y. Sup. Ct. 2004); <u>Anonymous v. CVS Corp.</u>, 188 Misc. 2d 616, 620-23 (N.Y. Sup. Ct. 2001).

Here, defendants contend that they could not have owed Francois any duty of care with respect to any economic injury because Francois did not actually transact with them; the car purchase was executed by her brother-in-law. But this ignores that defendants (allegedly) did not sell the car to Francois' brother-in-law, but to Francois, leading to Francois' becoming liable for financing, insurance, and whatever violations the car's driver might subsequently incur. FAC ¶¶ 46, 88-98. The gravamen of Francois' complaint is that, before selling a car in her name and making her liability for financing, insurance, and possible violations associated with the car, defendants should have taken reasonable measures to ensure she had in fact consented to the sale. This was conduct plainly directed toward Francois, making

8

defendants' contention that Francois "was a stranger" to them ring hollow. Defs. Reply Mem. at 4, Dkt. 44. While neither party has pointed to a New York case precisely on point -- affirming or denying the existence of a duty of care to take reasonable steps to verify the consent of a customer to a transaction that may open that customer to serious liabilities, at least where, as here, there was at least some reason to think the customer had not authorized the transaction -- the facts as alleged by Francois plausibly give rise to the inference that defendants owed such a duty. Cf. Daly, 782 Misc. 3d at 892-94; Restatement (Third) of Torts: Liability for Economic Harms § 5 (explaining that a commercial actor may have a duty to use reasonable care in supplying or communicating information in a transaction that is intended to induce reliance).

Finally, defendants contend that their conduct cannot have been the proximate cause of any injury to Francois because her brother-in-law's unlawful theft of her identity was an "intervening" criminal act. Defs. Mem. 12. But even "[w]here the acts of a third person intervene between the defendant's conduct and the plaintiff's injury, the causal connection is not automatically severed." Derdiaran v. Felix Contracting Corp., 414 N.E.2d 666, 670 (N.Y. 1980). Rather, intervening conduct only defeats proximate causation where "the intervening act is extraordinary under the circumstances, not foreseeable in the normal course of events, or independent of or far removed from the defendant's conduct." Id. As with proximate causation inquiries generally -- not just in the case of intervening third-party

actions -- the key question is foreseeability, which is why "these issues generally are for the fact finder to resolve." Id. Here, the essence of Francois' claim is that defendants should have taken some steps to verify her consent to the car purchase, when a different person showed up with her driving license and sought to purchase a car in her name. The Court cannot conclude as a matter of law that it is so extraordinarily unforeseeable that such a person might be lying or unauthorized as to dismiss Francois' negligence claim at this stage for failure to plead proximate causation.

None of this is to say that Francois can necessarily make it to trial with her negligence claim. To survive summary judgment, she will need to adduce some evidence of real injury -- and if, as defendants apparently believe, she has successfully resolved all collection efforts against her without paying a dime, or the threat of payment with respect to any as-yet unresolved matters remains entirely speculative, she may not be able to do so. Moreover, assuming defendants owed Francois a duty to take some care to ensure she had authorized the transaction before selling a car in her name to a third-person, defendants may indeed have exercised reasonable care and yet still have been duped. At this stage, however, the Court sees no basis to dismiss Francois' negligence claim.

### III. Defendants' motion to strike

Defendants also move to strike paragraphs 129-153 of plaintiffs' complaint. The first five of these (paragraphs 129-134) relate to how the credit inquiries run by defendants allegedly damaged Francois'

credit score with Equifax and Transunion and compromised her ability to seek financing for a car she sought to purchase. FAC ¶¶ 129-134. The second group of paragraphs (FAC ¶¶ 135-153) relate to other lawsuits or enforcement actions against these or allegedly related defendants.

As to the first set of paragraphs (129-134), defendants argue that plaintiff's allegations are contradicted by the exhibits she herself attached to her complaint, which demonstrate that these hard credit inquiries were at most an "insignificant" factor affecting her credit score. FAC Exs. FF, GG. These exhibits do appear to be in at least some tension with Francois' allegations; for instance, while Francois attributes in her complaint credit inquiries such as those conducted by defendants to her subsequently being denied credit, the exhibits instead suggest the number of previous inquiries were not a particularly significant factor. At summary judgment, Francois may need to do better than this in order to demonstrate injury. However, motions to strike are "are disfavored and should not be granted unless there is a strong reason for so doing." Prout, 326 F.R.D. at 409. Here, the paragraphs in question contain allegations that defendants suggest, with some force, are undermined by Francois' exhibits and that therefore may not be backed up by the evidence. But that hardly warrants striking the allegations from Francois' complaint.

Defendants are on firmer ground in their motion to strike paragraphs 135-153, concerning prior actions. It is not entirely clear why defendants believe themselves prejudiced by these paragraphs --

11

after all, since "it is not [the Court's] usual practice to submit a complaint (or indictment) to a jury, since it has no evidentiary value," defendants' speculation that a jury might draw inappropriate inferences based on these allegations concerning prior actions is off-base. Prout, 326 F.R.D. at 410 n.2

However, the Second Circuit has approved striking from complaints allegations concerning prior actions that are not relevant to the instant case. Lipsky v. Commonwealth United Corp., 551 F.2d 887, 894 (2d Cir. 1976). Following Lipsky, district courts in this circuit have routinely struck "paragraphs in a complaint that are either based on, or rely on, complaints in other actions that have been dismissed, settled, or otherwise not resolved, are, as a matter of law, immaterial within the meaning of Fed. R. Civ. P. 12(f)." RSM Prod. Corp. v. Fridman, 643 F. Supp. 2d 382, 403 (S.D.N.Y. 2009). While plaintiffs speculate that these prior suits may establish the willfulness of defendants' conduct, most of these lawsuits resulted in settlements, not adjudications on the merits. As such, the Court grants defendants' motion to strike paragraphs 141-153 of Francois' complaint, along with accompanying exhibits.[6]

---

[6] The Court declines to strike paragraphs 135-140, concerning an enforcement action by the New York Attorney General that did in fact result in a finding of liability. Defendants point out that the defendants in that lawsuit were not named in this lawsuit, but plaintiffs allege that Diane and Philip Argyropoulos, the defendants and alleged owners of the dealership in this case, FAC ¶ 15, owned the entities in that case and that they were effectively the same dealership. FAC ¶¶ 135-140. The Court doubts that the finding in this years-old case will prove at all relevant to the case at hand, but it is not totally inconceivable that these allegations "can have

### IV. Conclusion

For the foregoing reasons, the Court denies defendants' motion to dismiss Francois' negligence claim. The Court grants defendants' motion to strike with respect to paragraphs 141-153 of Francois' amended complaint (and accompanying exhibits), but denies it in all other respects.

SO ORDERED.

New York, NY
January 24, 2023

JED S. RAKOFF, U.S.D.J.

---

no possible bearing on the dispute before the court." Lipsky, 551 F.2d at 894. Moreover, defendants' primary argument that they are prejudiced by these allegations is that a jury might draw impermissible inferences from them, but, as explained above, the complaint in this case will almost certainly not be submitted to the jury. Prout, 326 F.R.D. at 410 n.2.