**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X     21-cv-06108-ARR-RER
ROBERT UTNICKI and DAWN UTNICKI,

                                        Plaintiffs,                     FIRST AMENDED
                                                                       **COMPLAINT**

                     -against-


JP MORGAN CHASE BANK, N.A. d/b/a
CHASE AUTO FINANCE and
SPARTAN AUTO GROUP LLC d/b/a
VICTORY MITSUBISHI,

                                        Defendants.

-------------------------------------------------------------------X

          Plaintiffs, by and through their attorneys, FAGENSON & PUGLISI,

PLLC, upon knowledge as to themselves and their own acts, and as to all other

matters upon information and belief, bring this complaint against above-named

defendants and in support thereof allege the following:

                              INTRODUCTION

          1.      Notwithstanding the enforcement action of the Attorney General of

the State of New York in 2017, in which the State of New York obtained a Court Order

permanently enjoining defendant Victory Mitsubishi (or "dealership") from engaging

in fraudulent, deceptive, and illegal sales tactics and other deceptive practices against

consumers and directing Victory Mitsubishi to pay to defrauded consumers restitution,

damages and civil penalties, Victory Mitsubishi boldly continues its same fraudulent and

1

illegal business practices by defrauding plaintiffs when they sought to trade in a vehicle in November 2020, and by defrauding countless other hapless members of the public out of their hard-earned money.

2.     In November 2020 plaintiff Robert Utnicki (or "Mr. Utnicki") visited Victory Mitsubishi with his wife, plaintiff Dawn Utnicki (or "Mrs. Utnicki"), for the purpose of trading in the vehicle he then owned in exchange for a less costly vehicle. Mr. Utnicki was no longer able to afford the high monthly payments on his current auto loan but desired instead to acquire a less costly vehicle which would carry a loan with a lower monthly payment. Mrs. Utnicki suffered from epileptic seizures all her life, was unable to engage in gainful employment or drive a motor vehicle, and received approximately $867 per month in supplemental security income ("SSI"). She accompanied Mr. Utnicki to the dealership that day to help to select a vehicle the couple both liked, but Mr. Utnicki, as always, was the person who intended to purchase the replacement vehicle and obtain the new auto loan.

3.     Victory Mitsubishi was unwilling to perform the simple trade-in transaction Mr. Utnicki requested, which is performed thousands of times per day at dealerships across the nation. Instead, the dealership, concerned only with making a sale of another motor vehicle, defrauded plaintiffs by falsely and fraudulently assuring Mr. Utnicki that it would accept his vehicle as a trade-in when it had no intention of doing so. Victory Mitsubishi then fabricated and submitted to financial institutions a false credit application which resulted in Mrs. Utnicki being obligated on a brand new loan, which she could not afford, for a second motor vehicle. By the end of plaintiffs' visit to

2

**FRANCOIS 3807**

Victory Mitsubishi that day, far from having one vehicle with a more affordable monthly loan payment, plaintiffs owned two vehicles and were obligated for two different auto loans.

4.     The upshot of Victory Mitsubishi's fraud is that Mr. Utnicki, who wanted and needed one vehicle only, was unable to continue to pay the loan on the vehicle which the dealership had falsely and fraudulently told him it would accept as a trade-in, causing the lender to repossess the vehicle, which further ruined Mr. Utnicki's credit rating and eventually caused Mr. Utnicki to owe to the lender a deficiency balance of almost $7,000. To boot, Victory Mitsubishi sold the second vehicle to Mrs. Utnicki for a price in excess of the advertised or agreed price. Further, without the knowledge or consent of either plaintiff Victory Mitsubishi included in the purchase a tire and wheel warranty at a cost of $1,500, and failed to provide to Mrs. Utnicki loan disclosures or any of the purchase documents as required by law.

5.     As shown by the Court Order obtained by the Attorney General of the State of New York against Victory Mitsubishi, attached hereto as **Exhibit 1**, and the many negative online reviews from defrauded customers, this fraudulent and deceptive course of conduct towards plaintiffs is not an isolated instance, but is ingrained in Victory Mitsubishi's business practices towards consumers at large.

6.     By its misconduct, Victory Mitsubishi inflicts and is bound to inflict untold suffering and hardship on poor, vulnerable consumers such as plaintiffs, who often do not know what to do when something such as this happens to them. Defendants have caused plaintiffs harm and continue to date to cause plaintiffs harm. Having received no relief from defendants, plaintiffs bring this action to redress that harm.

**FRANCOIS 3808**

7.     Plaintiffs bring this action seeking damages against defendants pursuant to the federal Truth in Lending Act, 15 U.S.C. § 1601 *et seq*. and the federal Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq*., injunctive relief and damages against defendants pursuant to New York General Business Law ("NYGBL") §§ 349–350 for defendants' deceptive acts and practices and false advertising, damages against defendants for common-law fraud and relief against defendants pursuant to New York Motor Vehicle Retail Instalment Sales Act ("MVRISA")–New York Personal Property Law § 301 *et seq*.

<u>JURISDICTION AND VENUE</u>

8.     Plaintiffs re-allege paragraphs 1-7 as if fully re-stated herein.

9.     This Court has federal jurisdiction pursuant to the Truth in Lending Act ("TILA"), 15 U.S.C. § 1640 and the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691, and 28 U.S.C. § 1331. Supplemental jurisdiction exists over the state law claims pursuant to 28 U.S.C. § 1367 as they arise out of the same set of transactions forming the basis of the federal claims.

10.     This Court has venue pursuant to 28 U.S.C. § 1391(b) in that a substantial portion of the events or omissions giving rise to this action occurred in this District.

<u>PARTIES</u>

11.     Plaintiffs re-allege paragraphs 1-10 as if fully re-stated herein.

12.     Plaintiffs are natural persons and are husband and wife.

13.     At all relevant times, plaintiffs resided in Kings County, New York.

**FRANCOIS 3809**

14. Upon information and belief, defendant JP Morgan Chase Bank, N.A. ("Chase") is a national banking association organized and existing under the laws of the United States.

15. As it transacts with Mrs. Utnicki, Chase does business as Chase Auto Finance.

16. Upon information and belief, Chase has a principal place of business in the County of New York, State of New York.

17. Defendant Spartan Auto Group LLC doing business as Victory Mitsubishi is a domestic limited liability company with a principal place of business in the County of Bronx, State of New York.

18. Victory Mitsubishi is a retail dealer in new and used automobiles.

19. Mrs. Utnicki entered into a consumer credit transaction with Victory Mitsubishi as contemplated by 15 U.S.C. § 1602(i), in that the money, property or services which were the subject of the transaction were primarily for personal, family or household purposes.

20. Victory Mitsubishi is a "creditor" within the meaning of 15 U.S.C. § 1602(g) and 12 C.F.R. § 226.2(a)(17) because at all relevant times Victory Mitsubishi, in the ordinary course of its business, regularly extended consumer credit which is payable in more than four installments or for which the payment of a finance charge is or may be required, and Victory Mitsubishi is the person to whom the debt arising from the consumer credit transaction was initially payable.

5

**FRANCOIS 3810**

21.     The consumer credit transaction out of which this action arose is a transaction pursuant to the Federal Trade Commission "Holder Rule", 16 C.F.R. 433.2 and its New York state analog, New York Personal Property Law § 302(9).

22.     Victory Mitsubishi assigned Mrs. Utnicki's retail installment contract (or "RIC") to Chase.

23.     Chase is liable to Mrs. Utnicki for its own misconduct and, by virtue of the Holder Rules, is jointly and severally liable with Victory Mitsubishi to Mrs. Utnicki for the misconduct of Victory Mitsubishi herein.

<u>FACTUAL ALLEGATIONS</u>

24.     Plaintiffs re-allege paragraphs 1-23 as if fully re-stated herein.

25.     On November 2, 2020, Victory Mitsubishi advertised for sale a used 2017 Chrysler 300 automobile ("Chrysler").

26.     In the advertisement, Victory Mitsubishi advertised the price of the Chrysler as $19,995.

27.     No price other than $19,995 was displayed in the advertisement.

28.     A copy of an advertisement for the Chrysler is attached hereto as **<u>Exhibit 2</u>**.

29.     Victory Mitsubishi advertised the Chrysler for sale at a price of $19,995.

30.     Plaintiffs were familiar with Victory Mitsubishi because in September 2019 plaintiffs had visited Victory Mitsubishi and Mr. Utnicki had purchased from there a new 2019 Mitsubishi Outlander sports utility vehicle.

**FRANCOIS 3811**

31.     Mr. Utnicki purchased the Outlander with the help of a loan from Victory Mitsubishi, which took a security interest in the Outlander in the amount of the loan.

32.     Upon Mr. Utnicki's purchase, Victory Mitsubishi immediately assigned the loan and security interest to Flagship Credit Acceptance LLC ("Flagship").

33.     Mr. Utnicki's monthly loan payment to Flagship for the Outlander was $542.83.

34.     Mr. Utnicki had been diligently making the loan payments on time each month for the Outlander for around a year.

35.     He was eager to re-build his credit rating and made sure he was never late on a loan payment.

36.     Mr. Utnicki's credit score had been as low as around 540 but by November 2020 he had slowly re-built it to around 570 due, in large part, to his on-time payments to Flagship.

37.     By November 2020, the $542.83 payment per month for the Flagship loan had become too expensive for Mr. Utnicki, and plaintiffs decided it was better to acquire a smaller vehicle with a lower, more affordable monthly loan payment.

38.     By November 2020, the pay off balance on the Flagship loan was $21,326.

39.     In an effort to acquire a smaller vehicle with a lower monthly loan payment, Mr. Utnicki visited Victory Mitsubishi on November 2, 2020.

7

**FRANCOIS 3812**

40.     Mr. Utnicki's intention was to trade in the Outlander and purchase a more affordable vehicle in its place.

41.     Mrs. Utnicki accompanied Mr. Utnicki to Victory Mitsubishi on November 2, 2020.

42.     Mrs. Utnicki has suffered from epilepsy all her life.

43.     Because of her illness, Mrs. Utnicki does not drive, does not know how to drive, cannot drive, and does not possess a driver license.

44.     Due to the epileptic illness, Mrs. Utnicki also cannot engage in gainful employment and does not work outside the home.

45.     In November 2020, Mrs. Utnicki was receiving approximately $867 per month in SSI benefit.

46.     Mrs. Utnicki has been receiving an SSI benefit for nearly all her life.

47.     The SSI benefit is Mrs. Utnicki's only source of compensation.

48.     Owing to Mrs. Utnicki's illness, Mr. Utnicki had always been the person in their household who bought the vehicles in his name and who drove the vehicles.

49.     However, Mrs. Utnicki always accompanied Mr. Utnicki when a vehicle was being purchased, since her input is needed in the selection of the vehicle.

50.     When plaintiffs arrived at the dealership on November 2, 2020, they asked to speak with Joe.

8

**FRANCOIS 3813**

51.    On November 2, 2020, Joseph ("Joe") Gerbino, Jr. was a finance manager at Victory Mitsubishi.

52.    Joe Gerbino, Jr. was a finance manager at Victory Mitsubishi as of the date of the filing of this action.

53.    Joe Gerbino, Jr. was an employee at Victory Mitsubishi as of the date of the filing of this action.

54.    After waiting in the waiting area, plaintiffs were shown to Joe's office.

55.    Plaintiffs were familiar with Joe because he was the finance manager with whom they had dealt in 2019 when they purchased the Outlander.

56.    On November 2, 2020, upon seeing plaintiffs, Joe greeted them and asked Mr. Utnicki if he was "back with the Outlander".

57.    Mr. Utnicki replied, "yes", he was seeking to trade in the Outlander and buy a smaller and less expensive car so he could have a lower monthly loan payment.

58.    Joe and a few men who appeared to be colleagues of his at the dealership went outside and inspected the Outlander and when he returned to plaintiffs Joe told them that the dealership would give them a trade-in value of $19,500 for the Outlander.

59.    Mr. Utnicki was satisfied with that value of $19,500 and Joe told him that he would only need to roll the remaining balance of around $1,800 from the Outlander loan into the new loan for whichever new car plaintiffs would buy.

FRANCOIS 3814

60.     Mr. Utnicki asked Joe whether he would owe any money to Flagship once the trade in was complete, and Joe said, "no".

61.     Joe told Mr. Utnicki the dealership would pay off the Flagship loan and roll over to the new loan the remaining balance of approximately $1,800.

62.     Mr. Utnicki again asked Joe whether he would owe anything to Flagship.

63.     Joe responded, "no, you will owe Flagship nothing".

64.     Upon hearing that from Joe and relying on Joe's word that he would owe no monies to Flagship after the trade-in, Mr. Utnicki told Joe he would like to proceed with the trade-in and selection and purchase of a less expensive replacement vehicle.

65.     Joe then did a credit check for a loan for Mr. Utnicki.

66.     Joe told Mr. Utnicki that his credit score was too low for him to get a car loan at a monthly payment much lower than the $542 Flagship loan payment, and that in fact the lowest monthly payment he was seeing for Mr. Utnicki was around $590.

67.     Plaintiffs were about to leave Joe's office and continue their search elsewhere for a more affordable car since a $590 monthly loan payment was even more than the Flagship loan and was simply too high, when Joe stopped them and asked what Mrs. Utnicki's credit score was like.

68.     Plaintiffs told Joe that Mrs. Utnicki did not drive and cannot drive and did not even have a driver license, because she had suffered from epilepsy her entire life.

**FRANCOIS 3815**

69.   Plaintiffs further told Joe that Mrs. Utnicki did not work and had never worked, that her only compensation was from SSI due to her illness and that she had been on SSI for almost all her life.

70.   Plaintiffs also told Joe that Mrs. Utnicki's SSI benefit was only $867 per month so they doubted that she would qualify for a car loan.

71.   Joe told plaintiffs not to worry about SSI, just allow him to check Mrs. Utnicki's credit to see her credit score.

72.   Joe asked for and Mrs. Utnicki gave him orally her name, date of birth, address and social security number.

73.   Joe did not give to Mrs. Utnicki, and Mrs. Utnicki did not sign, any credit application on paper.

74.   Rather, Joe seemed to plaintiffs to type the information which Mrs. Utnicki provided to him into a computer on his desk.

75.   Presumably due to the coronavirus pandemic, there was a plexiglass barrier installed on Joe's desk separating Joe and his computer from plaintiffs, who were seated opposite Joe at the desk.

76.   The computer monitor even partially obstructed plaintiffs' view of Joe's face through the plexiglass barrier.

77.   There was a slot cut out of the plexiglass, similar to the one set up for a bank teller.

78.   The screen of the monitor was turned to Joe and plaintiffs could not see anything on the screen.

11

**FRANCOIS 3816**

79.     After Joe typed into his computer, he told plaintiffs that Mrs. Utnicki's credit score was 740.

80.     Joe told plaintiffs that this score was high enough for them to obtain financing for a car but that the loan would have to be in Mrs. Utnicki's name since she was the one who qualified for the loan.

81.     As stated, Mrs. Utnicki had never purchased a car before, did not have a driver license, and had only $867 in monthly SSI benefit, so plaintiffs were skeptical that she would have been able to purchase a car and get a car loan.

82.     However, Joe assured plaintiffs that Mrs. Unicki had qualified for a loan.

83.     Joe then told Mrs. Utnicki she had to sign certain documents.

84.     Joe slipped papers to Mrs. Utnicki through the slot in the plexiglass barrier and indicated to her the portions he had highlighted in yellow, telling her that is where she needed to sign.

85.     Joe told Mrs. Utnicki repeatedly, "sign here", "sign here", "sign here" and told her to hurry.

86.     Joe kept one hand on the top of the pages at all times, while indicating to Mrs. Utnicki where he wanted her to sign.

87.     Joe did not tell Mrs. Utnicki, or Mr. Utnicki, what the documents were that Mrs. Utnicki was signing and did not tell her what the documents said.

88.     Joe did not allow Mrs. Utnicki to read the documents she was signing.

FRANCOIS 3817

89.     Joe asked Mrs. Utnicki to return each paper she signed immediately after she signed it, and Mrs. Utnicki did so.

90.     Concerning the loan, Joe told plaintiffs only that the monthly loan payments would be $420.

91.     Joe did not tell plaintiffs the overall amount of the loan.

92.     Joe did not tell plaintiffs the length of the loan.

93.     Joe did not even discuss with plaintiffs what vehicle it was that the loan was based on.

94.     As $420 was a significantly lower monthly payment than the nearly $543 which Mr. Utnicki was then paying for the Outlander, plaintiffs agreed to proceed with the loan.

95.     Joe did not give Mrs. Utnicki or Mr. Utnicki to keep a copy of any of the documents which Mrs. Utnicki signed.

96.     In fact, when plaintiffs left the dealership later that day, no-one at the dealership had given to either of them to keep any document regarding their purchase, whether signed by Mrs. Utnicki or not.

97.     Joe told plaintiffs that he would need for them to pay a $500 down payment but, due to Mr. Utnicki not knowing what vehicle Joe had in mind, Mr. Utnicki did not immediately give Joe the $500 down payment.

98.     Joe then told another employee at the dealership to "show them the red Chrysler".

13

**FRANCOIS 3818**

99.    Joe told plaintiffs that they should go outside and look at the Chrysler 300 car to see if they liked it.

100.    This was the same Chrysler which Victory Mitsubishi advertised for sale on the internet at a price of $19,995.

101.    Plaintiffs then left Joe's office and went outside to the lot of the dealership to inspect the Chrysler.

102.    There was a window sticker displayed on the Chrysler.

103.    This window sticker was a Buyers Guide.

104.    There was a Buyers Guide displayed on the Chrysler.

105.    There was no price displayed on the Buyers Guide.

106.    There was no price displayed anywhere on the Chrysler.

107.    There was no price posted at the point of display of the Chrysler.

108.    After inspecting the Chrysler, plaintiffs decided they liked it.

109.    Plaintiffs then returned to Joe in his office and told him they would like to buy the Chrysler.

110.    Plaintiffs asked Joe for the price and he said, "$19,000 and change".

111.    Joe then told plaintiffs that defendant Chase was the bank that would finance Mrs. Utnicki's purchase.

112.    To make doubly sure he would not owe any more money to Flagship after November 2, 2020, Mr. Utnicki again asked Joe if in trading in the Outlander he would be released from owing any money to Flagship.

FRANCOIS 3819

113.    Joe told Mr. Utnicki, "yes, you will owe Flagship nothing. You are financing with Chase Bank now".

114.    Mr. Utnicki then gave Joe the $500 down payment for the Chrysler.

115.    Thereafter, a salesman named Jason Lewis entered Joe's office.

116.    Jason Lewis was a salesman at Victory Mitsubishi on November 2, 2020.

117.    Jason Lewis was a salesman at Victory Mitsubishi as of the date of the filing of this action.

118.    Jason Lewis was an employee at Victory Mitsubishi as of the date of the filing of this action.

119.    Upon entering Joe's office on November 2, 2020, Jason told plaintiffs that he had just spoken with his manager; that there was a problem and that Flagship would not "take back" the Outlander.

120.    Suddenly worried, Mr. Utnicki asked what that meant and whether he would still owe Flagship any money.

121.    Jason asked plaintiffs to accompany him to a cubicle outside of Joe's office and there he assured Mr. Utnicki he no longer owed Flagship any money.

122.    Mr. Utnicki asked Jason if he was sure that he no longer owed any money to Flagship and Jason responded, "don't worry, you won't. I will take care of this. I will call the bank and work it out."

123.    Assured by Jason and relying on the representations of both Joe and Jason, plaintiffs thereafter left the cubicle.

15

**FRANCOIS 3820**

124.    Jason removed the license plates from the Outlander and handed them to Mr. Utnicki.

125.    Jason told Mr. Utnicki that he should surrender the license plates to the New York State Department of Motor Vehicles ("DMV").

126.    Mr. Utnicki asked Jason why he could not simply transfer the plates to the Chrysler, instead of having him surrender the plates to the DMV.

127.    Jason said, "no", the plates could not be placed on the Chrysler, they had to be surrendered to the DMV.

128.    Mr. Utnicki still did not understand why Jason could not transfer the license plates to the Chrysler, but decided not to argue needlessly.

129.    On November 2, 2020, plaintiffs drove from the dealership in the Chrysler and left the Outlander, without plates, at the dealership.

130.    No-one at Victory Mitsubishi gave Mrs. Utnicki any paperwork concerning the purchase.

131.    No-one at Victory Mitsubishi gave Mr. Utnicki any paperwork concerning the purchase or the trade in.

132.    As instructed by Jason, the following day, November 3, 2020, Mr. Utnicki surrendered the Outlander license plates to the DMV.

133.    On or about November 5, 2020 Mr. Utnicki telephoned Flagship for confirmation that he no longer owed Flagship any money.

134.    The Flagship representative told him that he still owed on the loan.

**FRANCOIS 3821**

135.  Mr. Utnicki explained to the Flagship representative that he had traded in the Outlander on November 2, 2020 and that Victory Mitsubishi was supposed to have paid off the Flagship loan.

136.  Mr. Utnicki further told the Flagship representative that employees at Victory Mitsubishi assured him that they had telephoned Flagship and that Flagship agreed that upon the trade in of the Outlander and purchase of the Chrysler he would no longer owe any money to Flagship, because Victory Mitsubishi would pay off the loan.

137.  The Flagship representative told Mr. Utnicki that she saw no evidence of any telephone call from anyone at Victory Mitsubishi concerning the Outlander and that, in any event, he still owed the loan and there was no record of the loan being fully paid.

138.  Mr. Utnicki was bewildered and confused, knowing that both Joe and Jason had told him repeatedly on November 2, 2020 before the purchase of the Chrysler and after, that he would owe Flagship no money going forward.

139.  Mr. Utnicki telephoned Flagship later the same morning and inquired again, but was told the same thing by a second representative as was told to him by the first: he still owed the Flagship loan and Flagship had no record of receiving any telephone call earlier in November 2020 from Victory Mitsubishi concerning the loan on the Outlander.

140.  Realizing that he was still on the hook for the Flagship loan on the Outlander, while his wife had just taken out a second loan on a different vehicle, Mr. Utnicki became greatly distressed and upset, as did Mrs. Utnicki.

**FRANCOIS 3822**

141.  Not only did Mr. Utnicki still owe the loan with a $543 monthly payment, but Mrs. Utnicki also now owed a loan with a $420 monthly payment.

142.  Plaintiffs also realized that neither Joe nor anyone else at the dealership had given them copies of any of the papers Mrs. Utnicki had signed or any document concerning the Chrysler purchase at all.

143.  No-one at Victory Mitsubishi had given Mrs. Utnicki any paperwork to keep concerning the purchase of the Chrysler.

144.  No-one at Victory Mitsubishi had given Mr. Utnicki any paperwork to keep concerning the purchase of the Chrysler.

145.  Mr. Utnicki then telephoned Victory Mitsubishi and spoke with Jason.

146.  Mr. Utnicki pointed out to Jason that Victory Mitsubishi had not given Mrs. Utnicki any paperwork to keep concerning the Chrysler purchase.

147.  Jason told Mr. Utnicki that plaintiffs may return to the dealership for a copy of the paperwork.

148.  During that conversation, Mr. Utnicki also asked Jason if he had called Flagship as he promised he would.

149.  Jason responded, "yes. You're good. Everything worked out. You owe nothing" to Flagship.

150.  Having already telephoned Flagship, Mr. Utnicki realized that Jason was not telling him the truth.

151.  Jason then hurried off the telephone call.

**FRANCOIS 3823**

152. On or about November 5, 2020, plaintiffs visited Victory Mitsubishi to obtain the documents pertaining to Mrs. Utnicki's purchase of the Chrysler, and to learn more about the issue with the Outlander and the loan to Flagship.

153. Plaintiffs knew that they did not want or need two vehicles, since only one of them could drive to begin with, and they could in any event afford only one relatively inexpensive used vehicle.

154. When plaintiffs arrived at Victory Mitsubishi, Mr. Utnicki went inside the dealership, while Mrs. Utnicki remained in the Chrysler parked just outside the entrance of the dealership.

155. Upon entering the dealership, Mr. Utnicki was met by Jason who gave Mr. Utnicki documents for the Chrysler, which documents Jason had rolled into a scroll.

156. Mr. Utnicki then told Jason that he had telephoned Flagship and told Jason that he knew Jason had been lying to him on the telephone earlier that day.

157. Mr. Utnicki further told Jason that he knew Jason had not telephoned Flagship as he claimed, because Flagship told him that it had not heard from anyone from Victory Mitsubishi concerning the loan on or since November 2, 2020.

158. At that revelation, Jason became upset and asked Mr. Utnicki why he had telephoned Flagship, telling Mr. Utnicki that, "you're going to f*** things up".

FRANCOIS 3824

159.    Voices became raised in Jason's conversation with Mr. Utnicki, with Mr. Utnicki pointing out to Jason that Victory Mitsubishi had defrauded him by not telling him the truth: that Victory Mitsubishi would not accept the Outlander as a trade-in and that he would still own the Outlander and be responsible for the loan on the Outlander even after Mrs. Utnicki's purchase of the Chrysler.

160.    Mr. Utnicki pointed out to Jason that if Victory Mitsubishi had been truthful when he asked Joe if Victory Mitsubishi would accept the Outlander as a trade-in, Mrs. Utnicki would not have purchased the Chrysler but plaintiffs would have gone elsewhere in search of their goal which was, as stated above, to trade in the Outlander, get the Flagship loan paid off and obtain a less expensive vehicle with a lower monthly loan payment than the Flagship loan.

161.    However, Victory Mitsubishi knew that Mrs. Utnicki would not have purchased the Chrysler had Victory Mitsubishi been truthful with plaintiffs and told plaintiffs that it would not accept the Outlander as a trade-in.

162.    It was therefore in search of the profit to be made from the sale of yet another vehicle–the Chrysler–that Victory Mitsubishi was untruthful to plaintiffs by telling them that Victory Mitsubishi would accept the Outlander as a trade-in with a value of $19,500 and that Mr. Utnicki would owe no money to Flagship after Mrs. Utnicki's purchase of the Chrysler.

163.    The confrontation between Jason and Mr. Utnicki occurred near to the entrance of the dealership and was plainly visible to Mrs. Utnicki seated in the Chrysler near the entrance.

20

**FRANCOIS 3825**

164. Mrs. Utnicki therefore witnessed the confrontation as a result of which she became frightened, gravely agitated and descended into an epileptic seizure.

165. The seizure caused Mrs. Utnicki's body to shake uncontrollably and violently, caused her an inability to speak, or to see or hear clearly, and drained Mrs. Utnicki of strength and energy.

166. Mr. Utnicki saw that Mrs. Utnicki was experiencing a seizure and immediately became greatly alarmed and distressed at the sight.

167. Mr. Utnicki rushed to Mrs. Utnicki to give her aid and comfort, and to ensure she was not physically injured during the seizure episode.

168. Mr. Utnicki remained in the Chrysler with Mrs. Utnicki until she emerged from the seizure and felt better.

169. Plaintiffs then reviewed the paperwork Mr. Utnicki had received from Jason.

170. On one of the sheets of paper plaintiffs discovered that Joe had added to the Chrysler purchase a Tire and Wheel warranty for a price of $1,500.

171. This was the first time either Mrs. Utnicki or Mr. Utnicki was learning that a Tire and Wheel warranty had been included in the purchase of the Chrysler.

172. A copy of the Tire and Wheel warranty showing the cost of $1,500 is attached hereto as **Exhibit 3**.

173. Joe added a Tire and Wheel warranty at a cost of $1,500 to Mrs. Utnicki's purchase of the Chrysler.

FRANCOIS 3826

174. Joe had not asked either Mr. Utnicki or Mrs. Utnicki if he could add a Tire and Wheel warranty to the purchase.

175. Neither Mr. Utnicki nor Mrs. Utnicki had asked Joe for a Tire and Wheel warranty or even knew that Joe had added the warranty.

176. On November 2, 2020 neither Mrs. Utnicki nor Mr. Utnicki knew that Joe had added a Tire and Wheel warranty to the purchase.

177. Upon discovering the inclusion of the Tire and Wheel warranty which Joe had added without Mrs. Utnicki's knowledge or consent, Mr. Utnicki went back into the dealership to speak with Joe.

178. Mr. Utnicki found Joe in his office and asked Joe why he had added the warranty to the Chrysler purchase.

179. Joe informed Mr. Utnicki that he thought plaintiffs wanted the warranty and that it was good for them to have it.

180. Mr. Utnicki informed Joe that Joe should have asked Mrs. Utnicki whether she wanted the warranty before he added it, because Mrs. Utnicki did not want the warranty or any "add-ons" to the Chrysler purchase since they needed only one car loan with a monthly payment as low as possible, not a loan which had been increased with add-ons that they did not ask for or need.

181. Upset and distraught at Victory Mitsubishi for the many frauds it had perpetrated on them, plaintiffs left the dealership.

182. The following day, Mr. Utnicki telephoned Victory Mitsubishi several times to speak with Jason and Jason finally took his call.

**FRANCOIS 3827**

183.    Mr. Utnicki told Jason that he did not see in the papers for the Chrysler where the Outlander was listed as a trade-in.

184.    Jason told Mr. Utnicki, "no, you surrendered your vehicle".

185.    Mr. Utnicki replied to Jason, "no, I did not. This is your doing".

186.    Jason then told Mr. Utnicki, "we had to do it this way".

187.    Mr. Utnicki responded to Jason that Victory Mitsubishi had put him in a difficult financial situation with Flagship, and had also damaged his credit rating which he had been working so hard to rebuild.

188.    Jason told Mr. Utnicki that his credit was "f***ed up anyway" and that "the bank will pick up your car and auction it, and the remaining balance you will have to pay."

189.    Jason further told Mr. Utnicki that the bank "will send you a letter. Don't pay it, let it go into collections."

190.    Mr. Utnicki became outraged and upset at Jason's insulting language and Victory Mitsubishi's fraudulent, callous and dismissive treatment of him.

191.    Mr. Utnicki told Jason that Victory Mitsubishi had no right to do what it did to him and had defrauded him.

192.    Mr. Utnicki told Jason plaintiffs would prefer to cancel the deal, return the Chrysler and get his Outlander back.

193.    Jason responded that cancellation was not possible, the deal had already gone through and there was nothing he could do.

FRANCOIS 3828

194.    At Mr. Utnicki's inquiry, Jason later told Mr. Utnicki that Victory Mitsubishi had parked the Outlander, without license plates, on a street blocks away from the dealership and that Flagship would pick up the vehicle from there and repossess it.

195.    After telephoning Flagship again and being told again by Flagship that he remained legally responsible for the Outlander, Mr. Utnicki became frightened, again telephoned Jason and told Jason that he did not wish to have the Outlander remain on the street without license plates.

196.    Mr. Utnicki told Jason he would prefer that Jason deliver the Outlander to him in Brooklyn because it was unsafe for the Outlander to be parked on the street, without license plates, blocks away from the dealership.

197.    Jason assured Mr. Utnicki he would do as he asked and drive the Outlander to Mr. Utnicki in Brooklyn.

198.    Jason did not drive the Outlander to Mr. Utnicki in Brooklyn.

199.    Jason neglected and failed to deliver the Outlander to Mr. Utnicki in Brooklyn as he had promised, leaving the Outlander in jeopardy on the street several blocks away from the dealership.

200.    Not trusting the completeness of the paperwork for the Chrysler purchase which Jason had provided, in or around December 2020 Mrs. Utnicki obtained from Chase a copy of certain documents.

201.    Upon review of the pages of the RIC received from Chase, Mrs. Utnicki discovered that on page 6 it is dated "11/04/2020".

24

**FRANCOIS 3829**

202.     Mrs. Utnicki did not visit Victory Mitsubishi on November 4, 2020.

203.     Mrs. Utnicki did not sign any document with Victory Mitsubishi concerning any vehicle on November 4, 2020.

204.     The sole date on which Mrs. Utnicki signed documents with Victory Mitsubishi was November 2, 2020.

205.     The RIC purports to contain the signature of Mrs. Utnicki in multiple places.

206.     These signatures were forged by Victory Mitsubishi.

207.     These signatures were fabricated by Victory Mitsubishi.

208.     These signatures were forged and fabricated because Mrs. Utnicki did not sign any document with Victory Mitsubishi on November 4, 2020.

209.     Victory Mitsubishi transposed Mrs. Utnicki's signature from a document she did sign and placed an electronic facsimile of said signature on the RIC.

210.     Victory Mitsubishi did not provide Mrs. Utnicki with a copy of the RIC on November 2, 2020.

211.     Victory Mitsubishi fabricated the forged RIC after November 2, 2020.

212.     A copy of pages 1, 2, 3 and 6 of the RIC is attached hereto as **Exhibit 4**.

**FRANCOIS 3830**

213.    Upon further examination of the RIC, Mrs. Utnicki discovered that Victory Mitsubishi's fraudulent and deceptive addition of the $1,500 Tire and Wheel warranty to the Chrysler purchase caused her to have to pay extra sales tax on the purchase of the Chrysler in the sum of at least $133, which extra sales tax Victory Mitsubishi rolled into the loan balance at an annual percentage rate ("APR") of 7.29%.

214.    Pages 1 and 2 of the RIC shows the inclusion of the extra $1,500 for the warranty and the 7.29% APR applied thereto.

215.    Upon further review of the documents, Mrs. Utnicki discovered that Joe had sold her the Chrysler at a price of $20,995 and not the advertised price of $19,995 or even the price Joe had quoted to plaintiffs on November 2, 2020 of "$19,000 and change".

216.    Victory Mitsubishi sold Mrs. Utnicki the Chrysler for the price of $20,995.

217.    Victory Mitsubishi fraudulently and deceptively inflated the price of the Chrysler by at least $1,000 to $20,995.

218.    A copy of the invoice for the sale of the Chrysler showing the purchase price of $20,995 is attached hereto as **Exhibit 5**.

219.    The invoice is dated "11/02/20".

220.    As may be gleaned from the invoice and the RIC, the inflated price of $20,995 caused Mrs. Utnicki to have to pay extra sales tax on the purchase of at least $88.75, which extra sales tax Victory Mitsubishi rolled into the loan balance at an APR of 7.29%.

26

221.    In or around April 2021, Mrs. Utnicki also obtained a copy of the credit application which Victory Mitsubishi submitted to Chase.

222.    A copy of said credit application is attached hereto as **Exhibit 6**.

223.    This was the first time Mrs. Utnicki was seeing the credit application Victory Mitsubishi submitted to Chase or any credit application form at all.

224.    As stated above, on November 2, 2020 Joe did not ask Mrs. Utnicki to complete a credit application form and Mrs. Utnicki did not, in fact, complete one.

225.    Exhibit 6 is therefore the credit application form fabricated by Joe, or a different employee or employees of Victory Mitsubishi, and submitted to Chase, without the knowledge or consent of Mrs. Utnicki.

226.    Exhibit 6 is dated "11/04/2020".

227.    As stated above, Mrs. Utnicki did not sign any documents with Victory Mitsubishi concerning any vehicle on November 4, 2020.

228.    Mrs. Utnicki did not visit Victory Mitsubishi on November 4, 2020.

229.    The sole date on which Mrs. Utnicki signed documents with Victory Mitsubishi was November 2, 2020.

230.    Exhibit 6 purports to contain the signature of Mrs. Utnicki in multiple places.

231.    These signatures were forged by Victory Mitsubishi.

232.    These signatures were fabricated by Victory Mitsubishi.

233.    These signatures were forged and fabricated because Mrs. Utnicki did not sign any document with Victory Mitsubishi on November 4, 2020.

**FRANCOIS 3832**

234. Victory Mitsubishi transposed Mrs. Utnicki's signature from a document she did sign and placed an electronic facsimile of said signature on Exhibit 6.

235. As can be seen, the credit application (Exhibit 6) lists Mrs. Utnicki's "Employer Name" as "TOUS LES JOURS".

236. As can further be seen, the credit application lists Mrs. Utnicki's "Salary" as "$65,000.00" "Annually".

237. As can further be seen, the credit application lists Mrs. Utnicki's "Occupation" as "MANAGER".

238. As can also be seen, the credit application lists Mrs. Utnicki's "Length of Employment" as "4 years and 5 months".

239. A "Work Phone Number" also appears on the credit application.

240. All of this information on the credit application is false, fabricated and fraudulent.

241. Before seeing the credit application, Mrs. Utnicki had never heard about "Tous Les Jours".

242. Mrs. Utnicki has never been employed by "Tous Les Jours" as stated in the credit application.

243. Mrs. Utnicki has never earned a salary of $65,000 as stated in the credit application.

244. As stated above, Mrs. Utnicki has never earned a salary.

**FRANCOIS 3833**

245. As stated above, Mrs. Utnicki's sole source of compensation since the age of 5 has been SSI, which on November 2, 2020 was around $867 per month, and about which plaintiffs told Joe before Joe applied for any loan for Mrs. Utnicki.

246. Mrs. Utnicki has never been a manager of anywhere outside her home for 4 years and 5 months or for any other length of time.

247. As stated above, Mrs. Utnicki has never worked outside her home.

248. These items of information in the credit application are false and fabricated, rendering fraudulent the credit application submitted to Chase by Victory Mitsubishi.

249. In or around June 2021, Mrs. Utnicki also obtained a copy of the credit application which Victory Mitsubishi submitted to Ally Bank.

250. A copy of said credit application is attached hereto as **Exhibit 7**.

251. Similar to the credit application which Victory Mitsubishi submitted to Chase, the credit application which Victory Mitsubishi submitted to Ally Bank claims that Mrs. Utnicki was employed by "Tous Les Jours" as a "Manager" for 4 years and 5 months.

252. The credit application which Victory Mitsubishi submitted to Ally Bank also claims that Mrs. Utnicki's "Primary Monthly Income" was "$5,416.67", which works out to be the same $65,000 annual income stated in the credit application which Victory Mitsubishi submitted to Chase.

FRANCOIS 3834

253. These items of information in the credit application are false and fabricated, rendering fraudulent the credit application submitted to Ally Bank by Victory Mitsubishi.

254. Victory Mitsubishi submitted a similarly fraudulent credit application on behalf of Mrs. Utnicki to multiple other financial institutions.

255. Victory Mitsubishi denied Mrs. Utnicki's application for an auto loan based on the information Mrs. Utnicki had provided to Joe.

256. Victory Mitsubishi did not notify Mrs. Utnicki that it had denied her application for an auto loan based on the information Mrs. Utnicki had provided to Joe, including that her sole source of compensation was SSI benefit of $867 monthly.

257. Victory Mitsubishi did not provide to Mrs. Utnicki a statement of reasons for its denial of her application for an auto loan.

258. Instead, Victory Mitsubishi fabricated the false credit applications and disseminated them to multiple financial institutions, including Chase and Ally Bank.

259. Victory Mitsubishi fabricated the false credit applications because it knew that Mrs. Utnicki, with a monthly benefit of $867 from SSI, did not qualify for an auto loan for the purchase of practically any vehicle.

260. Knowing this, Victory Mitsubishi simply made up employment and income information for Mrs. Utnicki out of whole cloth and submitted said made-up information to banks and other financial institutions, which then acted based on that made-up information.

**FRANCOIS 3835**

261.     Had Joe told Mrs. Utnicki the truth: that her $867 benefit from SSI and her inability to hold gainful employment prohibited her from obtaining an auto loan, and told Mr. Utnicki the truth: that Victory Mitsubishi would not accept the Outlander as a trade-in, Mrs. Utnicki would not have purchased the Chrysler and plaintiffs would have left the dealership on November 2, 2020 with the Outlander and continued their search elsewhere to trade-in the Outlander and find a more affordable vehicle.

262.     Instead, not only did Victory Mitsubishi lie to Mr. Utnicki by telling him it would accept the Outlander as a trade-in, but Victory Mitsubishi told Mrs. Utnicki that she qualified for an auto loan for the purchase of the Chrysler when she did not, defrauding plaintiffs and causing plaintiffs to leave the dealership on November 2, 2020 mistakenly believing they had one car, the Chrysler, and one car loan with a monthly payment of $419.87.

263.     In fact, as shown, when plaintiffs left Victory Mitsubishi on November 2, 2020 they owned two vehicles and owed two auto loans between them.

264.     On information and belief, due to Mrs. Utnicki's now-high debt-to-income ratio resulting from the Chase loan for the Chrysler of more than $24,000, Mrs. Utnicki's credit score decreased, notwithstanding that the loan is being repaid in a timely manner.

265.     As a result of Victory Mitsubishi's fraud, Flagship later repossessed the Outlander and sold it.

266.     Flagship then sent to Mr. Utnicki a letter informing him that he owed a deficiency balance in the amount of $6,733.38.

31

**FRANCOIS 3836**

267.    A copy of Flagship's said deficiency balance letter is attached hereto as **Exhibit 8**.

268.    In addition, Flagship has begun to report Mr. Utnicki's loan as a charged-off account in the amount of $6,733 on his credit report.

269.    This charge-off notation is the sole auto loan charge-off carrying a balance on Mr. Utnicki's credit report.

270.    As a result of Victory Mitsubishi's fraud, Mr. Utnicki's credit score dropped precipitously with the consumer reporting agencies, from around 570 on November 2, 2020 to 364 (Equifax), 384 (Experian) and 386 (TransUnion) on May 3, 2021.

271.    When Mr. Utnicki visited Victory Mitsubishi on November 2, 2020, he had been perfect on the repayment of the Outlander loan to Flagship.

272.    Mr. Utnicki had been slowly and carefully rebuilding his credit rating for more than a year and had gotten it up to around 570 by November 2, 2020, principally due to his timely repayment of the Flagship loan.

273.    All of this hard work and dedication to restoring his credit was wiped away in one fell swoop by Victory Mitsubishi with its falsehoods to both plaintiffs on November 2, 2020, plunging Mr. Utnicki's credit rating to scores seldom seen in real life.

FRANCOIS 3837

274. Bason on Jason's statements to Mr. Utnicki that he should let Flagship repossess the Outlander and that he should allow the Flagship deficiency balance to go into collections and not pay it, it became clear to Mr. Utnicki that Victory Mitsubishi did not care about his efforts to rebuild his credit rating or any loss of opportunity in terms of housing, employment, credit or otherwise that he may sustain as a result of Victory Mitsubishi's fraud against him.

275. In fact, in December 2020 Mr. Utnicki applied for and was denied a credit card.

276. This credit card denial was due, at least in part, to Victory Mitsubishi's fraud in causing Mr. Utnicki to believe that he did not owe, and therefore did not have to pay, Flagship any money after November 2, 2020.

277. Due to Victory Mitsubishi's aforesaid fraudulent, deceptive and abusive conduct, plaintiffs suffered shock; fright; fear; pain; severe headaches requiring the purchase and use of pain medication; anxiety and distress; agitation and restlessness; depression; inability to eat, inability to sleep and inability to concentrate; marital strife and marital stress, loss of money, loss of the value of money, loss of credit rating, loss of financial and credit opportunity.

278. Specifically as to Mrs. Utnicki, Victory Mitsubishi's aforesaid fraudulent, deceptive and abusive conduct, caused her to suffer a cataclysmic epileptic seizure, directly endangering her health and safety.

33

## AS TO PLAINTIFF DAWN UTNICKI

### AS AND FOR A FIRST CAUSE OF ACTION

TILA - 15 U.S.C. § 1638(b)

(Failure To Provide TILA Disclosures Prior To Consummation)

279.    Plaintiffs re-allege paragraphs 1-278 as if fully re-stated herein.

280.    The RIC is the sole document which contained the required TILA disclosures.

281.    Mrs. Utnicki first saw or received a copy of the RIC in or around December 2020 when she obtained certain pages of the RIC from Chase.

282.    In or around December 2020 was when Mrs. Utnicki first saw or received a copy of the TILA disclosures.

283.    In or around December 2020 was when Mrs. Utnicki first saw or received a copy of the TILA disclosures that she could keep.

284.    Mrs. Utnicki did not receive a copy of the required TILA disclosures in a form she could keep, or at all, prior to the consummation of the transaction on November 2, 2020.

285.    Joe, Victory Mitsubishi's finance manager, failed to provide Mrs. Utnicki with a copy of the required TILA disclosures in a form she could keep, or at all, prior to the consummation of the transaction, in violation of 15 U.S.C. § 1638(b) and Regulation Z, 12 C.F.R. § 226.17.

FRANCOIS 3839

286.    No-one at Victory Mitsubishi provided Mrs. Utnicki with a copy of the required TILA disclosures in a form she could keep, or at all, prior to the consummation of the transaction, in violation of 15 U.S.C. § 1638(b) and Regulation Z, 12 C.F.R. § 226.17.

287.    Victory Mitsubishi acted willfully and knowingly in its misconduct herein.

288.    Chase received a copy of the invoice from Victory Mitsubishi.

289.    Chase received a copy of the invoice from Victory Mitsubishi after November 2, 2020.

290.    Victory Mitsubishi provided a copy of the invoice to Chase.

291.    Victory Mitsubishi provided a copy of the invoice to Chase after November 2, 2020.

292.    Chase saw that the invoice was dated "11/02/20".

293.    Chase saw that the RIC was dated "11/04/2020".

294.    Apart from the invoice, Chase received from Victory Mitsubishi a copy of other documents, such as the Tire and Wheel warranty.

295.    Apart from the invoice, Victory Mitsubishi provided to Chase a copy of other documents, such as the Tire and Wheel warranty.

296.    Certain of said documents are dated November 2, 2020, such as the Tire and Wheel warranty.

**FRANCOIS 3840**

297.     By comparing the November 2, 2020 date on the invoice and other documents with the November 4, 2020 date on the RIC, Chase was on notice that the discrepancy in the dates meant that Victory Mitsubishi had prepared the RIC no earlier than on November 4, 2020 and therefore Victory Mitsubishi had not provided Mrs. Utnicki with a copy of the TILA disclosures in a form she could keep, or at all, on November 2, 2020.

298.     Victory Mitsubishi's herein violation of the TILA was apparent to Chase on the face of the disclosure statement and other documents assigned to Chase by Victory Mitsubishi.

299.     Chase is liable to Mrs. Utnicki pursuant to the "Holder Rule", 16 C.F.R. 433.2 and its New York state analog, New York Personal Property Law § 302(9).

300.     Defendants are jointly and severally liable to Mrs. Utnicki in the amount of twice the finance charge, and for actual damages and reasonable attorneys' fees, costs and disbursements in accordance with 15 U.S.C. § 1640.

<u>AS AND FOR A SECOND CAUSE OF ACTION</u>

ECOA - 15 U.S.C. § 1691

(Failure To Provide Adverse Action Notice)

301.     Plaintiffs re-allege paragraphs 1-300 as if fully re-stated herein.

302.     As shown above, in seeing whether she would qualify for an auto loan, Mrs. Utnicki provided to Victory Mitsubishi, through Joe, her name, date of birth, address, social security number, and that her sole source of compensation was a monthly SSI benefit of $867.

**FRANCOIS 3841**

303.    Based on this information, Victory Mitsubishi denied Mrs. Utnicki's application for an auto loan.

304.    Victory Mitsubishi denied Mrs. Utnicki's truthful application for credit.

305.    Victory Mitsubishi did not provide to Mrs. Utnicki notice of its denial of her credit application, in violation of 15 U.S.C. § 1691(d) and Regulation B, 12 C.F.R. § 202.9.

306.    Victory Mitsubishi failed to provide to Mrs. Utnicki notice of the action it had taken regarding her credit application, in violation of 15 U.S.C. § 1691(d) and Regulation B, 12 C.F.R. § 202.9.

307.    Victory Mitsubishi did not provide to Mrs. Utnicki a statement of the reasons for its denial of her credit application and did not provide notification to Mrs. Utnicki of her right to a statement of the reasons for its denial of her credit application, in violation of 15 U.S.C. § 1691(d) and Regulation B, 12 C.F.R. § 202.9.

308.    Victory Mitsubishi failed to provide to Mrs. Utnicki a statement of the reasons for its denial of her credit application and failed to provide notification to Mrs. Utnicki of her right to a statement of the reasons for its denial of her credit application, in violation of 15 U.S.C. § 1691(d) and Regulation B, 12 C.F.R. § 202.9.

309.    Instead of notifying Mrs. Utnicki that Victory Mitsubishi denied her application for credit, Victory Mitsubishi fabricated a false and forged credit application and provided credit to Mrs. Utnicki based on the false and forged credit application.

37

**FRANCOIS 3842**

310. As alleged more fully above, as a result of Victory Mitsubishi's said violations of the ECOA, Mrs. Utnicki suffered diminution in her credit rating due to a high debt-to-income ratio, and she suffered fear, upset and worry because of Victory Mitsubishi's fraud on her which it perpetrated as part of its scheme to defraud both plaintiffs.

311. Chase is liable to Mrs. Utnicki pursuant to the "Holder Rule", 16 C.F.R. 433.2 and its New York state analog, New York Personal Property Law § 302(9).

312. Defendants are jointly and severally liable to Mrs. Utnicki for actual damages.

### Punitive Damages Against Each Defendant

313. In that Victory Mitsubishi concocted the fraudulent credit scheme concerning Mrs. Utnicki and regularly concocts similar fraudulent credit schemes concerning other unsuspecting members of the public seeking to purchase vehicles, Victory Mitsubishi's conduct evinces bad faith, was wanton and capricious, outrageous and unconscionable, and was undertaken with intent to harm Mrs. Utnicki or was so grossly negligent or reckless as to evince utter disregard for the legal rights of Mrs. Utnicki, entitling Mrs. Utnicki to punitive damages against defendants. At all relevant times, Victory Mitsubishi's misconduct was not aimed at and practiced against Mrs. Utnicki only, but was aimed at and practiced against other members of the public seeking to purchase an automobile from Victory Mitsubishi.

**FRANCOIS 3843**

314.    Defendants are jointly and severally liable to Mrs. Utnicki for punitive damages pursuant to the ECOA in the amount of $10,000.

### AS AND FOR A THIRD CAUSE OF ACTION

 MVRISA – New York Personal Property Law § 301 *et seq.*

315.    Plaintiffs re-allege paragraphs 1-314 as if fully re-stated herein.

316.    Mrs. Utnicki is a "retail buyer" or "buyer" within the meaning of the MVRISA § 301(2).

317.    Victory Mitsubishi is a "retail seller" or "seller" within the meaning of the MVRISA § 301(3).

318.    The sale transaction herein described involves a "retail instalment sale" or "sale" within the meaning of MVRISA § 301(4).

319.    The RIC is a "retail instalment contract" or "contract" within the meaning of MVRISA § 301(5).

320.    The MVRISA § 302(1) provides that the RIC "shall contain all the agreements of the parties and shall be signed by the buyer and the seller".

321.    As alleged above, the RIC does not contain all the agreements of the parties in that it does not contain the price of "$19,000 and change" for the Chrysler agreed by Mrs. Utnicki and Joe on November 2, 2020, but instead the RIC contains the price of $20,995 in violation of MVRISA § 302(1).

**FRANCOIS 3844**

322.    As alleged above, the RIC does not contain all the agreements of the parties in that it does not contain the price of $19,995 for the Chrysler advertised by Victory Mitsubishi, but instead the RIC contains the price of $20,995 in violation of MVRISA § 302(1).

323.    In addition, the RIC was not signed by the buyer and the seller as required by MVRISA § 302(1).

324.    The RIC was not signed by Mrs. Utnicki, but instead Victory Mitsubishi fabricated the RIC after Mrs. Utnicki's departure from the dealership on November 2, 2020 and forged Mrs. Utnicki's signature thereon.

325.    Mrs. Utnicki has notified or attempted to notify Victory Mitsubishi of the aforesaid violations of the MVRISA but Victory Mitsubishi has refused, failed and neglected to rectify the violations.

326.    Victory Mitsubishi's violations of the MVRISA were willful and knowing.

327.    By reason of the foregoing violations of the MVRISA, Victory Mitsubishi is barred from recovering from Mrs. Utnicki any credit service charge, delinquency or collection charge or refinancing charge on the RIC, and Mrs. Utnicki is entitled to reasonable attorneys' fees, costs and disbursements

328.    Chase is liable to Mrs. Utnicki pursuant to the "Holder Rule", 16 C.F.R. 433.2 and its New York state analog, New York Personal Property Law § 302(9).

**FRANCOIS 3845**

329.     Defendants are jointly and severally liable to Mrs. Utnicki for violation of the MVRISA.

<u>AS AND FOR A FOURTH CAUSE OF ACTION</u>

COMMON-LAW FRAUD

330.     Plaintiffs re-allege paragraphs 1-329 as if fully re-stated herein.

**<u>Fraudulent Increase In Price</u>**.

331.     Victory Mitsubishi advertised the Chrysler for sale at a price of $19,995.

332.     Further, on November 2, 2020, Victory Mitsubishi's representative Joe represented to Mrs. Utnicki and Mr. Utnicki that the price of the Chrysler was "$19,000 and change"

333.     Victory Mitsubishi in fact sold Mrs. Utnicki the Chrysler for $20,995.

334.     This price of $20,995 was at least $1,000 more than the advertised price and agreed price.

335.     The representation of Victory Mitsubishi that it would sell Mrs. Utnicki the Chrysler for "$19,000 and change" or $19,995 was a material fact of Mrs. Utnicki's purchase of the Chrysler.

336.     Victory Mitsubishi's said representation was false at the time it was made by Victory Mitsubishi.

41

337.    Victory Mitsubishi knew the representation was false at the time it was made by Victory Mitsubishi.

338.    The representation was made by Victory Mitsubishi for the purpose of inducing Mrs. Utnicki to rely on it and to decide to purchase the Chrysler.

339.    At the time Victory Mitsubishi made the representation to Mrs. Utnicki, Mrs. Utnicki did not know and had no reason or means to know that the representation was false.

340.    Mrs. Utnicki did reasonably, justifiably and rightfully rely on the representation of Victory Mitsubishi as to the price of "$19,000 and change" or $19,995 in deciding to purchase the Chrysler.

341.    Mrs. Utnicki's decision to purchase the Chrysler was based on the representation of Victory Mitsubishi that the price of the Chrysler was "$19,000 and change" or $19,995.

342.    Mrs. Utnicki would not have purchased the Chrysler had she known that Victory Mitsubishi would increase the price by at least $1,000.

343.    As stated above, Mrs. Utnicki was gravely damaged by the false representation of Victory Mitsubishi.

344.    Mrs. Utnicki was gravely damaged by the false representation of Victory Mitsubishi in that Victory Mitsubishi inserted the inflated price of $20,995 into the RIC and the loan amount, instead of the agreed price or the advertised price of "$19,000 and change" or $19,995, thereby increasing the profit to defendants while rendering the Chrysler more expensive in every respect (including price paid,

42

taxes paid and interest paid) for Mrs. Utnicki.

345.    Chase is liable to Mrs. Utnicki pursuant to the "Holder Rule",
16 C.F.R. 433.2 and its New York state analog, New York Personal Property Law §
302(9).

346.    Defendants are jointly and severally liable to Mrs. Utnicki for
the fraud detailed herein.

347.    Defendants are jointly and severally liable to Mrs. Utnicki for
actual, compensatory and punitive damages in an amount to be determined at the
time of trial.

**Fraudulent Omission Concerning Imposition of Tire and Wheel Warranty**.

348.    Joe, Victory Mitsubishi's representative, included into the
purchase of the Chrysler a Tire and Wheel warranty at a cost of $1,500.

349.    Victory Mitsubishi did not inform Mrs. Utnicki that it was
including a Tire and Wheel warranty at a cost of $1,500 into the purchase of the
Chrysler.

350.    Victory Mitsubishi did not inform Mrs. Utnicki that it was
including a Tire and Wheel warranty into the purchase of the Chrysler at all.

351.    Victory Mitsubishi failed to disclose to Mrs. Utnicki that it was
including a Tire and Wheel warranty into the purchase of the Chrysler.

352.    Mrs. Utnicki did not ask Victory Mitsubishi for a Tire and
Wheel warranty.

**FRANCOIS 3848**

353.    Victory Mitsubishi unilaterally prepared paperwork which it did not allow Mrs. Utnicki to read.

354.    Victory Mitsubishi therefore had superior knowledge of the contents of the paperwork, and had superior knowledge of its own actions in surreptitiously including the Tire and Wheel warranty into the car purchase.

355.    Mrs. Utnicki purchased the Chrysler while under the mistaken belief, induced by Victory Mitsubishi, that no Tire and Wheel warranty was included into the car purchase.

356.    Victory Mitsubishi knew that Mrs. Utnicki was purchasing the Chrysler under said mistaken belief.

357.    Victory Mitsubishi's omission to inform Mrs. Utnicki that it was including into the purchase the Tire and Wheel warranty was an omission of material fact.

358.    Victory Mitsubishi made the omission with knowledge that the omission would induce Mrs. Utnicki, and did induce Mrs. Utnicki, to purchase the Chrysler.

359.    Mrs. Utnicki would not have purchased the Chrysler had Victory Mitsubishi disclosed to Mrs. Utnicki that it had included the Tire and Wheel warranty into the purchase.

360.    Mrs. Utnicki relied on the Victory Mitsubishi's omission and did reasonably, justifiably and rightfully rely on the Victory Mitsubishi's omission when she proceeded to purchase the Chrysler.

44

**FRANCOIS 3849**

361.    Mrs. Utnicki was gravely damaged by the false omission of Victory Mitsubishi in that the extra and unwanted $1,500 price of the warranty increased the amount financed of the Chrysler, thereby increasing the loan and increasing the sales tax due and amount of interest accruing on the loan, and also thereby increasing the monthly loan payment Mrs. Utnicki is obliged to pay, all rendering the car more expensive in every respect for Mrs. Utnicki.

362.    Chase is liable to Mrs. Utnicki pursuant to the "Holder Rule", 16 C.F.R. 433.2 and its New York state analog, New York Personal Property Law § 302(9).

363.    Defendants are jointly and severally liable to Mrs. Utnicki for the fraud detailed herein.

364.    Defendants are jointly and severally liable to Mrs. Utnicki for actual, compensatory and punitive damages in an amount to be determined at the time of trial.

**Fraudulent Representation/Omission Concerning Credit Approval**.

365.    As shown above, in seeing whether she would qualify for an auto loan, Mrs. Utnicki orally provided to Victory Mitsubishi, through its representative Joe, her name, date of birth, address, social security number, and that her sole source of compensation was a monthly SSI benefit of $867.

366.    Victory Mitsubishi, through Joe, then represented to Mrs. Utnicki that she had qualified for an auto loan.

45

**FRANCOIS 3850**

367.    In fact, Victory Mitsubishi had denied Mrs. Utnicki's application for an auto loan and had instead, without Mrs. Utnicki's knowledge, fabricated false credit application information on the basis of which it approved her for a loan.

368.    Victory Mitsubishi's representation to Mrs. Utnicki that she had qualified for an auto loan was a material fact of Mrs. Utnicki's purchase of the Chrysler.

369.    This representation of Victory Mitsubishi that Mrs. Utnicki had qualified for an auto loan was false at the time it was made by Victory Mitsubishi.

370.    Victory Mitsubishi knew the representation was false at the time it was made by Victory Mitsubishi.

371.    The representation was made by Victory Mitsubishi for the purpose of inducing Mrs. Utnicki to rely on it and to decide to purchase the Chrysler.

372.    At the time Victory Mitsubishi made the representation to Mrs. Utnicki, Mrs. Utnicki did not know and had no reason or means to know that the representation was false.

373.    Mrs. Utnicki did reasonably, justifiably and rightfully rely on the representation of Victory Mitsubishi that she had qualified for an auto loan in deciding to purchase the Chrysler.

374.    Mrs. Utnicki's decision to purchase the Chrysler was based on the representation of Victory Mitsubishi that she had qualified for an auto loan.

FRANCOIS 3851

375.  Mrs. Utnicki would not have purchased the Chrysler had she known that she had not qualified for an auto loan based on the information she had provided to Victory Mitsubishi.

376.  As stated above, Mrs. Utnicki was gravely damaged by the false representation of Victory Mitsubishi.

377.  Further, Victory Mitsubishi did not inform Mrs. Utnicki it had denied for application for an auto loan based on the information she had provided to Victory Mitsubishi.

378.  Victory Mitsubishi failed to disclose to Mrs. Utnicki that it had denied her application for an auto loan based on the information she had provided to Victory Mitsubishi.

379.  Victory Mitsubishi unilaterally fabricated false credit applications which it did not allow Mrs. Utnicki to read.

380.  Victory Mitsubishi therefore had superior knowledge of the contents of the credit applications, and had superior knowledge of its own actions in fabricating false credit information, approving Mrs. Utnicki on the basis thereof and disseminating it to various financial institutions.

381.  Mrs. Utnicki purchased the Chrysler while under the mistaken belief, induced by Victory Mitsubishi, that she had qualified for an auto loan based on the information she had provided to Victory Mitsubishi.

382.  Victory Mitsubishi knew that Mrs. Utnicki was purchasing the Chrysler under said mistaken belief.

47

383.   Victory Mitsubishi's omission to inform Mrs. Utnicki that it had denied her application for an auto loan based on the information she had provided to Victory Mitsubishi was an omission of material fact.

384.   Victory Mitsubishi made the omission with knowledge that the omission would induce Mrs. Utnicki, and did induce Mrs. Utnicki, to purchase the Chrysler.

385.   Mrs. Utnicki would not have purchased the Chrysler had Victory Mitsubishi disclosed to Mrs. Utnicki that it had denied her application for an auto loan based on the information she had provided.

386.   Mrs. Utnicki relied on the Victory Mitsubishi's omission and did reasonably, justifiably and rightfully rely on the Victory Mitsubishi's omission when she proceeded to purchase the Chrysler.

387.   As stated above, Mrs. Utnicki was gravely damaged by the false omission of Victory Mitsubishi.

388.   Mrs. Utnicki was gravely damaged by the false representation and omission of Victory Mitsubishi in that Victory Mitsubishi's said fraud was part and parcel of its fraudulent scheme to keep Mr. Utnicki saddled with the Flagship loan while imposing a new loan obligation on Mrs. Utnicki, the combination of which plaintiffs could not afford to pay.

389.   On information and belief, due to Mrs. Utnicki's now-high debt-to-income ratio resulting from the Chase loan for the Chrysler of more than $24,000 for which Victory Mitsubishi knew Mrs. Utnicki did not qualify, Mrs. Utnicki's

**FRANCOIS 3853**

credit score decreased.

390.    Chase is liable to Mrs. Utnicki pursuant to the "Holder Rule", 16 C.F.R. 433.2 and its New York state analog, New York Personal Property Law § 302(9).

391.    Defendants are jointly and severally liable to Mrs. Utnicki for the fraud detailed herein.

392.    Defendants are jointly and severally liable to Mrs. Utnicki for actual, compensatory and punitive damages in an amount to be determined at the time of trial.

393.    Due to Victory Mitsubishi's aforesaid fraudulent, deceptive and abusive conduct, Mrs. Utnicki suffered shock; fright; fear; pain; severe headaches requiring the purchase and use of pain medication; anxiety and distress; agitation and restlessness; depression; inability to eat, inability to sleep and inability to concentrate; marital strife and marital stress, loss of money, loss of the value of money, loss of credit rating, loss of financial and credit opportunity.

394.    Victory Mitsubishi's aforesaid fraudulent, deceptive and abusive conduct caused Mrs. Utnicki to suffer a cataclysmic epileptic seizure, directly endangering her health and safety.

## Punitive Damages For Fraud Against Each Defendant

395.    Victory Mitsubishi's aforesaid fraudulent conduct evinces bad faith, was wanton and malicious, outrageous and unconscionable, and was undertaken with intent to harm Mrs. Utnicki or was so grossly negligent or reckless

49

**FRANCOIS 3854**

as to evince utter disregard for the legal rights of Mrs. Utnicki, entitling Mrs. Utnicki to punitive damages against defendants. At all relevant times, Victory Mitsubishi's misconduct was not aimed at and practiced against Mrs. Utnicki only, but was aimed at and practiced against other members of the public who purchased an automobile from Victory Mitsubishi.

<u>AS AND FOR A FIFTH CAUSE OF ACTION</u>

NYGBL § 349–Deceptive Acts And Practices

396.    Plaintiffs re-allege paragraphs 1-395 as if fully re-stated herein.

397.    Victory Mitsubishi owed a duty to Mrs. Utnicki to transact business with Mrs. Utnicki with reasonable care.

398.    Victory Mitsubishi breached said duty to Mrs. Utnicki.

399.    Victory Mitsubishi breached its duty to Mrs. Utnicki by: (i) deceptively inflating the price of the Chrysler by at least $1,000 from "$19,000 and change" or $19,995 to $20,995; (ii) deceptively failing to post the price of the Chrysler on the Chrysler or at the point of display of the Chrysler, as required by the New York City Administrative Code; (iii) deceptively fabricating false and forged credit application information with respect to Mrs. Utnicki and procuring an auto loan for Mrs. Utnicki based on said false and forged credit application information; (iv) deceptively fabricating a false and forged RIC and assigning it to Chase; and (v) deceptively adding a Tire and Wheel warranty at a cost of $1,500 into the purchase of the Chrysler without Mrs. Utnicki's knowledge or consent.

**FRANCOIS 3855**

400.   Owing to Victory Mitsubishi's said deceptive acts and practices, Victory Mitsubishi increased Mrs. Utnicki's loan amount by at least $2,500 ($1,000 plus $1,500), thereby increasing the sales tax paid by Mrs. Utnicki and the amount of interest accruing on the loan, and increasing the monthly payment on the loan, all rendering the Chrysler more expensive in every respect for Mrs. Utnicki.

401.   In addition, due to Victory Mitsubishi's aforesaid deceptive acts and practices, Mrs. Utnicki suffered shock; fright; fear; pain; severe headaches requiring the purchase and use of pain medication; anxiety and distress; agitation and restlessness; depression; inability to eat, inability to sleep and inability to concentrate; marital strife and marital stress, loss of money, loss of the value of money, loss of credit rating, loss of financial and credit opportunity.

402.   Victory Mitsubishi's aforesaid deceptive acts and practices caused Mrs. Utnicki to suffer a cataclysmic epileptic seizure, directly endangering her health and safety.

403.   In addition, Mrs. Utnicki's debt-to-income ratio increased due to the Chase loan for the Chrysler of more than $24,000 for which Victory Mitsubishi knew Mrs. Utnicki did not qualify, thereby causing Mrs. Utnicki's credit score to decrease.

404.   Victory Mitsubishi's said acts and practices were deceptive on their face.

FRANCOIS 3856

405.   Victory Mitsubishi's deceptive acts and practices were committed by Victory Mitsubishi in the conduct of a business, trade or commerce or the furnishing of a service within the State of New York and constitutes a violation of NYGBL § 349.

406.   Victory Mitsubishi's deceptive acts and practices were consumer-oriented.

407.   Victory Mitsubishi's deceptive acts and practices were consumer-oriented in that Victory Mitsubishi's aforesaid misconduct in its business practices was not limited to Mrs. Utnicki but extended to its practices with respect to other consumers within the State of New York.

408.   Victory Mitsubishi's acts and practices are recurring and directed at consumers at large and said acts and practices are the sort that the dealership performs on a routine basis in its business of selling automobiles and are the sort that harm similarly-situated consumers.

409.   Many other consumers have complained to the New York State Attorney General, DMV, Better Business Bureau and in other online fora and spaces about the Victory Mitsubishi's aforesaid deceptive business practices, as .

410.    Victory Mitsubishi's acts and practices complained of herein are therefore consumer-oriented.

411.   Victory Mitsubishi's aforesaid acts and practices have a broader impact on consumers at large who purchase automobiles from the dealership.

52

412. Victory Mitsubishi's aforesaid acts and practices were also deceptive in a material way, as alleged above.

413. Mrs. Utnicki has been injured as a result of Victory Mitsubishi's misconduct.

414. By reason of Victory Mitsubishi's aforesaid misconduct, Mrs. Utnicki suffered and continues to suffer financial and emotional harm as alleged above.

415. Victory Mitsubishi has improperly profited from its deceptive acts and practices and has retained said profits.

416. Mrs. Utnicki is a reasonable consumer within the meaning of the NYGBL and acted reasonably under the circumstances of this case.

417. Victory Mitsubishi violated NYGBL § 349(a) and is liable to Mrs. Utnicki under NYGBL § 349(h).

418. Victory Mitsubishi acted willfully and knowingly in its misconduct herein.

419. As a result of the above violations, Mrs. Utnicki seeks injunctive relief against Victory Mitsubishi and Victory Mitsubishi is liable to Mrs. Utnicki for actual, compensatory, treble and punitive damages in an amount to be determined at the time of trial, and reasonable attorneys' fees, costs and disbursements.

420. Chase is liable to Mrs. Utnicki pursuant to the "Holder Rule", 16 C.F.R. 433.2 and its New York state analog, New York Personal Property Law § 302(9).

**FRANCOIS 3858**

421.    Defendants are jointly and severally liable to Mrs. Utnicki for violation of NYGBL § 349.

## AS AND FOR A SIXTH CAUSE OF ACTION

### NYGBL § 350–Misleading Advertisement

422.    Plaintiffs re-allege paragraphs 1-421 as if fully re-stated herein.

423.    Victory Mitsubishi advertised the Chrysler for sale online at a price of $19,995.

424.    Victory Mitsubishi represented in the advertisement that the sale price of the Chrysler was $19,995.

425.    This representation was materially misleading and constitutes false advertising pursuant to NYGBL § 350 because Victory Mitsubishi sold the Chrysler to Mrs. Utnicki for $20,995, $1,000 more than the advertised price.

426.    In deciding to purchase the Chrysler, Mrs. Utnicki relied on Victory Mitsubishi's representation that the price of the Chrysler would be no more than $19,995.

427.    Mrs. Utnicki has been injured as a result of Victory Mitsubishi's misconduct herein.

428.    Mrs. Utnicki has been injured as a result of Victory Mitsubishi's misconduct herein because Victory Mitsubishi sold the Chrysler to her for $20,995, not $19,995 or a lower price.

FRANCOIS 3859

429. By reason of Victory Mitsubishi's aforesaid deceptive acts and practices, Mrs. Utnicki suffered and continues to suffer financial harm, including but not limited to the fact that Mrs. Utnicki is now paying back a loan balance deceptively increased by at least $1,000 with respect to the price, increasing the sales tax paid by Mrs. Utnicki and the amount of interest accruing on the loan, and increasing the monthly payment on the loan, all rendering the Chrysler more expensive in every respect for Mrs. Utnicki.

430. Victory Mitsubishi has improperly profited from its false advertising and has retained said profits.

431. Mrs. Utnicki is a reasonable consumer within the meaning of the NYGBL and acted reasonably under the circumstances of this case.

432. Victory Mitsubishi violated NYGBL § 350 and is liable to Mrs. Utnicki under NYGBL § 350-e

433. Victory Mitsubishi acted willfully and knowingly in its misconduct herein.

434. As a result of the above violations, Mrs. Utnicki seeks injunctive relief against Victory Mitsubishi and Victory Mitsubishi is liable to Mrs. Utnicki for actual, compensatory, treble and punitive damages in an amount to be determined at the time of trial, and reasonable attorneys' fees, costs and disbursements.

435. Chase is liable to Mrs. Utnicki pursuant to the "Holder Rule", 16 C.F.R. 433.2 and its New York state analog, New York Personal Property Law § 302(9).

**FRANCOIS 3860**

436. Defendants are jointly and severally liable to Mrs. Utnicki for violation of NYGBL § 350-e.

WHEREFORE, Mrs. Utnicki respectfully prays that judgment be entered against each defendant as follows:

(a)    awarding twice the finance charge, actual damages and reasonable attorneys' fees, costs and disbursements pursuant to 15 U.S.C. § 1640;

(b)    awarding actual damages, punitive damages in the amount of $10,000 and reasonable attorneys' fees, costs and disbursements pursuant to 15 U.S.C. § 1691;

(c)    awarding actual, compensatory and punitive damages for common-law fraud in an amount to be determined at time of trial;

(d)    enjoining each defendant from committing further deceptive acts and practices towards Mrs. Utnicki, pursuant to NYGBL § 349;

(e)    awarding actual damages pursuant to NYGBL § 349 in an amount to be determined at time of trial;

(f)    in the alternative to (e), awarding statutory damages pursuant to NYGBL § 349 in an amount to be determined at time of trial;

(g)    awarding treble damages pursuant to NYGBL § 349 in an amount to be determined at time of trial;

(h)    awarding punitive damages pursuant to NYGBL § 349 in an amount to be determined at time of trial;

56

**FRANCOIS 3861**

(i)     enjoining each defendant from committing further deceptive acts and practices towards Mrs. Utnicki, pursuant to NYGBL § 350-e;

(j)     awarding actual damages pursuant to NYGBL § 350-e in an amount to be determined at time of trial;

(k)     in the alternative to (j), awarding statutory damages pursuant to NYGBL § 350-e in an amount to be determined at time of trial;

(l)     awarding treble damages pursuant to NYGBL § 350-e in an amount to be determined at time of trial;

(m)     awarding punitive damages pursuant to NYGBL § 350-e in an amount to be determined at time of trial;

(n)     ordering defendants to void forthwith the Tire and Wheel warranty and to issue a full refund to Mrs. Utnicki for the $1,500 purchase price thereof, together with related sales tax and interest;

(o)     awarding 10% penalty on the price of $1,500 for the Tire and Wheel warranty for each month or part thereof that defendants fail to issue a full refund to Mrs. Utnicki;

(p)     awarding reasonable attorneys' fees, costs and disbursements pursuant to NYGBL § 349(h);

(q)     awarding reasonable attorneys' fees, costs and disbursements pursuant to NYGBL § 350-e;

(r)     awarding relief under MVRISA together with reasonable attorneys' fees, costs and disbursements;

**FRANCOIS 3862**

(s)     awarding pre-judgment interest; and

(t)     for such other and further relief as may be just and proper.

**<u>AS TO BOTH PLAINTIFFS</u>**

<u>AS AND FOR A SEVENTH CAUSE OF ACTION</u>

COMMON-LAW FRAUD

437.    Plaintiffs re-allege paragraphs 1-436 as if fully re-stated herein.

438.    Victory Mitsubishi, through its representatives Joe and Jason, represented to plaintiffs that Victory Mitsubishi would accept Mr. Utnicki's Outlander as a trade-in on the purchase of the Chrysler.

439.    Victory Mitsubishi, through its representatives Joe and Jason, represented to plaintiffs that, pursuant to the trade in, Victory Mitsubishi would pay off the Flagship loan on the Outlander and the approximately $1,800 of negative equity on the Outlander would be rolled into the Chrysler loan.

440.    Victory Mitsubishi, through its representatives Joe and Jason, further represented to plaintiffs that after the Chrysler purchase Mr. Utnicki would owe no further monies to Flagship.

441.    These representations of Victory Mitsubishi were material facts of Mrs. Utnicki's purchase of the Chrysler.

442.    These representations of Victory Mitsubishi were also material facts of Mr. Utnicki leaving the Outlander at Victory Mitsubishi on November 2, 2020.

**FRANCOIS 3863**

443.   Victory Mitsubishi's said representations were false at the time Victory Mitsubishi made the representations.

444.   Victory Mitsubishi knew the representations were false at the time they were made by Victory Mitsubishi.

445.   The representations were made by Victory Mitsubishi for the purpose of inducing plaintiffs to rely on it and for the purpose of inducing Mrs. Utnicki to decide to purchase the Chrysler.

446.   At the time Victory Mitsubishi made the representations to plaintiffs, plaintiffs did not know and had no reason or means to know that the representations were false.

447.   Plaintiffs did reasonably, justifiably and rightfully rely on the representations of Victory Mitsubishi in deciding to leave the Outlander at Victory Mitsubishi on November 2, 2020 believing the Outlander was then owned by Victory Mitsubishi, and in deciding to purchase the Chrysler.

448.   Mr. Utnicki's decision to leave the Outlander at Victory Mitsubishi on November 2, 2020 was based on said representations of Victory Mitsubishi.

449.   Mrs. Utnicki's decision to purchase the Chrysler was based on said representations of Victory Mitsubishi.

450.   Mr. Utnicki would not have left the Outlander at Victory Mitsubishi on November 2, 2020 had he known that Victory Mitsubishi would not accept the Outlander as a trade in.

59

**FRANCOIS 3864**

451. Mrs. Utnicki would not have purchased the Chrysler had she known that Victory Mitsubishi would not accept the Outlander as a trade in.

452. As stated above, plaintiffs were gravely damaged by the false representations of Victory Mitsubishi.

453. Due to Victory Mitsubishi's aforesaid fraudulent, deceptive and abusive conduct, plaintiffs suffered shock; fright; fear; pain; severe headaches requiring the purchase and use of pain medication; anxiety and distress; agitation and restlessness; depression; inability to eat, inability to sleep and inability to concentrate; marital strife and marital stress, loss of money, loss of the value of money, loss of credit rating, loss of financial and credit opportunity.

454. Victory Mitsubishi's aforesaid fraudulent, deceptive and abusive conduct caused Mr. Utnicki presently to owe a charged-off balance of $6,733 to Flagship, caused Mr. Utnicki's credit rating to decrease precipitously and at least in part caused Mr. Utnicki to sustain a denial of credit.

455. Victory Mitsubishi's aforesaid fraudulent, deceptive and abusive conduct caused Mrs. Utnicki's debt-to-income ratio to increase leading to a decrease in her credit rating.

456. Victory Mitsubishi's aforesaid fraudulent, deceptive and abusive conduct caused Mrs. Utnicki to suffer a cataclysmic epileptic seizure, directly endangering her health and safety.

457. Chase is liable to plaintiffs pursuant to the "Holder Rule", 16 C.F.R. 433.2 and its New York state analog, New York Personal Property Law §

60

302(9).

458.    Defendants are jointly and severally liable to plaintiffs for the fraud detailed herein.

459.    Defendants are jointly and severally liable to plaintiffs for actual, compensatory and punitive damages in an amount to be determined at the time of trial.

### **Punitive Damages For Fraud Against Each Defendant**

460.    Victory Mitsubishi's aforesaid fraudulent conduct evinces bad faith, was wanton and malicious, outrageous and unconscionable, and was undertaken with intent to harm plaintiffs or was so grossly negligent or reckless as to evince utter disregard for the legal rights of plaintiffs, entitling plaintiffs to punitive damages against defendants. At all relevant times, Victory Mitsubishi's misconduct was not aimed at and practiced against plaintiffs only, but was aimed at and practiced against other members of the public who purchased an automobile from Victory Mitsubishi.

### AS AND FOR AN EIGHTH CAUSE OF ACTION

NYGBL § 349–Deceptive Acts And Practices

461.    Plaintiffs re-allege paragraphs 1-460 as if fully re-stated herein.

462.    Victory Mitsubishi owed a duty to plaintiffs to transact business with plaintiffs with reasonable care.

463.    Victory Mitsubishi breached said duty to plaintiffs.

FRANCOIS 3866

464.    Victory Mitsubishi breached its duty to plaintiffs by deceptively representing to plaintiffs that it would accept the Outlander as a trade in; that pursuant to the trade in, Victory Mitsubishi would pay off the Flagship loan on the Outlander and the approximately $1,800 of negative equity on the Outlander would be rolled into the Chrysler loan; and that after the Chrysler purchase Mr. Utnicki would owe no further monies to Flagship.

465.    Owing to Victory Mitsubishi's said deceptive acts and practices, Victory Mitsubishi caused Mrs. Utnicki to purchase the Chrysler which she would not have purchased had she known that Victory Mitsubishi would not accept the Outlander as a trade in.

466.    Further, owing to Victory Mitsubishi's said deceptive acts and practices, Victory Mitsubishi caused Mr. Utnicki to leave the Outlander at the dealership on November 2, 2020, which he would not have done had he known that Victory Mitsubishi would not accept the Outlander as a trade in.

467.    Due to Victory Mitsubishi's aforesaid fraudulent, deceptive and abusive conduct, plaintiffs suffered shock; fright; fear; pain; severe headaches requiring the purchase and use of pain medication; anxiety and distress; agitation and restlessness; depression; inability to eat, inability to sleep and inability to concentrate; marital strife and marital stress, loss of money, loss of the value of money, loss of credit rating, loss of financial and credit opportunity.

FRANCOIS 3867

468.   Victory Mitsubishi's aforesaid fraudulent, deceptive and abusive conduct caused Mr. Utnicki presently to owe a charged-off balance of $6,733 to Flagship, caused Mr. Utnicki's credit rating to decrease precipitously and at least in part caused Mr. Utnicki to sustain a denial of credit.

469.   Victory Mitsubishi's aforesaid fraudulent, deceptive and abusive conduct caused Mrs. Utnicki's debt-to-income ratio to increase leading to a decrease in her credit rating.

470.   Victory Mitsubishi's aforesaid fraudulent, deceptive and abusive conduct caused Mrs. Utnicki to suffer a cataclysmic epileptic seizure, directly endangering her health and safety.

471.   Victory Mitsubishi's said acts and practices were deceptive on their face.

472.   Victory Mitsubishi's deceptive acts and practices were committed by Victory Mitsubishi in the conduct of a business, trade or commerce or the furnishing of a service within the State of New York and constitutes a violation of NYGBL § 349.

473.   Victory Mitsubishi's deceptive acts and practices were consumer-oriented.

474.   Victory Mitsubishi's deceptive acts and practices were consumer-oriented in that Victory Mitsubishi's aforesaid misconduct in its business practices was not limited to plaintiffs but extended to its practices with respect to other consumers within the State of New York.

63

**FRANCOIS 3868**

475.   Victory Mitsubishi's acts and practices are recurring and directed at consumers at large and said acts and practices are the sort that the dealership performs on a routine basis in its business of selling automobiles and are the sort that harm similarly-situated consumers.

476.   Many other consumers have complained to the New York State Attorney General, DMV, Better Business Bureau and in other online fora and spaces about the Victory Mitsubishi's aforesaid deceptive business practices.

477.   Victory Mitsubishi's acts and practices complained of herein are therefore consumer-oriented.

478.   Victory Mitsubishi's aforesaid acts and practices have a broader impact on consumers at large who purchase automobiles from the dealership.

479.   Victory Mitsubishi's aforesaid acts and practices were also deceptive in a material way, as alleged above.

480.   Plaintiffs have been injured as a result of Victory Mitsubishi's misconduct.

481.   By reason of Victory Mitsubishi's aforesaid misconduct, plaintiffs suffered and continue to suffer financial and emotional harm as alleged above.

482.   Victory Mitsubishi has improperly profited from its deceptive acts and practices and has retained said profits.

483.   Each plaintiff is a reasonable consumer within the meaning of the NYGBL and acted reasonably under the circumstances of this case.

64

**FRANCOIS 3869**

484.    Victory Mitsubishi violated NYGBL § 349(a) and is liable to each plaintiff under NYGBL § 349(h).

485.    Victory Mitsubishi acted willfully and knowingly in its misconduct herein.

486.    As a result of the above violations, plaintiffs seek injunctive relief against Victory Mitsubishi and Victory Mitsubishi is liable to each plaintiff for actual, compensatory, treble and punitive damages in an amount to be determined at the time of trial, and reasonable attorneys' fees, costs and disbursements.

487.    Chase is liable to plaintiffs pursuant to the "Holder Rule", 16 C.F.R. 433.2 and its New York state analog, New York Personal Property Law § 302(9).

488.    Defendants are jointly and severally liable to plaintiffs for violation of NYGBL § 349.

WHEREFORE, each plaintiff respectfully prays that judgment be entered against each defendant as follows:

(a)    awarding actual, compensatory and punitive damages for common-law fraud in an amount to be determined at time of trial;

(b)    enjoining each defendant from committing further deceptive acts and practices towards plaintiffs, pursuant to NYGBL § 349;

(c)    awarding actual damages pursuant to NYGBL § 349 in an amount to be determined at time of trial;

**FRANCOIS 3870**

(d)     in the alternative to (c), awarding statutory damages pursuant to NYGBL § 349 in an amount to be determined at time of trial;

(e)     awarding treble damages pursuant to NYGBL § 349 in an amount to be determined at time of trial;

(f)     awarding punitive damages pursuant to NYGBL § 349 in an amount to be determined at time of trial;

(g)     awarding reasonable attorneys' fees, costs and disbursements pursuant to NYGBL § 349(h);

(h)     awarding pre-judgment interest; and

(i)     for such other and further relief as may be just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiffs request trial by jury on all issues so triable.

Dated: New York, New York
       December 13, 2021.


*/s/ Novlette R. Kidd*
NOVLETTE R. KIDD, ESQ. (NK 9339)
FAGENSON & PUGLISI, PLLC
Attorneys for Plaintiff
450 Seventh Avenue, Suite 704
New York, New York 10123
Tel.: (212) 268-2128
Nkidd@fagensonpuglisi.com

66

**FRANCOIS 3871**

# EXHIBIT 1

FRANCOIS 3872

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

------------------------------------------------------------X

The People of the State of New York, by
LETITIA JAMES,
Attorney General of New York,

                              Petitioner,

        -against-

Victory Motors, LLC, doing business as Victory
Mitsubishi, Larchmont, New York, and Victory
Auto Group, LLC, doing business as Victory Suzuki,
Bronx, New York,

                            Respondents.

------------------------------------------------------------X

**STIPULATION OF
SETTLEMENT
AND ORDER**

Index No. 70684/2017
Hon. Charles D. Wood

This Stipulation is entered into by and among petitioner, The People of the State of New

York, by Letitia James, Attorney General of New York ("Petitioner") and respondents, Victory

Motors, LLC, doing business as Victory Mitsubishi, Larchmont, New York, and Victory Auto

Group, LLC, doing business as Victory Suzuki, Bronx, New York, ("Respondents"), together

referred to herein as the Parties.

WHEREAS, Petitioner commenced a special proceeding against Respondents on

December 19, 2017, in the Supreme Court, Westchester County, asserting claims of deceptive

and fraudulent business practices engaged in by Respondents in the sale of an anti-theft window

etch product for automobiles (the "Etch Product") to its customers in violation of Article 22-A of

the New York General Business Law ("GBL"), §§ 349 and 350, and Article 5 of the Executive

Law, § 63(12); and

WHEREAS, Respondents are found to have engaged in deceptive business practices in

violation of GBL § 349, and to have repeatedly and persistently engaged in fraud pursuant to

1

**FRANCOIS 3873**

Executive Law § 63(12), pursuant to the Supreme Court's Decision and Order dated August 9, 2018, and filed with the Court on August 10, 2018 (the "Decision and Order"); and

WHEREAS, the Decision and Order enjoins permanently Respondents, their agents, representatives, employees, successors, assigns and any corporation or other entity in which they are principal owner, officer or manager from violating Executive Law § 63(12) and GBL § 349 and engaging in fraudulent, deceptive and illegal acts and practices alleged therein; and

WHEREAS, the Decision and Order directs a hearing to determine the amount of restitution and other damages Respondents shall pay those injured consumers, who were sold the etch product; and

WHEREAS, the damages hearing was scheduled for December 17, 2019 and the Parties having appeared for such hearing mutually agree that settlement is in the best interest of the Parties, including the injured public; and

WHEREAS, desiring to resolve the damages branch of the special proceeding without further court proceedings mutually agree to enter into a settlement in lieu of a hearing; and

WHEREAS, no party to this proceeding is an infant, incompetent person for whom a committee has been appointed or conservatee, and no person not a party has an interest in the subject matter of the action; and

WHEREAS, the Parties desire to state and embody herein, the terms and provisions of the settlement ("Agreement") that they have reached with regard to the restitution and other damages Respondents are directed to pay Petitioner; and

NOW, therefore, in consideration of the representations, covenants, and agreements contained herein,

IT IS HEREBY STIPULATED, by and between the undersigned Parties, as follows:

2

1. <u>Payment by Respondents.</u> Respondents shall pay a total of $305,850.00 in damages to the State of New York, which is comprised of restitution and penalties. Respondents shall pay $200.00 to each one of the 549 customers who were charged fluctuating prices on their bill of sale for the etch product sold by Respondents, amounting to a total of $109,800.00; and $175.00 to each one of the 606 customers who appear to have been charged a minimum of $175.00 for the etch product, as stated on their etch agreement, amounting to a total of $106,050.00. The total restitution amount Respondents shall pay is $215,850.00 ("Restitution"). Payment of Restitution shall be subject to the following payment schedule:

   a. Restitution shall be paid on or before July 5, 2019, and made payable to the State of New York;

   b. Restitution shall be made in six equal installment payments of $35,975.00, on each consecutive month commencing upon the execution of this Stipulation and Order, dated February 5, 2019, and continuing for six months without interruption through July 5, 2019 (the "Installment Payments"). The Installment Payments are as follows:

      i. 1st installment payment of $35,975.00 due on or before February 5, 2019;

      ii. 2nd installment payment of $35,975.00 due on or before March 5, 2019;

      iii. 3rd installment payment of $35,975.00 due on or before April 5, 2019;

      iv. 4th installment payment of $35,975.00 due on or before May 5, 2019;

      v. 5th installment payment of $35,975.00 due on or before June 5, 2019;

      vi. 6th installment payment of $35,975.00 due on or before July 5, 2019.

3

FRANCOIS 3875

c. In the event Respondents default by failing to pay an Installment Payment in full on or before the due dates set forth in paragraph 1 (b) herein, then Petitioner shall file a Confession of Judgment and enter judgment against Philip Argyropoulos, Respondents' majority managing member, personally and individually for $647,550, which represents triple the Restitution amount. The Affidavit of Confession of Judgment of Philip Argyropoulos is annexed, as Exhibit A.

d. Respondents represent that they closed their dealerships in 2018 and that they are no longer in operation. However, they have agreed pursuant to this Agreement to pay the full amount of damages set forth herein, and that in the event of default Petitioner shall file the annexed Confession of Judgment and enter judgment against Philip Argyropoulos.

e. Installment Payments shall be made on or before their due dates as set forth at paragraph 1 (b) herein, without exception. There shall be no grace or cure period of payment or notice to cure. There shall be no notice prior to filing the Confession of Judgment.

f. Respondents shall also pay a penalty of $90,000.00 to the State of New York ("Penalty") for violation of consumer protection laws, subject to the following:

   i. The Penalty amount shall be paid on or before July 5, 2020, which is within 18 months of execution of this Agreement, which is February 5, 2019, and shall be made payable to the State of New York.

g. In the event Respondents default by failing to pay in full the Penalty amount on or before its due date as set forth in paragraph 1 (f) herein, then the OAG shall file said Confession of Judgment and enter judgment against Philip Argyropoulos,

4

Respondents' majority managing member, personally and individually for the full $90,000, which represents the Penalty amount.

2. <u>Entire Agreement</u>.  The contents of this Agreement constitute the entire agreement between the Parties relating to the subject matter hereof and it may not be altered, amended or otherwise changed in any respect, except by a writing duly executed by the parties or their authorized representatives.  The contents of this Agreement shall be binding upon and shall inure to the benefit of the Parties hereto, each of their respective executors, heirs, successors and assigns.

3. Except to the extent specifically provided in this Agreement, nothing contained herein shall be deemed or is intended to constitute a waiver, relinquishment or modification of any remaining rights or claims of, or by and between the Parties.

4. This Agreement is intended to be for the benefit of the Parties only, and, by this instrument, the Parties do not release any claims against any other person or entity.

5. <u>Severability.</u>   The provisions of this Agreement are not severable.

6. <u>Counterparts</u>.  This Agreement may be executed in counterparts.  All signatures of the Parties to this Agreement may be transmitted by facsimile, and such facsimile will, for all purposes, be deemed to be the original signature of such Party whose signature it reproduces and will be binding upon such Party.

7.  <u>Authorized to Execute</u>.  Each of the undersigned counsel represents and warrants that they are duly authorized and empowered to execute this Agreement on behalf of their respective clients, and that in entering into this Agreement, no Party has relied on any representations or warranties of any other party, other than the representations or warranties expressly set forth herein.

5

8. This Agreement shall be deemed to have been mutually prepared by the Parties hereto and, therefore, in any action or proceeding concerning the provisions herein shall not be construed against any of them by reason of authorship.

9. This Agreement shall be governed by and shall be interpreted in accordance with the laws of the State of New York. This Court shall have exclusive jurisdiction to adjudicate disputes arising under this Agreement.

10. The Parties acknowledge that this Agreement and the performance of the duties and obligations of the parties hereunder are subject to, and specifically conditioned upon, the approval hereof by the Court.

11. The Parties further stipulate and agree that upon approval hereof by the Court, all terms and conditions shall be subject to enforcement as a duly entered order of the Court.

RICHARD SIMON, ESO.
Attorney for Respondents

By: _____
Richard Simon, Esq.
1461 Franklin Avenue, Suite LL-S
Garden City, New York 11530
(631) 766-8762

LETITIA JAMES
Attorney General
State of New York
Attorney for Petitioner

By: _____
Sandra Giorno-Tocco
Assistant Attorney General
44 South Broadway, 5th Floor
White Plains, New York 10601
(914) 422-8755

SO ORDERED: April __4__, 2019

_____
HON. CHARLES D. WOOD, J.S.C.

6

**FRANCOIS 3878**

# EXHIBIT 2

# 2017 Chrysler 300

For sale at Victory Mitsubishi in BRONX, NY

Save | Print



**NO IMAGE AVAILABLE**

NO IMAGE AVAILABLE

**$19,995**

🚗 46,446 miles

**COLOR**
Exterior  Velvet Red Pearlcoat
Interior  black

**SPECS**
- GPS Navigation
- 4-Wheel Disc Brakes
- Dual-Pane Panoramic Sunroof
- Outside temperature display
- Rear anti-roll bar
- Driver vanity mirror
- Four wheel independent suspension
- Occupant sensing airbag

**Victory Mitsubishi**
4070 Boston Rd., BRONX, NY

View Inventory  |  View Map

| Make: | Chrysler | Model: | 300 |
|---|---|---|---|
| Price: | $19,995 | Year: | 2017 |
| Mileage: | 46,446 | Trim Level: | Limited |
| Drivetrain: | All Wheel Drive | Engine: | 3.6L V6 |
| Stock #: | 12123 | Color: | Velvet Red Pearlcoat |
| Interior: | black | VIN: | 2C3CCARGBHH571466 |

### Refinance Calculator

CURRENT RATES

**1.75%** Rate   **2.01%** APR

Rates are at historic lows!

Calculate how much you could save



Loan amount
$300,000

Loan term
15-Year Fixed

Credit score
Excellent

Calculate Payment

**Vehicle Options**

Crossover SUV Clearance Sale

Check out the Best New Crossover SUVs by using these top searches.

commonsearches.net

GPS Navigation, Navigation System, Driver Convenience Group, Quick Order Package 22F, Value Package, 552 Watt Amplifier, 6 Speakers, AM/FM radio: SiriusXM, Radio data system, Radio: Uconnect 4C Nav w/8.4" Display, Radio: Uconnect 4C w/8.4" Display, Air Conditioning, Automatic temperature control, Front dual zone A/C, Rear window defroster, Power driver seat, Power Front Driver/Passenger Seats, Power steering, Power windows, Remote keyless entry, Steering wheel mounted audio controls, Universal Garage Door Opener, Four wheel independent suspension, Speed-sensing steering, Traction control, 4-Wheel Disc Brakes, ABS brakes, Anti-whiplash front head restraints, Dual front impact airbags, Dual front side impact airbags, Emergency communication system, Front anti-roll bar, Knee airbag, Low tire pressure warning, Occupant sensing airbag, Overhead airbag, Rear anti-roll bar, Remote Start System, Dual-Pane Panoramic Sunroof, Brake assist, Electronic Stability Control, Exterior Parking Camera Rear, Delay-off headlights, Fully automatic headlights, Panic alarm, Security system, Speed control, Bumpers: body-color, Heated door mirrors, LED Fog Lamps, Power door mirrors, 5-Year SiriusXM Traffic Service, 5-Year SiriusXM Travel Link Service, Auto-dimming Rear-View mirror, Compass, Driver door bin, Driver vanity mirror, Front reading lights, Illuminated entry, Leather Shift Knob, Outside temperature display, Overhead console, Passenger vanity mirror, Rear reading lights, Rear seat center armrest, SiriusXM Traffic Plus, SiriusXM Travel Link, Tachometer, Telescoping steering wheel, Tilt steering wheel, Trip computer, Front Bucket Seats, Front Center Armrest, Heated front seats, Leather Trimmed Bucket Seats, Power Driver/Passenger 4-Way Lumbar Adjust, Power passenger seat, Split folding rear seat, Passenger door bin, 19" x 7.5" Polished Aluminum Wheels, Speed-Sensitive Wipers, Variably intermittent wipers.

Best New Crossover SUV

Check out the Best New Crossover SUVs by using these top searches.

commonsearches.net          Open

**Comments**

Welcome to Victory Mitsubishi! We offer a combined inventory of 700 cars new and luxury used vehicles. All Used vehicles come with a quality assurance inspection, our New Vehicles have an unprecedented 10-year 100k mile warranty we also have vehicles car for any want or purpose. Come into test drive this car for any want or purpose. Come in to test drive this Chrysler 300 Limited today! Priced below KBB Fair Purchase Price! *.
Clean CARFAX.

2017 Chrysler 300 Limited Velvet Red Pearlcoat 4D Sedan Reviews:
* Provides an exceptionally supple and quiet ride over rough pavement; comfortable cabin has an upscale look and feel; available V8 engine is well suited to the car's personality; touchscreen technology interface is easy to use. Source: Edmunds

Save yourself Time and Money - Fill out a credit application online at victorymitsubishi.com and get pre-APPROVED! Financing available for all types of credit with low monthly payment that will fit you budget. Down Payment low as $599. Same day delivery. View our entire inventory by visiting our virtual showroom at victorymitsubishi.com - Only 2 blocks away from Exit 13 off I-95 or Minutes from exit 7 on the Hutchinson Parkway. While we make every effort to ensure the data listed here is correct, there may be instances where the pricing, options or vehicle features may be listed incorrectly. Dealer cannot be held liable for data that is listed incorrectly. Visit Victory Mitsubishi online at victorymitsubishi.com to see more pictures of this vehicle or call us at 718-515-4600 today to schedule your test drive. please refer to dealer's website for exact pricing and for any incentives that we may apply! Our address is 4070 Boston Road, Bronx, NY 10475.

**About Dealership**

In search of a Bronx dealership you can trust for both great prices and high-quality customer service? Victory Mitsubishi treats the need of each individual customer with paramount concern. We know that you have high expectations, and it's our goal to meet and exceed your expectations every single time. So if you're looking for a reliable Mitsubishi dealer in NY, Victory Mitsubishi is here for you. Allow us to demonstrate our commitment to excellence! Our experienced sales staff is eager to share their knowledge and enthusiasm, and our finance, service, and parts departments are here for you every step of the way even after you drive off the lot. We look forward to being your go-to Bronx car dealership.

**About Vehicle**

The Chrysler 300 is a Full Size Sedan which first hit the US market in April 2004 as an early 2005 model year car. The new 300 was built as a High End Luxury Sedan on the Chrysler LX Platform. The Chrysler 300 shares the rear suspension design, front seat frames, wiring harnesses, steering column and a derivative of the 4Matic All Wheel Drive AWD system from the Mercedes-Benz.

Listed 111 days  |  32 Views  |  0 Inquiries

Listing Info Provided by Victory Mitsubishi

For more information on this 2017 Chrysler 300, please call Victory Mitsubishi at (718) 650-2134 or with the contact form on this page. This vehicle's vin number is 2C3CCARGBHH571466 and is recorded as being in stock at Capital Motor Group Inc at 2087 Lakeland Ave in Ronkonkoma. See all cars from this dealership.

Disclaimer: All prices on used cars exclude the cost of vehicle registration, title, fees and taxes. Neither Victory Mitsubishi nor Long Island Used Cars is responsible for typographical errors or misprints. All information should be double checked with dealer including pricing and availability. Additionally, some states require dealers to notify consumers that all vehicles may be subject to open recall(s). Vehicles can be checked for open recalls by visiting www.SaferCar.gov or www.nhtsa.gov/recalls. Vehicles are subject to prior sale and may no longer be available. Please check with the seller for more information. You can check for recall status with this RECALL STATUS LINK.

# EXHIBIT 3



Customer Number
**LIA3987**

## TIRE & WHEEL ROAD HAZARD PROTECTION
### with Cosmetic Wheel Repair & Curb Impact Repair/Replacement and Key/Remote Replacement

| Customer Name | Date Effective | Retail Cost |
|---|---|---|
| Daun utnicki | 11-2-20 | 1500 |

Address

City/State/Zip
Brooklyn NY 1314

Dealer Information
V. Hov n Tsc Pr 74 C1690 Bos4on Rd Bk.N

Producer Code #

Tire Description, Size & Make

Year, Make, Model, Vehicle Identification Number
2017 Chrysler 300 C    2C3CCARG8HH571466

Leinholder Information
Chese

Number of working keys and remotes given at time of Vehicle delivery [MUST be a minimum of two (2) sets of working keys and remotes]: _____

TERM: ___ mths    *Please Note*: Maximum available term is 84 months

### TIRE & WHEEL (RIM) ROAD HAZARD PROTECTION

This contract provides for the repair or replacement of the Vehicle's tires and wheels which, during the term of this Agreement, become **Unserviceable** due to a **Road Hazard** covered under this contract. **Unserviceable** means that the tire has been punctured or otherwise damaged to the extent that it is unsafe, or that a wheel will no longer hold a seal with its tire. A **Road Hazard** is a condition on a public roadway which should not exist there, such as potholes, nails, glass or other road debris.

- *FLAT TIRES:* You will be reimbursed for the reasonable costs You incur to repair a flat tire caused by **a Road Hazard** while operating the Vehicle on public streets and in a legal manner.
- *TIRE REPLACEMENT:* You will be reimbursed for the reasonable costs You incur to replace a tire, only if a tire covered by this Agreement becomes unrepairable due to damage caused by a **Road Hazard**. This coverage is valid through the tread life of a tire (3/32" or less is excluded) and replacement will be made with a tire of **like kind and quality** to the original tire.
- *WHEELS (RIMS):* You will be reimbursed for the repair or replacement of wheels rendered **Unserviceable** due to a **Road Hazard** covered under this Agreement. We reserve the right to have damaged wheels repaired at **Our** cost by a service provider of **Our** choosing. We further reserve the right to replace the damaged wheel at **Our** cost with a remanufactured wheel of **like kind and quality** to the wheel that was damaged by the covered **Road Hazard**. We will cover wheel replacement only in the event that the damaged wheel cannot be repaired.
- *MOUNTING AND BALANCING:* You will be reimbursed for the reasonable costs that **You** incur for mounting, balancing, valve stems, and tire disposal for any tire replaced under this Agreement. However, charges for pressure sensing devices and unspecified charges for shop supplies are excluded.
- *TAXES:* You will be reimbursed for the cost of local and state taxes, as directed by state agencies for any tire or wheel replaced under this Agreement.

### AGREEMENT HOLDER RESPONSIBILITIES

**You must maintain proper air pressure in all covered tires.** Tires should be checked monthly for proper pressure, signs of dry rot, improper wear, and tread depth less than 3/32". Any conditions that cannot be corrected demand replacement for the safety of the Vehicle's occupants.

I/We have read this Agreement in its entirety and fully understand its content and acknowledge receipt of a copy thereof. I/We further understand that this Agreement is not required in order to purchase or obtain financing for the vehicle and that Our acceptance of the coverage under this Agreement is voluntary. **Additionally, I certify that I have received at least two (2) sets of working keys and remotes at the time of original Vehicle delivery. THIS AGREEMENT MAY ONLY BE PURCHASED AT THE TIME OF VEHICLE PURCHASE.**

Signature (s): Daun utnicki    Date 11-2-20

Customer Initials: DU

**FRANCOIS 3882**

# EXHIBIT 4

LAW 553-NY-B-A-e 10/18

**RETAIL INSTALMENT CONTRACT**
**SIMPLE FINANCE CHARGE (WITH ARBITRATION PROVISION)**

COPY

Dealer Number 98865     Contract Number 203071516560

| Buyer Name and Address (Including County and Zip Code) | Co-Buyer Name and Address (Including County and Zip Code) | Seller-Creditor (Name and Address) |
|---|---|---|
| DAWN UTNICKI 79TH ST BROOKLYN, KINGS, NY 11214 | N/A | VICTORY MITSUBISHI 4070 BOSTON RD BRONX, NY 10475 |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements in this contract. You agree to pay the Seller - Creditor (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New/Used/Demo | Year | Make and Model | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|
| USED | 2017 | CHRYSLER 300 | 2C3CCARG8HH571466 | Personal, family, or household unless otherwise indicated below ☐ business ☐ agricultural     N/A |

## FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your down payment of $ 500.00 is |
|---|---|---|---|---|
| 7.29 % | $ 5,877.21 | $ 24,353.43 | $ 30,230.64 | $ 30,730.64 |

(e) means an estimate

**Agreement to Arbitrate:** By signing below, you agree that, pursuant to the Arbitration Provision on page 5 of this contract, you or we may elect to resolve any dispute by neutral, binding arbitration and not by a court action. See the Arbitration Provision for additional information concerning the agreement to arbitrate.

Buyer Signs X _____

Co-Buyer Signs X _N/A_____

### Your Payment Schedule Will Be:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 72 | 419.87 | Monthly beginning 12/17/2020 |
| One Final Payment Of | $ N/A | On N/A |
| Or As Follows: N/A | | |

**GAP Waiver Notice**
☒ If this box is checked, and if the vehicle is a total loss because it is confiscated, damaged, or stolen, you will not be liable for the gap amount. The gap amount is the excess, if any, of (1) the amount you would owe under this contract as of the date of loss if the vehicle were not a total loss and you were to prepay the contract in full (less any refunds we get for cancelling optional insurance, maintenance, service or other contracts), over (2) the sum of (a) any past due payments and other amounts due because you broke promises in this contract and (b) the actual cash value of the vehicle immediately before the loss.

**Late Charge.** If payment is not received in full within __10__ days after it is due, you will pay a late charge of $ __1.00__ or __5__ % of the part of the payment that is late, whichever is __greater__ .

**Prepayment.** If you pay early, you will not have to pay a penalty.

**Security Interest.** You are giving a security interest in the vehicle being purchased.

**Additional Information:** See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date and security interest.

### WARRANTIES

The following paragraph does not affect any warranties covering the vehicle that the manufacturer may provide or limit any rights you may have under the Lemon Laws or, for used vehicles, under the certificate of servicibility that was included in your purchase contract. The following paragraph also does not apply if the vehicle is a used vehicle you bought in New York City.

Unless the Seller makes a written warranty or enters into a service contract within 90 days of the date of this contract, the Seller makes no warranties on the vehicle. Making no warranties means that you get no express warranties, and no implied warranties of merchantability or fitness for a particular purpose.

The following notice only applies to used vehicles bought in New York City:

**IMPORTANT NOTICE TO BUYER**

(A) STATE LAW REQUIRES THAT SELLERS OF SECOND-HAND CARS CERTIFY IN WRITING TO THE BUYER THAT EACH CAR IS IN SAFE CONDITION AT THE TIME OF SALE.

(B) THIS CERTIFICATION IS A GUARANTEE THAT THE CAR IS IN SAFE CONDITION AT THE TIME OF SALE.

(C) YOU HAVE A RIGHT TO REQUEST THE DEALER TO REPAIR OR TO PAY IN FULL FOR REPAIRS OF ANY UNSAFE CONDITION IN THE CAR WHICH DOES NOT COMPLY WITH THIS CERTIFICATION.

(D) THIS BUSINESS IS LICENSED BY THE DEPARTMENT OF CONSUMER AFFAIRS, 42 BROADWAY, NEW YORK, NEW YORK 10004. COMPLAINT PHONE: (212) 639-9675.

**FRANCOIS 3884**

**ITEMIZATION OF AMOUNT FINANCED**

1 Cash Price (including $ _1,996.43_ sales tax) $ _22,991.43_ (1)

2 Total Downpayment =

Your trade-in is a _N/A_ _____ _N/A_ _____
        Year   Make   Model   Vehicle Identification No.

    Gross Trade-In Allowance $ _N/A_

    Less Prior Credit or Lease Balance (e) $ _N/A_

    Equals Net Trade In $ _N/A_

    + Cash $ _500.00_

    + Other _N/A_ $ _N/A_

    + Other _N/A_ $ _N/A_

    (If total downpayment is negative, enter "0" and see 4I below) $ _500.00_ (2)

3 Unpaid Balance of Cash Price (1 minus 2) $ _22,491.43_ (3)

4 Other Charges Including Amounts Paid to Others on Your Behalf
  (Seller may keep part of these amounts):

  A Cost of Optional Credit Insurance
    Paid to Insurance Company or Companies
    Life $ N/A
    Disability $ N/A $ _N/A_

  B Vendor's Single Interest Insurance Paid to Insurance Company $ _N/A_

  C Other Optional Insurance Paid to Insurance Company or Companies $ _N/A_

  D Fees Paid to Government Agencies
    to N/A for N/A $ _N/A_
    to N/A for N/A $ _N/A_
    to N/A for N/A $ _N/A_

  E Government Taxes Not Included in Cash Price $ _N/A_

  F Government License and/or Registration Fees
    STATE $ _250.00_

  G Government Certificate of Title Fees $ _N/A_

  H Government Waste Tire Management Fee $ _N/A_

  I Other Charges (Seller must identify who is paid and describe purpose)
    to N/A for Prior Credit or Lease Balance (e) $ _N/A_
    to STATE for VEHICLE INSPECTION FEE $ _37.00_
    to DEALER for DOCUMENTATION FEE $ _75.00_
    to NSD TIRE AND WHEEL for ROAD HAZARD $ _1,500.00_
    to N/A for N/A $ _N/A_
    to N/A for N/A $ _N/A_
    to N/A for N/A $ _N/A_
    to N/A for N/A $ _N/A_

  Total Other Charges and Amounts Paid to Others on Your Behalf $ _1,862.00_ (4)

5 Amount Financed (3 + 4) $ _24,353.43_ (5)

**OPTION:** ☐ You pay no finance charge if the Amount Financed, item 5, is paid in full on or before
_____N/A_____ , Year _N/A_ . SELLER'S INITIALS _N/A_

☐ **VENDOR'S SINGLE INTEREST INSURANCE (VSI insurance):** If the preceding box is checked, the Creditor requires VSI insurance for the initial term of the contract to protect the Creditor for loss or damage to the vehicle (collision, fire, theft). VSI insurance is for the Creditor's sole protection. This insurance does not protect your interest in the vehicle. **You may choose the insurance company through which the VSI insurance is obtained.** If you elect to purchase VSI insurance through the Creditor, the cost of this insurance is $ _N/A_ and is also shown in Item 4B of the Itemization of Amount Financed. The coverage is for the initial term of the contract.

**Returned Check Charge:** You agree to pay a charge of $ _20_ if any check you give us is dishonored.

---

If you desire any property or liability damages insurance this contract requires from anyone you choose who is acceptable to us. You are not required to buy any other insurance to obtain credit unless the box indicating Vendor's Single Interest Insurance is required is checked below.

If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

**Check the insurance you want and sign below:**

**Optional Credit Insurance**

☐ Credit Life: ☐ Buyer ☐ Co-Buyer ☐ Both

☐ Credit Disability: ☐ Buyer ☐ Co-Buyer ☐ Both

Premium:

Credit Life $ _N/A_

Credit Disability $ _N/A_

Insurance Company Name

Home Office Address

_N/A_

Credit life insurance and credit disability insurance are not required to obtain credit. Your decision to buy or not buy credit life insurance and credit disability insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra cost. If you choose this insurance, the cost is shown in Item 4A of the Itemization of Amount Financed. Credit life insurance is based on your original payment schedule. This insurance may not pay all you owe on this contract if you make late payments. Credit disability insurance does not cover any increase in your payment or in the number of payments. Coverage for credit life insurance and credit disability insurance ends on the original due date for the last payment unless a different term for the insurance is shown below.

**Other Optional Insurance**

☐ _N/A_ _____ _N/A_
    Type of Insurance    Term

Premium $ _N/A_

Insurance Company Name

_N/A_

Home Office Address

_N/A_

☐ _N/A_ _____ _N/A_
    Type of Insurance    Term

Premium $ _N/A_

Insurance Company Name

_N/A_

Home Office Address

_N/A_

Other optional insurance is not required to obtain credit. Your decision to buy or not buy other optional insurance will not be a factor in the credit approval process. It will not be provided unless you sign and agree to pay the extra cost.

I want the insurance checked above.

X _____ _N/A_
Buyer Signature    Date

X _____ _N/A_
Co-Buyer Signature    Date

**THIS INSURANCE DOES NOT INCLUDE INSURANCE ON YOUR LIABILITY FOR BODILY INJURY OR PROPERTY DAMAGE CAUSED TO OTHERS.**

---

**FRANCOIS 3885**

**State law does not provide for a "cooling off" or cancellation period for this sale. After you sign this contract, you may only cancel it if the seller agrees or for legal cause. You cannot cancel this contract simply because you change your mind. This notice does not apply to home solicitation sales. It also does not apply if you buy a used vehicle from a Seller-Creditor located in New York City and you did not decline your option to cancel. The laws of New York City provide a two-day cancellation option if you buy a used vehicle. This cancellation option is subject to certain conditions. See the NYC Used Car Contract Cancellation Option agreement for details.**

☐ If checked, your last installment payment under this contract is a balloon payment ("Balloon Payment"). You have the option to do one or more of the following, as checked, at the time the Balloon Payment is due:

a) ☐ You may pay your Balloon Payment when due.

b) ☐ You may refinance the Balloon Payment. See paragraph 1.e. below for details.

c) ☐ You may sell the vehicle back to us. See paragraph 1.e. below for details. If you exercise this option, $ __N/A__ per mile for each mile in excess of __N/A__ miles shown on the odometer will be deducted from the sale price. The sale price will also be adjusted for excess wear and use as provided in paragraph 1.e.

**Trade-In Payoff Agreement:** Seller relied on information from you and/or the lienholder or lessor of your trade-in vehicle to arrive at the payoff amount shown in item 2 of the Itemization of Amount Financed as the "Prior Credit or Lease Balance." You understand that the amount quoted is an estimate.
If the actual payoff amount is more than the amount shown in 2 you must pay the Seller the excess on demand. If the actual payoff amount is less than the amount shown in 2 Seller will refund to you any overage Seller receives from your prior lienholder or lessor.

**Buyer Signature X** __N/A__     **Co-Buyer Signature X** __N/A__

## OTHER IMPORTANT AGREEMENTS

### 1. FINANCE CHARGE AND PAYMENTS

**a. How we will figure Finance Charge.** We will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed.

**b. How we will apply payments.** We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of the Amount Financed and to other amounts you owe under this contract in any order we choose.

**c. How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on page 1 of this contract on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.

**d. You may prepay.** You may prepay all or part of the unpaid part of the Amount Financed at any time without penalty. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment.

**e. Balloon Payment Options.** Your Balloon Payment is due and payable as disclosed above. Because the contract is a simple finance charge contract, your Balloon Payment may differ from the amount shown depending on your payment habits. If checked above, you have the following options.

*Pay in Full.* You may pay the Balloon Payment in full when due.

*Refinance.* You may refinance the Balloon Payment unless you are in default under the contract. If we have advanced funds to cure any default, you must pay us back before the refinancing. You also must provide proof of insurance acceptable to us before the refinancing. The annual percentage rate for the refinancing will be the lower of the rate agreed to by you and us at the time of refinancing or the maximum rate permitted by law. The term of the refinancing will be based on the amount refinanced, the rate, and the amount of the monthly payment. The refinanced monthly payment will be the same as in this contract if the refinanced amount will be

fully paid within 36 months of the due date of the Balloon Payment. Otherwise, the monthly payment amount will be the amount needed to fully pay the refinanced amount within 36 months of the due date of the Balloon Payment. If you wish to refinance, you must notify us in writing. The notice must be received no later than 30 days prior to the due date of the Balloon Payment. If you choose to refinance the Balloon Payment at the time the Balloon Payment is due, we will provide you with the disclosures required under the federal Truth in Lending Act in the agreement to refinance we make with you. Both you and we must sign the agreement to refinance.

*Sell Back.* You may sell the vehicle to us for an amount equal to the Balloon Payment. You must pay us any other amount owed under the contract. The amount you owe will be based, in part, on the vehicle's mileage. You also must pay us the estimated costs of all repairs to the vehicle that are the result of excess mileage and excess wear and use, as described on this page. You must take the vehicle for inspection, to a place we select, no later than 15 days prior to the Balloon Payment due date. After the inspection, if you decide to sell the vehicle to us, you must deliver the vehicle to us no later than the Balloon Payment due date. At that time, you must also give us a title, which shows no liens other than our lien, transferring ownership to us or a person we select. After the inspection, if you decide not to sell the vehicle to us, you must immediately contact us and tell us whether you want to pay or refinance the last installment payment.

You must pay us the excess mileage fee shown above. You are also responsible for repairs of all damage to the vehicle that is the result of excess wear and use. These repairs include, but are not limited to:

- Replace any tire not part of a matching set of four or any tire which has less than 1/8 inch of remaining tread.
- Repair all mechanical defects.
- Repair or replace all dented, scratched, chipped, rusted or mismatched body panels, paint or vehicle identification items; all dented, scratched, rusted, pitted, broken or missing trim and grill work; all scratched, cracked, pitted or broken glass; all faulty window mechanisms; all stains, burns or worn areas; and all damage which would be covered by collision or comprehensive insurance whether or not such insurance is actually in force.

**FRANCOIS 3886**

The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.

**HOW THIS CONTRACT CAN BE CHANGED.** This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding.    Buyer Signs **X** _Par why th_    Co-Buyer Signs **X** _N/A_

If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.

**See the rest of this contract for other important agreements.**

**NOTICE TO BUYER: 1. Do not sign this agreement before you read it or if it contains any blank space. 2. You are entitled to a completely filled in copy of the agreement. 3. Under the law, you have a right to pay off in advance the full amount due. If you do so, you may, depending on the nature of the credit service charge, either (a) prepay without penalty, or (b) under certain circumstances obtain a rebate of the credit service charge. 4. According to law, you have the privilege of purchasing the insurance on the motor vehicle provided for in this contract from an agent or broker of your own selection.**

You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You acknowledge that you have read all pages of this contract, including the arbitration provision on page 5, before signing below. You confirm that you received a completely filled-in copy when you signed it.

### RETAIL INSTALMENT CONTRACT

Buyer Signs **X** _Par why th_ _____ Date 11/04/2020    Co-Buyer Signs **X** N/A _____ Date N/A

Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.



Other owner signs here **X** N/A    Address    N/A

Seller signs VICTORY MITSUBISHI    Date 11/04/2020    By **X** _____    Title F&I

**ILAW** FORM NO. 553-NY-B-A-e (REV. 10/18)
©2018 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR
FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.
**FRANCOIS 3887**    LAW 553-NY-B-A-e 10/18 v1    Page 6 of 6

# EXHIBIT 5

FRANCOIS 3888

**Victory Mitsubishi**
4070 Boston Road
Bronx, New York 10475
Tel.: 718.515.4600
Fax: 718.515.6905

MITSUBISHI
MOTORS
Drive your Ambition

NYS Dealer Facility No.: 7123426
NYC Dealer Consumer Affairs No.: 2063808

| DATE | INVOICE NO. | STOCK NO. | KEY |
|---|---|---|---|
| 11/02/20 | | 12123 | 1 |

| | Salesman Number | | . |

| DESCRIPTION | COST | ACCT NO. | SALE | KEY |
|---|---|---|---|---|
| PRICE | | | 20,995.00 | . |

SOLD TO   DAWN UTNICKI
ADDRESS   ___ 79TH ST
BROOKLYN, NY 11214

| N/A | | | N/A | . |
| N/A | | | N/A | . |
| N/A | | | N/A | . |
| NSD TIRE AND WHEEL | | | 1,500.00 | . |
| N/A | | | N/A | . |

SALESMAN MARK VANABLE          CUST.#
N/A                                    JOSEPH GERBINO JR

| YEAR | MAKE | MODEL | NEW OR USED | KEY NUMBERS |
|---|---|---|---|---|
| 2017 | CHRYSLER | 300 | USED | N/A |

| COLOR | MILEAGE | VEHICLE IDENT. OR SERIAL NO. |
|---|---|---|
| RED | 46,446 | 2C3CCARG8HH571466 |

FACTORY OPTIONS

PRIOR USE CERTIFICATION (required by vehicle and traffic law 417-a if
the principal prior use of the vehicle was as a police vehicle, taxicab, rental
vehicle or driver education vehicle). The principal prior use of this vehicle
may have been as: a police vehicle _____, a taxicab _____, a
rental vehicle _____, or a driver education vehicle _____.

| USED RETAIL | | | | . |
| USED WHOLESALE | | | | . |
| RECONDITIONING | | | | . |
| CAR DEAL NO. | | | | |
| SALES TAX | 8.875 % | | 1,996.43 | |
| LICENSE & TITLE | | | 250.00 | |
| N.Y. STATE INSPECTION FEE | | | 37.00 | . |
| ***TIRE DISPOSAL FEE | | | N/A | . |
| *DEALER OPTIONAL FEE FOR PROCESSING APPLICATION FOR REGISTRATION AND/OR A CERTIFICATE OF TITLE, AND FOR SECURING SPECIAL OR DISTINCTIVE PLATES IIF APPLICABLE.) THIS IS NOT A DMV FEE *$95.00* | | | 75.00 | |

DEALER OPTIONS

| | | TOTAL CASH PRICE | 24,853.43 |
| FINANCING | | | 5,877.21 |
| INSURANCE | | | N/A |
| | | TOTAL TIME PRICE | 30,730.64 |

MV-50#

ANY WARRANTIES ON THE PRODUCTS SOLD HEREBY ARE THOSE MADE BY THE MANUFACTURER. THE
SELLER HEREBY EXPRESSLY DISCLAIMS ALL WARRANTIES EITHER EXPRESS OR IMPLIED INCLUDING ANY
IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, AND NEITHER
ASSUMES NOR AUTHORIZES ANY OTHER PERSON TO ASSUME FOR IT ANY LIABILITY IN CONNECTION
WITH THE SALE OF SAID PRODUCTS.

| | DEPOSIT | | 500.00 | + |
| | CASH ON DELIVERY | | 500.00 | |
| | N/A | | N/A | |
| | USED CAR ALLOWANCE PAYMENTS | | N/A | |
| | MONTHS   DOLLARS | | | |
| | 72 @ 419.87 | | 30,230.64 | |

**A. USED VEHICLE CERTIFICATE OF ADEQUACY**
"IF THIS MOTOR VEHICLE IS CLASSIFIED AS A USED MOTOR VEHICLE, DEALER NAMED ABOVE CERTIFIES
THAT THE ENTIRE VEHICLE IS IN CONDITION AND REPAIR TO RENDER, UNDER NORMAL USE, SATISFAC-
TORY AND ADEQUATE SERVICE UPON THE PUBLIC HIGHWAY AT THE TIME OF DELIVERY."

| | TOTAL | 24,353.43 |
| PAY OFF BAL. OWING TO FINANCE CO | | N/A | - |
| INCENTIVE | | N/A | + |
| CONTRACTS IN TRANSIT | | N/A | + |
| JPMORGAN CHASE BANK, N.A | | | + |

**IMPORTANT NOTICE TO USED CAR BUYER**
(A) STATE LAW REQUIRES THAT SELLER OR SECOND HAND CARS CERTIFY IN WRITING TO THE BUYER
THAT EACH CAR IS IN SAFE CONDITION AT THE TIME OF SALE. (B) THIS CERTIFICATION IS A GUARANTEE
THAT THE CAR IS IN SAFE CONDITION AT THE TIME OF SALE. (C) YOU HAVE A RIGHT TO REQUEST THE
DEALER TO REPAIR OR TO PAY IN FULL FOR REPAIRS OF ANY UNSAFE CONDITION IN THE CAR WHICH
DOES NOT COMPLY WITH THIS CERTIFICATION. (D) THIS BUSINESS IS LICENSED BY THE DEPARTMENT OF
CONSUMER AFFAIRS, 42 BROADWAY, NEW YORK, NEW YORK 10004, COMPLAINT PHONE: DIAL 311

USED CAR TRADED

| YEAR | MAKE | MODEL | VEHICLE IDENT. OR SERIAL NO. |
|---|---|---|---|
| N/A | N/A | N/A | N/A |

BODY
COLOR  N/A

| VALUE OF TRADE | STOCK NO. |
|---|---|
| | N/A |

* THE OPTIONAL DEALER REGISTRATION OR TITLE APPLICATION PROCESSING FEE ($75.00 MAXIMUM) AND SPECIAL PLATE PROCESSING FEE ($5.00 MAXIMUM) ARE NOT NEW YORK STATE OR DEPARTMENT OF MO-
TOR VEHICLES FEES. UNLESS A LIEN IS BEING RECORDED ON THE DEALER ISSUED NUMBER PLATES YOU MAY SUBMIT YOUR OWN APPLICATION FOR REGISTRATION AND/OR CERTIFICATE OF TITLE OR FOR A SPECIAL
OR DISTINCTIVE PLATE TO ANY MOTOR VEHICLE ISSUING OFFICE. **THE $349 DEALER FEE REPRESENTS COST IN PREPARING YOUR VEHICLE AND ALL NECESSARY PAPERWORK AND ADDITIONAL DEALER PROFIT.
THIS FEE IS NOT MANDATED OR IMPOSED BY THE STATE OF NEW YORK. *** NEW YOUR STATE LAW REQUIRES US TO ACCEPT AND MANAGE WAST TIRES FORM VEHICLES IN EXCHANGE FOR AN EQUAL NUMBER OF
NEW TIMES THAT WE SELL OR INSTALL. WE ARE REQUIRED TO CHARGE A SEPARATE AND DISTINCT WASTE TIRE MANAGEMENT AND RECYCLING FEE OF $2.50 FOR EACH NEW TIRE WE SELL. ANY ADDITIONAL TIRE
MANAGEMENT RECYCLING COSTS ARE INCLUDED IN THE ADVERTISED PRICE OF THE NEW TIRE.

# EXHIBIT 6

FRANCOIS 3890

Dealer Name: SPARTAN AUTO GROUP LLC

Dealer Phone #: (718) 515-4600
Dealer Fax #: (718) 515-4600

**PLEASE PRINT - INCOMPLETE APPLICATIONS WILL NOT BE PROCESSED.**

INSTRUCTIONS:
You may apply for credit in your name alone, whether or not you are married.
(1) Please indicate whether you are applying for ☒ Individual Credit ☐ Joint Credit ☐ Community Property State ☐ Business Application
(2) ☒ If you are applying for individual credit in your name and relying on your own income or assets and not the income or assets of another person as the basis of repayment of the credit requested, complete only Section A.
(3) ☐ If you are applying for joint credit with another person, complete sections A and B. We intend to apply for joint credit.

_____ Applicant                    N/A _____ Co-Applicant

* If you are married and live in a community property state, please complete Section A about yourself and Section B about your spouse. You must sign this application. Your spouse must sign this application only if s/he wishes to be a Co-Applicant.

## A. APPLICANT INFORMATION

| Last Name UTNICKI | First Name DAWN | | Middle Initial | Social Security Number | Birth Date |
|---|---|---|---|---|---|

| Address 79TH STREET | | Apt # / Suite # | P.O. Box | Rural Route | City Brooklyn | State NY | Zip 11214 |
|---|---|---|---|---|---|---|---|

| Home Phone | Cell Phone | Residential Status ☐ Homeowner ☐ Rent ☒ Family ☐ Other | Time at Address 17 Yrs. 0 Mos. | Rent/Mtg. Pmt. $ 0.00 |
|---|---|---|---|---|

| E-Mail Address | Driver's License No. | Driver's License State | Time at Previous Address Yrs. Mos. |
|---|---|---|---|

| Previous Full Address (if less than 2 years) | Apt # / Suite # | P.O. Box | Rural Route | City | State | Zip |
|---|---|---|---|---|---|---|

| Employer Name TOUS LES JOURS | Employment Type ☒ Employed ☐ Unemployed ☐ Self-employed ☐ Military ☐ Retired ☐ Student ☐ Other |
|---|---|

| Salary 65,000.00 | Salary Type ☐ Weekly ☐ Bi-Weekly ☐ Monthly ☒ Annually | Occupation MANAGER | Length of Employment 4 Yrs. 5 Mos. | Work Phone Number * (718) 872-5456 |
|---|---|---|---|---|

| Previous Employer Name | Previous Employment Type ☐ Employed ☐ Unemployed ☐ Self-employed ☐ Military ☐ Retired ☐ Student ☐ Other |
|---|---|

| Previous Occupation | Length of Employment Yrs. Mos. | Previous Work Phone Number |
|---|---|---|

Alimony, child support, or separate maintenance income need not be revealed if you do not choose to have it considered as a basis for repaying this obligation.

| Other Income (Monthly) | Source of Other Income | By Signing, you certify that the income entered on this Credit Application is accurate. X _____ |
|---|---|---|

Comments

## AGREEMENT

The words "we," "us," "our" and "ours" as used below refer to us, the dealer, and to the financial institution(s) selected to receive your application. You understand and agree that you are applying for credit by providing the information to complete and submit this credit application. We may keep this application and any other application submitted to us and information about you whether or not the application is approved. You certify that the information on the application and in any other application submitted to us. is true and complete. You understand that false statements may subject you to criminal penalties. The words "you," "your" and "yours" mean each person submitting this application. You authorize us to submit this application and any other application submitted in connection with the proposed transaction to the financial institutions disclosed to you by us the dealers; in addition, in accordance with the Fair Credit Reporting Act, you authorize that such financial institutions may submit your applications to other financial institutions for the purpose of fulfilling your request to apply for credit. This application will be reviewed by the dealer and such financial institutions.

You agree that we may obtain a consumer credit report periodically from one or more consumer reporting agencies (credit bureaus) in connection with the proposed transaction and any update, renewal, refinancing, modification or extension of that transaction. You also agree that we or any affiliate of ours may obtain one or more consumer credit reports on you at any time during the term of your financing.. If you ask, you will be told whether a credit report was requested, and if so, the name and address of any credit bureau from which we or our affiliate obtained your credit report. You agree that the dealer and the financial institutions may verify your employment, pay, assets and debts, and that anyone receiving a copy of this is authorized to provide such dealer and financial institutions with such information. You further authorize the dealer and the financial institutions to gather whatever credit and employment history each considers necessary and appropriate in evaluating this application and any other applications submitted in connection with the proposed transaction. You understand that we will rely on the information in this credit application in making our decision. The dealer and the financial institutions may monitor and record telephone calls regarding your account for quality assurance, compliance, training, or similar purposes.

You consent to receive autodialed, prerecorded and artificial voice calls and text messages for servicing and collection purposes from us at the telephone number(s) provided in this credit application, including any cell phone numbers. The consent applies to the dealer, who is the originating creditor in this transaction, as well as any assignee who may purchase your credit contract. You agree that this consent applies regardless of whether you agree to receive telemarketing/sales calls and text messages as provided below.

You consent to receive autodialed, pre-recorded and artificial voice telemarketing and sales calls and text messages from or on behalf of dealer (or any financing source to which dealer assigns my contract) at the following number(s) including any cell phone numbers. You understand that this consent is not a condition of purchase or credit.

You opt in [     ]                    You do not opt in [X]

Signature of Applicant for election above: _____

Copy

Your dealer will inform you of the name and address of the financing sources to which this application shall be sent.

**BY SIGNING BELOW, YOU CERTIFY THAT YOU HAVE READ AND AGREE TO THE TERMS AND DISCLOSURES ON ALL PAGES OF THIS APPLICATION.**

X _____ APPLICANT'S SIGNATURE          11 04 2020

**FRANCOIS 3891**

# EXHIBIT 7

FRANCOIS 3892

Credit View Mode ...... View Mode selected

**ALLY LOS V5.0**

864 - NE LOS RBC SPB

708 Northeast Funding Center

Dealer: 0060025959

Victory Mitsubishi

Dealer Rating - (N ) Non-Ac...

Application: 1189527416a

Retail - DealerTrack

11/2/2020 @ 1:44 PM

Utnick, Dawn

**Status History**

Credit Status: Conditioned
eDrafts: N/A
Recommend: Pending
Queue Cleared

**Scoring Summary**

Bureau Score: 691
Credit Tier: S Tier
Grade: e
Odds: 0.0

**Alerts**

Misfire

FICM

**Collateral**

VIN: 2C3CCA0G2KH620666
Type: Used - 2019 - Vehicle
Make: CHRYSLER
Model: 300
Style: 300S RWD

**Financial Program**

Fin Prog Id: ALLYRTLSTDFP
ALLY RETAIL STANDARD FP

Process Flow History

| Summary | Credit Bureau | Decision | Memo | Audit | Verification | Collateral |

**Demographics**

**Buyer**

| | |
|---|---|
| Name | Dawn Utnicki |
| Address 1 | 79TH ST |
| Address 2 | |
| City | BROOKLYN |
| County | USA |
| State/Province | NY |
| ZIP/Postal Code | 11214 |
| Country | Kings |
| Birthdate/Age | |
| Home Phone | |
| Customer Type | |
| Residential Status | With Parents |
| Rent/Mortgage Amount | $0.00 |
| Time at Address | 17 Yr 0 Mo / — |
| Employed By | TOUS LES JOURS |
| Occupation | MANAGER |
| Time at Job | 4 Yr 5 Mo 0 Yr 0 Mo |
| Primary Monthly Income | $5,416.67 |
| Other Monthly Income | $0.00 |
| Total Monthly Income | $5,416.67 |

**Application Matches**

| Exception | No | Lexis Nexis | Not Requested |
|---|---|---|---|
| Duplicate Application | No | Fraud Shared | Not Requested |
| Ally Experience | No | CB Fraud Product | No |
| CB Fraud Message | No | CB Consumer Statement | No |
| US Address Alert | No | NatView Match | N/A |
| CB Alerts | No Match | PreApproval | No |
| OFAC | No Match | | |

**Credit Bureau Summary**

| # Trades | 7 | Age Oldest Trade | 27 Mos |
|---|---|---|---|
| # Sat Trades | 7 | Age Oldest Del | 27 Mos |
| # Auto Trades | 0 | Age Oldest Auto | 0 Mos |
| # New Trades | 0 | Age Newest Trade | 11 Mos |
| # Public Records Ever | 0 | # Bankruptcy Ever | 0 |
| High Credit | $2,600.00 | High Credit Auto | $0.00 |
| Total Revolving Balance | $4,090.00 | % Rev Balance Ratio | 37.00% |

**Requisition for Credit**

| Deal Structure | Insurance/Other | Trade |

| | Original | Condition |
|---|---|---|
| Cash Selling Price | $27,995.00 | $27,995.00 |
| Cash Down | $0.00 | $0.00 |
| Net Trade | $0.00 | $0.00 |
| Rebate | $0.00 | $0.00 |
| Sales Tax | $2,484.00 | $2,484.00 |
| Unpaid Cash Balance | $30,841.00 | $20,000.00 |
| Insurance/Other | $0.00 | $0.00 |
| Amount Financed | $30,841.00 | $20,000.00 |
| Est. Customer Rate | 9.290% | 5.490% |
| Term | 72 | 72 |
| Est. Vehicle Payment | $560.37 | $326.66 |

**Advance Summary**

| | Original | Condition |
|---|---|---|
| EDC/AWV | $25,125.00 | $25,125.00 |
| Vehicle Advance % | 122.75% | 79.60% |
| Max Vehicle Advance % | 130.00% | 135.00% |
| Max Vehicle Advance Amt | $32,662.50 | $33,918.75 |
| Vehicle Advance Variance | ($1,821.50) | ($13,918.75) |
| EDC/AWV % | 122.75% | 79.60% |
| Rebate Adjusted Advance % | 122.75% | 79.60% |
| Max EDC/AWV % | 130.00% | 135.00% |
| Max Amount Financed | $32,662.50 | $33,918.75 |
| Amount Financed Variance | ($1,821.50) | ($13,918.75) |

**Debt/Income Summary**

| Original | Condition |

| | Original | Condition |
|---|---|---|
| CB Monthly Debt | $179.00 | $179.00 |
| Disclosed Amount | $500.00 | $500.00 |
| Est. Vehicle Payment | $326.66 | $326.66 |
| Total Monthly Debt | $1,005.66 | $1,005.66 |
| Total Monthly Income | $5,416.67 | $5,416.67 |
| Debt to Income Ratio | 18.57% | 18.57% |
| Payment to Income Ratio | 6.03% | 6.03% |

PRODA/26/1617/864

FRANCOIS 3893

# EXHIBIT 8

FRANCOIS 3894

**Flagship Credit Acceptance LLC**
PO Box 1419
Chadds Ford, PA 19317

## Explanation of Calculation of Surplus or Deficiency

ROBERT J UTNICKI
79TH ST APT 1F
BROOKLYN NY 11214-1797

Date: May 26, 2021

Secured Party: Flagship Credit Acceptance LLC ("Flagship")
Re: Account No.: 28687
Retail Installment Sale or Credit Sale Contract dated: 09/09/2019 ("Agreement")
19 MITSUBIS OUTLANDER          VIN: JA4AP3AU9KU034222 ("Vehicle")

Dear ROBERT J UTNICKI:

Please be advised that we disposed of the Vehicle on 03/12/2021. The proceeds of the sale and any applicable credits have been applied as explained below. If you financed a premium for credit insurance under your Agreement, you may be entitled to a refund of any unearned portion of the premium.

| | | | |
|---|---|---|---|
| 1. | Aggregate unpaid balance of Agreement as of 05/26/2021 | $22,620.10 | |
| 2. | Rebate of unearned finance charges as of [date] if any | - $0.00 | |
| 3. | Accrued and unpaid late fees | + $74.28 | |
| 4. | Net balance due (1 minus 2 plus 3) | | = $22,694.38 |
| 5. | Gross proceeds from the sale of the Vehicle | | - $16,800.00 |
| 6. | Subtotal after deducting proceeds of sale (4 minus 5) | | = $5,894.38 |
| 7. | Costs of retaking the Vehicle | $400.00 | |
| 8. | Costs of storing, preparing, and selling the Vehicle | + $354.00 | |
| 9. | Attorneys' fees and court costs | + $0.00 | |
| 10. | Other costs [describe] Transportation fees | + $85.00 | |
| 11. | Total Costs (7 through 10) | | = $839.00 |
| 12. | Credit: Refund of unearned insurance premiums | $0.00 | |
| 13. | Credit: Refund of unearned warranty and maintenance charges | $0.00 | |
| 14. | Credit: Refund of unearned GAP waiver charges | $0.00 | |
| 15. | Credit: Miscellaneous Refund | $0.00 | |
| | | | = $0.00 |
| 16 | Total Credits (12 through 15) | | |
| 17. | Balance due/surplus after sale (6 plus or minus 11, plus or minus 16) | | = $6,733.38 |

(The checked box applies to you).
☒ Deficiency balance for which you are liable and for which demand* is hereby made $6,733.38
☐ Surplus balance remitted to you herewith $0.00**
☐ Surplus balance paid to a subordinate party $0.00.
   **Future debits, credits, charges, finance charges or interest, rebates or other expenses may affect this amount.

If you need more information about the transaction call us at 1-888-978-8580, or write us at PO Box 1419, Chadds Ford, PA 19317.

Sincerely,

**Flagship Credit Acceptance LLC**

**We may report information about your Account to credit bureaus. Late payments, missed payments, or other defaults on your Account may be reflected in your credit report.**

* NOTICE: If you are entitled to the protections of the United States Bankruptcy Code (11 U.S.C. §§ 362; 524) regarding the subject matter of this letter, the following applies to you: **THIS COMMUNICATION IS NOT AN ATTEMPT TO COLLECT, ASSESS, OR RECOVER A CLAIM IN VIOLATION OF THE BANKRUPTCY CODE AND IS FOR INFORMATIONAL PURPOSES ONLY.**

Form 2314 Generic (LS-LT-0369), Version 1.4

**FRANCOIS 3895**