UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
FARAH JEAN FRANCOIS,

                              Plaintiff,         Case No. 1:22-cv-4447

   - against -                                     (Hon. Jed S. Rakoff)

VICTORY AUTO GROUP LLC d/b/a
VICTORY MITSUBISHI, SPARTAN
AUTO GROUP LLC d/b/a VICTORY
MITSUBISHI, STAVROS ORSARIS,
YESSICA VELLEJO, DAVID PEREZ,
DIANE ARGYROPOULOS, and
PHILIP ARGYROPOULOS,

                              Defendants.
-----------------------------------------------------------------------X

# MEMORANDUM OF LAW IN REPLY TO PLAINTIFF'S OPPOSITION TO, AND IN FURTHER SUPPORT OF, DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

                                        H. Nicholas Goodman
                                          Patrick L. Selvey
                                      NICHOLAS GOODMAN & ASSOCIATES, PLLC
                                      *Attorneys for Defendants*
                                      VICTORY AUTO GROUP LLC
                                      d/b/a VICTORY MITSUBISHI,
                                      SPARTAN AUTO GROUP LLC
                                      d/b/a VICTORY MITSUBISHI,
                                      STAVROS ORSARIS, YESSICA VELLEJO,
                                      DAVID PEREZ, DIANE ARGYROPOULOS,
                                      and PHILIP ARGYROPOULOS
                                      333 Park Avenue South, Suite 3A
                                      New York, New York 10010
                                      (212) 227-9003

**TABLE OF CONTENTS**

TABLE OF CONTENTS ........................................................................................................... ii
TABLE OF AUTHORITIES ................................................................................................... iii
PRELIMINARY STATEMENT ............................................................................................... 1
   I.   PLAINTIFF HAS NOT PRODUCED ADMISSIBLE EVIDENCE THAT SHE SUFFERED ECONOMIC DAMAGES CAUSED BY DEFENDANTS' ALLEGED NEGLIGENCE ............................................................................................................. 1
   II.   ANY EMOTIONAL DISTRESS PLAINTIFF SUFFERED WAS NOT CAUSALLY RELATED TO DEFENDANTS ALLEGED FCRA VIOLATION .................................. 3
   III.   PLAINTIFF HAS RAISED NO ISSUE OF TRIABLE FACT THAT ANY DEFENDANT OBTAINED PLAINTIFF'S CREDIT REPORT WITHOUT A PERMISSIBLE PURPOSE ................................................................................................................................ 5
   IV.   SHOULD THIS CASE CONTINUE, PLAINTIFF CANNOT ESTABLISH A BASIS FOR LIABILITY AS TO DIANE ARGYROPOULOS OR VICTORY MOTORS ................ 10
      A.   Philip Argyropoulos ..................................................................................... 10
      B.   Diane Argyropoulos ..................................................................................... 10
      C.   Victory Auto Group, LLC ............................................................................ 12
CONCLUSION ........................................................................................................................ 13

**TABLE OF AUTHORITIES**

<u>Cases</u>

*Advanced Conservation Systems Inc. v. Long Island Lighting Co.*, 934 F.Supp. 53 (E.D.N.Y. 1996) ................................................................................................................................. 6

*American GreenFuels Rockwood (Tennessee) LLC  v. Aik Chuan Construction Pte. Ltd*., 2022 WL 4629255 (S.D.N.Y., Cote, J.)........................................................................................ 12

*Casella v. Equifax,* 56 F.3d 469 (2d Cir. 1995) ............................................................................. 5

*Cortlandt Street Recovery Corp. v. Bonderman*, 31 N.Y.3d 30 (2018)....................................... 12

*Domante v. Dish Networks,* 974 F.3d 1342 (11th Cir. 2020) .................................................... 6, 9

*Edge v. Professional Claims Bureau, Inc.,* 64 F.Supp. 2d 115 (E.D.N.Y. 1999, Wexler, J.)......... 6

*Heim v. Comcast Cable Communications, LLC,* 2020 WL 921128 (N.D. Ill.) .............................. 6

*Marchiso v. Carrington Mortgage Services, LLC,* 919 F.3d 1288 (11th Cir. 2019) ...................... 5

*Meyer v. Holley,* 537 U.S. 280 (2003) ......................................................................................... 11

*Munoz v. Barkley*, 2003 WL 21373349 (SDNY, Lynch J.)............................................................ 7

*Petedge, Inc. v. Garg,* 234 F.Supp.3d 477 (S.D.N.Y. 2017, Woods, J.) ...................................... 11

*Petras v. Navy Federal Credit Union,* 2022 WL 526138 (D. Nev.)............................................... 9

*Ritchie v. Northern Leasing Systems, Inc.,* 14 F.Supp. 3d 229 (S.D.N.Y. 2014, Karas, J.) ....... 3, 6

*Safeco Ins. Co. of America v. Burr*, 127 U.S. 47 (2007).............................................................. 10

*Shostack v. Diller,* 2015 WL 5535808 (S.D.N.Y. September 16, 2015, Cott, M.J.) ................ 9, 11

*Underpinning & Foundation Skanska, Inc. v. Traveler's Cas. & Sur. Co. of America*, 726 F.Supp. 339 (S.D.N.Y. 2010, Katz J.) ..................................................................................... 2

*Wenning v. On-Site Manager, Inc.,* 2016 WL 3538379 (S.D.N.Y., Engelmayer, J.)..................... 5

*Yohay v. City of Alexandria Employers Credit Union,* 827 F.2d 967 (4th Cir. 1987)................... 11

*Zeller v Samia,* 758 F. Supp. 775 (D. Mass. 1991) .......................................................................... 6

<u>Statutes</u>

15 U.S.C. § 1681b(a)(3) ............................................................................................................ 5, 6, 9

15 U.S.C. § 1681n .................................................................................................................. 6, 8, 11

15 U.S.C. § 1681o ......................................................................................................................... 11

15 U.S.C. § 1681q ........................................................................................................................... 6

15 U.S.C. § 1681s-2(b) ................................................................................................................... 9

FRCP Rule 37(c)(1) ................................................................................................................... 2, 3

FRE 801(d)(2)(D) ....................................................................................................................... 7, 8

FRE 804(b)(3); ............................................................................................................................... 8

**PRELIMINARY STATEMENT**

The profound improprieties of her Rule 56.1 Counterstatement of Facts aside, in opposition herein Plaintiff failed to raise any genuine issue of triable fact that might overcome Defendants' *prima facie* showing of entitlement to summary judgment. While her counsel went to extreme lengths to distinguish applicable caselaw – and drag Defendants through the mud – they did not adduce any admissible evidence that Plaintiff suffered any compensable economic damage, nor did they establish a legally viable causal connection between Plaintiff's "garden variety emotional distress" as they phrased it and the FCRA violation alleged. At the same time, Plaintiff did not identify any genuine issue upon which a fact finder might conclude that Defendants, jointly or individually, obtained Plaintiff's credit report without a permissible purpose within the meaning of the FCRA. Accordingly, this Court should grant Defendants summary judgment dismissing Plaintiff's Amended Complaint in its entirety.

**I.   PLAINTIFF HAS NOT PRODUCED ADMISSIBLE EVIDENCE THAT SHE SUFFERED ECONOMIC DAMAGES CAUSED BY DEFENDANTS' ALLEGED NEGLIGENCE**

Plaintiff cannot substantiate her claimed economic damages. Continuing her retreat from her pleadings, Plaintiff withdrew her claims for damages arising from the Capital One Loan, storage and moving expenses, and postage for certain correspondence. Docket Entry ("DE") 55, p. 5. But she used her opposition herein to posit previously unasserted claims by way of a sham affidavit to claim (1) lost wages and lost time,[1] (2) Uber and subway expenses, (3) outstanding obligations to various agencies, and (4) postage for mailing dispute letters and supporting documents to those agencies. But Plaintiff offers no basis for these newly minted claims, relying instead on inadmissible evidence and her sham affidavit.

In that regard, Plaintiff's opposition directly contradicts her own deposition testimony and discovery production. Specifically, at her deposition defense counsel repeatedly asked Plaintiff to detail every out-of-pocket expense she claimed to have incurred as a result of Defendants' alleged wrongdoing. In response,

---

[1] Defendant is aware of no legally cognizable relief for "lost time."

Plaintiff claimed not to recall certain expenses and admitted to not incurring others. DE 54, ¶ 63; Exhibit "D," at 140:20-145:14, 160:19-162.21. Now, after discovery has closed, she attempts to change her tune.

As to time off work, Plaintiff testified that she took off one week of work, but that she used paid sick days for that time, and testified that she could not recall whether she lost any paid workdays. Exhibit "D," at 224:25-226:7. Now, for the first time – long after the close of discovery – Plaintiff asserts not only that she took unpaid days off work, but also that she incurred costs to use Uber to get to work while her driver's license was suspended, supposedly as a result of the negligence she alleges herein. Exhibit "L," p. 7-8; DE 53:18, ¶¶ 15-16. These are precisely the sort of late asserted claims transparently designed to avoid summary judgment that courts routinely reject. *See, e.g. Underpinning & Foundation Skanska, Inc. v. Traveler's Cas. & Sur. Co. of America*, 726 F.Supp. 339, 346 (S.D.N.Y. 2010, Katz J.).

As stated, Plaintiff testified that she used sick days but did not incur any lost wages. Exhibit "D," at 224:25-226:7. Now, by her sham affidavit, she claims unpaid days off. DE 53:18, ¶¶ 15-16. But tellingly, she does not provide a specific number of days or the dollar amount supposedly attributable to same, much less any documentation to support whatever her claim may amount to. *Id.* Simply put, Plaintiff's newly concocted wage claim is hopelessly unsubstantiated and wholly insufficient to support a jury verdict.

Likewise, after failing to mention her driver's license suspension at deposition or in her discovery responses, Plaintiff broadened her claim to include Uber and subway expenses after the close of discovery by way of "supplemental" disclosures, which Defendants rejected per FRCP Rule 37(c)(1). Exhibit "L." And even so, she has failed to substantiate these claimed expenses.[2] The unauthenticated, never previously disclosed DMV Transcript on which Plaintiff relies to document the suspension of her driver's license is similarly inadmissible, and in any event establishes nothing more than the fact that Plaintiff's license was

---

[2] Uber maintains ride receipts that one can easily access online; Defendants duly demanded that Plaintiff produce those receipts, and there is no reason Plaintiff could not have produced same during discovery if they existed. *See Getting a Trip Receipt*, Uber Help, (last visited March 23, 2023) https://help.uber.com/riders/article/getting-a-trip-receipt?nodeId=846f6cad-6f27-492a-9e0b-d2f056e1298e.

2

suspended for her failure to answer a summons. DE 53-20. For all this Court knows, that summons resulted from Plaintiff's own traffic violation, and her failure to appear is yet another example of her failure to mitigate damages. Thus, this Court should preclude Plaintiff from asserting these unsubstantiated expenses. *See* FRCP Rule 37(c)(1).

At the same time, Plaintiff submits no evidence that she remains exposed to any unpaid fines and penalties incurred by Laforest. The never-exchanged EZ-Pass summary certainly does not do so. DE 53-34. Plaintiff consistently testified she has not paid and has no intention of ever paying any of those amounts. Exhibit "D," at 141:13-23. As discussed in Defendants' Memorandum of Law in Support ("Def. MOL"), Plaintiff cannot recover from Defendants for a debt that is not hers and that she does not accept.

Plaintiff has also failed to substantiate her claim for the postage expenses she allegedly incurred for disputing Laforest's fines. While she presents copies of various letters, (DE 53-19), she provides no evidence that she actually mailed them, and if she did, how much postage she paid. She might have mailed them from work, or her attorneys might have paid the postage. Regardless, absent a scrap of evidence demonstrating the extent or even existence of these alleged economic damages, Plaintiff's claim must fail.

Given Plaintiff's failure to establish any economic damages, Plaintiff's Count II for common law negligence should be dismissed in its entirety.[3]

## II. ANY EMOTIONAL DISTRESS PLAINTIFF SUFFERED WAS NOT CAUSALLY RELATED TO DEFENDANTS ALLEGED FCRA VIOLATION

Having failed to establish any economic damages, Plaintiff is left with her emotional distress and willfulness claims. But her alleged emotional distress shares no cognizable causal relationship to the May 30, 2020, credit pulls that comprise the sole basis for her FCRA claim.

---

[3] Defendants note too that the economic damages Plaintiff claims lack a legally sufficient causal connection to the FCRA violations she alleges, just as her emotional damages claim lack such a connection as discussed in Point II, *infra*. *See, Ritchie v. Northern Leasing Systems, Inc.,* 14 F.Supp. 3d 229, 241 (S.D.N.Y. 2014, Karas, J.)(holding on a 12(b)(6) motion that damages that plaintiff alleged, similar to those Plaintiff alleges herein, "arose, if at all, from conduct entirely separate from the alleged FCRA violations, all of which directly relate to Plaintiff's consumer credit report.")

Plaintiff's emotional distress claim assumes the viability of a series of purported causal links between Spartan pulling her credit reports and events thereafter, those events being the submission of a credit application in Plaintiff's name, Capital One's approval of the loan, the Vehicle being titled to Plaintiff and delivered to Laforest, followed by Laforest's traffic violations, Plaintiff confronting him and having him arrested, and ultimately Laforest threatening her resulting and Plaintiff fleeing her marital home.

But Plaintiff's proposed chain of causation breaks at the very first link. Critically, the allegedly impermissible credit pulls are the only FCRA violations pleaded. The subsequent credit application, the resulting loan, and all the events that transpired thereafter followed chronologically, but not causally. Contrary to Plaintiff's framing, Spartan pulled Plaintiff's credit report solely for the purpose of screening her credit worthiness, to determine where, if anywhere, to steer a credit application. Those credit pulls were *not* the "predicate first step" for *obtaining* financing. Despite Plaintiff's persistent phrasing, for purposes of establishing legal causation those pulls did not at all "cause" or "result in" the loan approval.

Again, Spartan did not "use" Plaintiff's credit report to obtain financing for the Vehicle. Spartan does not provide credit or financing directly to consumers; all financing arrangements are made through financial institutions that provide credit to consumers for vehicle purchases following a written application. DE 53-2, 40:20-43:7. Plaintiff's credit report was not included in the credit application submitted to Capital One, and that application did not contain any information obtained from the credit report. *See,* DE 53-2, at 206:20-208:18; DE 53-1, at 211:25-212:4; DE 53:4, at 208:10-18; DE 53.5, pp. 19-21. Both Capital One and JPMCB executed and relied on their own credit pulls, (DE 54, ¶ 317; DE 53-36, FRANCOIS 174; DE 53-37, FRANCOIS 82), as they conducted their independent analysis of her credit application.

Moreover, Stavros Orsaris testified that pre-screening credit reports do not necessarily change Spartan's recommendation to a customer to seek financing; financing can be pursued regardless of credit score, even if a customer has no credit history at all. Thus, the allegedly improper pulls at issue were not even a necessary prerequisite for the submission of the credit application. DE 54, ¶¶ 163, 164.

4

In short, in contrast to the actual financing and sale of the Vehicle, not to mention Plaintiff's brother-in-law's subsequent misuse of the Vehicle and his threats to her wellbeing, the allegedly impermissible credit pulls did not proximately cause Plaintiff's distress in any legally recognized sense. Exhibit "D," at 59:11-60:19, 88:5-92:13, 94:14-25, 108:11-110:15, 220:19-221:5; 230:18-232:13. Indeed, Plaintiff herself acknowledges that her distress arose from the "fraudulent loan" with Capital One. DE 53-18, ¶ 22. But Spartan did not process, approve, or issue that loan, and submitting the credit application, even if it were fraudulent as Plaintiff alleges, did not violate the provisions of the FCRA Plaintiff invokes.

Plaintiff's mid-case abandonment of her claim for damages arising from the appearance of the hard pulls on her credit report does not lessen the requirement that she must establish a genuine proximate connection between the hard pulls and her emotional distress; it does not, as Plaintiff would prefer, render the teaching of *Casella v. Equifax,* 56 F.3d 469 (2d Cir. 1995) and its progeny inapplicable. As per *Wenning v. On-Site Manager, Inc.,* 2016 WL 3538379, at *23 (S.D.N.Y., Engelmayer, J.), Plaintiff's "harm must be traceable to the inaccurate, FCRA-violating information, not just to the report that contained that information or to inaccurate data within the same report." Like the plaintiff Correa in *Wenning,* Plaintiff here fails the causation test because the purported connection between the credit pulls at issue and her alleged emotional distress is simply too attenuated as a matter of law.[4]

In sum, even assuming Spartan lacked a permissible purpose for the credit pulls, Plaintiff alleges no legally actionable proximate connection between those pulls and her claimed emotional distress.

### III. PLAINTIFF HAS RAISED NO ISSUE OF TRIABLE FACT THAT ANY DEFENDANT OBTAINED PLAINTIFF'S CREDIT REPORT WITHOUT A PERMISSIBLE PURPOSE

Defendants established *prima facie* that Spartan personnel had a permissible purpose to pull Plaintiff's credit reports within the meaning of § 1681b(a)(3) because they had a good faith reason to believe

---

[4] *Marchiso v. Carrington Mortgage Services, LLC,* 919 F.3d 1288 (11th Cir. 2019), relied on by Plaintiff, (DE 55, p. 13), addresses whether that defendant's acts exacerbated the plaintiff's pre-existing conditions caused by that defendant, issues not remotely relevant herein.

that Plaintiff approved those pulls. Def. MOL, pp. 14-18. Spartan's permissible purpose "presents a question of law that may be decided in the context of a motion for summary judgment." *Edge v. Professional Claims Bureau, Inc.,* 64 F.Supp. 2d 115, 117 (E.D.N.Y. 1999, Wexler, J.) *citing Advanced Conservation Systems Inc. v. Long Island Lighting Co.*, 934 F.Supp. 53, 54 (E.D.N.Y. 1996) and *Zeller v Samia,* 758 F. Supp. 775, 781-82 (D. Mass. 1991). A showing of permissible purpose constitutes a complete defense to §§ 1681q and 1681n claims. *See Edge,* 64 F.Supp. at 117*; Ritchie,* 14 F.Supp. 3d at 244.

Remarkably, Plaintiff in opposition failed to address any of the several cases[5] cited by Defendants holding that users induced by identity thieves to pull credit reports had a permissible purpose to do so under § 1681b(a)(3). That is understandable since she cannot refute that her brother-in-law and housemate at the time appeared at the dealership with her valid driver's license (a license bearing the same exact street address as his), her correct social security number, and her recent employment information. Given this reality, even accepting Plaintiff's assertion that Laforest came to the dealership alone does not raise a triable issue of fact as to Spartan's permissible purpose.

In advancing her Laforest-came-alone theory, Plaintiff asks this Court to accept Laforest's testimony, this despite Plaintiff having had Laforest, a previously convicted criminal, (DE 53-22, at 143:15–148:16), arrested and temporarily prosecuted for identity theft, and labeling him a pathological liar. But in fact Plaintiff asks Your Honor to accept only those portions of Laforest's testimony that benefit her story.[6] This Court should not accept that dubious invitation. Consider, for example, Laforest's facially absurd testimony that a Spartan employee sitting behind a plexiglass barrier during the heart of the COVID pandemic somehow spotted Plaintiff's driver's license in Laforest's wallet and affirmatively suggested

---

[5] Def. Memo, Point IV, pp. 15-16; *see also, e.g., Domante v. Dish Networks,* 974 F.3d 1342, 1345 (11th Cir. 2020); *Heim v. Comcast Cable Communications, LLC,* 2020 WL 921128, * 3 (N.D. Ill.).

[6] Should this Court determine to credit any part of Laforest's testimony, it should also credit his testimony that, for example, he discussed the purchase of the Vehicle with Plaintiff in the following weeks, in June or July 2020, when he promised to pay off the loan by December 2020 *to which Plaintiff agreed* – that being well before she claims to have discovered the Vehicle's purchase for the first time in September 2020. DE 53-22 at 110:22-112:11.

using her as a co-signer for the Vehicle over Laforest's protestations. DE 53-2, at 84:25-85:20; DE 53-22, at 39:25-40:23, 101:23-103:18. But Laforest obviously came fully intent on presenting his sister-in-law as a purchaser, having by his own account illicitly obtained her social security number just prior to his visit to the dealership. DE 53-22, at 97:20-100:18.

Plaintiff's argument that Laforest had a motivation to testify that Plaintiff was with him to avoid implicating himself in a crime is simply wrong. The criminal prosecution Plaintiff initiated having been mysteriously dropped before Laforest testified herein, Laforest had no such motivation. In fact a more reasonable conclusion is that Laforest was motivated to assist his brother and his wife with fabricated testimony in this case. Without belaboring the point, Laforest is entitled to no credibility at all.

Plaintiff also relies on a statement attributed, at least in part, to non-party Chris Orsaris ("Chris"). To wit, Plaintiff asserts that at the dealership showroom in September 2020 "Chris Osaris and Stavros Orsaris admitted that Emmanuel Laforest came alone: 'a *man* will [sic] come here with your ID, we thought you gave *him* the ID to come and buy the car.'" DE 55, p.16.[7] Plaintiff apparently believes this vague statement, attributed to two individuals, qualifies under the admission exception to the hearsay rule. FRE 801(d)(2)(D). But Plaintiff has not laid a proper foundation for a hearsay exception.

Ironically, Plaintiff undermines her own position by reciting details of an indictment returned against Chris in 2010, his subsequent plea and his sentence of incarceration. Of course, only the conviction would be admissible were Chris to testify (*see, e.g., Munoz v. Barkley*, 2003 WL 21373349 (SDNY, Lynch J.)), but even then the conviction would only be admissible to impeach of Chris's *credibility*. Yet Plaintiff apparently stands behind Chris's credibility in this instance since she believes it suits her purpose.

---

[7] For this contention, Plaintiff cites DE 54, ¶ 285, which in turn cites to six deposition passages, four from Plaintiff, none of which contain the quoted text or testimony that Laforest came alone, and two from Momplaisir, only the last of which contains the quoted text. But Plaintiff fails to cite the previous Q & A in which Momplaisir testified to the statement "***they*** came in with your ID…" DE 53-21, at 86:13-23.

7

In any event, Plaintiff does not allege that Chris was involved in any aspect of the sale of the Vehicle. Chris buys cars for Spartan at auction and manages inventory, working remotely for the most part. Exhibit "K" at 37:23-38:4, 52:17-53:3, 146:6 -22; Exhibit "F" at 88:20--90:18; DE 53-2, at 25:4-19. Chris had a login to Dealertrack only for the purpose of managing inventory. Exhibit "K" at 45:22-46:6. He did not have an office at the showroom or an office at Spartan generally, (DE 53-2, at 79:14-20; Exhibit "K" at 52:11-53:3), and he came into the dealership "very infrequently." Exhibit "F" at 88:17-19; DE 53-2, at 25:20-26:4. Thus, the statement Plaintiff attributes to him did not concern a matter within the scope of Chris's relationship with Spartan, such as it was, within the meaning of FRE 801(d)(2)(D).[8]

Nor is the alleged statement that Laforest came alone admissible as against Spartan's interest under FRE 804(b)(3); given the wealth of Plaintiff's personal data Laforest presented, Spartan personnel had a good faith basis to believe Plaintiff approved the transaction even if Laforest was alone.[9] Further, that statement, if made at all, might have been nothing more than a customer relations effort to appease an angry consumer. Thus, it may not be considered for the truth of the matter asserted.

Nor can Defendants' alleged hiring practices, specifically that Chris works with Spartan to manage inventory and that Stavros did not run "background checks" on prospective employees, support a jury inference of recklessness within the meaning of § 1681n. Chris had no role in the sale of the Vehicle at issue, and none of the Spartan employees involved have ever been arrested, (Exhibit "F" at 24:2-3; Exhibit "K" at 27:3-4; DE 53-2 at 28:16-17), so traditional background checks would not have precluded their hiring. Nor do Plaintiff's gratuitous references to forgery carry any weight given the absence of expert opinion about forgery in this case.

---

[8] And while Stavros Orsaris did admit to meeting with Plaintiff during her September 2020 visit to the dealership showroom, he flatly denied Chris's presence there. Exhibit "F" at 216:7-11.

[9] That Laforest presented Plaintiff's identifying information in person rather than remotely as in the certain of the identity theft cases Defendants cite is of no moment. Indeed, Laforest's presentation was if anything more supportive of permissible purpose than the facts underlying some of those cases.

Plaintiff's heavy reliance on *Petras v. Navy Federal Credit Union,* 2022 WL 526138 (D. Nev.), deceptively conflates permissible purpose analysis under § 1681b(a)(3) with evaluation of the sufficiency of an investigation undertaken after a report of inaccuracy under § 1681s-2(b). DE 55, pp. 14-15, 17. The *Petras* court assessed evidence that the defendant bank failed to conduct a "reasonable investigation" under § 1681s-2(b) after receiving notice of a dispute from a CRA. *Id. at * 6*. But § 1681s-2(b) is obviously not at issue in the case at bar, and Defendants here were under no duty to investigate Plaintiff's *bona fides* before pulling her credit report. *See, Domante,* 974 F.3d at 1346 ("the FCRA does not explicitly require a user of consumer reports to confirm beyond doubt the identity of potential consumers before requesting a report"); *see also Shostack v. Diller,* 2015 WL 5535808, *10 (SDNY, Cott, M.J.)(no duty to call to confirm identity before a credit pull). Thus, Plaintiff's arguments that further investigation would have "revealed the fraud" and that "similar to *Petras*" a reasonable jury in this case could reasonably infer Defendants' recklessness hold no water at all.

Plaintiff descends into rank conspiracy theory by relying on Laforest's vague description of a salesperson, (DE 54, ¶ 192, 210, 213), to argue that Defendants failed to disclose that person's identity, then used a furloughed employee's login credentials to "hide who actually pulled Plaintiff's credit report." DE 55, p.17. But there exists no dispute that a Spartan employee pulled the report, and no reason for Spartan to hide that employee's identity. Along the way, Plaintiff blithely rejects the perfectly rational explanation for the completion of the deal in June 2020. Exhibit "F," at 159:10-160:9, 162:6-18.

Plaintiff then recklessly accuses Vallejo of forgery. DE 55, p. 20. The notion that that a dealership with Spartan's high sales volume would engage in such a vast and dangerous conspiracy to accomplish this the single sale at issue is simply not credible. *See,* Exhibit "K" at 40:15-22.[10] Regardless, the nefarious acts conjured up from Plaintiff's counsel's fertile imagination are all distinct and legally unconnected to the

---

[10] The vehicle remains on the lot marked "not for sale" on the advice of counsel subject to Capital One reconciling the loan with Spartan. Exhibit "F" at 172:3-14. Laforest never asked Spartan to return the downpayment, and Spartan also holds those funds pending the outcome of this litigation.

9

screening credit pulls at issue. Those alleged misdeeds and crimes are not actionable under FCRA provisions on which Plaintiff relies. There is only one question before this Court: did Spartan have a permissible purpose to obtain Plaintiff's credit report on May 30, 2020.

Ultimately, under the circumstances prevailing on May 30, 2020, even assuming for purposes of this motion only that Laforest came to the dealership alone armed with Plaintiff's identifying documents and information, pulling Plaintiff's credit report did not present a risk so unjustifiably high as to warrant an inference of willfulness. See *Safeco Ins. Co. of America v. Burr*, 127 U.S. 47, 49 (2007).

Accordingly, for all the reasons set forth above, this Court should dismiss Plaintiff's Amended Complaint in its entirety.

## IV. SHOULD THIS CASE CONTINUE, PLAINTIFF CANNOT ESTABLISH A BASIS FOR LIABILITY AS TO DIANE ARGYROPOULOS OR VICTORY MOTORS

### A. *Philip Argyropoulos*

Only now has Plaintiff finally abandoned her frivolous claim against Philip. DE 55, p. 24. Defendants previously demanded that Plaintiff discontinue against Philip. Def. MOL, p. 18. Plaintiff refused, causing Defendants to devote portions of their Rule 56.1 Statement and MOL to Plaintiff's allegations against Philip, only to have Plaintiff concede that she has no case against him. Defendants ask Your Honor to utilize your inherent powers to impose sanctions accordingly.

### B. *Diane Argyropoulos*

Plaintiff's half-hearted opposition to Diane's motion for summary judgment leaves undisputed the reality that Diane not only did not participate in any part of the transactions at issue, (Exhibit "K" at 15:25-16:3), she did not even know they transpired until well after the fact. Exhibit "K" at 138:25–139:9. Nor does Plaintiff seriously dispute that Diane left the implementation and enforcement of FCRA compliance to her General Manager, Stavros Orsaris. Exhibit "K" at 43:3-13; 73:13-74:6. Plaintiff's argument that Diane generally "has the ability to" and has on occasion dealt with employees directly is not evidence that she exercised that ability with respect to the transactions at issue.

In opposition, Plaintiff cites a single case, *Yohay v. City of Alexandria Employers Credit Union,* 827 F.2d 967, 973-974 (4th Cir. 1987) for the proposition that,

> An employer can be liable for the FCRA violations of *her* employees where *she* is negligent in the selection or supervision of employees or has policies permitting or encouraging violations of the FCRA.

DE 55, p.24 (emphasis added). But *Yohay* did not address the individual liability of the defendant Credit Union's manager, or its directors or owners, and thus does not remotely support the imposition of individual liability against Diane. There, the third-party defendant Ryan, an attorney and employee of defendant Credit Union, directed another Credit Union employee to pull the credit report of Ryan's ex-husband. *Id.* The 4th Circuit had little trouble determining that Ryan was an agent of defendant *Credit Union*, thus making the *Credit Union,* not its owner, liable to the plaintiff under principles of *respondeat superior*. *Id.* [11] Here, while Spartan strenuously disputes Plaintiff's allegations, it does not dispute Spartan's potential liability to Plaintiff should the acts of its employees ultimately be found to have violated the FCRA.

In *Shostack, supra, citing Meyer v. Holley,* 537 U.S. 280, 286 (2003) (citations omitted), Magistrate Cott held that absent "special circumstances[,] it is the corporation, not its owner or officer, who is the principal or employer, and thus subject to vicarious liability for torts committed by its employees or agents." The *Shostack* plaintiff, very much like Plaintiff herein, alleged that individual defendants he named should have undertaken greater efforts to "educate, supervise and monitor" employees so as to foresee and prevent the allegedly illegal credit pull there at issue. *Id.* at *5. But Magistrate Cott concluded,

> Absent specific allegations that the individual defendants participated in any of the allegedly illegal acts committed by their respective corporations, they cannot be held personally liable for those actions.

*Id.* at *6; *see also Petedge, Inc. v. Garg,* 234 F.Supp.3d 477, 493-494 (S.D.N.Y. 2017, Woods, J.)

---

[11] *Yohay* was decided before Congress amended the FCRA to allow for the liability of "any person" for violating 15 U.S.C. § 1681o. The *Yohay* court did allow for the individual liability of Ryan for her willful violation under 15 U.S.C. § 1681n, Ryan having personally directed the credit pull on her ex-husband, and affirmed the jury's finding that she must indemnify the Credit Union.

11

(interpreting New York law). The record herein contains no evidence that Diane participated directly or indirectly in any of the allegedly violative acts at issue. Accordingly, Diane cannot be liable to Plaintiff herein and if this case continues at all, she is entitled to summary judgment.

### C. Victory Auto Group, LLC

Why Plaintiff continues her baseless pursuit of Victory Auto despite the overwhelming evidence of that entity's complete lack of connection to the events at issue remains a disturbing mystery. Victory Auto had ceased to function as an operative entity by early 2018. Exhibit "K" at 23:20-24:6; 27:24-28:23; Exhibit "H," at 23:24-24:8; 26:3-6; Exhibit "F" at 29:14-16. Victory Auto never used the d/b/a "Victory Mitsubishi." Exhibit "F," at 29:4-10; Exhibit "K," at 55:8-13; Exhibit "H," at 32:15-19; 49:7-10.

In contrast, Spartan is an ongoing, viable entity that operates the dealership where the events at issue transpired. *See,* DE 26-30; DE 54, ¶¶ 3, 9, 12, 13. Plaintiff does not dispute Spartan, not Victory Auto, employed the individual Defendants involved in the transactions at issue, to wit Orsaris, Vallejo, Perez and Ventura, and that these individuals acted within the scope of their employment at all times relevant. DE 53-12; DE 54, ¶ 14; Exhibit "F," at 39:9-40:4; Exhibit "K," at 70:5-8.

Nonetheless, Plaintiff insists that "there is a dispute of material fact as to whether [Victory Auto] is merely an alter ego of [Spartan] and thus should be liable for Spartan's" alleged wrongdoing. DE 55, pp. 23-24. Plaintiff apparently means to allege that Spartan is an alter ego Victory Auto, not the other way around; this misstatement underscores the lack of legal support for Plaintiff's alter ego claim.

New York law is well-settled: to impose alter ego liability, a plaintiff must establish that "(1) the owners exercised complete domination of the corporation *in respect to the transaction attacked*; and (2) that such domination was used to *commit a fraud or wrong against the plaintiff* which resulted in plaintiff's injury." *American GreenFuels Rockwood (Tennessee) LLC v. Aik Chuan Construction Pte. Ltd.*, 2022 WL 4629255, * 3 (S.D.N.Y., Cote, J.), *citing Cortlandt Street Recovery Corp. v. Bonderman*, 31 N.Y.3d 30, 47 (2018)(emphasis added).

Here, the notion that in May 2020 the owners of Victory Auto were exercising complete domination over Spartan, specifically complete domination in respect to pulling Plaintiff's credit report, and using that domination for the purpose of committing a fraud against Plaintiff, is so far-fetched as to obviate the need for detailed refutation. Plaintiff's assertions such as "[Victory] is just one of a number of corporations owned and used by [Diane] to run an automobile dealership at 4070 and 4101 Boston Road in the Bronx," (DE 55, p. 23), are completely devoid of support in the record. Without going into detail, the transcript pages to which Plaintiff cites do not stand for the specific propositions she asserts.

Plaintiff cites no evidence that any corporation other than Spartan operated the Victory Mitsubishi dealership at any time relevant, much less any evidence of "a number of corporations" doing so, or any evidence that Victory Auto "dominated" Spartan in any respect. While Plaintiff mechanically recites the factors traditionally utilized by courts determining alter ego status under New York law but fails to offer any evidence whatsoever that might require this Court to apply same.[12]

Ultimately, Plaintiff's invocation of the alter ego theory amounts to nothing more than stating the conclusion. Victory Auto made a *prima facie* showing of its entitlement to summary judgment and in opposition Plaintiff failed to raise any triable issue of fact. Thus, to the extent Plaintiff's action herein survives in any form, it should not survive against Victory Auto.

## CONCLUSION

For all the foregoing reasons, Defendants' motion for summary judgment should be granted in its entirety, together with such other and further relief as this Court deems just and proper.

Dated: New York, New York
March 28, 2023

BY: _____
H. Nicholas Goodman
Patrick L. Selvey

---

[12] For example, Plaintiff offers no evidence concerning the companies' adherence to corporate formalities, the companies' capitalization, the payment or guarantee of Spartan's debt by Victory Auto, or the use of corporate property.