UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
FARAH JEAN FRANCOIS,

          Plaintiff,                    22-cv-04447 (JSR)

     -v-                                MEMORANDUM ORDER

VICTORY AUTO GROUP LLC d/b/a
VICTORY MITSUBISHI, et al.

          Defendants.
```

JED S. RAKOFF, U.S.D.J.:

     Plaintiff Jean Farah Francois alleges that a Mitsubishi dealership set up by the corporate defendants Victory Auto Group LLC and Spartan Auto Group LLC, owned by individual defendants Philip and Diane Argyropoulos, and staffed by individual defendants Stavros Orsaris, Yessica Vallejo, and David Perez, facilitated the theft of her identity by her brother-in-law, Emanuel LaForest, whom she alleges bought a car in her name from defendants. See generally First Amended Complaint ("FAC"), Dkt. 26. Although these allegations are hotly disputed, Francois claims LaForest first tried to buy a car in his own name and, when his credit proved insufficient to qualify for financing, asked the dealership to run credit checks first on a friend of his and then on Francois. Once Francois' credit check came back as satisfactory, the dealership called LeForest to purchase a car in Francois' name even though Francois never herself consented to the

1

sale. Francois has alleged both common law negligence and violations of the Fair Credit Reporting Act ("FCRA").

Defendants have now moved for summary judgment on several grounds. First, they ask for summary judgment on Francois' negligence claim on the ground she has failed to introduce any evidence of actual damages or injury. The Court agrees, and grants defendants' motion with respect to this claim.

Second, defendants ask for summary judgment on Francois' FCRA claim because she has again failed to adduced evidence of actual damages. However, under the FCRA, a plaintiff can recover for emotional damages (as well as out-of-pocket expenses). Because Francois has created a genuine issue of fact as to whether defendants' conduct caused her significant emotional distress, the Court denies this aspect of defendants' motion.

Third, defendants ask for partial summary judgment on the FCRA claim as to whether they "willfully" violated the FCRA. Under the FCRA, willful violations can lead to statutory and punitive damages and attorneys' fees. Specifically, defendants argue that the evidence, even as recounted by Francois (much of which defendants dispute), shows at most a negligent, rather than willful, violation of the FCRA. However, the overall sequence of events -- in particular, the evidence that the dealership ran three different individual's credit information until they were finally able to find someone who qualified for a loan in order to make the car sale -- suffices to create a

genuine fact issue as to whether the dealership acted willfully. The Court therefore denies this aspect of defendants' motion.

Finally, defendants ask for summary judgment dismissing the case as to three defendants: the two owners Philip and Diane Argyropoulos, and a separate corporate entity owned by them called Victory Auto Group LLC. Because Francois has failed to introduce any evidence that would support direct liability as to any of the three, the Court grants defendants' motion with respect to these three defendants.

## I.  Legal Standard

Fed. R. Civ. P. Rule 56 allows a court to grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). To succeed, the moving party must demonstrate "the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party meets this burden, the opposing party must produce "specific facts showing that there is a genuine issue for trial" by "a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322, 325.

In determining whether there is a genuine issue of material fact, the court must resolve all ambiguities and draw all reasonable factual inferences in favor of the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Still, the court must consider whether

"there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party," Anderson, 477 U.S. at 249 (citation omitted), and grant summary judgment where the nonmovant's evidence is inadequate. Id. at 249-50. The nonmovant's evidence "may not rest upon mere conclusory allegations or denials," Podell v. Citicorp Diners Club, Inc., 112 F.3d 98, 101 (2d Cir.1997)(internal quotations and citations omitted), and "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). A conclusory contradiction of undisputed evidence in a nonmovant's affidavit, unsupported by other evidence, is not by itself sufficient to create a genuine dispute of material fact. Zurich Am. Life Ins. Co. v. Nagel, 590 F. Supp. 3d 702, 714 (S.D.N.Y. 2022); see BellSouth Telecommunications, Inc. v. W.R. Grace & Company-Conn, 77 F.3d 603, 615 (2d Cir. 1996) ("An adverse party may not rest upon mere conclusory allegations or denials. . . . It is not sufficient merely to assert a conclusion without supplying supporting arguments or facts."). At the same time, courts may not disregard non-conclusory statements in an affidavit just because they are "self-serving." Danzer v. Norden Sys, Inc., 151 F.3d 50, 57 (2d Cir. 1998).

## II.  Analysis

The Court takes each of defendants' arguments -- as to negligence, actual damages, willfulness, and individual defendants' liability -- in turn:

### A. Whether Francois has induced sufficient evidence of injury to preserve her negligence claim

Defendants move for summary judgment on Francois' negligence claim on the ground that she has failed to produce any evidence of actual damages. Defs. Mem. Supp. SJ ("Defs. Mem.") at 3-8, Dkt. 49. See also Rubens v. Mason, 527 F.3d 252, 254-55 (2d Cir. 2008) (to prove negligence under New York law a plaintiff must show "she suffered actual and ascertainable damages" proximately caused by the defendant's breach of duty). In this Court's previous order denying plaintiff's motion to dismiss Francois' negligence claim, the Court held that even though Francois could not recover for negligence based on emotional injury, she had adequately alleged economic losses sufficient to state a claim, including her liability for the car loan, various parking tickets incurred by her brother-in-law while driving the car registered to her, the costs of disputing this liability (including the costs of postage). Francois, 2023 WL 373250, at *3. However, the Court also made clear that "[t]o survive summary judgment, [Francois] will need to adduce some evidence of real injury -- and if, as defendants apparently believe, she has successfully resolved all collection efforts against her without paying a dime, or the threat of payment with respect to any as-yet unresolved matters remains entirely speculative, she may not be able to do so." Id. at *4.

Now, on summary judgment, defendants argue that Francois has failed to adduce any actual evidence of real injury sufficient to support a negligence claim. Francois concedes that she cannot introduce

any evidence of damages with respect to three potential and previously alleged sources of injury: the Capital One loan taken out in Francois' name in connection with the vehicle purchase (which was apparently resolved without Francois ever having to pay anything or spend money disputing it), Def. Mem. at 4; Pl. Mem. Opp. SJ ("Pl. Opp."), Dkt. 56 at 4, certain storage and moving expenses she previously claimed were related to the car sale, Def. Mem. at 5-6; Pl. Mem. 5, and alleged damage to Francois' credit score, Def. Mem. 6; Pl. Mem. 8-9. Francois likewise does not claim any damages associated with actually paying parking fines or tickets incurred by her brother-in-law while driving the car he purchased in her name, apparently because she has not paid anything in connection with those balances. Pl. Opp. at 4.

However, Francois asserts that she has suffered four other kinds of damages: (1) lost wages and lost time; (2) suspension of her drivers license and resulting transportation expenses; (3) approximately $340.25 in outstanding obligations for toll violations; and (4) supposed postage expenses in connection with mailing dispute letters and supporting documents. Pl. Opp. at 4-5.

The Court takes up each category in turn:

### 1. Lost wages and lost time

Francois has submitted a declaration in support of her opposition to defendants' motion, in which she claims that she "had to take time off from work, for which I was not paid, to go try to fight the consequences of Victory Mitsubishi false pulling and using of my credit report and falsely getting a loan in my name with capital one."

Francois Aff. ¶ 16, Dkt. 53-18. This supposedly included "time off work ... to go to DMV multiple times to try to fight the suspension of my driver's license and the multiple fines," and "to go to the police repeatedly to" obtain documentation and information regarding the identity theft that she could present to DMV. Id.

Defendants argue this is inconsistent with Francois' deposition testimony. While Francois' deposition testimony is not a model of clarity, she plainly failed to describe or point to any lost wages in response to direct questions about whether she had had to take time off work to dispute the charges. For instance, after appearing to testify that her boss told her to "stop coming for one week to figure out [] what happened" and to "deal with that," Francois Dep. 216:17-217:7, Dkt. 52-5, Francois was directly asked whether she lost any pay:

> Q: Did you lose any pay? Did you lose anything from your paycheck, any salary for the time that you say that you took off, that one week you took off and maybe another day or two, if I understood you correctly?
> A: Yeah, if you did not go to work, if you don't have any sick days, which they are not going to pay you. I already took one week, it is my sick days. The one week that I take it is my sick days. After that, you call out, call out which you're not going to get paid. And I was not focused on that. All I was focused on was to figure out to fix those things.
> Q: So, how much money did you lose as a result of not working on those days?
> A: I don't know. I don't remember.

Id. 224:25-225-19.

Francois' testimony, in other words, states that she took one week off from her job to sort out the fallout from her identity theft,

which counted as her sick days, but that any further time off would have resulted in lost wages; however, she cannot remember if she took any further time off. Id. That testimony is plainly inconsistent with her statement in her affirmation that she had to "take time off from work, for which I was not paid," especially since her affirmation includes no further detail as to how much time she actually took off or how much she lost in wages. And it is "well-settled in this circuit that a party may not, in order to defeat a summary judgment motion, create a material issue of fact by submitting an affidavit disputing his own prior sworn testimony." Trans-Orient Marine Corp. v. Star Trading & Marine, Inc., 925 F.2d 566, 572-73 (2d Cir. 1991).

Accordingly, the Court agrees Francois has failed to introduce any evidence of lost wages and lost time and therefore concludes there is no genuine dispute of material fact as to whether defendants caused Francois this kind of damage.

### 2. Suspended driver's license and alternative transit costs

Francois next contends that, as a result of the vehicle sale, her "driver's license was suspended due to the fees and fines incurred by Emmanuel LaForest when [she] was pulled over by the police while driving on the highways to get to work," and that, as a result of her license suspension and the lack of train connections between her home and place of work, she had to take Uber to get to work, resulting in $10 tolls and fares of up to $86. Francois Aff. ¶¶ 12-15, Dkt. 53.18. Besides her declaration, Francois submits a DMV "Abstract of Lifetime

Driving Record" that appears to show that her license was suspended on 2/2/21 for "failure to answer a summons." DMV Abstract at 2, Dkt. 53-20.

Leaving aside the issue of whether a factfinder could reasonably find that Francois' license suspension and resulting transportation costs were proximately caused by defendants' conduct, there are at least two independent issues precluding this theory of damages:

First, although Fed. R. Civ. P 26(a) require the plaintiff's initial disclosures to include a "computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material . . . on which each computation is based," plaintiff never mentioned anything about this theory of damages in either her initial Rule 26(a) disclosures or subsequent productions or in her deposition testimony. Instead, Francois' first disclosure of this theory of damages apparently came on 2/8/23 (about a month following the already extended close of discovery, and days before defendants' summary judgment briefing) when plaintiff served a purported "third amended Rule 26(a)(1) disclosures" that stated for the first time as part of her computation of damages that Francois' license had been suspended as a result of the incident, causing her to take Ubers to get to work. Pl. Third Amended Rule 26(a) disclosures, Dkt. 52-13.

The failure to disclose this theory of injury during discovery, when Francois could have answered questions about it, is particularly

striking, since Francois was asked extensively about her driver license history at deposition and never mentioned the suspension. In fact, she was asked if she has a current New York state drivers' license, discussed the chronology of getting her permit and then license, and discussed her license being expired in 2020 and having to apply for a new one. Francois Dep. 23:8-27:5, Dkt. 52-5. She was also asked about out-of-pocket damages. Id. 139:16-150:2. Neither when discussing her drivers' license or her damages did she ever mention losing her license and needing to take Ubers to work.

Given Francois failure to disclose this theory of damages in her first or second Rule 26(a) disclosures or otherwise during the discovery period, the Court concludes she is precluded from relying on it in order to resist summary judgment. See Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."). The failure to disclose earlier was neither justified nor harmless, since defendants clearly would have inquired about it at deposition.

Second, even if the Court were to consider Francois' contention that she lost money taking Ubers as a result of her drivers' license suspension notwithstanding her failure to disclose this during discovery, her affirmation would still fail to create any genuine issue of fact as to whether she lost money this way. In her Affirmation,

Francois states that her license was suspended "due to the fees and fines incurred by" her brother-in-law, Francois Aff. ¶ 12, but the DMV screen she provided indicates that her license was suspended on 2/2/21 for "failure to answer a summons." DMV Abstract at 2, Dkt. 53-20. Other than her conclusory statement in her affirmation, there is no record evidence even demonstrating that the underlying summons -- let alone Francois' failure to answer it -- was caused by LaForest's driving of the car sold by defendants. Id.

Accordingly, as to this theory of damages, the Court again agrees with defendants that Francois failed to introduce any admissible evidence that would give rise to genuine dispute of material fact.

### 3. Outstanding Toll Obligations

Francois also argues that her negligence claim includes $340.25 of outstanding (as yet, unpaid) fines for toll violations incurred by her brother-in-law. Pl. Rule 56.1 Counterstatement ¶ 305; E-ZPass Violation List, Dkt. 53-34. As to this, defendants point out that Francois testified that she has not paid and never intends to pay anything with respect to LaForest's driving citations, and that she will presumably be successful (if she has not already been successful) in contesting them. Francois Dep. 145:8-148:9.[1]

Plaintiff's cite no authority for the proposition that Francois can claim damages over potential fines or violations (all of which

---

[1] Defendants also claim this violation list was not produced in a timely manner and should be ignored under Fed. R. Civ. P. 37(c)(1).

appear to have been incurred in 2020, Dkt. 53-34) that she has not yet paid and never intends to pay. While it is possible that Francois may need to incur expenses to dispute these citations, she has not pointed to any evidence as to what those expenses have been or are likely to be. Accordingly, the Court once again agrees that, as to this theory of injury, Francois has failed to introduce evidence giving rise to any genuine dispute of material fact.

### 4. Costs of disputing parking and trafficking citations or other liability incurred in connection with the fraudulently purchased vehicle

The last category of damages Francois claims consists of costs incurred in actually disputing the liabilities incurred in her name by LaForest. In this regard, the only expenses Francois points to are postage with respect to three dispute letters she claims to have sent via certified mail in connection with disputing credit collection and/or traffic or toll violations in connection with the car. Pl. Rule 56.1 Statement ¶¶ 301-303; Francois Aff. ¶ 17 ("I paid postage to the dispute letters I sent . . . and the mailing of the attachments referenced in the letter.").

As to this, defendants contend that while plaintiff has submitted the various letters she claims to have sent, she has failed to "provide[]evidence that she actually mailed them, and if she did, how much postage she paid." Def. Reply 3. Further, when asked in deposition whether she incurred postage expenses, Francois responded "What does

that mean 'postage?' Because I don't get it, 'postage'" and "I don't know what you are talking about." Francois Dep. 160:19-161:13.[2]

The Court notes that Francois has not pointed to any case law suggesting that the postage cost of three dispute letters, standing alone, is sufficient to give rise to injury to support a negligence claim, and on its face it appears classically de minimis. The Court further notes that, at oral argument, defense counsel stipulated that defendants would pay the cost of postage in any event. Putting all that aside, the Court concludes that Francois has failed to introduce a genuine dispute of material fact as to injury to support her negligence claim, even assuming the cost of postage would be sufficient to do so. She has not pointed to any receipts, nor testified in deposition or her affirmation as the actual amount she spent on postage. The mere fact that she conclusorily states that she "paid postage" is therefore insufficient to give rise to a genuine issue of material fact.

For the foregoing reasons, the Court concludes Francois has failed to adduce any admissible evidence of economic or other non-emotional injury, such as is required to make it to trial on her negligence claim. Accordingly, the Court grants defendants' motion for summary

---

[2] The Court recognizes that English is not Francois' first language, but plaintiff's counsel never asked further questions during deposition to clarify whether Francois in fact sent the letters in question and paid money to do so.

judgment to the extent it seeks dismissal of Francois' negligence claim.

### B. **Whether Francois establishes actual damages under the FCRA**

Defendants also argue that Francois' FCRA claim should be dismissed because plaintiff has failed to adduce evidence of actual damages under the FCRA. Francois' alleged economic damages are discussed in the preceding section with respect to her negligence claim, and the Court agrees Francois has introduced no evidence of economic damages and therefore cannot argue that she suffered such damages at trial.

However, the FCRA provides that, in the case of willful or negligent noncompliance, a person may recover "any actual damages sustained by the consumer as a result of the failure." 15 U.S.C. §§ 1681n, 1681o, and phrase "actual damages" within the FCRA has been interpreted to include at least some kinds of emotional damages even in the absence of out-of-pocket expenses. See Casella v. Equifax Credit Information Services, 56 F.3d 469, 474 (2d Cir. 1995) ("'[A]ctual damages' may include humiliation and mental distress, even in the absence of out-of-pocket expenses."). However, even under the FCRA emotional distress damages must still be proximately caused by the violation. For instance, in Casella, the Second Circuit held that an individual whose credit report included an inaccurate entry showing he owed child support when he did not could not recover from credit reporting agencies absent evidence that the credit reporting agencies had shared the inaccurate entry with potential third parties, because,

absent such evidence, the alleged violations had not caused any injury. Id.

Typically, emotional injury under the FCRA relates to either having credit denied, or having false information about the plaintiff broadcast to others in an embarrassing way, and defendants point out in their briefing that none of that happened here. Defs. Mem. 10-13. However, Francois alleges a different theory of injury: that defendants either negligently or willfully violated the FCRA by obtaining her credit report without a permissible purpose and under false pretenses. See 15 U.S.C. § 1692b(f) ("A person shall not use or obtain a consumer report for any purpose" other than those authorized); 15 U.S.C. § 1681q (making it unlawful to "knowingly and willfully obtain[] information on a consumer from a consumer reporting agency under false pretenses"). After her credit was pulled, defendants sold a car in her name to her brother-in-law, which made her liable for a $30,000 car loan and opened her up to liability for various driving citations received by LaForest -- and although it appears, as discussed above, that Francois ultimately paid out no money in connection with these liabilities, she has plausibly testified that the whole incident caused her substantial emotional distress. See, e.g. Francois Aff. ¶ 21, Dkt. 53-18.

The question is therefore: has Francois created at least an issue of fact as to whether the emotional distress she suffered as a result of the car sale was proximately caused by defendants' alleged FCRA

violation (pulling her credit report without her authorization)? The Court concludes that she has.

Defendants contend that Francois has failed to demonstrate any evidence of injury because the chain of events "between Spartan pulling her credit reports and events thereafter, those events being the submission of a credit application in Plaintiff's name, Capital One's approval of the loan, the Vehicle being titled to Plaintiff and delivered to Laforest, followed by Laforest's traffic violations, Plaintiff confronting him and having him arrested, and ultimately Laforest threatening her resulting and Plaintiff fleeing her marital home . . . breaks at the very first link." Defs. Mem. 4. This is because, according to defendants', their pulling Francois credit report was "not the 'predicate first step' for obtaining financing." Id. In this regard, defendants point to evidence that Francois' credit report was not even included in the credit application submitted to Capital One, and that the banks conducted their own credit pulls on which they relied after the financing application was submitted. Vallejo Dep. 206:20-208:18, Dkt. 53-2; Defs. Reply Br. Supp. SJ ("Defs. Reply") at 4, Dkt. 57. And Francois herself has admitted that defendants used their credit reports "to see which consumer 'qualifies' for certain lenders based on their 'guidelines,'" but that the dealership would ultimately "just proceed forward" and "[i]t doesn't matter what someone's [credit] score is." Pl. Rule 56.1 Statement ¶¶ 162-163. Accordingly, defendants contend that, even accepting Francois' version of the facts, their initially pulling Francois'

credit information was not causally linked to the vehicle ultimately being sold and financed in Francois' name.

But this argument ignores that fact that Francois has introduced evidence that before a car was ultimately sold to LaForest in Francois' name, with financing in Francois' name, credit checks were initially performed by the dealership at LaForest's request on LaForest himself and then a friend of his, Jami Singer, at which point no sale was approved. See, e.g., Singer Dep. 04:24-05:01, 08:06-11, Dkt. 53-28; Singer Deal Jacket, Dkt. 53-10. While defendants dispute the specifics of these credit pulls, such as whether or not Ms. Singer was with Mr. LaForest in person, Pl. Reply to Def. Counterstatement ¶ 220-26, the sequencing of these credit pulls create a plausible inference that Victory Auto at first declined to sell the car to either LaForest individually or to LaForest and Singer because their credit was insufficient. Then, once Francois' credit came back as stronger, the dealership allowed the sale to go forward. If so, that would make the alleged FCRA violation -- running Francois' credit check in the first place without her consent -- a but-for cause of the car sale and her emotional damages following therefrom, and a reasonable fact-finder could also conclude it was a proximate cause as well. Accordingly, the Court concludes that Francois has raised an issue of fact as to whether the car purchase and financing was caused by the initial allegedly unlawful pull of Francois credit and, therefore, whether the FCRA violation caused her resulting emotional distress.

### C. Whether there is evidence of knowledge or willfulness

Francois has alleged that defendants "knowingly and willfully obtain[ed] information on a consumer from a consumer reporting agency under false pretenses." 15 U.S.C. § 1681q. Such a knowing violation can entitle a plaintiff, in addition to actual damages, to statutory damages of "not less than $100 and not more than $1,000," "such amount of punitive damages as the court may allow, and "the costs of the action together with reasonable attorney's fees as determined by the court." Id. § 1681n(a). See Ali v. Vikar Management Ltd., 984 F.Supp. 492, 498 (S.D.N.Y. 1998) (noting that willfully obtaining information from a credit reporting agency under false pretenses creates civil liability for actual, statutory, and punitive damages under § 1681n(a)).

Defendants contend that to the extent Francois has created any issue of fact as to whether they violated the FCRA by obtaining her credit information under false pretenses, she has shown at most negligence, not willfulness -- in which case she would only be entitled to pursue actual damages, not statutory or punitive damages or costs and fees. Defs. Mem. 14-18.

There appears to be a clear dispute of fact as to what actually happened on the day of the sale. Francois has testified that she was not present when LaForest bought the car, and that one of the dealership's employees told her that a man (presumably LaForest) "c[a]me here with [Francois'] ID" but without Francois. Pl. Rule 56.1 Counterstatement ¶ 285. Defendants' employees, by contrast, have testified that they did not and would not sell a car to someone without

18

that person being present at the dealership. Def. Response Pl. Rule 56.1 Counterstatement ¶ 285. Certain of defendants' employees have also testified that LaForest was accompanied at the time of the car purchase either by Francois or a woman who looked like her when he purchased the car. See, e.g., Osaris Dep. 107:19-109:1, Dkt. 52-8. So it is plainly disputed whether LaForest purchased the car with Francois present, with a woman who resembled Francois present, or, as Francois contends, by himself, with only Francois' drivers' license, social security number, and information in hand.

Defendants contend that even assuming arguendo Francois' version of events is true, and that LaForest purchased the car by himself, there is still no dispute of fact as to whether they acted willfully and used Francois' credit information under false pretenses, because LaForest had Francois' driving license, social security number, and employment information, and, what's more, the address listed for Francois' address matched exactly LaForest's address. Defs. Mem. 15; Francois Dep. 78:6-79:2, Dkt. 52-5. Under those circumstances, defendants contend, Francois has at most adduced evidence that defendants were negligent or acting in the good faith belief that LaForest had Francois' consent to the transaction, given how much information he had about her and that she apparently lived at the same address as she did.

Nonetheless, the Court concludes that Francois has raised a fact issue as to defendants' willfulness, given the apparent sequence of events discussed above. Given that credit checks appear to have been

run first for LaForest, then for his friend Jami Singer, and only finally for Francois, Singer Dep. 04:24-05:01, 08:06-11, Dkt. 53-28; Singer Deal Jacket, Dkt. 53-10, the Court concludes that a factfinder could reasonably conclude that defendants were aware of the possibility or even likelihood that LaForest was acting without authorization and simply running as many peoples' credits as he could to get a sale consummated and chose to disregard that possibility in order to make a sale. While the Court acknowledges this is a close call, it therefore concludes that Francois has introduced evidence giving rise to a genuine issue of fact as to defendants' willfulness.

## D. **Whether Francois' claim should be dismissed against Victory Auto Group and Diane and Philip Argyropoulos**

Defendants finally move in the alternative for entry of summary judgment, dismissing all claims against three specific defendants -- Victory Auto Group, LLC, Diane Argyropoulos, and Phillip Argyropoulos -- on the ground that Francois has failed to introduce evidence as to their involvement. The Court agrees and grants defendants' motion with respect to each of these three defendants.

### 1. Victory Auto Group, LCC

The actual auto dealership at which LaForest purchased the car at issue is Spartan Auto Group LLC ("Spartan"), which does business as "Victory Mitsubishi". See, e.g. Pl. Rule 56.1 Counterstatement ¶¶ 1-2. Victory Auto Group LLC is a separate corporate entity that was also owned by Philip and Diane Argyropoulos that defendants have testified ceased to operate in late 2017 or early 201 and that, they

contend, never did business as "Victory Mitsubishi". D. Argyropoulos Dep. 23:20-24:6; 27:24-28:23; Osaris Dep. 218: 2-10 ("Victory Auto Group is not a Mitsubishi franchise.")

Plaintiff contends Victory Auto Group, LLC is a corporate alter ego of Spartan, but the only evidence they introduce in this regard is limited to a shared address and overlap in both ownership (the owner is Diane Argyropoulos) and employees (the employees at Victory Auto Group, LLC largely went on to work at Spartan). Pl. Rule 56.1 Counterstatement ¶ 1. While shared ownership and employees are relevant factors as to whether corporate forms are alter egos, courts also demand evidence of several more factors, such as "the absence of the [corporate] formalities," "inadequate capitalization," "whether funds are put in and taken out of the corporation for personal rather than corporate purposes," and "whether the corporations are treated as independent profit centers." Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc., 933 F.2d 131, 139 (2d Cir. 1991). More importantly, courts only pierce the corporate veil when the corporate form isbeing "used to commit a fraud or other wrong that causes plaintiff's loss." Id. at 138.

Here, Francois has made no showing as to most of the factors detailed above relevant to considering whether Victory Auto Group, LLC and Spartan are corporate alter egos. She similarly has introduced no evidence  that Victory Auto Group is being used by Spartan or defendants to perpetrate any fraud or otherwise cause any wrong. Accordingly, the Court concludes that since there is no evidence of

direct involvement by Victory Auto Group, LLC, summary judgment must be entered in its favor.

### 2. Philip Argyropoulos

Francois agrees "that there is insufficient evidence to establish liability against" Philip Argyropoulos. Pl. Mem. at 24. Accordingly, the Court grants summary judgment in his favor.

### 3. Diane Argyropoulos

Francois argues that employers can be liable under the FCRA when they are negligent in selecting or supervising their employees or have policies in place encouraging FCRA violations. Pl. Opp. 24 (citing Yohay v. City of Alexandria Employees Credit Union, Inc., 827 F.2d 967, 973-974 (4th Cir. 1987). But while Diane Argyropoulos appears to have owned and to some extent managed Spartan, Francois points to no evidence that she directly employed any its employees. To the contrary, the only evidence as to Spartan's employees employment is that they were employed by Spartan. Def. Reply at 11-12. Because Francois provides no evidence as to why the corporate veil should be pierced to allow recovery against Spartan's owners and also fails to cite any authority showing that business owners or managers can be held personally liable under the FCRA for encouraging or facilitating violations by the business's employees, the Court grants summary judgment in Diane Argyropoulos' favor.

## III. Conclusion

For the reasons stated above, the Court hereby grants defendants' motion in part and denies it in part. Specifically, the Court grants defendants' motion dismissing Francois' negligence claim and also holds as to both her negligence and FCRA claims that she has introduced no evidence that she suffered any economic harm. The negligence claim is therefore dismissed, and Francois may not seek economic damages as to her FCRA claim at trial. The Court likewise grants defendants' motion with respect to Victory Auto Group LLC and Philip and Diane Argyropoulos, and dismisses Francois' complaint in its entirety as to these three defendants. However, the Court denies defendants' motion with respect to whether Francois has adduced evidence demonstrating a genuine dispute as to actual damages including emotional damages with respect to her FCRA claim and whether she has adduced evidence demonstrating a genuine dispute as to defendants' willfulness.

The Clerk is directed to close defendants' motion (Dkt. 49) on the docket. After conferring with respect to trial availability from now through January 2024, counsel for all parties should jointly call chambers no later than 5 business days following the issuance of this Memorandum Order in order to schedule trial as to Francois' remaining claims.

SO ORDERED.

New York, NY
July 13, 2022

_____
JED S. RAKOFF, U.S.D.J.