UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
FARAH JEAN FRANCOIS,

                                **Plaintiff,**             **Case No. 1:22-cv-4447**

       **- against -**                           **(Hon. Jed S. Rakoff)**

VICTORY AUTO GROUP LLC d/b/a
VICTORY MITSUBISHI, SPARTAN
AUTO GROUP LLC d/b/a VICTORY
MITSUBISHI, STAVROS ORSARIS,
YESSICA VELLEJO, DAVID PEREZ,
DIANE ARGYROPOULOS, and
PHILIP ARGYROPOULOS,

                               **Defendants.**
--------------------------------------------------------------------X


### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR RECONSIDERATION


H. Nicholas Goodman
  Patrick L. Selvey
NICHOLAS GOODMAN & ASSOCIATES, PLLC
*Attorneys for Defendants*
VICTORY AUTO GROUP LLC
d/b/a VICTORY MITSUBISHI,
SPARTAN AUTO GROUP LLC
d/b/a VICTORY MITSUBISHI,
STAVROS ORSARIS, YESSICA VELLEJO,
DAVID PEREZ, DIANE ARGYROPOULOS,
and PHILIP ARGYROPOULOS
333 Park Avenue South, Suite 3A
New York, New York 10010
(212) 227-9003

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS.................................................................................................................ii

TABLE OF AUTHORITIES ........................................................................................................iii

PRELIMINARY STATEMENT ....................................................................................................1

ARGUMENT..................................................................................................................................2

    I.             THE COURT OVERLOOKED OR MISAPPREHENDED UNDISPUTED EVIDENCE ESTABLISHING THE SEQUENCE OF CREDIT PULLS ................................2

        A.      The Court's Oversight or Misapprehension ....................................................2

        B.      The Undisputed Sequence of Events ..............................................................3

        C.      Laforest's Testimony Did Not and Does Not Raise An Issue of Fact..............5

        D.      Spartan Had a Permissible Purpose for Obtaining Francois' Credit Report.........7

CONCLUSION............................................................................................................................. 10

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Bickley v. Dish Network, LLC*, 751 F.3d 724 (6th Cir. 2014)..............................................................7

*Domante v. Dish Networks,* 974 F.3d 1342 (11th Cir. 2020) ...............................................................7

*Edge v. Professional Claims Bureau, Inc.,* 64 F.Supp. 2d 115 (E.D.N.Y. 1999, Wexler, J.).........7

<u>Statutes</u>

15 U.S.C. § 1681b.........................................................................................................................7

15 U.S.C. § 1681n....................................................................................................................4, 7

15 U.S.C. § 1681q....................................................................................................................2, 7

<u>Rules</u>

Local Civil Rule 6.3 ..............................................................................................................1, 10

## PRELIMINARY STATEMENT

This Court's July 13, 2023, Memorandum Order (the "Order") granted in part and denied in part the motion for summary judgment filed by Defendants VICTORY AUTO GROUP LLC d/b/a VICTORY MITSUBISHI, SPARTAN AUTO GROUP LLC d/b/a VICTORY MITSUBISHI, STAVROS ORSARIS, YESSICA VALLEJO, DAVID PEREZ, DIANE ARGYROPOULOS, and PHILIP ARGYROPOULOS, (sometimes collectively "Defendants"). Dkt. 60. As relevant herein, the Order denied Defendants' motion to dismiss Plaintiff's FCRA claim finding that Plaintiff adduced evidence demonstrating a genuine dispute as to her alleged actual damages, including emotional damages, and as to defendants' alleged willfulness.

The remaining Defendants (collectively "Spartan") now move this Court pursuant to Local Civil Rule 6.3 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York for reconsideration of that portion of the Order that denied Defendants' motion to dismiss Plaintiff's FCRA claim. Spartan submits that this Court overlooked certain critical undisputed evidence in the record, or misapprehended that evidence. Specifically, this Court referenced certain "evidence" that Spartan pulled credit three reports in this order: Laforest first, then Jami Singer and finally Francois, finding a valid inference from that sequence that Spartan might have been merely pulling reports in search of the best qualified applicant for financing.

However, undisputed documentary evidence in the record establishes that Spartan pulled Francois' credit report, submitted a credit application in her name, and received an approval, well *before* Spartan pulled Singer's credit, meaning Spartan had already been deceived by Laforest and was not fishing for applicants. Given that reality, Plaintiff failed to raise a triable issue of fact sufficient to defeat Defendants' *prima facie* showing of a permissible purpose to pull Francois' credit report and that pulling Francois credit report was not a "but for" cause of her alleged emotional damages.

## ARGUMENT

I.    **THE COURT OVERLOOKED OR MISAPPREHENDED UNDISPUTED EVIDENCE ESTABLISHING THE SEQUENCE OF CREDIT PULLS**

*A.    **The Court's Oversight or Misapprehension***

In determining that Plaintiff introduced evidence of a genuine dispute as to the causal relationship between the Spartan pulling her credit report and her alleged emotional distress, the Court acknowledged Defendant's argument that the chain of causation between the credit pull and Francois' emotional distress "broke at the first link," but then found:

> [Defendants'] argument ignores that fact that Francois has introduced evidence that before a car was ultimately sold to LaForest in Francois' name, with financing in Francois' name, credit checks were initially performed by the dealership at LaForest's request on LaForest himself and then a friend of his, Jami Singer, at which point no sale was approved. While defendants dispute the specifics of these credit pulls, such as whether or not Ms. Singer was with Mr. LaForest in person, **the sequencing of these credit pulls create a plausible inference that Victory Auto at first declined to sell the car to either LaForest individually or to LaForest and Singer because their credit was insufficient. Then, once Francois' credit came back as stronger, the dealership allowed the sale to go forward.** If so, that would make the alleged FCRA violation -- running Francois' credit check in the first place without her consent -- a but-for cause of the car sale and her emotional damages following therefrom, and a reasonable fact-finder could also conclude it was a proximate cause as well.

Dkt. 60, at 17 (internal citations omitted)(emphasis supplied).

Similarly, in denying that portion of Defendants' motion seeking to dismiss Plaintiff's 15 U.S.C. 1681(q) claim, this Court concluded:

> ….that Francois has raised a fact issue as to defendants' willfulness, given the **apparent sequence** of events discussed above. **Given that credit checks appear to have been run first for LaForest, then for his friend Jami Singer, and only finally for Francois, the Court concludes that a factfinder could reasonably conclude that defendants were aware of the possibility or even likelihood that LaForest was acting without authorization and simply running as many peoples' credits as he could to get a sale consummated and chose to disregard that possibility in order to make a sale**. While the Court acknowledges this is a close call, it therefore concludes that Francois has introduced evidence giving rise to a genuine issue of fact as to defendants' willfulness.

Dkt. 60, at 19-20 (emphasis supplied).

Thus, the "plausible inference" that this Court found could permit a reasonable jury to find in Plaintiff's favor rested explicitly – and exclusively – on the "sequencing of these credit pulls" or the "apparent sequence of events…" Dkt. 60, at 17-20.

Previously, at oral argument, this Court posited that same sequence of credit pulls and asked the undersigned whether "[a]ssuming for the sake of argument those facts, wouldn't that give rise to a plausible inference this firm was just trying to make a sale…" Argument Transcript, Dkt. 61 at 2:23-3-2. The undersigned argued against that inference, before explicitly advising this Court that its assumed sequence of credit pulls was inaccurate:

> MR. GOODMAN: I just wanted to clarify both back to the earlier point when you were -- before your hypothetical. Ms. Francois was the second credit pull, not the third. We didn't go through Laforest, then Singer, and then Francois. It went Laforest to Francois, just to be clear.
>
> THE COURT: All right. Thank you for clarifying.

Argument Transcript, Dkt. 61, at 8:21-25.

Unfortunately, that clarity did not find its way into the Order. Indeed, no credible evidence in the record supports the purported sequence upon which this Court relied. Rather, as stated, undisputed documentary evidence submitted by and relied upon by Plaintiff herself establishes an entirely different sequence. Accordingly, this Court premised its denial of Defendants' motion entirely on an inaccurate assumption about the sequence of credit pulls. On the record properly considered, this Court should dismiss Plaintiff's FCRA claim in its entirety.

### B.    *The Undisputed Sequence of Events*

Plaintiff herself acknowledges, by way of her Counterstatement of Facts, that on May 30, 2020, Spartan pulled LaForest's credit report at 4:39 p.m., then only sixteen (16) minutes later, at 4:55 p.m., Spartan ran Francois' credit, but that Spartan did not pull Singer's credit report until

6:07 p.m., over an hour later. Pl. Rule 56.1 Statement, Dkt. 54, ¶¶ 205, 208, and 220.[1] To wit, records from Dealertrack, obtained directly from Dealertrack in response to Plaintiff's subpoena, and relied upon by Plaintiff in opposition to Defendants' motion as Plaintiff's Exhibits "I," J," and "K," confirm that Laforest-Francois-Singer sequence. Dkts. 53-9, 53-10, and 53-11.

Critically, Spartan pulled Singer's credit *after* the first credit application in Francois' name had already been approved. *Compare* Dkt. 53-10 and 53-11. Francois' deal jacket shows that Spartan submitted the first credit application in her name at 4:58 p.m., and that it was approved at 4:59 p.m., over an hour *before* Spartan pulled Singer's credit report. Dkt. 53-11, pp. 5-6.

Given the back-to-back pulls of Laforest and Francois' credit reports, followed by the immediate submission of credit applications in Francois' name, the "plausible inference" this Court found that "Victory Auto first declined to sell the car to either Laforest individually or to Laforest and Singer because their credit was insufficient," (Dkt. 60, p. 17), is plausible at all,[2] and the conclusion that pulling Francois' credit was a but-for cause of the sale and Plaintiff's subsequent emotional damage has no basis in the record. As discussed in Defendants' moving papers, and below, Spartan pulled Francois's and LaForest's credit merely to help narrow the field of financial institutions that might provide the most advantageous terms to Francois. That Spartan pulled Singer's credit over an hour later has no bearing on the permissible purpose analysis, much less on the issue of willfulness under 15 U.S.C. § 1681n(a).

---

[1] While there exist certain questions as to whether these time entries were entered in time zones other than Eastern Daylight Time, the relative timing of the credit pulls is consistent across the documents leaving the sequence of the credit pulls undisputed on the record.

[2] This inference also reflects an apparent misunderstanding of Spartan's role in the transaction as Spartan's personnel did not initially decline to sell the vehicle to Laforest, but rather determined that submitting a credit application in Francois' name would result in more favorable terms. And as set forth below, Capital One Bank independently approved the loan for the vehicle, without reference to Francois's credit report pulled by Spartan.

### C.   *Laforest's Testimony Did Not and Does Not Raise An Issue of Fact*

While this Court did not articulate the "evidence" Francois supposedly introduced as to the inaccurate sequence of credit pulls upon which this Court relied to push what it called a "close call" over the line, (Dkt. 60, at 20), the only potential source of that version is the deposition testimony of Emmanuel Laforest.[3] But following Plaintiff's own lead, this Court should not have credited Laforest's testimony in the first place, even in the context of issue finding on a summary judgment motion. In that regard, it appears this Court overlooked Francois' own testimony that "you can't believe anything he [Laforest] says" because "most of the time he is lying." Plaintiff's Dep., Dkt. 49-5, at 65:4-15.

And this Court will recall that Laforest, who was previously convicted of forgery and misuse of private documents in Ohio, and later pleaded guilty to criminal forgery in Maryland (Laforest Dep., Dkt. 53-22, at 53-22, 143:15-145:3), admitted to stealing Francois' identity to purchase the vehicle in her name by stealing her driver's license[4] and her W-2,[5] and he obtained her social security number on the dark web.[6]

Given that Laforest traveled to Spartan's dealership armed with an exhaustive inventory of documentation and information confirming Francois' identity, it is only reasonable to infer that he arrived intending to apply for credit in her name from the start. And that is in fact exactly what Laforest initially testified to under questioning by Plaintiff's counsel:

---

[3] This Court did cite to passages from Jami Singer's deposition transcript, but those passages do not speak to the sequence of the credit pulls, only to her allegation that she did not appear in person at the dealership.

[4] Laforest further benefited from the fact that his driver's license and license he stole from Francois bore the exact same street address, the home in which they both resided in Brooklyn.

[5] Laforest later stole Francois' green card. Plaintiff's Dep., Dkt. 49-5, at 41:24-43:2, 53:22-54:15.

[6] Laforest testified that he obtained Francois' social security number on May 30, 2020, *the same day* he duped Victory into financing the vehicle under Francois' name, having acquired that number from an anonymous source on the Telegram app "[b]ecause I wanted to see if she was going to get approved." Laforest Dep., Dkt. 53-22, at 98:6-100:2.

> Q.      Uh-huh. And you went to the dealership to purchase a vehicle in the name of Ms. Francois; is that correct?
> A:      Yeah. Correct.

Laforest Dep., Dkt. 53-22, at 8:5-8.

> Q.      So would you describe for me what happened in your own words, when you went to the dealership on May 30?
> A.      When we went to the dealership, they ran my credit. And then they ran her [Francois'] credit and they said they do to car [sic] under her name. And I said okay. And after that, I spoke to her and she said it was okay because – I mean, some of the car was going – was going to be paid – fully paid off. Well – and then I guess she just changed her mind.

Laforest Dep., Dkt. 53-22, at 9:3-12.

That later, under leading questioning from both of his sister-in-law's attorneys, Laforest testified to a different but decidedly implausible sequence of events only underscores his utter lack of credibility. But more to the point, his later version is directly contradicted by the documentary evidence produced by non-party Dealertrack in response to Plaintiff's subpoena, documentary evidence Plaintiff cited in opposition to Defendants' summary judgment motion. *See* Plaintiff's Memo of Law in Opp., Dkt. 55, p. 20. However, as this Court can see, Plaintiff's counsel deftly omitted any reference to the sequence of credit pulls established by those very documents. *Id.*

Note also that the documented sequence of credit pulls is precisely the sequence that would have been followed were Francois herself present, or had an impersonator accompanied LaForest, or if, as Plaintiff would have it, LaForest appeared alone with the documents and information required to deceive Spartan.

The undisputed Dealertrack evidence definitively eliminates the proposition that Spartan reviewed Singer's credit report before running Francois credit and determining to submit the credit application in her name. *See* Dkt. 60, p. 17. Rather, Spartan simply proceed with that credit application as requested and presented by Laforest in the first instance. In sum, the sequence of

Spartan's credit pulls is established by the undisputed Dealertrack documents and stands uncontradicted by any credible evidence in the record herein.

### D.     Spartan Had a Permissible Purpose for Obtaining Francois' Credit Report

This Court appears to have initially accepted that Defendants established *prima facie* that they had a permissible purpose to pull Plaintiff's credit reports within the meaning of 15 U.S.C. § 1681b(a)(3) because they had a good faith reason to believe that Plaintiff approved those pulls. Def. Memo of Law, Dkt. 50, pp. 14-18. Your Honor will recall that Defendants relied on several analogous FCRA cases in which entities were victimized by identity theft, including *Domante v. Dish Networks,* 974 F.3d 1342, 1345 (11th Cir. 2020) and *Bickley v. Dish Network, LLC*, 751 F.3d 724 (6th Cir. 2014). Further, the determination of permissible purpose "presents a question of law that may be decided in the context of a motion for summary judgment." *Edge v. Professional Claims Bureau, Inc.,* 64 F.Supp. 2d 115, 117 (E.D.N.Y. 1999, Wexler, J.), and a showing of permissible purpose constitutes a complete defense to §§ 1681q and 1681n claims. *See Edge,* 64 F. Supp. at 117.

Only by relying on the assumed but inaccurate sequence of credit pulls did this Court find an issue of fact as to whether a reasonable jury could find that Spartan had no permissible purpose to pull Francois' credit report and might be liable under 15 U.S.C. 1681(q). But with that credit pull sequence clarified, and considering Laforest's admitted and thorough theft of Francois's identity, Spartan personnel certainly had a good faith permissible business purpose to pull Francois' credit report. Put differently, there exists no evidence in the record from which a jury could reasonably find that Spartan willfully violated Plaintiff's rights under the FCRA.

### E. Spartan's Credit Pull Was Not a But-For Cause of Francois' Emotional Damages

On the record now clarified, there exist no facts upon which a reasonable juror could find that Spartan's alleged pulling of Francois' credit without her consent was a but-for cause of the vehicle sale in question and Francois' any emotional damages that may have flowed therefrom.

To reiterate, pulling Francois' credit report was merely a timesaving aid for Spartan's finance manager to avoid submitting credit applications doomed for rejection. As discussed in Defendants' underlying Memorandum of Law, and accepted by Plaintiff in opposition, Spartan used Plaintiff's credit report only as a means "to see which consumer 'qualifies' for certain lenders based on their 'guidelines'" and Spartan would have taken steps to consummate a sale regardless of Francois' credit score. Pl. Rule 56.1 Statement, Dkt. 54, ¶¶ 162-164. An established credit history is not a prerequisite for vehicle financing, and Laforest could have requested to purchase the vehicle alone in which case Spartan would have proceeded because "[y]ou don't need credit history to necessarily purchase a car." Pl. Rule 56.1 Statement, Dkt. 54, ¶ 164 *quoting* Orsaris Deposition at 68:10-15.

Even with no credit score, Laforest may have been able to obtain financing, albeit with a significantly higher downpayment and with significantly worse financing charges, all of which is presumably why he stole his sister-in-law's identity and why, assuming he traveled to the dealership alone, he represented that he had Francois's permission to apply for financing in her name. Again, Spartan pulled Francois' credit report merely to identify lenders with programs that would best fit her credit profile before beginning the application process.

It bears emphasis that Spartan did not include Francois' credit report with the credit application submitted to Capital One, and that application did not contain any information obtained from Francois' credit report. *See,* Vallejo Dep., Dkt. 53-2, at 206:20-208:18; Perez Dep., Dkt. 53-

8

1, at 211:25-212:4; Orsaris Dep., Dkt. 53-4, at 208:10-18; Deal Jacket, Dkt. 53-5, pp. 19-21. Again, Capital One executed and relied on its own pulls of Francois' credit report, (Pl. Rule 56.1 Statement, Dkt. 54, ¶ 317; TransUnion Credit Report, Dkt. 53-36, FRANCOIS 174; Equifax Credit Report, Dkt. 53-37, FRANCOIS 82), as it conducted its independent analysis of the application.

Meanwhile, Plaintiff herself acknowledged that her distress arose from the "fraudulent loan" issued by Capital One. Pl. Aff, Dkt. 53-18, ¶ 22. But Spartan's credit pull played no part in Capital One's processing, approval, or issuance of that loan, and the credit application in Francois' name, even if it were fraudulent as Plaintiff alleges, did not violate the provisions of the FCRA she invokes

In short, in contrast to the actual financing and sale of the vehicle, not to mention Laforest's subsequent misuse of the vehicle, and particularly his ugly threats to Francois' wellbeing in response to her role in his arrest, there exists no legally cognizable causal link between Plaintiff's distress and Spartan's one-off credit pull. Plaintiff's Dep., Dkt. 49-5, at 59:11-60:19, 88:5-92:13, 94:14-25, 108:11-110:15, 220:19-221:5; 230:18-232:13.

Spartan expects Plaintiff in opposition herein will attempt to argue that Spartan was Francois' "creditor," and thus relied on Francois' credit report in making the determination to extend her credit. Plaintiff did not plead this theory,[7] nor did she argue it in her papers in opposition to Defendants' summary judgment motion, but instead she attempted to raise it for the first time at oral argument herein by offering previously uncited caselaw. Your Honor properly rejected Plaintiff's untimely effort and for the same reasons Your Honor should refuse to consider that argument now.

---

[7] Rather, Plaintiff explicitly pleads that "To obtain financing for this fraudulent transaction, Emmanuel Laforest and Victory Mitsubishi **applied for financing**, in Plaintiff's name, **from several potential creditors**." Amended Complaint, Dkt. 26, ¶ 49 (emphasis added).

Should this Court nonetheless consider that belated argument, it holds absolutely no water. While the Retail Installment Contract (the "RIC") identifies Spartan as the "Seller-Creditor" on the first page, (Deal Jacket, Dkt 53-5, p. 4), at no point during the transaction at issue did Spartan offer to extend credit to Francois, to Laforest, or to anyone else, much less did Spartan actually extend anyone credit. Indeed, the RIC goes on to state "Seller assigns its interest in this contract to CAPITAL ONE AUTO FINANCE" without recourse. Deal Jacket, Dkt. 53-5, p.9. Thus, with the execution of the RIC, Spartan simultaneously assigned its interest therein to Capital One. Accordingly, at no point was Victory Francois' creditor in fact.

Because Victory was not for any purpose relevant herein a "creditor," and because it is undisputed that Victory did not transmit or otherwise share the contents of Francois' credit report with Capital One, or with any other financial institution in conjunction with the credit application in her name, there exists no proximate connection between the credit pull and the eventual sale of the Vehicle. Thus, the alleged chain of causation between the alleged FCRA violation and Plaintiff's subsequent emotional harm did indeed break at the very first link.

## <u>CONCLUSION</u>

For all the reasons set forth above, Defendants request that this Court enter an Order, pursuant to Local Civil Rule 6.3 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, granting reconsideration of Defendants Summary Judgment and, upon reconsideration, dismissing Count I of Plaintiff's First-Amended Complaint in its entirety, as to all Defendants, together with such other and further relief as this Court deems just and proper.

Dated: New York, New York
     August 1, 2023

BY: _____
       H. Nicholas Goodman
       Patrick L. Selvey