**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------X
**FARAH JEAN FRANCOIS,**

                                                        **Case No.: 1:22-cv-4447-JSR**

                                 **Plaintiff,**

                 **-against-**

**VICTORY AUTO GROUP LLC d/b/a**
**VICTORY MITSUBISHI,**
**SPARTAN AUTO GROUP LLC d/b/a**
**VICTORY MITSUBISHI,**
**STAVROS ORSARIS,**
**YESSICA VALLEJO,**
**DAVID PEREZ,**
**DIANE ARGYROPOULOS, and**
**PHILIP ARGYROPOULOS,**

                                 **Defendants.**
-----------------------------------------------------------------------X

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'**
**MOTION FOR RECONSIDERATION**

**TABLE OF CONTENTS**

I.    **INTRODUCTION** ...................................................................................................... 1

II.   **STATEMENT OF FACTS** .................................................................................... 2

III.  **ARGUMENT** ........................................................................................................... 3

    A.   *The Standard for Reconsideration* ...................................................................... 3

    B.   *Spartan Had No Permissible Purpose for Obtaining Francois' Credit Report, and Did So Willfully* ........................................................................................................................... 4

    C.   *The Unauthorized Pull of Plaintiff's Credit Report Was the Proximate Cause of Her Emotional Distress* ................................................................................................................. 6

IV.  **CONCLUSION** ..................................................................................................... 10

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012)..........................4

*Babaev v. Grossman*, No. 03-CV-5076 DLI WDW, 2007 WL 3197393, at *1 (E.D.N.Y. Oct. 26, 2007) .........................................................................................................................................3

*In re Fosamax Products Liab. Litig.*, 815 F. Supp. 2d 649, 651-52 (S.D.N.Y. 2011) ...................3

*Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir.1995) ........................................................3

*Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 605 (S.D.N.Y. 2012)............................................4

## I.     INTRODUCTION

Defendants now move this Court for reconsideration of the July 13, 2023 Order on Defendants' Motion for Summary Judgment (Dkt. No. 60, hence "the Order") as to the denial of that Motion as to the issues of (1) the Fair Credit Reporting Act (FCRA) violation causing Plaintiff's emotional distress actual damages, and (2) the FCRA violation being willful.[1] The Order decided both of these issues based on the same undisputed facts – that documents from the Dealertrack software clearly show that Defendants pulled the credit reports of Emmanuel LaForest and Jami Singer before selling the Vehicle in the name of the Plaintiff Farah Jean Francois. Defendants do not raise any dispute to the fact that they pulled the credit reports of Emmanuel LaForest and Jami Singer before selling the Vehicle in the name of the Plaintiff. Instead, Defendants contend that the Court was mistaken about this statement: "credit checks appear to have been run first for LaForest, then for his friend Jami Singer, and only finally for Francois." Dkt. No. 64, p. 2 *citing* the Order, pp. 19-20.

Defendants are correct that the credit report of Farah Jean Francois was pulled before the credit report of Jami Singer. Dkt. No. 64, pp. 3-4. However, this clarification alone does not void the conclusions made in the Order as to causation and as to willfulness as it was not the basis of those conclusions. Defendants' sequence of events (*Id.*) conveniently leaves out the fact that makes the reasoning of the Order sound – that the Vehicle was not sold in the Plaintiff's name until the credit reports of both Emmanuel LaForest and Jami Singer were pulled. This sequence, that the Dealership checked the credit reports of LaForest and Singer before making the sale in the name of Ms. Francois, is more than enough for the Court to still come to the conclusions of (1) "a plausible inference that Victory Auto at first declined to sell the car to either LaForest

---

[1] While on the front end stating that these are the grounds on which they wish for this Court to reconsider the Order, Defendants subsequently attempt to relitigate a number of other issues. For the reasons stated below, these relitigations should be rejected as both procedurally improper as well as not meeting the standard for reconsideration.

individually or to LaForest and Singer because their credit was insufficient" (the Order, p. 17) and (2) "a factfinder could reasonably conclude that defendants were aware of the possibility or even likelihood that LaForest was acting without authorization and simply running as many peoples' credits as he could to get a sale consummated and chose to disregard that possibility in order to make a sale" (the Order, pp. 19-20).

## II.    STATEMENT OF FACTS

The following facts correspond to Plaintiffs' Local Rule 56.1 Statement of Material Facts in Opposition to Defendants' Motion for Summary Judgment ("Pl. 56.1"), based on exhibits attached to the corresponding March 15, 2023 Declaration of Ahmad Keshavarz ("Keshavarz Decl"). Both documents were filed in opposition to Defendants' Motion for Summary Judgment [Dkt. Nos. 49-52].

On May 30, 2020, Emmanuel Laforest went into Victory Mitsubishi alone. Pl. 56.1 ¶ 188. Jami Singer was not in the Dealership on May 30, 2020. *Id.* ¶¶ 220-225. While the witnesses have conflicting accounts of what happened, the Dealertrack histories for Emmanuel Laforest (Dkt. No. 53-09), Jami Singer (Dkt. No. 53-10), and Farah Jean Francois (Dkt. No. 53-11) provide an indisputable chronology of what occurred. At 4:39 p.m., Defendant David Perez pulled the credit report of Emmanuel LaForest (Dkt. No. 53-09). At 4:55 p.m., an unknown person or persons used the Dealertrack login of former employee Yosmaily Ventura to pull the credit report of Farah Jean Francois (Dkt. No. 53-11, p. 6). A credit application was submitted with Ms. Ventura's login in the name of Ms. Francois at 4:58 p.m (*Id.*). At 4:59 p.m., the Dealership received two approvals in response to the credit application (*Id.,* pp. 5-6). For one hour and 10 minutes, no further activity took place on Dealertrack in the name of Farah Jean Francois. *Id.,* p. 5. At 6:07 p.m., Defendant Yessica Vallejo pulled the credit report of Jami Singer (Dkt. No. 53-10). Merely two minutes later, at 6:09 p.m., rather than continuing to work

the deal in the name of Jami Singer, Defendant Yessica Vallejo copied the credit application that had been done with the Dealertrack login of Yosmaily Ventura (Dkt. No. 53-11, p. 5). Another two minutes later, at 6:11 p.m., Defendant Vallejo began submitting further credit applications in the name of the Plaintiff Farah Jean Francois (*Id.*).

The Dealertrack history for the Plaintiff shows no contract being entered into on May 30, 2020 (Dkt. No. 53-11, pp. 4-6; *see also* Pl. 56.1 ¶¶ 254-255). However, Emmanuel LaForest did make the downpayment on May 30, 2020 at 8:04 P.M. – after all the credit reports had been pulled. Pl. 56.1 ¶ 240. On June 20, 2020 at 3:08 a.m., the Dealertrack system made an entry for Emmanuel LaForest recommending an adverse action[2] (Dkt. No. 53-9). On the same date and time, June 20, 2020 at 3:08 a.m., the Dealertrack system made an entry for Jami Singer recommending an adverse action (Dkt. No. 53-10).

It was only after pulling the credit reports of Emmanuel LaForest and Jami Singer, and after the Dealertrack system made entries recommending adverse actions for Emmanuel LaForest and Jami Singer, that on June 29, 2020 Defendant Yessica Vallejo marked the Vehicle as sold in the name of Farah Jean Francois and booked the contract (Dkt. No. 53-11, p. 1).  As of this filing, the Dealership still has the Vehicle, the $29,462.81 payment from Capital One for the Vehicle, and the $8,500 downpayment for the Vehicle from Emmanuel Laforest Pl. 56.1 ¶¶ 320-322.

### III.    ARGUMENT

#### A.  The Standard for Reconsideration

Motions for reconsideration may be granted where the moving party "point[s] to controlling decisions or data that the court overlooked," and demonstrates "that the factual

---

[2] In relevant part, the FCRA, 15 U.S.C. § 1681a(k)(iv), defines "adverse action" as an action or determination, adverse to the interests of a consumer, made in connection with an application that was made by or initiated by any consumer.

matters or controlling precedent overlooked by the court 'were presented to it on the underlying motion.'" *Babaev v. Grossman*, No. 03-CV-5076 DLI WDW, 2007 WL 3197393, at *1 (E.D.N.Y. Oct. 26, 2007). To prevail in a motion for reconsideration the moving party must "set[ ] forth concisely the matters or controlling decisions which counsel believes the court has overlooked." *In re Fosamax Products Liab. Litig.*, 815 F. Supp. 2d 649, 651-52 (S.D.N.Y. 2011). "Reconsideration is appropriate only where a court has overlooked controlling decisions or facts presented in the underlying motion which, had they been considered, might reasonably have altered the result of the initial decision" *Id. citing Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir.1995).

"Reconsideration is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 605 (S.D.N.Y. 2012). Reconsideration is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012).

### B.  Spartan Had No Permissible Purpose for Obtaining Francois' Credit Report, and Did So Willfully.

Defendants argue that "Only by relying on the assumed but inaccurate sequence of credit pulls did this Court find an issue of fact as to whether a reasonable jury could find that Spartan had no permissible purpose to pull Francois' credit report and might be liable under 15 U.S.C. § 1681q." Dkt. No. 64, p. 7. Defendants do not cite or quote any portion of the Order for this alleged delineation of how the Court concluded that Spartan had no permissible purpose to pull the credit report. Indeed, the Court only addresses Defendants' "good faith" argument in reference to Defendants arguing that the credit pulls were not willful. The Order, p. 19. Plaintiff presumes that the Court only addressed the "good faith" arguments in this context because

Defendants only used those arguments in its arguments that "Plaintiff cannot establish that any Defendant knowingly and willfully obtained Plaintiff's credit report." Dkt. No. 50, p. 14. Indeed, Defendants admitted that "None of this is to say that Plaintiff may be able to raise an issue of fact as to whether Spartan personnel obtained her credit report as a result of negligence." *Id.,* p. 17. Accordingly, Defendants' reconfiguration of its "good faith" argument to argue that there was a permissible purpose and thus no FCRA violation at all is improperly raising a new argument in a motion for reconsideration and should be disregarded.

Regardless, Defendants' arguments would fail because, as the Court concluded in the Order, "a factfinder could reasonably conclude that defendants were aware of the possibility or even likelihood that LaForest was acting without authorization and simply running as many peoples' credits as he could to get a sale consummated and chose to disregard that possibility in order to make a sale." The Order, pp. 19-20. Oddly, while arguing that the Court was mistaken about the sequence of when each person's credit report was pulled, Defendants do not seem to disagree with this fundamental conclusion that was the basis for the Court finding a genuine issue of fact as to Defendants' willfulness: "Spartan's personnel did not initially decline to sell the vehicle to Laforest, but rather determined that submitting a credit application in Francois' name would result in more favorable terms." Dkt. No. 64, p. 4, fn. 2. Defendants go even further and state that "Even with no credit score, Laforest may have been able to obtain financing, albeit **with a significantly higher downpayment and with significantly worse financing charges**" (*Id.,* p. 8) [emphasis added] – in other words, Defendants admittedly believe that LaForest could not have obtained the terms of the sale and financing of the Vehicle in his own name, and only was able to do so by having Ms. Francois' credit report pulled.

Plaintiff agrees – Defendants did not initially decline to sell the Vehicle in the name of

any of the identities (Emmanuel LaForest, Farah Jean Francois, or Jami Singer) that Emmanuel LaForest presented to Defendants. It was only after the credit reports of all three had been pulled that Defendant Yessica Vallejo resumed submitting credit applications in the name of Farah Jean Francois and eventually sold and financed the Vehicle in her name. *See* Dkt. No. 53-11, pp. 1-4 (resubmitting the applications beginning at 6:14 p.m. on May 30, 2020 and marking the Vehicle as sold and booking the contract on June 29, 2020 at 6:46 p.m.). This sequence still creates an inference "that defendants were aware of the possibility or even likelihood that LaForest was acting without authorization and simply running as many peoples' credits as he could to get a sale consummated and chose to disregard that possibility in order to make a sale" (the Order, p. 20), regardless of Ms. Francois' credit report being pulled before Jami Singer's credit report.

### C. The Unauthorized Pull of Plaintiff's Credit Report Was the Proximate Cause of Her Emotional Distress.

Defendants are correct that Plaintiff has and will continue the argument that the Dealership was the creditor in the sale and financing of the Vehicle in the Plaintiff's name. *See* Dkt. No. 53-05, p. 4 ("Seller-Creditor (Name and Address) VICTORY MITSUBISHI"). And to the contrary, Plaintiff attached the undisputed controlling contract that expressly names the Dealership as the creditor (Dkt. No. 53-05, p. 4), whereas Defendants' argument that the Dealership is not the creditor has no basis in the factual record of the Motion for Summary Judgment. The Defendants bizarrely point to the assignment of the Dealership's interest to Capital One to argue that the Dealership was not a creditor – but of course, interest in a loan can only be assigned by the creditor. Defendants' contract metaphysics, that "Spartan simultaneously assigned its interest therein" (Dkt. No. 64, p. 10), is still a tacit admission that Spartan had an interest to assign and thus was a creditor upon execution, even if it instantaneously became the creditor-assignor and Capital One the assignee. You cannot assign what you do not have.

Defendants argue "Your Honor properly rejected Plaintiff's untimely effort [to argue the Dealership was a creditor]" (Dkt. No. 64, p. 9) – however, this misstates what occurred at the hearing. Your Honor rejected the attempt by Plaintiff's counsel to cite to a case because it was not provided to opposing counsel prior to the hearing. *See* Dkt. 61, Oral Argument (attached as Exh A) ("Trans.") 14:24-15:15. The Court did not prevent Plaintiff's counsel from responding to the argument that the Dealership was not a creditor generally (Trans. 15:16-22) as that argument was made, for the first time, by Defendants in their Reply (Dkt. No. 57, "Spartan does not provide credit or financing directly to consumers"), and raised by Defendants in oral argument. Transcript 7:1 ("we don't issue credit."). *Cf.* Tran. 9:12-17 ("And one of the key arguments that we want to address from the reply is that they argue … Victory Mitsubishi is not a creditor.") Plaintiff argued that even without citation to the precluded decision, the argument prevails based on the face of the retail instalment contract. Trans. 15:16-21. ("but even without looking at the case, it's just clear from the face of the contract itself. It lists Victory Mitsubishi as the creditor, and then it says at the bottom of the contract that they're assigning their interest in the contract to Capital One.").

And Defendants now raise it again, this false statement of fact directly contradicted by the contract at issue in this case (Dkt. No. 53-05, p. 4 ("Seller-Creditor (Name and Address) VICTORY MITSUBISHI")), under the pretense of preemptively responding to an "untimely" argument by Plaintiff.

But the Order did not rule on this issue one way or another, and it need not do so to uphold its ruling that "the sequencing of these credit pulls create a plausible inference that Victory Auto at first declined to sell the car to either LaForest individually or to LaForest and Singer because their credit was insufficient. Then, once Francois' credit came back as stronger,

the dealership allowed the sale to go forward." The Order, p. 17. This statement is true regardless of whether the credit report of Francois was pulled before the credit report of Jami Singer. And the statement is also true whether or not Dealership is determined to be a creditor. Under 15 U.S.C. § 1681b(f), a permissible purpose is require of "any person" who "use or obtain a consumer report **for any purpose**" [emphasis added] – not just for purposes of extending credit.

The continued validity of this Court's conclusions can be unpacked by breaking down the conclusion into each of its factual components. First, the Dealership declined to sell the Vehicle in the name of LaForest before selling it to Ms. Francois. After pulling the credit report of LaForest at 4:39 p.m. (Dkt. No. 53-09), no credit applications were submitted in his name (*Id.*), and an adverse action was recommended on June 20, 2020 (*Id.*), 9 days before, on June 29, 2020, the Vehicle was marked as sold and financed in the name of Farah Jean Francois (Dkt. No. 53-11, p. 1). Second, the Dealership declined to sell the Vehicle in the name of Singer before selling it to Ms. Francois. After pulling the credit report of Singer at 6:07 p.m. (Dkt. No. 53-10), no credit applications were submitted in her name (*Id.*), and an adverse action was recommended on June 20, 2020 (*Id.*), 9 days before, on June 29, 2020, the Vehicle was marked as sold and financed in the name of Farah Jean Francois (Dkt. No. 53-11, p. 1).

Defendants attempt to inflate the importance of the initial credit applications submitted in the name of Farah Jean Francois before the credit report of Jami Singer was pulled. Dkt. No. 64, p. 4. But for one hour and 10 minutes after those initial credit applications and approvals, no further activity took place on Dealertrack in the name of Farah Jean Francois. Dkt. No. 53-11, p. 5. It was only two minutes after Defendant Yessica Vallejo pulled the credit report of Jami Singer (Dkt. No. 53-10) that, at 6:09 p.m., activity for Farah Jean Francois resumed when Defendant Yessica Vallejo copied the credit application that had been done with the Dealertrack

login of Yosmaily Ventura (Dkt. No. 53-11, p. 5). Another two minutes later, at 6:11 p.m., Defendant Vallejo began submitting further credit applications in the name of the Plaintiff Farah Jean Francois (*Id.*).

Defendants do not address this full sequence of events, and indeed there is no explanation they could have that would not be fantastical and contrary to the evidence. In summary, Defendants want this Court to reject its prior reasoning and instead assume that (1) it was just a coincidence that activity on the Francois account stopped until the credit report of Jami Singer was pulled; and (2) it was just a coincidence that when credit applications on the Francois account resumed that it was the same employee, Defendant Yessica Vallejo, who pulled the credit report of Jami Singer. Nor have Defendants ever countered the clear evidence that Jami Singer was not in the Dealership on May 30, 2020 (Dkt. No. 54, ¶¶ 220-225).

Rather than address the full sequence of events or provide a plausible alternative explanation for why Defendant Yessica Vallejo would only work the Francois account after pulling Jami Singer's credit report, Defendants return to the arguments that this Court already ruled against: (1) the Dealership not sending the impermissibly pulled credit report to Capital One prevents a finding that the impermissible pull caused the sale and financing of the Vehicle, and (2) LaForest use of the Vehicle and threats to Francois were superseding causes of the emotional distress. Dkt. No. 64, pp. 8-9. These arguments were expressly considered by this Court in the Order:

> "Defendants contend that Francois has failed to demonstrate any evidence of injury because the chain of events "between Spartan pulling her credit reports and events thereafter, those events being the submission of a credit application in Plaintiff's name, Capital One's approval of the loan, the Vehicle being titled to Plaintiff and delivered to Laforest, followed by Laforest's traffic violations, Plaintiff confronting him and having him arrested, and ultimately Laforest threatening her resulting and Plaintiff fleeing her marital home . . . breaks at the very first link." Defs. Mem. 4. This is because, according to defendants', their pulling Francois credit report was "not the 'predicate first step' for obtaining financing." Id. In this

regard, defendants point to evidence that Francois' credit report was not even included in the credit application submitted to Capital One, and that the banks conducted their own credit pulls on which they relied after the financing application was submitted. Vallejo Dep. 206:20-208:18, Dkt. 53-2; Defs. Reply Br. Supp. SJ ("Defs. Reply") at 4, Dkt. 57. And Francois herself has admitted that defendants used their credit reports "to see which consumer 'qualifies' for certain lenders based on their 'guidelines,'" but that the dealership would ultimately "just proceed forward" and "[i]t doesn't matter what someone's [credit] score is." Pl. Rule 56.1 Statement ¶¶ 162-163. Accordingly, defendants contend that, even accepting Francois' version of the facts, their initially pulling Francois' credit information was not causally linked to the vehicle ultimately being sold and financed in Francois' name." The Order, pp. 16-17.

And contrary to Defendants' insinuation, these arguments were not rejected based on the sequence of when credit reports were pulled, but rather the fact that the credit reports of Emmanuel LaForest and Jami Singer were pulled before the sale and financing of the Vehicle in Ms. Francois' name, something Defendants do not and cannot dispute:

> "But this argument ignores that fact that Francois has introduced evidence that before a car was ultimately sold to LaForest in Francois' name, with financing in Francois' name, credit checks were initially performed by the dealership at LaForest's request on LaForest himself and then a friend of his, Jami Singer, at which point no sale was approved. See, e.g., Singer Dep. 04:24-05:01, 08:06-11, Dkt. 53-28; Singer Deal Jacket, Dkt. 53-10." The Order, p. 17.

Accordingly, the fact that Ms. Francois' credit report was pulled before Jami Singer's credit report is irrelevant as to the Court's rejection of Defendants' arguments about not submitting the credit report to Capital One and Emmanuel LaForest's conduct superseding the impermissible pull as the cause of emotional distress. The only relevant sequence is the credit reports of Jami Singer and Emmanuel LaForest being pulled before the sale and financing in Ms. Francois' name for the Vehicle were made, and that is undisputed.

## IV.   CONCLUSION

Thus, while Defendants are correct that the credit report of Farah Jean Francois was pulled prior to the credit report of Jami Singer, this fact does not invalidate or necessitate reconsideration of the Order, and Plaintiff requests that Defendants' Motion for Reconsideration be denied in full.

Dated: Brooklyn, New York
          August 15, 2023

Respectfully submitted,
/s/
Emma Caterine
ATTORNEY FOR PLAINTIFF
The Law Office of Ahmad Keshavarz
16 Court St., 26th Floor
Brooklyn, NY 11241-1026
Phone: (718) 522-7900
Fax:     (877) 496-7809
Email: ahmad@NewYorkConsumerAttorney.com

11