UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
FARAH JEAN FRANCOIS,

            Plaintiff,                      22-cv-04447 (JSR)

    -v-                                     MEMORANDUM ORDER

VICTORY AUTO GROUP LLC d/b/a
VICTORY MITSUBISHI, et al.

            Defendants.
```

JED S. RAKOFF, U.S.D.J.:

On July 13, 2023, the Court granted in part and denied in part defendants' motion for summary judgment. See July 13, 2023, Memorandum Order (Dkt. 60) (the "Order"). Specifically, the Order granted summary judgment with respect to plaintiff's negligence claim, finding she had failed to adduce sufficient evidence of economic injury, and granted summary judgment as to all claims with respect to certain other defendants who had no involvement in the underlying conduct, but denied summary judgment with respect to plaintiff's Fair Credit Reporting Act ("FRCA") claim as to the remaining defendants, finding that emotional distress damages are available under the FRCA and a genuine dispute of material fact existed as to causation and the willfulness of defendants alleged violation. Defendants have now moved for reconsideration of this last portion of the Order, arguing the case should have been dismissed in its entirety.

A motion for reconsideration should generally be granted "only when the defendant identifies [1] an intervening change of controlling

1

law, [2] the availability of new evidence, or [3] the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 104 (2d Cir. 2013) (quotation marks and internal citation omitted). The movant generally must "point to controlling decisions or data that the court overlooked -- matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

In support of their motion for reconsideration, defendants do not identify any error of law or new evidence. Rather, they argue that the Court misapprehended the factual record in denying their prior motion and that correcting this error is necessary to prevent manifest injustice. Specifically, a key question in this case was whether defendants knew or should have known that LeForest -- plaintiff's brother-in-law -- was acting without authorization when LeForest purchased a vehicle from defendants in plaintiff's name. Defendants argue that the Order erroneously suggested that, on the day LeForest purchased the vehicle, the dealership first pulled LeForest's credit, then the credit of LeForest's friend Jami Singer, and then finally the credit of plaintiff, when in fact the record demonstrates that plaintiff's credit was pulled second and Singer's credit was pulled third. According to defendants, in light of this clarified order of credit pulls, there was no basis for the Court to conclude that there was a genuine dispute of fact as to either the question of willfulness or causation.

As explained below, the Court disagrees that this single factual determination warrants reconsideration.

I. **Good Faith/Willfulness**

Much of this case turns on the factual question of whether defendants knew or should have known that LeForest was acting without Francois' authorization, a question this Court left to the jury to decide. If defendants pulled Francois' credit either knowing Francois' had not authorized any use of her credit to back LeForest's car purchase in her name, or in reckless disregard of the lack of any such authorization, then that would constitute a willful violation of the FRCA. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57 (2007); *Williams v. USAA Sav. Bank*, 2022 WL 16951665, at *8 (W.D. Mo. Nov. 15, 2022) ("Under the FCRA, willfulness encompasses both knowing and reckless violations of the statute."). By contrast, if defendants reasonably believed Francois had given LeForest permission to purchase a vehicle in her name, defendants would have had a permissible purpose to pull her credit, providing a complete defense. *See* 15 U.S.C. § 1681b(a)(3)(A).

As the Court's prior order explained, the fact that the dealership ran the credit of LaForest, Singer, and Francois before submitting a credit application in Francois' name suggests "that defendants were aware of the possibility or even likelihood that LaForest was acting without authorization and simply running as many peoples' credits as he could to get a sale consummated." July 13, 2023 Order, at 20. The fact that Francois' credit was pulled second, and Singer's credit was

3

pulled third, does not undermine this inference. Rather, the key fact, and the one the remains undisputed, is that the credit of all three individuals -- LeForest, Francois and Singer -- was pulled before any credit application was filed for Francois. If, as defendants suggest, LeForest came in with the intent of purchasing a vehicle in Francois' name and brought with him someone to impersonate Francois (as defendants insist took place), there would have been no need even to pull LeForest's credit, let alone LeForest's and Singer's. The fact that the dealership ran all three individuals' credit, and only after doing so submitted a credit application in the name of the individual who had the best credit, supports an inference of misconduct by suggesting that LeForest, and perhaps even the dealership, were simply fishing for credit without regard to whether there was authorization to do so.

The fact that Singer's and Francois' credits were both run before any sale was consummated is relevant for another reason. Defendants' employees, including Spartan's corporate representative, insisted at their respective depositions that the dealership has a firm policy of never pulling a customer's credit if the customer is not physically present at the dealership. *See* Defs. 56.1 Statement ¶ 22; Vallejo Dep. (Dkt. 53-2), at 94:5-13, 160:2-164:2; Resp. to Pls. Counter-56.1 Statement (Dkt. 57-1) ¶ 217. Indeed, these witnesses had only vague recollections of the actual day LeForest purchased the vehicle, and the witnesses cited this policy as the principal basis for their conclusion that the store did not engage in any misconduct that day.

4

But documentary evidence clearly establishes that Singer's credit was pulled that day, even though Singer testified she was not present at the dealership. See Keshavarz Decl. Ex. J (Dkt. 53-10); Defs. Counter 56.1 Statement (Dkt. 57-1) ¶¶ 220-225.[1] While Singer did consent to have her credit used -- unlike plaintiff, who denies she ever gave such consent -- the fact that Singer's credit was pulled without her presence and without her ever being contacted by the dealership demonstrates that whoever was working at the dealership that day was willing to violate the dealership's policies (or was not aware of them). This fact substantially undermines the credibility of the defense witnesses who denied any wrongdoing principally by relying on those policies.

And to be clear, the order of credit pulls was not the only evidence of wrongdoing relied upon by the Court in its prior ruling. LaForest himself testified at his deposition that the sales representative he spoke with at the dealership "didn't even bother to ask" if LaForest had Francois' permission to purchase a car in Francois' name. LaForest Dep. (Dkt.53-22), at 58:19-24. LaForest testified further that he informed the dealership's sales

---

[1] While defendants offer the vague suggestion that someone who may have impersonated Singer may also have been present at the dealership, that is sheer speculation and is contradicted by testimony from other defense witnesses that suggests there was, at most, two people who came in that day (i.e. LeForest and Francois or her impersonator). If it is true that the second person present was impersonating Singer, then that would simply establish the dealership was willing to run Francois' credit without her ever being physically present.

5

representative he would need to obtain Francois' permission before purchasing a car in her name, but that the representative said "let me just run her name down and see if she gets approved. If she gets approved, then we'll see if we can go from there." LaForest Dep. (Dkt. 53-22), at 40:05-23. This testimony, if true, would be sufficient to establish that defendants acted recklessly or knowingly in violating the FCRA by pulling Francois' credit without her authorization.

Defendants claim that the Court should have completely disregarded this testimony because LaForest at times contradicted himself during his deposition and plaintiff herself testified that LeForest is a liar. *See* Reconsideration Mot. at 5-6; Resp. to Pls. 56.1 Statement (Dkt. 57-1) ¶¶ 217, 228. But the Court was not at liberty to simply ignore LeForests testimony on these grounds. It is well settled that "[a] witness may be inaccurate, contradictory and even untruthful in some respects and yet be entirely credible in the essentials of his testimony." *United States v. Tropiano*, 418 F.2d 1069, 1074 (2d Cir. 1969). In all but the clearest cases, "[i]t is the province of the jury and not of the court to resolve discrepancies in a witness' testimony which in any way reflect upon his credibility." *Id.* at 1074.

In any event, as already indicated, LaForest's testimony is far from the sole evidence of misconduct by defendants. But when combined with the evidence described above, which both tends to support an inference of misconduct and tends to undermine the narrative of defendants' own witnesses, the Court found in its Order of July 13,

6

2023, that a genuine dispute of material fact exists as to whether defendants' acted willfully. The evidence the Court supposedly overlooked, which provides the sole basis for defendants' reconsideration motion, does not change this conclusion.

## II. Causation

Defendants challenge, on similar grounds, the Court's prior conclusion that there exists a dispute of fact as to whether the alleged FCRA violation -- pulling Francois' credit without her authorization -- caused plaintiff emotional distress. Defendants claim that "[e]ven with no credit score, Laforest may have been able to obtain financing, albeit with a significantly higher downpayment and with significantly worse financing charges, all of which is presumably why he stole his sister-in-law's identity." Reconsideration Mot. at 8. But, as this Court's prior Order found, the fact that LeForest's and Singer's credit were both pulled before the sale was eventually consummated in Francois' name supports an inference that the dealership did, in fact, decline to sell the car unless Francois' credit was used. As with the question of willfulness, the single fact the Court purportedly overlooked, that Singer's credit was pulled after Francois', does not change this conclusion, because all three credits were pulled before a credit application was ultimately submitted in Francois' name.

Further, even if the dealership were willing to go forward with a sale in LeForest's name alone, it does not follow that a sale would have been consummated regardless of whether Francois' credit was

7

pulled. As it was, LeForest was required to put down a substantial $8,000 downpayment using Francois' credit, which was substantially superior to that of LeForest or Singer. Defendants concede that, without this credit, the downpayment and associated financing terms would have been substantially worse. *See* Reconsideration Mot. at 8 ("Even with no credit score, Laforest may have been able to obtain financing, albeit with a significantly higher downpayment and with significantly worse financing charges . . . ."). It is thus entirely plausible, even likely, that had Francois' credit not been pulled and used, LeForest would not have been able to purchase the car at all (let alone in Francois' name) because he could not have afforded the downpayment required of an individual without credit.

The fact that Francois' credit report prepared by Spartan was not included in the credit application to Capital One is also beside the point. Had Francois' credit not been pulled by defendants, it is entirely reasonable to infer that no credit application would have been submitted in her name, and the car would not have been purchased in her name. However one looks at it, the allegedly unlawful credit pull was a but-for cause of the purchase of the vehicle in Francois' name, or so a jury could reasonably infer. Defendants have thus failed to identify any basis warranting the Court's reconsideration of its that conclusion a genuine issue of material fact exists with respect to the question of causation.

For the forgoing reasons, defendants' motion for reconsideration (Dkt. 63) is hereby denied in its entirety.

SO ORDERED.

New York, NY
February 2, 2024

_____
JED S. RAKOFF, U.S.D.J.