UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FARAH JEAH FRANCOIS,<br><br>                              Plaintiff,<br><br>            -against-<br><br>VICTORY AUTO GROUP LLC d/b/a<br>VICTORY MITSUBISHI,<br>SPARTAN AUTO GROUP LLC d/b/a<br>VICTORY MITSUBISHI,<br>STAVROS ORSARIS,<br>YESSICA VALLEJO,<br>DAVID PEREZ,<br>DIANE ARGYROPOULOS, and<br>PHILIP ARGYROPOULOS,<br><br>                              Defendants. | Case No.: 1:22-cv-4447 (JSR) |

**DECLARATION OF DANIELLE TARANTOLO**

DANIELLE TARANTOLO, an attorney admitted in the United States District Court for the Southern District of New York, declares as true under penalty of perjury pursuant to 28 U.S.C. § 1746 that:

1. I am the Director of the Special Litigation Unit at the New York Legal Assistance Group (NYLAG).

2. NYLAG is a not-for-profit civil legal services organization combatting economic, racial, and social injustice by advocating for people experiencing poverty or in crisis.

3. The Special Litigation Unit collaborates with NYLAG attorneys across practice areas to identify broad institutional failures. Alone, or in partnership with private firms and other not-for-profit organizations, we initiate class actions and other impact lawsuits to bring about systemic change for thousands of people in need.

1

4. I am admitted to practice in the United States District Court for the Southern District of New York.

5. I am also admitted to practice in the United States District Court for the Eastern District of New York, the United States Court of Appeals for the Second Circuit, the United States Court of Appeals for the Third Circuit, and the Supreme Court of the United States.

6. I joined NYLAG as a Staff Attorney in the Special Litigation Unit in May 2011 and was promoted to Associate Director in September 2015. I became Co-Director of the Special Litigation Unit in August 2017 and have been the sole Director since May 2021.

7. Before joining NYLAG in 2011, I was a litigation associate at Jenner & Block LLP. Before that, as the most important and relevant credential of my career, I clerked for this Court, the Honorable Jed S. Rakoff, from October 2007 to September 2008. Prior to that, I clerked for then-Judge Sonia Sotomayor on the Second Circuit from August 2006 to August 2007.

8. I graduated from Williams College in 2001 and obtained my J.D. from Yale Law School in 2006.

9. I have received recognition for my work at NYLAG on behalf of New Yorkers experiencing poverty. For example, in May 2024, I received the New York City Bar Association's 2024 Legal Services Award.

10. NYLAG's Special Litigation Unit, which specializes in class actions to benefit low-income New Yorkers, has been described as "one of the highest caliber impact litigation practices in New York City." Declaration of Matthew Brinckerhoff ¶ 15, *Burkett v. Houslanger & Assocs. et al.,* No 19 Civ. 2285 (LDH)(JO) (E.D.N.Y. Nov. 7, 2019), ECF No. 43-3.

11. The Special Litigation Unit often collaborates with attorneys and case handlers in our Consumer Protection Unit and Financial Empowerment and Advocacy Unit to bring impact litigation to protect consumers' rights.

12. I have been counsel of record in a number of class actions on behalf of consumers in which NYLAG has been appointed as class counsel. These include:

- *Salazar v. DeVos,* 14 Civ. 1230 (RWS) (S.D.N.Y. Feb. 25, 2014)
- *Mayfield v. Asta Funding,* No. 14 Civ. 2591 (LAP)(JLC) (S.D.N.Y. Apr. 10, 2018)
- *Quero et al. v. DeVos,* 18 Civ. 9509 (S.D.N.Y. October 17, 2018)
- *Soto v. Houslanger & Associates, PPLC et al.*, 19 Civ. 6691 (E.D.N.Y. Nov. 26, 2019) (formerly *Dupres v. Houslanger & Associates, PLLC et al.*)
- *Philemon v. Aries Capital Partners, Inc.,* No. 18 Civ. 1927 (CLP) (E.D.N.Y. Dec. 10, 2019)
- *Burks v. Gotham Process Inc.,* No. 20 Civ. 1001 (RPK) (E.D.N.Y. Feb. 24, 2020)

13. I have been recognized as an expert on consumer law and have led trainings at conferences conducted by the National Consumer Law Center in December 2021, October 2023, and October 2024.

14. As part of my work, I regularly seek fees under fee-shifting statutes for work performed in class action cases in which NYLAG is counsel, including through motion practice and settlement.

15. Most recently, my billing rate for such fees has been $650 per hour.

16. In *Mayfield v. Asta Funding*, the Court approved an award of attorneys' fees to counsel that was based on a lodestar in which my hourly rate was $400. At that time, I had 11 years of experience. Supplemental Declaration of Danielle Tarantolo ¶ 83, *Mayfield v. Asta Funding,* No. 14 Civ. 2591 (LAP)(JLC) (S.D.N.Y. Apr. 10, 2018), ECF. No. 112.

17. In *Soto*, the Court approved an award of attorneys' fees to counsel that was based on a lodestar in which my hourly rate was $450. At that time, I had 16 years of experience. Notably, this case was in the Eastern District of New York, where rates tend to be lower than those awarded in the Southern District. Supplemental Declaration of Danielle Tarantolo ¶ 26, *Soto v. Houslanger & Associates, PPLC et al*., 19 Civ. 6691 (E.D.N.Y. Nov. 26, 2019), ECF. No. 91.

18. In *Burks*, the Court approved an award of attorneys' fees to counsel that was based on a lodestar in which my hourly rate was $450. At that time, I had 17 years of experience. This case was also in the Eastern District of New York. Supplemental Declaration of Jessica Ranucci ¶ 17, *Burks v. Gotham Process Inc.,* No. 20 Civ. 1001 (RPK) (E.D.N.Y. Feb. 24, 2020), ECF No. 90.

19. I am familiar with the work of Ahmad Keshavarz. Mr. Keshavarz is an active member of a coalition of consumer advocates in New York who represent low-income New Yorkers, of which I and several of my colleagues are members. Mr. Keshavarz contributes regularly and substantially to the work of this group. He is a committed, respectful colleague who is deeply committed to consumer justice. Mr. Keshavarz regularly contributes his knowledge and work product to this coalition of advocates.

20. I have also consulted with Mr. Keshavarz informally on many cases.

21. NYLAG joined an amicus brief in support of Second Circuit litigation in *Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP*, 875 F.3d 128 (2d Cir. 2017), in which Mr. Keshavarz was plaintiff's counsel.

22. Mr. Keshavarz often represents individuals who are low income, and actively seeks to bring litigations against private actors who prey on consumers in New York City's most vulnerable communities.

23. Based on my experience, and my understanding of Mr. Keshavarz's practice, it is my opinion that the rate of $550 per hour, which I understand Mr. Keshavarz has claimed in this case, is reasonable, and that such a rate would be appropriate in the Southern District of New York for an attorney like Mr. Keshavarz.

24. It is also my opinion that providing robust attorneys' fee awards under fee-shifting consumer protection statutes is critical from a policy perspective, and that this Court plays a critical role in ensuring that attorneys' fee awards in cases brought under these statutes adequately compensate the attorneys who bring them.

25. Many consumers, like the plaintiff in this case and the clients of my organization, cannot afford to retain private attorneys to assert claims that their consumer rights have been violated.

26. Meanwhile, predatory actors regularly take advantage of these consumers. Consumer protection litigation on these consumers' behalf not only protects the individual consumers but serves a socially important function in punishing and deterring abusive and unlawful conduct.

27. Attorneys who take on representation of these clients, in order to bring such beneficial consumer protection litigation of this nature, do so at considerable risk. For example,

NYLAG is an under-resourced legal services organization. Time that my organization spends representing any particular consumer who has been harmed by unlawful consumer-oriented conduct in affirmative litigation is time we cannot spend representing other individuals.

28. Organizations like NYLAG, and other advocates who represent low-income consumers, like Mr. Keshavarz, must have reasonable assurance that if we bring meritorious cases, we will be able to recover attorneys' fees that adequately compensate us for the work we perform in zealously representing our clients.

29. Fees from awards in consumer protection cases provide vital funding to organizations like NYLAG, as well as small firms and solo practitioners who engage in this practice. Without adequate fees in these cases, the non-profit organizations and small private operations who bring these cases cannot operate and cannot sustain this important work.

30. Moreover, ensuring that actors who violate consumer protection laws pay full, comprehensive fee awards to plaintiffs who successfully sue them has a number of beneficial effects. The prospect of being held to pay those fees has a deterrent effect on businesses considering the risks of engaging in unlawful conduct. It also encourages those actors to settle meritorious cases quickly, to minimize their exposure, which benefits both consumers and the courts whose resources are conserved for other matters.

Dated: December 19, 2024　　　　　　　　　　　　　　　　　_/s/_____
New York, New York　　　　　　　　　　　　　　　　　　　　Danielle Tarantolo