**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------X
FARAH JEAN FRANCOIS,

                                                            Case No.: 1:22-cv-4447-JSR

                                   Plaintiff,

            -against-

SPARTAN AUTO GROUP LLC d/b/a
VICTORY MITSUBISHI,
STAVROS ORSARIS,
YESSICA VALLEJO, and
DAVID PEREZ,

                                   Defendants.
-----------------------------------------------------------------------X


**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT**
**OF HER PETITION FOR ATTORNEY FEES AND COSTS**

## Table of Contents

I.    PRELIMINARY STATEMENT .................................................................................. 1

II.   ARGUMENT ........................................................................................................... 2

    *A.   Background of the FCRA and a Consumer's Entitlement to Statutory Attorney Fees* ....... 2

    *B.   Standard for Attorney Fee Petitions in the Second Circuit* .................................. 5

    *C.   The Johnson Factors are Met Here and Plaintiff is Entitled to Her Attorney Fees* ........... 7

        1.    The amount involved and the results obtained ................................................. 7

        2.    Awards in similar cases ....................................................................... 9

        3.    The novelty and difficulty of the questions ............................................. 11

        4.    Time limitations imposed by the client or the circumstances ........................ 11

        5.    The undesirability of the case ............................................................. 11

        6.    The skill requisite to perform the legal services properly ............................ 12

        7.    Whether the fee is fixed or contingent .................................................. 12

        8.    The nature and length of the professional relationship with the client ............. 12

        9.    The preclusion of other employment ..................................................... 13

        10.   The experience, reputation and ability of the attorneys ............................. 13

        11.   Hourly rates are reasonable ................................................................ 15

        12.   Total time and labor involved, discretionary reductions, settlement attempts, and lodestar sought ................................................................................. 17

    *D.   Plaintiff's High Degree of Success Justifies an Award Equal to Attorneys' Entire Lodestar.* ................................................................................................. 21

        1.    Given the potential risks and rewards of proceeding to trial, a consent judgment in the amount of $120,000 is an exceptionally successful result .............................. 21

        2.    Plaintiff faced a real risk of losing outright on liability – as the Court noted .............. 22

        3.    Plaintiff faced the risk that the jury would award little in the way of emotional distress damages ........................................................................................ 22

        4.    Plaintiff faced the risk that the jury might not award punitive damages – as the Court noted ......................................................................................... 24

III.  CONCLUSION ...................................................................................................... 25

CERTIFICATE OF SERVICE ........................................................................................ 25

i

**Table of Authorities**

## Cases

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182 (2d Cir. 2008) ............................................................................................................................ 6, 7

*Bailey v. Pataki*, No. 08-CV-8563 (JSR), 2016 WL 3545941 (S.D.N.Y. June 16, 2016) (Rakoff, J.) ...................................................................................................................................... 9

*Balestriere v. CMA Trading, Inc.*, No. 11 CIV. 9459 MHD, 2014 WL 7404068 (S.D.N.Y. Dec. 31, 2014) .................................................................................................................................. 7

*Blum v. Stenson*, 465 U.S. 886 (1984). ........................................................................................ 14

*Bryant v. TRW, Inc.*, 689 F.2d 72 (6th Cir. 1982) ......................................................................... 5

*City of Riverside v. Rivera*, 477 U.S. 561 (1986) ......................................................................... 4

*de Moura Castro by Hilario v. Loanpal, LLC*, No. 3:21-CV-01020 (RMS), 2024 WL 4100008 (D. Conn. Sept. 4, 2024) ............................................................................................................ 11

*DiFilippo v. Morizio*, 759 F.2d 231 (2d Cir. 1985) ....................................................................... 8

*Dixon v. Agbai*, 15 Civ. 850(AT)(AJP), 2016 WL 3702749 (S.D.N.Y. July 8, 2016) .................. 8

*Dotson v. City of Syracuse*, No. 04-CV-1388(NAM)(GJD), 2011 WL 817499 (N.D.N.Y. Mar. 2, 2011) ........................................................................................................................................ 25

*Francois v. Victory Auto Grp. LLC*, No. 22-CV-04447 (JSR), 2023 WL 4534375 (S.D.N.Y. July 13, 2023) ("*Francois II*") ................................................................................................ 10, 13

*Francois v. Victory Auto Grp. LLC*, No. 22-CV-04447 (JSR), 2024 WL 396171 (S.D.N.Y. Feb. 2, 2024) (Reconsideration Order) (*Francois III*) .................................................................... 1, 2

*Gomez v. Resurgent Capital Servs., LP*, 129 F. Supp. 3d 147 (S.D.N.Y. 2015) ................... 12, 26

*Hensley v. Eckerhart*, 461 U.S. 424, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983) .................. 7, 9, 24

*Hines v. Equifax Information Svcs, LLC*, No. 19-CV-6701(RPK)(RER), 2022 WL 2841909 (E.D.N.Y. July 16, 2022) ........................................................................................................... 3

*Holman v. Experian Information Solutions, Inc.*, No. 11-cv-0180 CW (DMR), 2014 WL 7186207 (N.D. Cal. Dec. 12, 2014) ............................................................................................. 4

*Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) ................................. passim

*LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748 (2d Cir. 1998) ....................................................... 9

*Levy v. L. Offs. of J. Henry Nierman*, No. 17 CIV. 4022 (NSR)(JCM), 2024 WL 3813754 (S.D.N.Y. July 3, 2024). .................................................................................................... 13, 27

*Lore v. City of Syracuse*, 670 F.3d 127 (2d. Cir. 2012) .................................................. 12, 13, 26, 27

*Millea v. Metro N. RR*, 658 F.3d 154 (2d Cir. 2011) ................................................................ 4, 7

*Parris v. Pappas*, 844 F. Supp. 2d 271 (D. Conn. 2012) .......................................................... 1, 10

*Raishevich v. Foster*, 247 F.3d 337 (2d Cir. 2001) ...................................................................... 8

*Samms v. Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara & Wolf, LLC*, No. 15-cv-2741(JSR), 2015 WL 6437493 (S.D.N.Y. Oct. 21, 2015) ( ........................................ 12, 25

*Samms v. Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara & Wolf, LLP*, 198 F. Supp. 3d 311, 318 (S.D.N.Y. 2016) ("*Samms II*") (Rakoff, J.) ......................................... passim

*Sheehan v. Metro. Life Ins. Co.*, 450 F. Supp. 2d 321 (S.D.N.Y. 2006) ...................................... 8

*Thorsen v. County of Nassau*, 722 F. Supp. 2d 277 (E.D.N.Y. 2010) .................................... 1, 10

*Tolentino v. Friedman*, 46 F.3d 645 (7th Cir. 1995) .................................................................... 5

*Torres v. Toback, Bernstein & Reiss LLP*, No. 11-CV-1368 (VVP), 2017 WL 281878 (E.D.N.Y. Jan. 23, 2017) ....................................................................................................................... 18

*Trans Union Corp. v. F.T.C.*, 245 F.3d 809 (D.C. Cir. 2001) ............................................ 4

*United States Football League v. National Football League*, 887 F.2d 408 (2d Cir. 1989)) ......... 8

*US Airways, Inc. v. Sabre Holdings Corporation*, 11-CV-2725(LGS)(JLC), 2023 WL 2853931
(S.D.N.Y. Apr. 10, 2023) ........................................................................... 8

*Wilson v. Federal Bur. of Investigation*, 1:20-cv-10324(LAK)(SDA), 2022 WL 21828495
(S.D.N.Y. October 14, 2022) ....................................................................... 8

*Withers v. Eveland*, 997 F. Supp. 738 (E.D.Va. 1998) ............................................... 23

**Statutes**

15 U.S.C. § 1681b ............................................................................... 5, 7, 13

15 U.S.C. § 1681n ................................................................................ 6

15 U.S.C. § 1681o ................................................................................ 6

**Legislative History**

114 Cong. Rec. 24,903 (1968) (remarks of Sen. Proxmire) ............................................ 7

115 Cong. Rec. 2413 (1969) (remarks of Sen. Proxmire) ............................................. 7

## PRELIMINARY STATEMENT

Despite Defendants' repeated attempts to throw Plaintiff out of court – through a Motion to Dismiss, a Motion for Summary Judgment, and a Motion for Reconsideration – the core of the relief sought against the Mitsubishi dealership and its employees under the Fair Credit Reporting Act (FCRA) remained to go to the jury.  Ms. Francois and her lawyers were ready to go to trial.

Ms. Francois could have lost at trial and gotten nothing. As the Court noted in its Reconsideration Order, depending on whom the jury believed, it could have found no liability. *Francois v. Victory Auto Grp. LLC*, No. 22-CV-04447 (JSR), 2024 WL 396171 (S.D.N.Y. Feb. 2, 2024) (Reconsideration Order) (hereafter *Francois III*) ("[I]f defendants reasonably believed Francois had given LeForest permission to purchase a vehicle in her name, defendants would have had a permissible purpose to pull her credit, providing a complete defense.") (citing to 15 U.S.C. § 1681b (a)(3)(A)).  And, while Ms. Francois' testimony of emotional distress (her only actual damages) was compelling, such damages are entirely the province of the jury.  There was always the risk that the jury might award little for emotional distress damages.  Moreover, courts here have applied a cap of $125,000 for "garden variety" emotional distress where, as here, there was no claim of medical treatment. *See e.g. Thorsen v. County of Nassau*, 722 F. Supp. 2d 277, 292 (E.D.N.Y. 2010); *Parris v. Pappas*, 844 F. Supp. 2d 271, 278 (D. Conn. 2012).

Nonetheless, Ms. Francois and her counsel pursued this case vigorously to the precipice of trial.  It was only on November 7, 2024, two business days before trial, and after 2 ½ years of litigation, that the Mitsubishi dealership agreed to a Consent Judgment for $120,000 plus attorney's fees and costs. (ECF 81).  Considering the risks to Ms. Francois at trial, this judgment – for nearly the maximum actual damages she could recover – is not only a "successful action" under the FCRA but a spectacular result showing a high degree of success in this difficult case.

1

This result for Ms. Francois did not fall from the sky; it was the result of more than two years of tenacious litigation, right up to the eve of trial. Defendants vigorously defended this case, as is their right. They filed three dispositive motions which, while successful on ancillary issues, did not prevent Ms. Francois from asking a jury for the core of the relief she sought. Plaintiff was forced to subpoena non-parties such as Dealertrack and Capital One to get the key documents needed to prove her claim. And Plaintiff had to depose multiple Mitsubishi employees and two non-party witnesses (Emmanuel Laforest and Jami Singer) to establish the specific, highly precise evidence needed to prevail on summary judgment. *See Francois III* (detailing conflicting evidence). This discovery was necessitated by dealership employees' testimony that was vague, inconsistent, and contradicted by each other; by the documentary evidence (obtained from non-parties); and by the testimony of non-party witnesses Laforest and Singer. Trial counsel was brought into the case, final pretrial-documents were drafted, witnesses were prepared, and all on Plaintiff's side were locked-in for an imminent jury trial.

Having prosecuted a "successful action" under the FCRA and obtaining very near the maximum actual damages available, Plaintiff is now entitled to an award of her attorneys' fees in the amount of **$402,006.59** and costs of **$21,571.26** As set forth herein, the fees and costs sought are reasonable and should be awarded in full.

## I.     ARGUMENT

### A. Background of the FCRA and a Consumer's Entitlement to Statutory Attorney Fees

The FCRA at 15 U.S.C. §§ 1681n and -o provide that, following a "successful action" to enforce liability under the act, a defendant "is liable" in an amount equal to "the costs of the action together with reasonable attorney's fees as determined by the court." The Consent

Judgment (ECF 81) memorializes this and expressly indicated "Plaintiff litigated a successful action." Plaintiff is thus entitled to her fees and costs.

Attorney fee shifting is fundamental to the enforcement of the FCRA. "Section 1681b of the FCRA . . . illustrates Congress' judgment that the collection and dissemination of certain personal information for certain purposes violates a consumer's right to privacy." *Hines v. Equifax Information Svcs, LLC*, No. 19-CV-6701(RPK)(RER), 2022 WL 2841909, at *10 (E.D.N.Y. July 16, 2022). In the words of Senator William Proxmire, who introduced the bill that would eventually become the FCRA:

> The fact that credit reporting agencies maintain files on millions of Americans, including their employment, income, bill paying record, marital status, habits, character and morals is not in and of itself so disturbing. What is disturbing is that this practice will continue, and will have to continue, if we continue to have an insurance system and a consumer credit system of the kind we have. What is disturbing is the lack of any public standards to ensure that the information is kept confidential and used only for its intended purpose. The growing accessibility of this information through computer- and data-transmission techniques makes the problem of confidentiality even more important.

115 Cong. Rec. 2413 (1969). *See also* 114 Cong. Rec. 24,903 (1968) (remarks of Sen. Proxmire). *See also Trans Union Corp. v. F.T.C.*, 245 F.3d 809, 818 (D.C. Cir. 2001) ("We have no doubt that this interest – protecting the privacy of consumer credit information – is substantial.") In short, the existence of an entire industry whose mission is to collect personal and financial information on nearly every living adult also creates certain dangers – and Congress passed the FCRA to combat those dangers.

By adding a fee-shifting provision to the FCRA, Congress was signaling a "policy determination that . . . [such] claims serve an important public purpose disproportionate to their cash value." *Millea v. Metro N. RR*, 658 F.3d 154, 167 (2d Cir. 2011) (FMLA case). Put another way, reducing a fee award simply because the plaintiff's recovery was smaller than her

attorneys' lodestar is misguided, because Congress's "whole purpose [in enacting] . . . fee-shifting statutes is to generate attorneys' fees that are disproportionate to the plaintiff's recovery." *Id.* at 169. As the Second Circuit has pointed out, that is a legislative policy decision that courts ought not second-guess. *Id.* at 167.

"A fee-shifting provision's purpose is to encourage private litigants to enforce the laws that protect the public in areas like civil rights, consumer protection and the environment." *Holman v. Experian Information Solutions, Inc.*, No. 11-cv-0180 CW (DMR), 2014 WL 7186207 at *3 (N.D. Cal. Dec. 12, 2014) (citing to *City of Riverside v. Rivera*, 477 U.S. 561, 574-75 (1986)). "We have no doubt that Congress intended in authorizing attorney's fees in lawsuits under the FCRA, . . . to make use of the private attorney general concept." *Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982). "Congress provided fee shifting to enhance enforcement of important civil rights, consumer-protection, and environmental policies. By providing competitive rates we assure that attorneys will take such cases, and hence increase the likelihood that the congressional policy of redressing public interest claims will be vindicated." *Tolentino v. Friedman*, 46 F.3d 645, 652-53 (7th Cir. 1995) (internal citations and quotation marks omitted) (discussing policy behind fee shifting in the context of the Fair Debt Collection Practices Act). In short, wherever Congress has enacted a fee shifting regime, "[C]ongress has determined that *the public as a whole* has an interest in the vindication of . . . statutory rights." *Id.* at 652 (emphasis added) (citing to *City of Riverside v. Rivera*, 477 U.S. 561, 106 S. Ct. 2686, 91 L. Ed. 2d 466 (1986).

Practitioners on the ground, particularly those who represent lower-income populations in consumer matters, can attest that while the rights created by consumer protection statutes are important, the fee-shifting provisions that ensure that those rights are actually enforced are just

as important. *See* Exhibit A[1], Declaration of Danielle Tarantino, ¶¶ 24-29 ("[P]redatory actors regularly take advantage of these consumers. . . . Many consumers like the plaintiff in this case and the clients of my organization cannot afford to retain private attorneys to assert claims that their consumer rights have been violated.")

Specific to this case, Congress sought to curtail the danger that persons with easy access to consumer reports would pull them for improper purposes and without the consumer's permission. Ms. Francois's ordeal is not the first time this has happened, and it will not be the last. And many of those future victims of impermissible pulls will be lower-income individuals who will be unable to pay attorneys out of their own pockets to prosecute those claims. To incentivize attorneys to specialize in these types of consumer protection claims in the future, it is critical that attorneys already successfully pursuing these claims be fairly compensated through the FCRA's fee-shifting remedy.

### B. Standard for Attorney Fee Petitions in the Second Circuit

"[T]he 'lodestar' method, i.e., the number of hours worked multiplied by the prevailing hourly rates, is the appropriate way to calculate [attorney] fees." *Samms v. Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara & Wolf, LLP*, 198 F. Supp. 3d 311, 318 (S.D.N.Y. 2016) ("*Samms II*") (Rakoff, J.). In *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182 (2d Cir. 2008), the Second Circuit laid out the proper analysis for a court deciding attorney fee petitions. Courts are to:

> bear in mind all of the case-specific variables that we and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate. The reasonable hourly rate is the rate a paying client would be willing to pay. In determining what rate a paying client would be willing to pay, the

---

[1] Unless otherwise noted, reference to an exhibit is an exhibit that is attached to the Declaration of Ahmad Keshavarz as to Fee Petition Exhibits.

district court should consider, among others, the *Johnson* factors; it should also bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively. The district court should also consider that such an individual might be able to negotiate with his or her attorneys, using their desire to obtain the reputational benefits that might accrue from being associated with the case. The district court should then use that reasonable hourly rate to calculate what can properly be termed the "presumptively reasonable fee."

*Id.* at 190 (cited in *Samms II*, 198 F. Supp. 3d at 318). The *Arbor Hill* court relied on the twelve

factors in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) which are:

(1) the time and labor required;
(2) the novelty and difficulty of the questions;
(3) the skill requisite to perform the legal services properly;
(4) the preclusion of other employment by the attorney due to acceptance of the case;
(5) the customary fee in the community;
(6) whether the fee is fixed or contingent;
(7) time limitations imposed by the client or the circumstances;
(8) the amount of time involved and the results obtained;
(9) the experience, reputation, and ability of the attorneys;
(10) the "undesirability" of the case;
(11) the nature and length of the professional relationship with the client; and
(12) awards in similar cases.

*Samms II,* 198 F. Supp. 3d at 318 n.1 (citing to *Arbor Hill*, 522 F.3d at 186 n.3).

Once a figure for attorney fees is calculated using the *Johnson* factors, that amount

becomes the "lodestar." *See Hensley v. Eckerhart*, 461 U.S. 424, 433-34, 103 S. Ct. 1933, 76 L.

Ed. 2d 40 (1983). "[T]here is a strong presumption that the lodestar figure is reasonable."

*Balestriere v. CMA Trading, Inc.*, No. 11 CIV. 9459 MHD, 2014 WL 7404068, at *3 (S.D.N.Y.

Dec. 31, 2014); *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011). "[W]here . . .

the party achieves success on the merits, an award of all reasonable hours at a reasonable hourly

rate, *i.e.*, the lodestar figure, is presumptively appropriate." *Wilson v. Federal Bur. of*

*Investigation*, 1:20-cv-10324(LAK)(SDA), 2022 WL 21828495, at *7, n.7 (S.D.N.Y. October 14, 2022) (quoting *DiFilippo v. Morizio*, 759 F.2d 231, 234 (2d Cir. 1985)).

While the Court has discretion to determine the proper fee, that "discretion is narrowed by a presumption that successful . . . litigants should recover reasonable attorney's fees unless special circumstances render such an award unjust." *Dixon v. Agbai*, 15 Civ. 850(AT)(AJP), 2016 WL 3702749 at *12 (S.D.N.Y. July 8, 2016) (quoting *Raishevich v. Foster*, 247 F.3d 337, 344 (2d Cir. 2001) (discussing civil rights litigants).   Any "party advocating the reduction of the lodestar amount bears the burden of establishing that it is justified." *US Airways, Inc. v. Sabre Holdings Corporation*, 11-CV-2725(LGS)(JLC), 2023 WL 2853931, at *5 (S.D.N.Y. Apr. 10, 2023) (quoting *Sheehan v. Metro. Life Ins. Co.*, 450 F. Supp. 2d 321, 326-27 (S.D.N.Y. 2006); *United States Football League v. National Football League*, 887 F.2d 408, 413 (2d Cir. 1989)).

As set forth below, all the *Johnson* factors are satisfied, the lodestar in this hard-fought matter is entirely justified, and the Court should award Plaintiff's fees and costs in full.

## C.  The *Johnson* Factors are Met Here and Plaintiff is Entitled to Her Attorney Fees

All of the factors to be applied by the Court either weigh in favor of approval of the fee request here or are neutral to the analysis.  Plaintiff first addresses those factors that bear on the results obtained and the nature of the case.  She then addresses the factors covering the attorneys and their hourly rates.

### 1.   The amount involved and the results obtained

The U.S. Supreme Court has instructed that "[t]he most critical factor [in determining the reasonableness of a fee] is the degree of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983); *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 760 (2d Cir. 1998); *Bailey v. Pataki*,

No. 08-CV-8563 (JSR), 2016 WL 3545941, at *2 (S.D.N.Y. June 16, 2016) (Rakoff, J.) ("The degree of success is the most critical factor in determining the reasonableness of a fee award").

There can be no question that the Consent Judgment of $120,000 (plus fees) to Ms. Francois was a successful result. After the Court's rulings on summary judgment, the only cognizable claim for actual damages going to jury was for mental and emotional distress stemming from the impermissible credit pull in violation of the FCRA. Ms. Francois did not have medical treatment for those damages, so they would be considered "garden variety" emotional distress. Courts in the Second Circuit have held that such claims "generally merit $30,000 to $125,000 awards." *See e.g. Thorsen v. County of Nassau*, 722 F. Supp. 2d 277, 292 (E.D.N.Y. 2010); *Parris v. Pappas*, 844 F. Supp. 2d 271, 278 (D. Conn. 2012). While Ms. Francois and her counsel do not agree there should be such an arbitrary limit on the value of such damages, Plaintiff had to recognize that this standard might apply to limit her claims. Her judgment for $120,000 is at the very high end of this range, demonstrating that she achieved a high degree of success.

Ms. Francois also had a claim for punitive damages. With that in mind, one can look at the $120,000 award a bit differently. For instance, if $40,000 of the judgment amount can be seen as compensation for Ms. Francois' "garden variety" emotional distress (within the range acceptable in our courts), then the judgment would reflect a 3x multiplier for punitive damages. But, punitive damage claims under the FCRA require a finding of "willfulness," not mere negligence, 15 U.S.C. §1681n, and Francois' claim for punitive damages was admittedly risky under the facts here. The Court acknowledged it was "a close call" in concluding Ms. Francois adduced sufficient evidence to give rise to a genuine issue of fact as to defendants' willfulness. *Francois v. Victory Auto Grp. LLC*, No. 22-CV-04447 (JSR), 2023 WL 4534375 (S.D.N.Y. July

13, 2023) (hereafter "*Francois II*").  There is also substantial case law that a punitive damages award is limited to a single digit multiplier of actual damages.  Ms. Francois could not count on a jury returning (or the court upholding) a punitive damage award any larger than her judgment.

Importantly, the endeavors of Ms. Francois and her counsel in this litigation resulted in a judgment that is in the public record. Typically, the settlement agreements into which consumers enter with companies in consumer fraud matters include confidentiality provisions. Plaintiff's public recovery of a six-figure judgment against this defendant will help other consumers recover their losses when they have been similarly defrauded.  The result here is excellent, and this "most critical" factor weighs heavily in favor of the approval of the fees requested in this motion.

### 2. *Awards in similar cases*

The fact is that, today, "the jury trial is an exceptional rather than a commonplace outcome."[2] And, since "impermissible pull" cases such as this one are a subset of FCRA cases – which itself is a niche practice – tracking down a jury verdict in a comparable case is like searching for a needle in a haystack. Moreover, since most settlements remain confidential, it is practically impossible to compare this result with results in similar cases. That said, Plaintiff counsel is aware of one particularly egregious Section 1681b impermissible pull case, where the consumer plaintiffs were awarded $125,000 by the federal court for their mental and emotional distress damages stemming from their credit reports being used to facilitate a solar fraud scam. *de Moura Castro by Hilario v. Loanpal, LLC*, No. 3:21-CV-01020 (RMS), 2024 WL 4100008, at *6 (D. Conn. Sept. 4, 2024). By that standard, the result here is comparable.

---

[2] https://www.americanbar.org/news/abanews/aba-news-archives/2020/12/new-aba-study-explains-why-civil-and-criminal-jury-trials-are-di/?utm_source=chatgpt.com

We can look also to other emotional distress cases to demonstrate the significance of the judgment here. There is always the risk that a jury will award only a token amount of emotional distress damages, or even none at all. For example, in *Samms II* at \*2 the Court ruled that where Mr. Samms "alleges he has become "fixated on the collections lawsuit and suffered anxiety, including an inability to sleep for months at a time" that "the Second Circuit has affirmed awards of over \$100,000 for similar kinds of emotional distress." (*citing to Lore v. City of Syracuse*, 670 F.3d 127, 177-78 (2d. Cir. 2012)). However, when the case went to trial, the jury only awarded Mr. Samms "\$1,000 in damages for physical injuries and/or emotional distress." Samms v. Abrams, 198 F. Supp. 3d 311, 315 (S.D.N.Y. 2016) (*Samms III*). Similarly, while Ms. Francois's testimony as to her significant garden variety emotional distress, she ran a risk that the jury may have awarded only a modest amount for those damages.

(Indeed, Defendants signaled in their Motion for Summary Judgment that they intended to argue that it was fear of Laforest's threats, *not* the effects of Defendants' actions, that caused Ms. Francois's emotional distress, *see* Dkt. No. 52-1, Def. 56.1 at ¶ 43, 54, 57, 60, 69-70; Dkt. No. 57-1, Def. Counter 56.1 at ¶¶ 326, 328.) Most of all, the plaintiff must actually connect with the jury – and weighing the chances of that is a challenging task, particularly before a jury has even been selected.

One need only look to other jury awards to understand the risks Ms. Francois and her attorneys were facing in terms of recovery for garden variety emotional distress damages. And, while there are few to no FCRA jury awards for impermissible pull cases, it is reasonable to look to FDCPA awards for garden variety emotional distress, given that Ms. Francois's emotional distress was partly caused by collection attempts on the fraudulently obtained loan. In analogous FDCPA cases, garden variety damages awards are sometimes substantial, as much as \$85,000

10

*Gomez v. Resurgent Capital Servs., LP*, 129 F. Supp. 3d 147, 153-154 (S.D.N.Y. 2015) (J. Sweet) (collecting cases) or even $100,000. *Abrams I* at *2 (citing to *Lore v. City of Syracuse*, 670 F.3d 127, 177-78 (2d. Cir. 2012)). But the fact finder could also award nominal damages. *Levy v. L. Offs. of J. Henry Nierman,* No. 17 CIV. 4022 (NSR)(JCM), 2024 WL 3813754, at *5 (S.D.N.Y. July 3, 2024), *report and recommendation adopted*, No. 17-CV-4022 (NSR), 2024 WL 4275569 (S.D.N.Y. Sept. 24, 2024) (collecting cases of awards between $500 and $5,000).

Consequently, this *Johnson* factor heavily supports the fee request.

### 3.  The novelty and difficulty of the questions

To Plaintiff's knowledge no other court has held that an impermissible credit pull could be the proximate cause of a resulting fraudulent loan and, in turn, resulting emotional distress. *Francois II*  at *6.  Neither party cited to any case on the issue. In speaking with FCRA experts from across the country at annual consumer law conferences, none of them were aware of such a case. This reflects the novelty and difficulty of that legal issue in the case at bar, a *Johnson* factor mitigating for the award of full attorney's fees.

### 4.  Time limitations imposed by the client or the circumstances

There were no particularly onerous or burdensome time constraints caused by the client or the circumstances.  However, the case did settle on the eve of trial, after both sides had presumably evaluated the strength and weaknesses of their witnesses and respective cases.  This factor is neutral.

### 5.  The undesirability of the case

This case is undesirable given the high degree of risk that Plaintiff may not prevail, as discussed in the degree of success section below. It also involved a complex federal statute that many practitioners are unfamiliar with.  Consequently, private counsel would tend to find this

case undesirable. Moreover, this case required the substantial investment of expenses – over $25,000 –to advance to the point of the Consent Judgment on the eve of trial. Therefore this *Johnson* factor supports a full award of attorney's fees.

> ### 6.    *The skill requisite to perform the legal services properly*

Successful litigation of consumer protection cases requires skill and familiarity with the issues involved. Plaintiff's counsel knows of very few attorneys who purport to be able to litigate consumer protection cases such as this one. Most attorneys do not recognize the legal issues involved in such cases, and requests for representation are generally turned away by members of the Bar. Counsel here had to address novel arguments under the FCRA to fend off dismissal, summary judgment, and reconsideration, not to mention crafting a trial plan that would allow Ms. Francois' case to be heard in the most compelling way possible while maintaining liability of defendants at every turn.  Because of the skill of Plaintiff's counsel and the rarity of filing such cases, Plaintiff requests an award of her attorney's full lodestar.

> ### 7.    *Whether the fee is fixed or contingent*

Counsel for Plaintiff were to be paid on a contingency basis, lending support the award of fees of the full amount sought. "Lawyers operating in the marketplace can be expected to charge a higher hourly rate when their compensation is contingent on success than when they will be promptly paid, win or lose." *Blum*, 465 U.S. at 903.  While defense counsel can expect to be paid per hour on a monthly basis, Plaintiff's attorneys here have not been paid one dollar since the case's inception over 2.5 years ago.  The contingent nature of the representation here strongly militates in favor of the approval of the full fee request.

> ### 8.    *The nature and length of the professional relationship with the client*

This factor is neutral.

*9.  The preclusion of other employment*

The time spent on this case was not, and could not be, spent at the same time on other cases. There are substantial opportunity costs in preparing the necessary documentation and briefing to represent plaintiffs in a contingency or fee-shifting case in federal court. The substantial amount of time expended on Plaintiff's behalf was time which would have been spent on other matters, had this case not been filed or litigated to this extent.

Therefore, it is appropriate to consider that whenever an attorney takes a case, he does so to the exclusion of accepting other work. Plaintiff's counsel spent two and a half years reviewing this case and litigating it to its conclusion, to the exclusion of helping other consumers. Thus, some consumers did not receive counsel's help so that Ms. Francois could prosecute her case. Mr. Milz explains how jumping into a case as lead trial counsel approximately two weeks before trial required him to clear his desk of the rest of his case load and focus almost exclusively on this case. (Ex. D, Milz Cert. at ¶23).

Because the two and a half years spent on this case would have been expended on other matters, this factor provides a basis for an award of plaintiff's attorneys' full lodestar.

*10. The experience, reputation and ability of the attorneys*

Ms. Francois was represented by the Law Office of Ahmad Keshavarz, a New York attorney with substantial experience litigating consumer protection matters in the federal courts of this state.  As trial approached, Mr. Keshavarz brought in experienced trial attorney Andrew Milz, who has a record of success in FCRA and other consumer law trials.  As set forth in their detailed certifications submitted with this motion and incorporated herein, both firms have a

great deal of experience in consumer protection litigation, and that experience readily supports the award of full attorney fees here.

The Law Office of Ahmad Keshavarz.  Ahmad Keshavarz is a 1999 graduate from the University of Texas School of Law School. Exh, A,  Keshavarz Decl for Attorney's Fee Award ¶ 9.  (*hereafter* Keshavarz Fee Decl.) He opened up his firm in 2021 and for the last 20 years has practicing protecting consumers under the Fair Debt Collection Practices Act, as well the Fair Credit Reporting Act and other statutes. *Id*. ¶¶ 12, 13. Mr. Keshavarz avers that he has brought 150 consumer protection lawsuits in federal court, of those 54 being filed in the SDNY and 71 in the EDNY. *Id*. ¶¶ 19-22. Mr. Keshavarz cites to over two dozen opinions reported on Westlaw her contends are favorable consumer law decisions. *Id*. ¶¶ 23-25.  Mr. Keshavarz has regularly made CLE presentations regarding the Fair Credit Reporting Act and the Fair Credit Reporting Act to legal services attorneys in New York and at national Annual Consumer Rights Litigation Conference multiple times for over a decade. *Id*. ¶¶ 26.

Flitter Milz, PC.  Andrew Milz was brought in to be lead trial counsel because of recent trial victories in FCRA and other consumer cases.  Mr. Milz entered the case three weeks before trial and in that time of intense trial preparation spent 65.10 hours at his rate of $595/hour for a total lodestar of $38,734.50.   As set forth in his certification (Ex. D), Milz has practiced consumer protection law for 16 years, and is a nationally recognized authority on consumer protection law. He has been counsel of record in over 500 cases in federal court, tried more than two dozen consumer and civil rights cases to verdict or judgment, and has had incremental increases to his hourly rates approved by numerous federal courts over the years. (*Id*. at ¶18-30).

Other attorney work at the Flitter Milz firm, largely legal research and legal briefing, was performed by associate Jody López-Jacobs (5.3 hours x $390 for a total lodestar of $2,067.00).

14

Mr. Lopez-Jacobs graduated from Temple Law in 2015 in the top 10% of his class with *magna cum laude* and Order of the Coif honors.  (Ex. E, Lopez-Jacobs Cert.).  After law school, Mr. López-Jacobs served as a law clerk for the Honorable Mark A. Kearney of the Eastern District of Pennsylvania.  (*Id.* ¶5).  Senior partner Cary Flitter's time (8.3 hours at $905/hour) was limited to case management and strategy, and Plaintiffs are <u>not</u> seeking fees for his work here.  A new associate (Edward Flitter) contributed 1.3 hours at $305/hr.  (Ex D, Milz Cert. at ₱38).  In a four-lawyer firm with a junior partner trying the case, two associates providing support and research, and a senior partner assisting with strategy, the Flitter Milz firm demonstrated efficiency in delegation of tasks among its three lawyers.

The experience, reputation and ability of counsel at The Law Office of Ahmad Keshavarz are discussed immediately below.

### 11. Hourly rates are reasonable

<u>The Law Office of Ahmad Keshavarz.</u>

Mr. Keshavarz's reasonable hourly rate in this case is $550. This hourly rate is supported by the affirmations of attorneys who regularly litigate in the Southern District of New York. Ex. G (Decl. of Danielle Tarantolo, former law clerk to Judge Rakoff, current Director of the Special Litigation Unit at the New York Legal Assistance Group (NYLAG)); Exh H (Decl. of Claudia Wilner, Director of Litigation and Advocacy at the National Center for Law and Economic Justice (NCLEJ)); and Exh H (Decl. of James B. Fishman, Fishman Law Group, PLLC, nationally recognized expert on FCRA litigation).

Mr. Keshavarz's rate reflects a natural progression for someone who continued to build expertise in his chosen field. The last time a court evaluated his fees was seven years ago, when the Eastern District of New York approved his requested rate of $400 per hour. *See Torres v.*

*Toback, Bernstein & Reiss LLP*, No. 11-CV-1368 (VVP), 2017 WL 281878, at * 2 (E.D.N.Y. Jan. 23, 2017). Similarly, the Southern District of New York approved his requested rate of $400 in *Samms v. Abrams*, 198 F. Supp. 3d 311, 319 (S.D.N.Y. 2016) . Mr. Keshavarz's current billing rate of $550 per hour is reasonable for someone who not only has 25 year of experience, but who is also invited to lecture on consumer law issues by numerous New York City nonprofits as well as the leading national organizations dedicated consumer protection law. In short, his knowledge of consumer law as well as the results he obtains in his cases make him a desirable attorney for consumers dealing with the fallout of unfair and fraudulent practices.

Ms. Miller billed at an hourly rate of $375 per hour for this, which is a modest increase over the rate of $350 for which she was approved by the Eastern District of New York four years ago. Ms. Miller graduated from Harvard Law School *cum laude* 13 years ago, *see* Ex. M, Miller Declaration at ¶8, and had focused on representing consumers nearly the entire time since. In the opinion of other attorneys who regularly litigate in the Southern District of New York, is it in line with rates charged by other attorneys of similar education and experience. *See* Keshavarz Declaration for Exhibits, Ex. N (Declaration of Attorney Brian L. Bromberg of Bromberg Law Office, P.C.); Ex. O (Declaration Carolyn E. Coffey, Director of Litigation for Economic Justice for Mobilization for Justice, Inc.). *See also* Ex. A, Keshavarz Fee Decl. ¶¶ 15, 16.

For this case, Ms. Caterine billed at an hourly rate of $350. After graduating from City University of New York Law School in 2018, Ms. Caterine joined the Law Office of Ahmad Keshavarz, *see* Ex. J, Caterine Declaration at ¶¶ 6, 9, and quickly advanced to the point of playing a key role in that office's cases, especially this one. She began working at the firm in 2018, became an Associate, and became a partner at the firm in 2020. Ms. Caterine took most of the depositions in the instant case. Her rate is appropriate for an attorney of her education and

experience, as evidenced by the declarations of other attorneys who regularly litigate in the Southern District of New York. *See* Ex. K (Declaration of Matthew A. Schedler, Supervising Attorney of the Consumer Law Project of CAMBA Legal Services, Inc.); Ex. L (Declaration of Susan Shin, Legal Director of the New Economy Project). Finally, Nicolette Moore, a recent law graduate, billed at $100 per hour. Ex. A, Keshavarz Fee Decl. ¶ 17, 18.

Flitter Milz, PC.

Attorney Milz's hourly rate for 2024 is $595.00 per hour.  Mr.  Lopez-Jacobs' hourly rate is $390.00.  Both support their rates with their detailed certifications and numerous incremental rate approvals by federal courts over the years (largely from within the Philadelphia/ South Jersey market).  (Ex. E, Lopez-Jacobs Decl).  Mr. Milz certifies to associate Edward Flitter's education, federal clerkship, and experience supporting his minor time at his hourly rate of $305. (Ex. D at ⸗38).  Additionally, the Flitter Milz, PC firm bills $235.00 per hour for their skilled paralegal Joan Raughley, whose experience is also certified by Mr. Milz. (*Id.*).  All the rates sought by Flitter Milz are arguably lower-than, or at the least reasonable and customary for this market.  Seth Lesser, a well-regarded and experienced practitioner in the U.S. District Court for the Southern District of New York, attests that the Flitter Milz firm's Philadelphia rates "are most certainly in line with, if not most distinctly lower than, the market rates in this Court."  (*See* Ex. F, Lesser  at ¶ 5).   These rates should be approved.

> *12. Total time and labor involved, discretionary reductions, settlement attempts, and lodestar sought*

> a.   Total hours spent and total reductions using billing judgment

The Law Office of Ahmad Keshavarz

The time spent and amount charged by counsel and staff at The Law Office of Ahmad Keshavarz, as well as the reductions in the use of billing judgment, are summarized as follows:

| Attorney | Rates | Total Hours | Fees Earned | Fees Cut | Fees Sought |
|---|---|---|---|---|---|
| Para by Atty | 126.47 | 10.40 | 1,130.00 | | 1,130.00 |
| A. Keshavarz | 550.00 | 448.10 | 246,455.00 | (22,750.00) | 223,705.00 |
| E. Caterine | 350.00 | 318.13 | 111,345.50 | (4,275.00) | 107,070.50 |
| N. Moore | 100.00 | 71.50 | 7,150.00 | (2,360.00) | 4,790.00 |
| J. Miller | 375.00 | 126.10 | 47,287.50 | (23,715.00) | 23,572.50 |
| **Grand Total** | **409.21** | **974.23** | **413,368.00** | **(53,100.00)** | **360,268.00** |

In addition to the above table, Exhibit B (Keshavarz billing records) at p. 2 includes a detailed itemization of the work of each person at The Law Firm of Ahmad Keshavarz by subject matter, and itemizes reductions in those topics in the exercise of billing judgment. For example, Mr. Keshavarz reduced $12,650 from Depositions to reduce any overlap when Ms. Caterine took the deposition. Ms. Miller cut her fees for the fee petition in half (to $14,210.00) as well as time spent on trial preparation (to $8,350). Ms. Miller joined the firm on November 4, 2024, in the heat of trial preparations. These voluntary reductions are made, in the exercise of billing judgment to account for time she needed to spend to get up to speed on the case, to account for duplication, and to account for inefficiencies in joining a new firm. The line entry "Para by Atty" is work that was done by an attorney at the firm but for which the hourly rate sought was reduced to $100 to reflect the recognition that it was a task that could be performed by a trained paralegal.

Notably, Mr. Keshavarz has spent 42.0 hours in settlement attempts to attempt to resolve the case in mediation, and, after mediation, through efforts involving the mediator to prevent the need for trial preparation. While settlement demands and offers made after the mediation may be

governed by the mediation privilege given the mediator's continued involvement, Plaintiff would welcome agreement by opposing counsel or an order by the Court to authorize disclosure of these documents.

Flitter Milz, PC.

The billing for Flitter Milz, PC is summarized as follows:

FLITTER MILZ, PC LODESTAR

| Timekeeper | Hours | Hourly Rate | Amount |
|---|---|---|---|
| Cary L. Flitter (CLF)[3] | 8.3 | $905 | $7,511.50 |
| Andrew M. Milz (AMM) | 65.1 | $595 | $38,734.50 |
| Jody T. Lopez-Jacobs (JLJ) | 5.3 | $390 | $2,067.00 |
| Edward Flitter (EF) | 1.3 | $305 | $396.50 |
| Paralegal – Joan Raughley (JMR) | 2.3 | $235 | $540.50 |
| Total Billed Professional Time | 82.30 | *** | $49,250.00 |
| TOTAL LODESTAR | | $49,250.00 | |

| TOTAL LODESTAR (reflecting discretionary reduction) | $41,738.50 |
|---|---|

For his part, Mr. Milz and his firm spent an aggregate 82.3 hours on the case for a lodestar of $49,250.00. This time was largely spent by Mr. Milz learning the case and preparing for trial. He spent time meeting with the client Ms. Francois via Zoom, reviewing deposition transcripts and pleadings, preparing the client and witnesses for trial, drafting pretrial documents and motions *in limine*, creating a strategy and outline for trial, drafting direct and cross exams,

19

and preparing a closing argument.  (See Ex. D, Milz Cert. at ₱22-23).  Significantly, at the recommendation of the mediator, Mr. Milz injected himself and his recent record of jury trial successes into settlement discussions among the parties, which seemed to contribute to the case's resolution as the judgment was agreed upon and entered a few days later.  (*Id*. at ₱24).

In his certification (Ex. D), Mr. Milz attests to his time spent and attaches a copy of his firm's actual billing records which lays out in detail the tasks performed.  In the interest of billing judgment, Flitter Milz, PC has made a discretionary reduction to its lodestar by not seeking senior partner Cary Flitter's time in this fee petition.  That discretional reduction of $7,511.50 brings the total lodestar sought by the Flitter Milz, PC firm to $41,738.50.  (Ex.D Milz. Cert. at ₱ 39).

In sum, The Law Office of Ahmad Keshavarz seeks a fee award of $360,268, which includes billing judgment reductions of $53,100, and Flitter Milz, PC. Seeks an attorney's fee award of $41,738.59, as reduction of $7,516.50 after the exercise of billing judgment.

b.  Expenses

This case took years to prosecute and only settled on the eve of trial. Plaintiff's experience in consumer-protection litigation undoubtedly resulted in obtaining the discovery necessary to show that Defendants had violated the FCRA, thus inducing Defendants to settle. *See Withers v. Eveland*, 997 F. Supp. 738, 740 (E.D.Va. 1998) (finding that "there are very few attorneys who specialize in litigating Consumer Credit Protection Act cases"). This lawsuit spanned two and a half years, necessitated extensive fact discovery, and involved two hard fought dispositive motions filed by Defendants. In other words, Defendants resisted every step of the way, and nothing was easy for Plaintiff's attorneys.

20

Attached as Exhibit C is an itemization of expenses incurred by Keshavarz in the prosecution of this case, totaling $21,571.26. The majority of those expenses ($13,299.29) are for transcripts of depositions, and an additional $4,382.02 are costs for serving subpoenas on non-parties for documents or for deposition, for skip tracing to find fact witnesses, and for attempting to serve trial subpoenas (prior to opposing counsel finally and definitely indicating he would accept service.

### D. Plaintiff's High Degree of Success Justifies an Award Equal to Attorneys' Entire Lodestar.

*1. Given the potential risks and rewards of proceeding to trial, a consent judgment in the amount of $120,000 is an exceptionally successful result*

The results obtained for Plaintiff are significant, reflecting counsel's substantial efforts in preparing and litigating this matter. On the eve of a trial in which they faced a real risk of being found liable both for Ms. Francois's emotional distress damages and punitive damages, Defendants consented to entry of a $120,000 judgment against themselves – and agreed that Plaintiff was the prevailing party for purposes of this Motion. In determining what constitutes a reasonable fee, "the most critical factor is the degree of success obtained". *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). And $120,000 is an excellent result for Ms. Francois.

Unfortunately, as discussed above under the twelfth *Johnson* factor, "Awards in Similar Cases," determining degree of success is not as simple as objectively comparing Ms. Francois's result with jury awards and settlements in similar cases. Therefore, because degree of success cannot be determined objectively, the determination must be made subjectively. And this makes sense: In a complex case like this one, making key decisions such as when to settle – and how much to settle for – is itself a subjective analysis that involves balancing risks and rewards that

can never be pinned down with specificity. Still, an experienced practitioner can successfully balance them.

### 2. *Plaintiff faced a real risk of losing outright on liability – as the Court noted*

Here, of all the variables that compelled Ms. Francois and her counsel to consider settlement, the most critical was the substantial risk of failing to establish liability. As this Court has previously pointed out, "if defendants reasonably believed Francois had given LeForest [3] permission to purchase a vehicle in her name, defendants would have had a permissible purpose to pull her credit, providing a *complete defense*." Dkt. 66 at 3 (emphasis added) (citing to 15 U.S.C. § 1681b(a)(3)(A)).

### 3. *Plaintiff faced the risk that the jury would award little in the way of emotional distress damages*

The risks that Ms. Francois and her attorneys were compelled to weigh did not end there. Assuming that Plaintiff could persuade the jury as to liability, there would still be significant risk that the jury might decide to award only token damages or no damages at all. Here, from the outset of this case, it was clear that her alleged economic damages were minimal: The costs of postage for a few dispute letters; some storage and moving expenses; and some lost wages due to time taken off work to deal with the fallout of the theft of her identity. In oral argument, opposing counsel emphasized the *de minimis* nature of Ms. Francois's economic damages by cheekily offered to reimburse her for the cost of mailing her dispute letters right then and there. In short, it was always apparent that, assuming she could establish liability, all but a few hundred or few thousand dollars of Ms. Francois's actual damages would consist of emotional distress damages.

---

[3] The correct spelling of his last name is Laforest. However at different parts of the case it is listed as LeForest.

"[I]t is properly within the province of the jury to calculate [emotional distress] damages . . . [and] a jury has broad discretion in measuring damages . . . ." *Dotson v. City of Syracuse*, No. 04-CV-1388(NAM)(GJD), 2011 WL 817499, at *13 (N.D.N.Y. Mar. 2, 2011) (internal quotation marks and citations omitted). There is therefore always the risk that a jury will award only a token amount of emotional distress damages, or even none at all. For example, in the FDCPA case of *Samms II*, 198 F. Supp. 3d at 315, a jury had awarded only $1,000 in emotional distress damages to the plaintiff, who complained of becoming "fixated on the [deceptive] collections lawsuit and suffered anxiety, including an inability to sleep for months at a time," *Samms v. Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara & Wolf, LLP*, No. 15-cv-2741(JSR), 2015 WL 6437493 at *2 (S.D.N.Y. October 21, 2015) ("*Samms I*") – a classic "garden variety" emotional distress claim. But if events at trial had unfolded just a little differently, or if the composition of the jury had been slightly altered, Mr. Samms might have been awarded no emotional distress damages at all. Indeed, in their briefing in advance of *Samms I*, counsel for the defendants cited several cases awarding FDCPA plaintiffs emotional damages awards in the amount of $1,500 or $1,000 – or nothing at all. *See Samms v. Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara & Wolf, LLP*, No. 15-cv-2741(JSR), Dkt. 29. In response, the Court noted that "[t]he Second Circuit has affirmed awards of $100,000 for similar kinds of emotional distress." *Samms I* at *2 (citing to *Lore v. City of Syracuse*, 670 F.3d 127, 177-78 (2d. Cir. 2012)). But what this range of results in FDCPA cases illustrates is how much must go right to garner a substantial garden variety emotional distress award. A plaintiff must establish the existence and the severity of the emotional distress, and almost must establish that the conduct of the defendant caused the emotional distress. (Indeed, Defendants signaled in their Motion for Summary Judgment that they intended to argue that it was fear of Laforest's threats,

23

*not* the effects of Defendants' actions, that caused Ms. Francois's emotional distress, *see* Def. 56.1 at ¶ 43, 54, 57, 60, 69-70; Def. Counter 56.1 at ¶¶ 326, 328.) Most of all, the plaintiff must actually connect with the jury – and weighing the chances of that is a challenging task, particularly before a jury has even been selected.

One need only look to other jury awards to understand the risks Ms. Francois and her attorneys were facing in terms of recovery for garden variety emotional distress damages. And, while there are few to no FCRA jury awards for impermissible pull cases, it is reasonable to look to FDCPA awards for garden variety emotional distress, given that Ms. Francois's emotional distress was partly caused by collection attempts on the fraudulently obtained loan. In analagous FDCPA garden variety damages awards could be substantial, as much as $85,000 *Gomez v. Resurgent Capital Servs., LP*, 129 F. Supp. 3d 147, 153-154 (S.D.N.Y. 2015) (J. Sweet) (collecting cases) or even $100,000. *Abrams I* at *2 (citing to *Lore v. City of Syracuse*, 670 F.3d 127, 177-78 (2d. Cir. 2012)). But the fact finder could also award more nominal damages. *Levy v. L. Offs. of J. Henry Nierman*, No. 17 CIV. 4022 (NSR)(JCM), 2024 WL 3813754, at *5 (S.D.N.Y. July 3, 2024), *report and recommendation adopted*, No. 17-CV-4022 (NSR), 2024 WL 4275569 (S.D.N.Y. Sept. 24, 2024) (collecting cases of awards between $500 and $5,000).

On balance then, given the substantial risk of what a jury may award for garden variety emotional distress claim, $120,000 is a high degree of success.

4. *Plaintiff faced the risk that the jury might not award punitive damages – as the Court noted*

Apart from emotional distress damages, the other possible avenue to recovery for Ms. Francois was punitive damages. But, in this case, punitive damages would have been available only in the event that Ms. Francois established a "willful" violation of the FCRA – a much steeper hill to climb than establishing than a "negligent" violation. As discussed above, the risk

that the jury might refuse to accept Plaintiff's arguments regarding liability was itself sizable. But in the face of uncertainty over Laforest's credibility and whether Defendants "reasonably believed" Ms. Francois had authorized the pull, there was another possible result: The jury could have "split the difference" by holding Defendants liable for a negligent FCRA violation, but not for a willful FCRA violation. Moreover, the jury might have chosen to believe Defendants' testimony that Victory maintained a strict policy prohibiting its employees from pulling anyone's consumer report unless that consumer was physically present. The Court itself, while allowing Plaintiff's willful violation theory to proceed to trial, acknowledged that it was a "close call." To sum up, the risk of the jury concluding that the FCRA violation had not been willful – which would have taken the possibility of punitive damages off the table completely – was high.

## II.    CONCLUSION

For these reasons, The Law Office of Ahmad Keshavarz seeks an attorney's fee award of **$360,268.00**, which includes billing judgment reductions of $53,100, and reimbursement of expenses of **$21,571.26**; and Flitter Milz, PC. seeks an attorney's fee award of **$41,738.59**, as reduction of $7,516.50 after the exercise of billing judgment.   In sum, Plaintiff seeks entry of judgment for **$423,577.85**; and for such other and further relief as this Court deems appropriate.

Dated: Brooklyn, New York
     January 6, 2025

                    Respectfully submitted,
                    */s/*
                    Ahmad Keshavarz
                    ATTORNEY FOR PLAINTIFF
                    The Law Office of Ahmad Keshavarz
                    16 Court St., 26th Floor
                    Brooklyn, NY 11241-1026
                    Phone: (718) 522-7900
                    Fax:    (877) 496-7809
                    Email: ahmad@NewYorkConsumerAttorney.com

## CERTIFICATE OF SERVICE

I hereby certify that on January 6, 2025, a copy of the foregoing was electronically filed with the Clerk of the Court, United States District Court for the Southern District of New York and served on all parties and counsel of record via CM/ECF.

/s/ Ahmad Keshavarz
Ahmad Keshavarz

26