**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------X
FARAH JEAN FRANCOIS,

                              **Plaintiff,**           **Case No. 1:22-cv-4447**

     **- against -**                              **(Hon. Jed S. Rakoff)**

**SPARTAN AUTO GROUP LLC d/b/a VICTORY**
**MITSUBISHI, STAVROS ORSARIS, YESSICA**
**VELLEJO, and DAVID PEREZ,**

                             **Defendants.**
-----------------------------------------------------------------------X

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEY'S FEES

H. Nicholas Goodman
Patrick L. Selvey
NICHOLAS GOODMAN & ASSOCIATES, PLLC
*Attorneys for Defendants*
**SPARTAN AUTO GROUP LLC**
**d/b/a VICTORY MITSUBISHI,**
**STAVROS ORSARIS, YESSICA VELLEJO,**
**and DAVID PEREZ**
333 Park Avenue South, Suite 3A
New York, New York 10010
(212) 227-9003

# TABLE OF CONTENTS

TABLE OF CONTENTS...........................................................................................................ii
TABLE OF AUTHORITIES ...............................................................................................iii
PRELIMINARY STATEMENT ............................................................................................ 1
ARGUMENT .......................................................................................................................... 2
   I.            THE LEGAL STANDARD ....................................................................... 2
THE JOHNSON FACTORS DICTATE A SIGNIFICANT REDUCTION IN KESHAVARZ' ATTORNEY FEES.................................................................................................................... 2
     A.        The Amount Involved and Results Obtained ..................................................... 2
     B.        The Novelty and Difficulty of the Questions Presented.................................... 3
     C.        Whether the Fee is Fixed or Contingent ............................................................ 3
     D.        The Preclusion of Other Employment ................................................................ 3
     E.        The Experience, Reputation, and Ability of the Attorneys ............................... 4
     F.        Reasonableness of Hourly Rates ........................................................................ 5
     G.        Total Legitimate Time and Labor Involved, Discretionary Reductions, Settlement Attempts, and Lodestar Sought ........................................................ 6
   II.           KESHAVARZ SYSTEMATICALLY OVERWORKED AND OVERBILLED THIS STRAIGHTFORWARD CASE FOR MINIMAL DAMAGES USING HIS STATUTORY ENTITLEMENT TO FEES AS A CUDGEL ........................................... 7
     A.        Plaintiff Refused to Negotiate in Good Faith From Day One .......................... 7
     B.        Plaintiff's Frivolous Complaint ....................................................................... 14
     C.        Plaintiff's Frivolous Opposition To Defendants' Summary Judgment Motion 15
     D.        Plaintiff's Vexatious and Disingenuous Litigation ........................................ 15
        Plaintiff's Demand for Additional Insurance Information................................. 16
        Plaintiff's Demand for Supplemental Discovery Production ........................... 16
        Deposition Order Dispute ................................................................................. 17
        Plaintiff's Frivolous Request to Amend the Complaint................................... 18
  III.        THE OUTCOME OF THIS CASE RESULTED FROM DEFENSE COUNSEL'S ANTICIPATED TRIAL COSTS AND LIKELY DISRUPTION OF DEFENDANTS' BUSINESS, NOT THE MERITS OF PLAINTIFF'S CASE .................................... 18
  IV.         CALCULATION OF REASONABLE FEES ...................................... 20
     A.        Plaintiff's Opposition to Defendants' Summary Judgment Motion............... 21
     B.        Excessive and Harassing Depositions .............................................................. 21
     C.        Analysis of Reasonable Fee Cut-Offs .............................................................. 22
CONCLUSION...................................................................................................................... 23

# TABLE OF AUTHORITIES

Cases

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182 (2d Cir. 2008) ......................................................................... 2

*Farrar v. Hobby*, 506 U.S. 103 (1992) ............................................................................. 20

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ..................................................................... 20

*Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) ............................. 2

*Palsgraf v. Long Is. R.R. Co.*, 248 N.Y. 339 (1928) ......................................................... 3

*Samms v. Abrams*, 198 F. Supp. 3d 311 (S.D.N.Y. 2016) .......................................... 8, 13

*Sands v. Runyon*, 28 F.3d 1323 (2d Cir. 1994) .............................................................. 14

## PRELIMINARY STATEMENT

Before this Court is the application of the Law Firm of Ahmad Keshavarz (the Law Firm of Ahmad Keshavarz and Ahmad Keshavarz individually hereinafter referred to collectively as "Keshavarz"), counsel of record for Plaintiff herein, for attorney fees in the amount of $402,006.59 for nearly 1,000 hours of billing and an additional $21,571.26 in expenses all alleged expended in prosecuting this action that settled before trial for $120,000.00. The numerous declarations, certifications, and billing records submitted not only fail to justify the patently excessive billing sought, they demonstrate the extent to which Keshavarz multiplied proceedings for the purpose of generating a massive fee request. Further, the $400,000.00 plus in requested fees is wildly disproportionate to the simple liability issues in this FCRA case and the admittedly minimal damages Plaintiff sustained.

This Court will recall Plaintiff's failure to produce admissible evidence of any economic harm attributable to the alleged conduct of any Defendant herein, resulting in Your Honor dismissing Plaintiff's negligence cause of action altogether and leaving Plaintiff with only her emotional distress claim on her FCRA cause of action. And as to that, the record is clear that Plaintiff's emotional trauma was proximately caused not by an allegedly impermissible credit pull, but by the verbal abuse and harassment of Plaintiff's brother-in-law, a convicted criminal who admitted perpetrating the crime of stealing Plaintiff's identity.

Against this backdrop, the over-litigation and bad-faith refusal to negotiate towards amicable resolution of this low-value claim demonstrates Keshavarz' strategy: refuse to negotiate, and fight tooth and nail over every perceptible disagreement until the fees expand to the point he walks away a winner even if his client obtains only a nominal award. Ultimately, Defendants were able to stop this circus train just short of trial, but Plaintiff's counsel should not now be rewarded for his gamesmanship the last two and a half years.

## ARGUMENT

### I.    THE LEGAL STANDARD

This Court is surely familiar with the standard for determining a fee application within the parameters of the Second Circuit's guidance. To wit, an award of fees must be "reasonable" and proportionate to the outcome achieved and should not compensate an attorney for excessive billing and frivolous undertaking and should be reduced by a parties failure to achieve success on the majority of their claims. As set forth below, all those principles are in play herein.

### THE JOHNSON FACTORS DICTATE A SIGNIFICANT REDUCTION IN KESHAVARZ' ATTORNEY FEES

In a nutshell, Defendants contend that Keshavarz litigated this case to a point far exceeding anything "reasonable" under the facts and circumstances, especially considering the minimal degree of damages that Keshavarz now admits were in issue. That warrants significant reduction. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections, 522 F.3d 182 (2d Cir. 2008).*

Certain of the twelve factors expounded in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), bear on Defendants' contention:

#### A.    *The Amount Involved and Results Obtained*

Plaintiff's recoverable damages were minimal. This Court's dismissal of Plaintiff's negligence cause of action and Order precluding her from offering evidence of economic damages at all, (Doc. No. 60), left Plaintiff with her emotional distress claim and, theoretically, punitive damages. But as Keshavarz now acknowledges, emotional distress claims such as Plaintiff's rarely warrant six-figure awards. And that is without considering the reality here most, if not all, of Plaintiff's alleged emotional distress resulted not of allegedly improper credit pulls but from the abuse and threats her brother-in-law, Emmanual LaForest ("LaForest"), subjected her to.

2

While the settlement herein may be considered a "favorable result," it did not rest on the threat of a substantial jury award but rather a pragmatic determination to stem the bleeding of attorney fees and disruption of Defendants' business enterprise presented by the potential of a two-seek trial. See Section "IV," below.

### B.    The Novelty and Difficulty of the Questions Presented

As Keshavarz himself notes, no court has held that an impermissible credit pull proximately caused a resulting fraudulent loan and resulting emotional distress. But contrary to Keshavarz' conclusion, that straightforward question of proximate causation, resting on principles as old as *Palsgraf v. Long Is. R.R. Co.*, 248 N.Y. 339 (1928), hardly required years of litigation including tens of hours of depositions and wildly excessive trial preparation, especially given the minimal damages at stake. That Keshavarz successfully made a mountain of a mole hill in order to generate absurd legal fees hardly speaks to the "novelty and difficulty of the legal issue."

This factor weighs in favor of a reduced fee award.

### C.    Whether the Fee is Fixed or Contingent

Keshavarz has not provided defense counsel or this Court with his Retainer Agreement herein leaving Defendants unable to address this issue. While he claims that he took this case on contingency basis, the record speaks to his fixation on a maximizing statutory fee recovery. Regardless, without Plaintiff's Retainer Agreement, this Court should not consider this factor.

### D.    The Preclusion of Other Employment

The extent to which Keshavarz could not work on matters other than this case cannot justify his multiplication of proceedings herein. Between May 30, 2022, when Plaintiff commenced this

action and today, Keshavarz filed no fewer than thirteen (13) lawsuits in the SDNY and EDNY.[1]

And that does not include the many pending matters in which Keshavarz was already engaged, or

matters that required time and attention but did not result in litigation. Certainly then, despite the

ostensible time expended on frivolous pursuits and disputes herein, handling this case did preclude

Keshavarz from successfully pursuing other employment.

Further, Keshavarz' retention of trial counsel some two weeks before trial, and the

consequent effect on Mr. Milz, (Doc. No. 85-4, ¶ 34), is irrelevant. Keshavarz' questionable

decision to retain "lead" trial counsel a mere two weeks before the trial date should not be borne

by Defendants. To wit, Keshavarz cannot credibly claim that in October 2024 he still expected to

try the case, not after Defendants August 8, 2024, Offer of Judgment for $100,100.00 *plus* attorney

fees incurred to that date – Plaintiff settled for $120,000.00 plus attorney fees before trial less than

two months later. Thus, this Court should not consider Milz' purported forbearance of other work

for this case in its consideration.

### E.    The Experience, Reputation, and Ability of the Attorneys

Keshavarz and the attorneys supporting his application herein characterize him and his law

partner Emma Caterine, Esq. ("Caterine") as highly skilled and experienced litigators. Doc.  No.

87, at 14; Doc. No. 85-7; Doc. No. 85-8; Doc. No. 85-9; Doc. No. 85-11; Doc. No. 85-12. That

characterization hardly withstands scrutiny considering their assertion of non-existent and time

---

[1] *See Aranias v. SMG Automotive Holdings LLC*, 1:22-cv-04510, (E.D.N.Y); *Crespo v. Gutman, Mintz, Baker & Sonnenfeldt*, LLP, 1:22-cv-06599, (S.D.N.Y.); *Williams v. Tromberg, Morris, & Poulin, PLLC*, 1:22-cv-05866, (E.D.N.Y); *Luciano v. M&T Bank*, 1:23-cv-02233, (E.D.N.Y); *Ramirez v. Smith, Carroad, Levy, Wan & Parikh, P.C.*, 1:23-cv-04355, (S.D.N.Y.); *Tavano v. HK Recovery Group, Inc.*, 1:23-cv-08835, (S.D.N.Y.); *Carlo v. Abrams Fensterman, LLP*, 1:24-cv-03643, (E.D.N.Y); *Wilson v. Selip & Stylianou, LLP*, 1:24-cv-04108, (S.D.N.Y.); *Nunez v. Jay Zed LLC*, 1:24-cv-03949, (E.D.N.Y); *Rutledge v. Schwartz Sladkus Reich Greenberg Atlas LLP*, 1:24-cv-04188, (E.D.N.Y); *Iacovo v. Magguilli Law Firm, PLLC*, 2:24-cv-04372, (E.D.N.Y); *Rivera v. Experian Information Solutions, Inc.*, 1:24-cv-04684, (S.D.N.Y.); *Edwards v. Stern & Stern, P.C.*, 1:24-cv-08137, (E.D.N.Y).

barred causes of action in Plaintiff's initial and abandoned Complaint, the barrage of unnecessary subpoenas and the repeated applications Your Honor summarily disposed of in Defendants' favor, not to mention Keshavarz' persistent refusal even to engage in settlement negotiation (all discussed in greater detail below). Further, his late retention of trial counsel (were it more than a play to generate greater fees) speaks to Keshavarz' ultimate lack of ability to see this case through to conclusion.

On the other hand, one might accept that Keshavarz is highly skilled, but skilled primarily in the art of multiplying proceedings to generate an exorbitant fee demand.

Meanwhile, Caterine rang up 318.13 hours for a claimed $111,345.50 in billings, nearly one-third of Keshavarz' total fee request herein, all before she left Keshavarz in the summer of 2024. Her primary contribution in this litigation was to prolong depositions, intentionally or through a lack of ability.[2] Either way, should this Court reach detailed analysis of her billing, this Court should very substantially reduce it.

As to trial counsel, as stated, Keshavarz' decision to retain trial counsel two weeks in advance of a trial that was never going to proceed should not be borne by Defendants, and thus the experience, reputation, and ability of Milz should not be a factor in this court's determination of the lodestar herein.

### F.    *Reasonableness of Hourly Rates*

Ahmad Keshavarz $550/hour rate might be warranted were he the skilled litigator he and his curated cheering section make him out to be, and had he utilized his talents economically in

---

[2] For example, see the deposition transcript of Defendant Jessica Vallejo, a needlessly grueling 7 plus hour event. Document 53-2. This Court is of course familiar with the basic facts at issue in this case such that even a cursory review of that transcript reveals the extent of wasteful and consistently inartful questioning to which Ms. Caterine subjected Ms. Vallejo.

the service of his client. The record herein says otherwise. Further, the allegedly skilled trial counsel engaged on the eve of trial billed at the rate of $375/hour. Keshavarz cannot justify billing $175/hour more than "lead trial counsel." This Court should reduce Keshavarz' rate to $400.00/hour at most.

Caterine's rate of $350/hour is certainly not warranted given her junior status – she was admitted to practice in 2019, meaning she had been admitted only two years when she began handling this matter, and three years when she participated in the bulk of the depositions herein. A review of the transcripts herein demonstrates her lack of experience and legal acumen. Also, the billing records submitted reveal that Ahmad Keshavarz sat in on most depositions at which Caterine questioned or defended. Further, the record does not support a billing rate for Caterine only $25/less than purportedly highly skilled "lead trial counsel" Milz. A more appropriate rate for any time this Court may credit to her is $225/hour.

### G.    Total Legitimate Time and Labor Involved, Discretionary Reductions, Settlement Attempts, and Lodestar Sought

As set forth below, Defendants believe that any fee award to Keshavarz should not exceed $18,975.00, the amount of fees incurred to the date of Defendants' first Rule 68 Offer of Judgment. Failing that, the absolute highest lodestar amount that could remotely be considered reasonable would be $150,440.00, equal to the total amount of fees incurred as of the date of Defendants February 3, 2023, settlement offer which Keshavarz did not even convey to his client. See Section III(A), below. This amount, of course, must be further reduced by 50% to account for the degree of wasteful and frivolous billing entries that comprise it, as discussed in Section III(B)-(D), below.

## II.    KESHAVARZ SYSTEMATICALLY OVERWORKED AND OVERBILLED THIS STRAIGHTFORWARD CASE FOR MINIMAL DAMAGES USING HIS STATUTORY ENTITLEMENT TO FEES AS A CUDGEL

Throughout the course of this litigation, Keshavarz engaged in blatant, transparent – and consistent – conduct designed to pad his fees, highlighted by the persistent refusal to engage in good faith settlement negotiations from inception to the literal eve of trial. Along the way, Keshavarz asserted patently frivolous claims and causes of action later abandoned, insisted upon countless wasteful telephonic conferences with this Court over indefensible demands, and forced unnecessary motion practice, all in the service of his mission to turn a claim he now admits was questionable in the first place, and in any event of minimal monetary value, into a brutal slog with the statutory entitlement to attorney fees a perceived pot of gold at the end of his ethically dubious rainbow.

### A.    *Plaintiff Refused to Negotiate in Good Faith From Day One*

Upon retention and investigation of this claim, defense counsel spoke with Keshavarz, questioned the validity of Plaintiff's claims, and requested that Plaintiff state a settlement demand so as to avoid the time and expense of litigation. Affirmation of H. Nicholas Goodman ("Goodman Aff."), ¶ 2. Keshavarz refused to state a demand. *Id.*

On July 12, 2022, the undersigned reiterated Defendants' request for a settlement demand by email. Exhibit "1." Plaintiff's counsel did not acknowledge that request, responding only with a proposed discovery schedule as though settlement negotiation had not even been suggested. Goodman Aff., ¶ 3; Exhibit "1."

Only ten days later, defense counsel continued good faith settlement efforts. Given the already apparent low value of Plaintiff's provable damages,[3] on July 20, 2022, Defendants

---

[3] A fact that Plaintiff's counsel now gleefully admits in his fee application while patting himself on the back for his "high degree of success." Doc. No. 87, at 21-25.

conveyed a FRCP Rule 68 Offer of Judgment in the amount of $5,010.00 *plus* Plaintiff's reasonable attorneys' fees incurred to that date. Doc. No. 85-18. If nothing else, that offer could have, and should have, led to negotiation to resolve Plaintiff's admittedly minimal claim before full-blown litigation ensued.

Keshavarz again responded with silence,[4] followed by the issuance of a barrage of discovery demands and subpoenas two days later. Goodman Aff., ¶ 4. When pressed for a settlement demand during a subsequent telephone conference, Keshavarz demurred, stating the need to further assess the settlement value of Plaintiff's claim. Goodman Aff., ¶ 5. This conduct appears typical of Keshavarz' practice, a seemingly recurring strategy to leverage statutory fee shifting to generate legal fees orders of magnitude beyond the value of his clients' actual damages. *See, e.g.*, *Samms v. Abrams*, 198 F. Supp. 3d 311, 319 (S.D.N.Y. 2016).

Again, on August 10, 2022, defense counsel reiterated their desire to engage in good faith settlement discussions. Exhibit "2." But Plaintiff's counsel refused to engage, replying only to raise purported discovery issues and demanding the first of many wasteful telephonic conferences with this Court. Exhibit "2."

On September 6, 2022, Plaintiff's counsel for the first time expressed a willingness to consider settlement, but only in the form of mediation before his hand-picked mediator and only under that mediator's unique conditions including that Plaintiff should not state a settlement demand until one week before the mediation. Goodman Aff., ¶ 8; Exhibit "3." After reviewing that mediator's *bona fides* and noting his potential bias given his history of mediating cases with Keshavarz, defense counsel requested that Keshavarz (a) follow well established practice by

---

[4] It is not clear from Keshavarz' billing records or otherwise that he ever conveyed the terms of this settlement offer to his client for consideration.

stating a settlement demand so as to allow Defendants to determine the potential efficacy of mediation and an adequate time to respond, and (b) consider mediating at an established mediation forum such as NAM or JAMS. Goodman Aff., ¶ 8.

Also on September 6, 2022, this Court conducted a telephonic conference that included discussion of Defendants' then-pending first Motion to Dismiss and Plaintiff's Amended Complaint. Thereat, the undersigned urgently requested that Your Honor refer this action to a Magistrate Judge for the purpose of conducting a settlement conference. Goodman Aff. ¶ 9. But counsel were advised that Your Honor would only do so with the consent of all parties and Keshavarz refused to consent. *Id.*

On September 9, 2022, Caterine advised that settlement analysis was ongoing and promised to communicate an appropriate settlement range by the end of day September 12, 2022. Goodman Aff., ¶ 10. However, when defense counsel followed up on September 12, 2022, Caterine initially denied agreeing to state a settlement range, but ultimately agreed to provide an "analysis of the value of this case" the following day. Exhibit "4."

Incredibly, on September 13, 2022, Caterine retracted all previous agreements to state a demand, insisting instead that Defendants agree to schedule mediation before Plaintiff's chosen mediator, Joseph DiBenedetto, and that Plaintiff would agree to exchange a settlement demand only *after* Defendants had committed to participating in, *and paying for*, the mediation session. Exhibit "4." Defense counsel responded by repeating the simple request Plaintiff state a settlement demand, whatever it might be, allowing negotiations to ensue. *Id.*

On September 19, 2022, the parties appeared telephonically for a discovery conference. Thereat, the undersigned again conveyed frustration with Keshavarz' refusal to state a settlement demand, and again requested that the Court refer the matter to a Magistrate Judge for a settlement

9

conference, or, barring that, that Your Honor conduct a settlement conference. Goodman Aff., ¶ 12. But Keshavarz yet again refused to consent, and this Court denied Defendants' request. *Id.*

Recognizing that Keshavarz had no interest in good faith negotiation toward an amicable resolution of this case, and having received no assistance from this Court, Defendants proceeded with discovery, including numerous long and wasteful party depositions. *See* Section III(E), above, and Section V(B), below

On February 3, 2023, with discovery complete and dispositive motions due in a matter of weeks, but still having not received a settlement demand, Defendants conveyed a settlement offer of $45,000.00, hoping that Keshavarz would at least counter that offer and those open further discussions towards settlement and the avoidance of motion practice. Doc. No. 85-17.

Keshavarz February 8, 2023, response underscored his intent to multiply proceedings rather than working toward an amicable resolution. To wit, instead of countering Defendants' offer, Keshavarz served an improper, untimely Third Amended Initial Disclosures purporting to identify a host of previously undisclosed fact witnesses and attempting to add previously unasserted, and entirely unsubstantiated, damage claims.[5] Goodman Aff. ¶ 17; Exhibit "6."

On February 9, 2023, Keshavarz did formally reject Defendants' offer and reasserted his willingness to mediate before the only mediator he would accept, Joseph DiBenedetto. Doc. No. 85-16, p. 4. Disregarding all professional custom and practice, Plaintiff's counsel again refused to counter Defendants' offer. And notably, while Keshavarz asserted that "[o]ur client has rejected your offer of settlement of February 3, 2023," Keshavarz' billing records now before this Court show only a vague billing entry on February 3, 2023, for 0.5 hours for "[r]esearch on settlement

---

[5] Defendants' rejected this untimely assertion of new theories of damages, which rejection this Court affirmed in its decision precluding Plaintiff from relying on those assertions in opposition to Defendant's motion for summary judgment. Doc. No. 60, p. 8-10.

issue," Doc. No. 85-2, at 16, but no time entry for communicating with his client at any time from receipt of Defendants' February 3, 2023, offer until March 3, 2023. Doc. No. 85-2, at 16-17. Thus, Keshavarz apparently rejected Defendants' $45,000.00 offer without conveying it to his client. Doc. No. 85-2, at 16.

Absent coercive pressure or self-interested advice from her counsel, one would reasonably expect Plaintiff to have accepted Defendants' $45,000.00 offer, or, at a minimum, to have engaged in discussion with her counsel about the value of her case, and conveyed an amount she would accept.

On February 10, 2023, Defendant's counsel responded to Keshavarz with yet another entreaty to state a settlement demand and to consider an alternative mediator. Exhibit "7." On February 22, 2023, Plaintiff's counsel responded, again completely ignoring the substance of Defendants' previous correspondence and reasserting his disingenuous "request for mediation" before Joseph DiBenedetto, Doc. No. 85-16, at 6, ignoring Defendants' request to consider an alternate mediator. *Id.*

It was not until nearly one year later, on February 5, 2024, after Defendants achieved near total success on their motion for summary judgment, having eliminated Plaintiff's negligence cause of action entirely and removed from consideration all of Plaintiff's claims for economic damages under her FCRA claim, that Plaintiff's counsel finally deigned to consider mediation with someone other than Joseph DiBenedetto. *See* February 5, 2024, Request for Mediation, Doc. No. 85-16, p. 8.

After repeated delays, on June 13, 2024, the parties finally participated in an all-day mediation session with Paul Radvany, Esq.[6] Goodman Affirmation, ¶ 7. That lengthy effort failed to produce a settlement or for that matter a significant narrowing of the gulf between the parties' positions. *Id*.

On July 24, 2024, Defendants made another Rule 68 Offer of Judgment in the amount of $50,100.00 *plus* Plaintiff's reasonable attorneys' fees incurred to that date. Exhibit "8." As of that Offer, Keshavarz' claimed legal fees had reached an absurd $252,000.50. Doc. No. 85-2. The total value of that offer, even after a 50% reduction of Plaintiff's legal fees due to the frivolous and wasteful nature of Keshavarz' conduct herein, (see Section V, below), still comes to $176,100.25. At that point, a reasonable attorney would have considered the game won, having obtained a result far above Plaintiff's likely recovery at trial (as Keshavarz now admits), and well within the range of Plaintiff's best-case scenario. *See* Doc. No. 87, at 21-25. But rather than respond, Plaintiff allowed that Offer of Judgment to expire.

Meanwhile, Keshavarz continued to churn the file, incurring some $75,000.00 in claimed fees, most of which were attributable to "trial preparation," between July 24 and November 5, 2024, when the case actually settled. Doc. No. 85-2, at 22-28.

As if that were not enough, on August 9, 2024, Defendants conveyed yet another Rule 68 Offer, this time in the amount of $100,100.00 *plus* Plaintiff's reasonable attorney fees incurred to that date. Exhibit "9." The total value of this offer, even after a 50% reduction in Keshavarz claimed fees, would have been $228,670.25. *See* Doc. No. 85-2. But Keshavarz also allowed this Offer of Judgment to expire and continued overblown preparation for a trial he knew would not

---

[6] Indeed, Plaintiff stated her first demand, seeking a whopping $720,000.00, on May 30, 2024, two weeks before the scheduled mediation.

proceed. And again, notably, Keshavarz' billing records do not reflect any communication with the firm's client between August 9, 2024, and September 9, 2024, suggesting that the August 9 Offer of Judgment was likewise not communicated to his client prior to its expiration. Doc. No. 85-2, at 22.

Finally, after more torturous and contentious months, the parties ultimately agreed to settle the case on November 5, 2024. Goodman Aff., ¶ 22. During this time, Plaintiff's counsel continued to delay proceedings while furiously billing for trial preparation in advance of a trial he knew full well would never happen.[7] *Id*.; Doc. No. 85-2.

As stated, this case is not the first time Keshavarz has employed a strategy of refusing to negotiate while building up outsized fees, and indeed, not even the first time that Plaintiff's counsel has engaged in this process before Your Honor. In *Samms v. Abrams*, 198 F. Supp. 3d 311 (S.D.N.Y. 2016), Keshavarz used nearly identical tactics while litigating a similarly low-value claim, ultimately seeking nearly $200,000.00 in fees after obtaining less than $8,000.00 in relief for his client following a jury trial. A copy of the Memorandum of Law submitted by the *Samms* Defendants in opposition to Plaintiff's fee application is annexed hereto as Exhibit "10." Just as in this case, Keshavarz repeatedly ignored settlement offers and refused to state a settlement demand or otherwise engage in meaningful negotiations until he had generated legal fees dwarfing the true value of his client's claims. Exhibit "10," at 25.

This questionable conduct alone warrants a significant reduction in any fee award to Keshavarz. Here, Keshavarz managed to stretch a case that should have settled at or near its outset,

---

[7] Keshavarz now acknowledges that Plaintiff's odds of success at trial were low, and Defendants settlement offers made clear that settlement on the high end of Plaintiff's potential trial recovery would be easily obtained, thus rendering all of counsel's billing in "preparation" for trial a farce for which he should not be permitted to recover at all.

and certainly by February 2023 after the close of discovery, into a multi-year battle so that Keshavarz' claimed fees now approach an unseemly half million dollars. The Second Circuit has held that attorney misconduct that results in artificially elongating litigation is rightly considered on a fee application. *Sands v. Runyon*, 28 F.3d 1323, 1334 (2d Cir. 1994) (approving of district court's consideration of settlement negotiations, including delays caused by plaintiff's counsel, in awarding attorneys' fees). Accordingly, this Court should take into account Keshavarz' manipulation of the statutory protections afforded to consumers under the FCRA when rendering an award herein.

## B.    Plaintiff's Frivolous Complaint

While Keshavarz claims great expertise in his area of practice, Plaintiff's initial Complaint demonstrated no such expertise. That Complaint asserted a cause of action sounding in defamation fatally devoid of alleged special damages, and that was in any event time-barred. Doc. No. 1, ¶¶ 152-161. Further, Plaintiff also asserted a purported cause of action for Invasion of Privacy/False Light, theories not recognized under New York law at all. Doc. No. 1, ¶¶ 170-173.[8]

Defendants immediately moved to dismiss these frivolous causes of action along with Plaintiff's poorly pleaded negligence cause of action.[9] Keshavarz first opposed Defendants' motion, racking up legal fees in the process, but then rendered large portions of the motion moot by serving and filing an Amended Complaint without the defamation and invasion of privacy causes of action.

Beyond those unsustainable claims, Plaintiff persisted in her utterly baseless assertion that Defendants had harmed her credit or credit score all the way up until February 8, 2023, when she

---

[8] Amazingly, Keshavarz billed an outlandish $10,680 for drafting the defective original Complaint with all its frivolous deficiencies. *See* Doc. No. 85-2, at 4-8.

[9] This Court later dismissed Plaintiff's negligence cause of action in its entirety. Doc. No. 60.

finally withdrew those claims via her untimely 3rd Amended Rule 26(a)(1) Disclosures. Exhibit "6," at 8. This despite ample evidence, all of which was in Plaintiff's possession since before the commencement of litigation, that Plaintiff's credit score was not negatively impacted whatsoever by any of Defendants' alleged conduct.

### C.      *Plaintiff's Frivolous Opposition To Defendants' Summary Judgment Motion*

By their correspondence dated February 3, 2023, that conveyed their $45,000.00 settlement offer, Defendants detailed why Plaintiff's action against named Defendants Victory Auto Group, LLC d/b/a Victory Mitsubishi ("Victory") and Phillip Argyropoulos ("Phillip") individually lacked any merit. Doc. No. 85-17. Anticipating their motion for summary judgment, Defendants requested that Plaintiff discontinue those claims forthwith. Keshavarz refused.

On February 24, 2023, Defendants moved for summary judgment. Given Keshavarz' refusal to drop Plaintiff's claims against Victory and Phillip, Defendants were compelled to draft argument seeking their dismissal. Indeed, Defendants' Memorandum of Law cited their February 3 correspondence and asked this Court to consider sanctions against Keshavarz should he persist with claims against Victory and Phillip.

True to form, only after compelling defense counsel to expend time and energy to seek summary judgment for Victory and Phillip, in opposition Keshavarz conceded that Plaintiff had no case against Phillip, and offered virtually no opposition to Defendants' motion on behalf of Victory. This Court granted summary judgment to Victory and Phillip, as well as to Diane Argyropoulos individually.

### D.      *Plaintiff's Vexatious and Disingenuous Litigation*

A review of this Court's docket will give but a taste of the degree to which Keshavarz engaged in unnecessary, vexatious litigation, repeatedly demanding discovery and concessions to which Plaintiff was not entitled, often requiring this Court intervention before backing down.

Specifically, Plaintiff demanded telephonic conferences with the Court regarding the following issues, each of which resulted in the denial of the relief Keshavarz sought, but only after wasting defense counsel's time while contributing to Keshavarz ever-growing attorney fee claim:

<u>Plaintiff's Demand for Additional Insurance Information</u>

On or about August 24, 2022, Keshavarz asserted a laundry list of objections to Defendants' response to Plaintiff's first set of discovery demands, complaining in particular that Defendants' production of a redacted insurance agreement. Keshavarz demanded the identity and contact information for Defendant's insurance carrier despite having been repeatedly advised, and having had ample opportunity to establish from a review of the policy language itself that Defendants would not be afforded coverage for this case. Goodman Aff., ¶ 7 Nevertheless, Plaintiff's counsel insisted on taking this issue to this Court.

During an August 26, 2022, telephonic conference, this Court denied Keshavarz' request in its entirety.

<u>Plaintiff's Demand for Supplemental Discovery Production</u>

On or about September 16, 2022, Plaintiff's counsel raised various additional objections to Defendants' discovery production and demanded that Defendants supplement their discovery production by providing employee records, "pattern-and-practice" information concerning unauthorized sales of vehicles or credit report inquiries, and all financing agreements that might have governed the sale of the vehicle in question along with additional records concerning Plaintiff. Goodman Aff., ¶ 12. Despite defense counsel's assurance that a supplemental document production was forthcoming, Plaintiff's counsel insisted on seeking relief from this Court. *Id.*

On September 19, 2022, this Court conducted a telephonic conference wherein this Court denied Plaintiff's request for an Order that Defendants supplement their production.[10]

<u>Deposition Order Dispute</u>

In October 2022, the parties reached an impasse on an issue ordinarily easily resolved without judicial intervention: the order of party depositions. Goodman Aff., ¶ 14.

On October 28, 2022, Defendants proposed a deposition schedule in the order of the caption, beginning with Plaintiff's deposition. *Id.*

On October 31, 2022, Keshavarz demanded that Defendants produce each of their five party witnesses before Plaintiff. *Id.* Keshavarz did not even acknowledge Defendants' previously proposed schedule, or provide a basis for objecting to same. *Id.* When pressed, Plaintiff's counsel asserted that Defendants should be deposed before Plaintiff "to prevent Defendants from fabricating testimony" based on Plaintiff's testimony. *Id.*; Exhibit "5."

Keshavarz ultimately asked this Court to So-Order his proposed dates, refusing entirely to compromise. In so doing, Plaintiff's counsel ignored the Individual Rules of this court regarding pre-motion conference requests and telephonic communication, including drafting and emailing the Court a letter motion prior seeking a telephone conference in direct contravention of Section 2(b) of this Court's Individual Rules.

This Court conducted yet another telephonic conference on November 15, 2022, that produced a resolution: a compromise defense counsel proposed that Plaintiff's counsel refused to accept until this Court insisted upon it. Pursuing this dispute, including the drafting and submission of an unauthorized letter motion requesting that the court order depositions prior to convening a

---

[10] Defense counsel also reiterated their request that this Court refer this case for a settlement conference which request this Court denied.

telephonic conference under this Court's Individual Rules, is yet other example of Plaintiff's strategy to maximize billing at the expense of judicial economy and reason.

Plaintiff's Frivolous Request to Amend the Complaint

In late 2022, Keshavarz manufactured a further dispute concerning a non-party who had been furloughed by Defendant Spartan and was not at the dealership on any relevant date. On December 20, 2022, following a telephonic conference, this Court denied Plaintiff's application to add that non-party as a party Defendant.

Then, at a January 9, 2023, telephonic conference, this Court declined to allow Keshavarz to submit an Order To Show Cause to compel the non-party to appear for deposition despite defense counsel's agreement to stipulate that the non-party was furloughed on the dates at issue.

III.    THE OUTCOME OF THIS CASE RESULTED FROM DEFENSE COUNSEL'S ANTICIPATED TRIAL COSTS AND LIKELY DISRUPTION OF DEFENDANTS' BUSINESS, NOT THE MERITS OF PLAINTIFF'S CASE

Plaintiff's ultimate recovery herein was not a consequence of the merits of her case or the quality of Keshavarz' legal work. Rather, Defendants simply estimated the amount of legal fees they would incur trying this case,[11] along with the legal fees to which Plaintiff would seek recovery after trial, while also considering the disruption to their business operations caused by a potential two-week trial key management personnel would be required to attend at a critical time of year.

As Keshavarz now freely admits, Plaintiff's alleged economic damages were *de minimis;* yet even now, despite this Court's finding to the contrary, he continues to insist that Plaintiff suffered economic damages, those being the supposed "costs of postage for a few dispute letters; some storage and moving expenses; and some lost wages due to time taken off work to deal with the fallout of the theft of her identity." Doc. No. 87, p. 22. In reality, Plaintiff failed to establish

---

[11] Again, in the absence of applicable insurance coverage, Defendants' herein were responsible for paying their legal fees out of pocket.

her entitlement to *any* economic damages, as demonstrated by this Court's July 13, 2023, Order dismissing Plaintiff's negligence claim, holding *inter alia* that Plaintiff "has introduced no evidence that she suffered any economic harm" and thus she "may not seek economic damages as to her FCRA claim at trial." Document No. 60, p. 23.

As to her only remaining claim, for emotional distress, Keshavarz now acknowledges that Plaintiff faced a "substantial risk" that a jury might award little or nothing for this claim, particularly given that whatever emotional distress Plaintiff may have suffered came entirely at the hands of her brother-in-law LaForest. Doc. No. 87, p. 24. And the same goes for Plaintiff's claim for punitive damages; with LaForest's complete lack of credibility as a convicted criminal who openly admitted to defrauding Plaintiff, she faced what Keshavarz himself deemed a "high" risk of not recovering punitive damages at trial. Doc. No. 87, p. 25.

These realities were known to Plaintiff's counsel at the inception of this litigation and became more and more obvious throughout. From the outset, Defendants sought to resolve Plaintiff's claims so as to avoid the cost and expense of litigation (see Section III(A), above). In the end, after years of dealing with Keshavarz' refusal to negotiate in good faith, and faced with more expense and more lost time, Defendants settled for virtually the same amount of their August 9, 2024, Offer of Judgment.

At the June 2024 mediation, Defendants repeatedly, and unsuccessfully, implored the mediator to bring Plaintiff's counsel in line with reason and settle the case outright, but Keshavarz resisted, and here we are.

In sum, while Keshavarz and his coterie of purported admirers crow over the outcome, their collective admission of the dubious nature of Plaintiff's case and the minimal damages she hoped to recover only underscore the manipulation of the statutory protections enacted to protect

consumers, not to line counsel's pockets. This Court should not countenance this sort of exploitation of the statutory protections intended to encourage consumers in resolving meritorious but low value claims.

Put simply, this case did not remotely warrant the expenditure of $423,000.00 of legal fees and disbursements. Those claimed expenditures do not bear a reasonable, or even rational, relationship to the merits of Plaintiff's case and especially to her alleged damages. *Farrar v. Hobby*, 506 U.S. 103 (1992).

Further, as set forth above, Plaintiff failed on multiple aspects of her claim, starting with the original Complaint, the claimed negative effect on her credit rating to this Court's dismissal of her negligence claim and her economic damages claim. These failures warrant significant reductions in any fee award herein. *Hensley v. Eckerhart*, 461 U.S. 424, 436-37 (1983).

## IV.    CALCULATION OF REASONABLE FEES

Based on the foregoing, Defendants respectfully request that this Court find that the statutory protections afforded by the fee-shifting provisions of the FCRA are meant as a shield to protect consumers and not, as Mr. Keshavarz has employed them, as a sword to extort businesses. To that end, Defendants request that the Court reduce Plaintiff's fee award to $18,975.00, that being the amount of fees incurred from inception to the date that Keshavarz discussed Defendants' July 20, 2022, Offer of Judgment with Ms. Francois on August 3, 2022. *See* Doc. No. 85-2. Had Plaintiff's counsel acted reasonably and in good faith instead of litigating this matter out of all proportion, this matter should have been resolved then and there.

Should this Court see fit to award Plaintiff with fees beyond this point, Defendants seek a 50% reduction in any such award to reflect both the excessive rate for what has consistently been shown to be sub-standard work (see Sections III(B)-(D), above) as well as the clearly frivolous

and excessive billing undertaken asserting and defending frivolous claims. *Id*. For more specific examples of Plaintiff's excessive billing, consider the following:

### A.    *Plaintiff's Opposition to Defendants' Summary Judgment Motion*

Keshavarz generated an astounding $67,260.50 in fees opposing Defendant's Motion for Summary Judgment, and only reduced his fee request by a single entry of $1,100 for duplicative preparation for oral argument. Doc. No. 85-2, at 16-19. In so doing, Keshavarz vehemently defended both Plaintiff's doomed negligence cause of action (despite having offered zero evidence of any economic damages) as well as the completely meritless claims asserted against Philip & Diane Argyropoulos and Victory Auto Group LLC. Given the wealth of undisputed evidence against these claims, Defendants seek a reduction of Plaintiff's fees for not voluntarily conceding these points. Further, Plaintiff generated a truly egregious Rule 56.1 statement, clearly in violation of court rules and common practice. *See* Doc. No. 54.[12] Thus, while the billing entries are not specific enough to parse the drafting/research that went into defending Plaintiff's frivolous claims and the more excessive, unsupported portions of Plaintiff's Rule 56.1 statement, Defendants request a 50% reduction across the board for Plaintiff's opposition to Defendants' summary judgment motion, or $33,000.00 in this category alone.

### B.    *Excessive and Harassing Depositions*

At $64,625.00, reduced from a mind numbing $80,220.00 after Plaintiff's voluntary reductions, this category of billing is the most questionable given Keshavarz' wasteful behavior at the party depositions herein. As mentioned above, Keshavarz/Caterine blundered through entire days pursuing duplicative and unnecessary deposition testimony, often not reaching a relevant

---

[12] Plaintiff's 43 page, 247 paragraph Rule 56.1 statement contained extensive argumentation in a clear attempt to evade this Court's briefing limitations and was yet another exercise in over-litigation from Plaintiff's counsel.

question for many, many hours of questioning. *See* Doc. Nos. 52-9, 52-12, 53-1, 53-2. 53-3, and 53-4. It is not so much a question of whether any individual deposition was unreasonable, but the degree to which Plaintiff's counsel doggedly pursued irrelevant and duplicative lines of questioning with hours-long background inquiry intended both to wear down the witness and to inflate legal fees on both sides. Again, Defendants respectfully submit that Plaintiff's expended at least twice as much time as a reasonable, experienced attorney would have done in pursuing these depositions, even after Plaintiff's voluntary reductions.

### C.    Analysis of Reasonable Fee Cut-Offs

Based on the foregoing examples, as well as the well-established strategy of refusing to engage in good-faith negotiation while pursuing every available frivolous argument throughout the course of litigation, Defendants would request that any fee award be reduced by, at minimum, 50%.

Should this Court see fit to award Plaintiff with her fees beyond the date of Defendants initial FRCP Rule 68 Offer of Judgment, the latest point at which Plaintiff's counsel's conduct could, in any rational world, be considered "reasonable" should fairly be marked at February 3, 2023, the date of Defendants' $45,000.00 settlement offer. At that point, Plaintiff's counsel had generated a claimed $150,440.00 in legal fees, but instead of communicating Defendants' very reasonable offer to his client, he chose instead to unilaterally reject it. Reducing the fees generated to this point by 50% results in an award of $75,220.00. Any legal fees generated thereafter cannot be considered "reasonable" as a matter of law.

As an absolute backstop, $252,00.50 is the amount of claimed fees generated from inception to Defendants' July 24, 2023, Offer of Judgment for $50,100.00 plus Plaintiff's reasonable attorney fees to date. Reducing that figure by 50% yields $126,000.25. No reasonable fees after this point should be considered under any circumstances, and Plaintiff's counsel should

certainly not be rewarded for the continued flurry of "trial preparation" activity by which he generated nearly $100,000.00 in additional fees despite the fact that settlement was clearly on the table.

## **CONCLUSION**

For all the reasons set forth above, Defendants request that this Court enter an Order denying Plaintiff's application and reducing Plaintiff's fee award from $423,577.80 to $18,975.00, or to the alternative amounts set forth above, together with such other and further relief as this Court deems just and proper.

Dated: New York, New York
      February 24, 2025

BY: _____
        H. Nicholas Goodman
        Patrick L. Selvey