UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
FARAH JEAN FRANCOIS,

                                                     Case No.: 1:22-cv-4447-JSR

                      Plaintiff,

      -against-

SPARTAN AUTO GROUP LLC d/b/a
VICTORY MITSUBISHI,
STAVROS ORSARIS,
YESSICA VALLEJO, and
DAVID PEREZ,

                    Defendants.
------------------------------------------------------------------------X


**PLAINTIFF'S REPLY IN SUPPORT
OF HER PETITION FOR ATTORNEY FEES AND COSTS**

## I.    PRELIMINARY STATEMENT

Nothing in Defendants' Memorandum of Law in Opposition [Dkt. No. 88] ("Def. Opp.") seriously challenges the application of the *Johnson* factors in Ms. Francois' Memorandum of Law in Support of Her Fee Application [Dkt. No. 87] ("Pl. Mem." or "Fee Petition").

Defendants simply have no meaningful response to the most important the *Johnson* factor: that Ms. Francois's award of a judgment of $120,000 plus attorney's fees is a high "degree of success." *See* Pl. Mem. pp. 1, 2, 8-10, 21-25. While Defendants raise the issue of settlement, Def. Opp. pp. 7-14, they ignore a key fact: on October 7, 2024 (and again on October 25, 2024) Plaintiff offered to accept a judgment of $120,000 plus attorney's fees. Not only did Defendants reject that offer, as late as October 16, 2024 Defendants *reduced* their prior offer to an OOJ of $160,000 *inclusive* of attorney's fees. *See* Second Declaration of Ahmad Keshavarz ("2nd Keshavarz Decl.") ¶¶ 2-6 and Ex. A-D.

Defendants' backtracking and abandonment of any reasonable settlement position resulted in Plaintiff retaining trial co-counsel and hunkering down for trial. Plaintiff had to draft and file by dates certain her Rule 26(a)(3) Disclosures (Dkt. No.70, October 22) and Supplemental Disclosure (Dkt. No.71, October 23); Motion in Limine (Dkt. No.73, 74, October 29); and Motion to Appear Pro Hac Vice (Dkt. No. 76, October 31). Plaintiff had timely drafted and circulated a Pretrial Consent Order on November 5 but did not file because she was unable to get consent from the opposing party. *See* 2nd Keshavarz Decl. ¶ 6 and Ex. E (Pretrial Consent Order).   The Court's Individual Practice Rule set very strict deadlines for the filing of pre-trial motions. Further, a trial setting may not be adjourned absent a signed letter or stipulation between the parties affirming that the case has been finally settled and that the Court may dismiss the case with prejudice, retaining jurisdiction for no more than 30 days. For Plaintiff this

meant that she must be prepared to go to trial absent a signed settlement.

Plaintiff had to, and did, get ready for trial. The fact that Defendants did not, and treated the imminent trial so cavalierly (even suggesting that trial *was never going to happen*), is not something that can be held against Plaintiff. If Defendants wanted to avoid trial preparation, they should have made a better offer. They did not, and Plaintiff and her counsel needed to prepare for trial in earnest. Defendants know that dangling the baubles of a potential settlement are a distraction when preparing for trial, and that's just what Defendants attempted to do here. They are upset now in hindsight that their tactic did not work and Plaintiff *really did prepare to try the case*. This also likely led to Defendants deciding to pay the additional $19,000 in damages and a removal of the "to date" limitation as to attorney's fees, as well as the non-monetary terms required by Plaintiff (admission of "successful action," no confidentiality, etc).

On November 7, 2024, two business days before trial, Defendants finally accepted a consent judgment [DE 81] on the same terms as Plaintiff offered on October 7. Consequently, Defendants are the sole cause of the $106,804 in attorney's fees accrued from October 7 – November 7 for trial preparation. Even if there were no October 7 offer, the additional $19,000 in recovery for Ms. Francois from the August 8 OOJ to the November 7 Consent Judgment is a huge difference for her: it is nearly as much as she makes in a year, making trial preparation entirely reasonable in any event.

Further, Defendants would offer only $50,000 to settle the attorneys' fees claim, requiring the filing of a fee application, *see* 2nd Keshavarz Decl. ¶ 7 and Ex. F (December 18, 2024 settlement response); and refused to pay the $120,000 consent judgment, requiring time to be spent up to the point of beginning judgment enforcement actions for payment. *See* 2nd Keshavarz Decl. ¶ 8 and Ex. G; Dkt. No 83. Defendants' post-judgment recalcitrance

emphasizes the high degree of success: the August 8 OOJ limited attorney's fees "to date" while there is no such limitation in the October 7 proposed judgment or the November 7 consent judgment. As such, Ms. Francois' counsel will be able to be compensated for additional work necessitated to enforce the $120,000 judgment, for filing the Fee Petition and this Reply, and from defending against any appeal from the fee award. Post-judgment fees are integral to fee shifting statutes, such as the FCRA. *See, e.g. Gagne v. Maher*, 594 F.2d 336, 344 (2d Cir. 1979) *citing Prandini v. National Tea Co.,* 585 F.2d 47, 52-54 (3d Cir. 1978)("if an attorney is required to expend time litigating his fee claim, yet may not be compensated for that time, the attorney's effective rate for all the hours expended on the case will be correspondingly decreased. . . . Such a result would not comport with the purpose behind most statutory fee authorizations, Viz, the encouragement of attorneys to represent indigent clients and to act as private attorneys general in vindicating congressional policies"). As such, removing the limitation of fees "to date" further demonstrates a high degree of success. In addition, the recovery in the form of a public judgment, as opposed to a confidential settlement, and supports the public policy of FCRA enforcement by demonstrating a consumer can successfully enforce her rights under the statute. *Cf.* 2nd Keshavarz Decl. ¶ 9 and Ex. H (suggesting sealing Consent Judgment).

For these reasons, The Law Office of Ahmad Keshavarz seeks an attorney's fee award of **$369,500.50**, which includes billing judgment reductions of $55,850.00, and reimbursement of expenses of **$22,111.18**; and Flitter Milz, PC. seeks an attorney's fee award of **$44,488.59**, as reduction of $7,516.50 after the exercise of billing judgment.   In sum, Ms. Francois seeks entry of judgment for **$436,100.27**.[1]

---

[1] These amounts include time spent for drafting the Reply and additional expenses. *See* 2nd Keshavarz Decl. ¶ 17 Ex.P (Keshavarz billing records seeking $9,232.50 for Reply (after

## II.    ARGUMENT

### A.  The *Johnson* factors still weigh heavily in favor of a full fee award.

Defendants do not challenge number of Johnson factors Plaintiff demonstrated weighed in her favor for full fees, effectively conceding those points. The conceded factors are awards in similar cases, the awards in similar cases, the undesirability of the case, and the skill requisite to perform the legal services property.

### 1.  The amount involved and results obtained: a judgment for $120,000 plus fees demonstrates a spectacular degree of success.

As noted in the opening brief, the "degree of success" is the most critical factor in determining the reasonableness of a fee. Pl. Mem. pp. 7, 8. As outlined in the Preliminary Statement, Ms. Francois's result obtained in obtaining a judgment of $120,000 plus attorney's fees is a spectacular result.

Defendants argue that Ms. Francois's damages were "minimal," "low value," and again "minimal," caused by Mr. Laforest, no "threat of a substantial jury award," "minimal monetary value," and "low value." Def. Op. pp. 1-3 and 7. But that argues in favor of $120,000 demonstrating a high degree of success.  Defendants immediately contradict themselves in their argument, admitting emotional damages cases "rarely warrant six-figure awards" (Def. Op. at p. 2).  So, this then is the rare case where such damages are warranted.

Defendants contend the Second Circuit requires a fee award to be "proportionate to the outcome" achieved. But in fact the reverse is true. "The whole purpose of fee-shifting statutes is to generate attorneys' fees that are disproportionate to the plaintiff's recovery." *Millea v. Metro-*

---

$2,750.00 reduction);¶ 10 Ex. I ($539.92 payment for balance of trial expenses); ¶ 18 Ex. Q (Supplemental Milz Certification for $2,915.50 for Reply fees). Plaintiff will consent for Defendants to file a brief sur-reply limited to any exhibit attached to the Declaration in support of this Reply.

*North R.R. Co.*, 658 F.3d 154, 169 (2d Cir. 2011). Even if proportionality were a relevant consideration, it would be an odd argument for Defendants to raise here, since the proportion of Plaintiff's requested fees and costs ($436,100.27) to Plaintiff's damages recovery ($120,000) is about 3.6 to 1, which is lower than in many other cases. For example, in *Samms II*, the court awarded $145,180 in attorney fees in a case in which the plaintiff recovered a total of $8,795 in damages, a proportion of about 16.5 to 1. *Samms II*, 198 F. Supp. 3d at 323. Either way, a full award of the fees requested by Ms. Francois is appropriate here.

### 2. This case presented novel and difficult questions.

Defendants contend causation was not difficult to establish but spent four pages in the Summary Judgment Opposition arguing against the issue. *See* Dkt. No. 50 pp. 10-13.

### 3. The fee was contingent, not fixed.

Counsel for Ms. Francois avers, under oath, that their fee is contingent. *See* Dkt. No. 85-1 Keshavarz Decl. ¶ 6;. Milz Supp. Decl. ¶ 1. To this day, counsels have not been paid $0.01 by Ms. Francois, the Defendants, nor anyone else, and have had to shoulder the risks of three years of litigation without pay.  (*Id.*), Defendants cite no authority that a declaration is insufficient and that production of the retainer agreement is required, nor has counsel been able to find such authority. This factor continues to weigh in favor of Plaintiff.

### 4. The case necessarily precluded other employment.

Defendants point out that during the 2 ½ years the case has been pending, Mr. Keshavarz has filed 13 other lawsuits. All that shows is that his office has other cases. It does not mean that opposing Defendants multiple motions did not also require time that his office could have used to move other cases forward. Defendants contend it is not credible that Plaintiff needed to prepare for trial. That is refuted by Defendants refusing the October 7 proposed judgment, their

October 16 drop in settlement offer, and waiting for two days before trial to accept the same offer it rejected on October 7. Therefore, the retention of trial counsel and the need for counsel to clear off his calendar entirely for trial preparation is both reasonable and entirely foreseeable.

### 5. The skill, reputation, and ability of the attorneys.

Defendants argue Ms. Caterine's "primary contribution in this litigation was to prolong depositions, intentionally or through a lack of ability," Def. Opp. p. 5, but point to no specific instance to support this allegation. Further, it was Mr. Goodman who was violating the most basic of deposition rules by repeatedly making speaking objections, such as in the November 23, 2022 Orsaris Deposition, Dkt. No. 53-4, p. 63:2-14 (Goodman: "If you understand – I do not – go ahead."), requiring Ms. Caterine pausing the deposition and calling the Court for assistance. Judge Rakoff picked up the phone and, in strong terms, reminded counsel about the prohibition of speaking objection.  Undeterred, Mr. Goodman continued. *Compare* the speaking objection Dkt. No. 53-4, p. 184:8-16 (Goodman: "I am curious about the time zone for that time, but object to form.") *with* the answer p. 200:11-20 (Osaris: "these time stamps are questionable in the sense of time zones.")

More fundamentally, the number depositions and length of depositions were necessitated by Defendants' testimony being inconsistent and contradictory in relation to each other, to non-parties like Jami Singer, to the documents, and to their so-called policy of not pulling a consumer's credit report unless the person was at the dealership. The fleshing out of these contradictions was central to the denials of the motion to dismiss and reconsideration as to Ms. Francois' FCRA claims, both negligent and intentional. *Francois v. Victory Auto Grp. LLC*, 2023 WL 4534375, at *7 (S.D.N.Y. July 13, 2023)(Summary Judgment); *Francois v. Victory Auto Grp. LLC*, 2024 WL 396171, at *2, 3 (S.D.N.Y. Feb. 2, 2024) (Reconsideration).

**6. The hourly rates of Plaintiff's counsel are reasonable, especially at current market rates.**

Plaintiff's Fee Petition included extensive declarations as to the skill, reputation and ability of Ms. Francois' counsel, and that their rates sought are in line with rates charged by attorneys of similar skill and experience in the SDNY. *See* Pl. Mem. pp.13-17 (citing to declarations). Defendants offer no contrary evidence in the form of counter-declarations or otherwise. Defendants do not even discuss the current community rate.

Defendants challenge the reasonableness of the hourly rates of Mr. Keshavarz ($550) and Ms. Caterine ($350) based on a comparison to the hourly rate they believe is sought by the more senior trial counsel, Mr. Milz. However, Mr. Milz is seeking a $595 hourly rate – not $375 as Defendants seem to think -- making their entire argument incoherent.

Defendants seek to dismiss Ms. Caterine as "junior," but given the *current* market rates $350 is more than reasonable. As Judge Block recently discussed, much of the caselaw as to a reasonable hourly rated is based on historical rates that do not reflect the current rates if, for nothing else, inflation. *Rubin v. HSBC Bank USA, NA*, --- F. Supp. 3d ---, No. 20-CV-4566, 2025 WL 248253, at *5-6 (E.D.N.Y. Jan. 21, 2025) ("Retaining the same rates as far back as at least 2012 is no longer sustainable."). Based on current market conditions, Judge Block set current reasonable rates in the Eastern District as $275-$413 for Senior Associates and $413-619 for Partners. *Id*. at * 7. The experience of Ms. Caterine, a partner, is closest to the senior associate Richard Krause who was awarded $350 per hour. Compare Id. at * 7 *with* Dkt. No. 85-1 Keshavarz Decl. ¶¶ 14, 23, Dkt. No. 85-10 Caterine Decl. ¶¶ 4-16, 18,  Shin Decl. Dkt. No. 85-12 ¶¶ 9-12, 15. Likewise, the experience of Mr. Keshavarz is on or near par with the attorneys awarded hourly rates of $620 and $600, respectively. *Compare Rubin* at * 7 *with* Dkt. No. 85-1 Keshavarz Decl. ¶¶ 9-13, 19-24, 27. And of course, as the Second Circuit has noted "prevailing

hourly rates are substantially lower" in the Eastern District than the Southern District. *Simmons v. New York City Transit Auth*., 575 F.3d 170, 172 (2d Cir. 2009).

For these reasons, the hourly rates sought for Ms. Caterine ($350), Mr. Keshavarz ($550), as well as Mr. Milz ($595), are eminently reasonable.

### B. Responding to attacks of bad faith negotiation and allegations ethical misconduct.
#### 1. Allegations that counsel did not convey settlement offers.

Defendants make serious allegations that "Keshavarz apparently rejected Defendants' $45,000.00 offer without conveying it to his client," Def. Op. p. 11; that they made a "settlement offer which Keshavarz did not even convey to his client," *Id*. p. 6; "but instead of communicating Defendants' very reasonable offer to his client, he chose instead to unilaterally reject it." *Id*. p. 22; and "[a]bsent coercive pressure or self-interested advice from her counsel one would reasonably expect Plaintiff to have accepted Defendants' $45,000.00 offer." Of course, none of the allegations are true, as demonstrated by the attached declarations and the contemporaneous emails from Ms. Francois confirming the rejections of these offers. *See* 2nd Keshavarz Decl. ¶¶ 11-15 and Ex.J-N (emails), Ex. O (Francois Decl. ¶¶ 3-9.)

#### 2. Plaintiff was the one seeking to settle through mediation throughout the length of this case.

Plaintiff repeatedly asked to go to mediation since the outset of this case. *See* Dkt. 85-16. She stated she would make a pre-mediation demand within the context of a confidential mediation statement shared with the mediator and Defendants. The purpose was to have a frank discussion to avoid the blustering that often happens when demands are exchanged outside the mediation context. When Defendants say they wanted a demand before going to mediation, it is important to focus on exactly what they meant. Defendants wanted Plaintiff to make a "good faith" demand and only if they found it "sufficiently reasonable" would then provide a list of

mediators who they would agree to go before, but not before. Dkt. No. 88-5, p. 1 (Selvey September 12, 2022 email) *cf*. Dkt. 82-2 p. 2 ( seeking "minimal settlement demand").

On a separate note, Defendants have disclosed, Def. Opp. p. 12 fn. 6, information contained solely in the May 30, 2024 confidential mediation statement. *See* 2nd Keshavarz Decl. ¶ 19 and Ex. R. Plaintiff contacted opposing counsel and asked them to delete the footnote and re-file the Opposition, but Defendants refused. *Id*. Therefore, Plaintiff asks the Court to strike or disregard the footnote.

### 3. Defendants' arguments as to fee cut-offs make no sense - the judgment was considerably greater than their meager offers.

Defendants seem to make the odd argument that Plaintiff's fees should be cut off on the dates that Plaintiff rejected offers that the Defendants thought were reasonable, even though Plaintiff obtained results through the consent judgment **many orders magnitude greater**. Defendants complain that the fee award should be "reduced" to $18,975 because Ms. Francois did not accept a relatively meager offer of judgment of $5,001 plus fees to date offered on July 20, 2022. By Defendants' logic, since Ms. Francois obtained a damages award of $120,000 (24 times the $5,001 offer), a reasonable fee after litigating enough to get Defendants there would be 24 times what Defendants contends are the fees as of that date, $455,400. More absurd still Defendants argue, Def. Mem. p. 22 , that their settlement offer of Plaintiff's Fee Petition should be cut off as of a February 3, 2023, proposed settlement (not judgment) of $45,000 *inclusive* of fees, not plus fees, as Defendants seem to suggest. Dkt. No. 85-17 (February 3, 2023 offer).

Defendants are, in hindsight, trying to put a spin on their tepid and inadequate valuation of the case.  Taking a similar view in hindsight, if Defendants had offered $120,000 plus fees earlier in the case, the fee bill would of course be considerably lower.  But Defendants chose not to do so.  They cannot now be heard to complain that their decisions led to Plaintiff continuing to

litigate until they finally paid what the case was worth.

### 4.  Same relief for all claims and discovery calls to chambers.

Defendants note that Plaintiff was precluded from offering evidence of economic damages and that her negligence claim was dismissed. However these are ancillary issues in relation to the core relief she sought: a FCRA claim allowing for emotional distress damage and possible punitive damages. The defamation and Invasion of Privacy/False Light claims did not significantly add to the time and labor Plaintiff's attorneys expended in drafting the Complaint; the bulk of the Complaint consisted of detailed factual allegations which were necessary to plausibly demonstrate the basis for all of her claims. In any event, "When a plaintiff has achieved partial success but "the plaintiff's claims involve a common core of facts or are based on related legal theories and are therefore not severable, attorney's fees may be awarded for [work done on] unsuccessful claims as well as successful ones."") *Raja v. Burns*, 43 F.4th 80, 88 (2d Cir. 2022) *quoting Green v. Torres*, 361 F.3d 96, 98 (2d Cir. 2004). "So long as the plaintiff's unsuccessful claims are not wholly unrelated to the plaintiff's successful claims, hours spent on the unsuccessful claims need not be excluded from the [reasonable fee] amount." *Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994).  Finally, Defendants point to a handful of instances in which Plaintiffs' attorneys initiated telephonic conferences with the Court, labeling them "vexatious and disingenuous litigation." *Id*. at 15 (emphasis deleted). But Defendants have not shown that a "reasonable attorney" would not have requested those conferences. Regardless, as reflected on the billing records, the total billed for all of the referenced dates is just $5,340.

### III.    CONCLUSION

The Court should issue an order granting in full Ms. Francois attorney's fees of **$413,989.09** and costs **$22,111.18**, for a total of **$436,100.27**.

Respectfully submitted,

*/s/*
Ahmad Keshavarz
ATTORNEY FOR PLAINTIFF
The Law Office of Ahmad Keshavarz
16 Court St., 26th Floor
Brooklyn, NY 11241-1026
Phone: (718) 522-7900
Fax:     (877) 496-7809
Email: ahmad@NewYorkConsumerAttorney.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 11, 2025, a copy of the foregoing was electronically filed

with the Clerk of the Court, United States District Court for the Southern District of New York

and served on all parties and counsel of record via CM/ECF.


/s/ Ahmad Keshavarz

Ahmad Keshavarz