UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────┐
│ FARAH JEAN FRANCOIS,            │
│                                 │
│         Plaintiff,              │                22-cv-4447 (JSR)
│                                 │
│      -v-                        │                OPINION & ORDER
│                                 │
│ VICTORY AUTO GROUP LLC D/B/A    │
│ VICTORY MITSUBISHI, et al.,     │
│                                 │
│         Defendants.             │
└─────────────────────────────────┘
```

JED S. RAKOFF, U.S.D.J.:

Before the Court is a motion for attorney's fees filed by Plaintiff Farah Jean Francois. Plaintiff requests an award of $413,989.09 in attorney's fees in connection with her successful litigation to settlement of a claim under the Fair Credit Reporting Act (FCRA). See Plaintiff's Reply in Support of Her Petition for Attorneys Fees and Costs at 3, ECF No. 90 ("Fee Reply"). Plaintiff also seeks $22,111.18 in costs. Id. Defendants agree that plaintiff is entitled to fees, but vigorously dispute the amount requested. See Memorandum of Law in Opposition to Plaintiff's Motion for Attorney's Fees, ECF No. 88 ("Fee Opp."). For the reasons set forth below, plaintiff's motion is granted in the reduced amount of $286,673.09.

I.  **Background**

The Court assumes familiarity with this case and sets forth the background only briefly. Plaintiff filed suit in May 2022 against Spartan Auto Group LLC and several other defendants, alleging that the defendants facilitated her identity theft by her brother-in-law,

1

Emmanuel LaForest, whom the defendants allegedly permitted to purchase a car in her name. See generally First Amended Complaint, ECF No. 26. Plaintiff alleged that LaForest had initially tried to buy a car from the dealership in his own name, but when his credit check was unsatisfactory, he directed the dealership to perform credit checks first on a third party and then on plaintiff. According to plaintiff, the dealership then permitted LaForest to purchase a car in her name even though she had not consented to the sale. The amended complaint alleged a common law negligence claim as well as a violation of the FCRA.[1]

On July 13, 2023, the Court granted in part and denied in part defendants' motion for summary judgment. See generally Memorandum Order, ECF No. 60. The Court granted summary judgment dismissing plaintiff's negligence claim on the ground that she had failed to introduce any evidence of actual damages or injury resulting from the sale of the car to LaForest and the alleged related misconduct. The Court, however, allowed plaintiff's FCRA claim to proceed even in the absence of evidence of actual damages or injury because of the possibility that plaintiff could recover for emotional distress under that claim. The Court likewise denied summary judgment on the issue of whether defendants had "willfully" violated the FCRA, finding a genuine dispute of material fact. Finally, the court granted summary

---

[1] The initial complaint also asserted claims of defamation and invasion of privacy/false light. See Complaint ¶¶ 152-61, 170-73, ECF No. 1. Plaintiff did not assert those claims in the amended complaint.

judgment dismissing the case as to the three defendants other than Spartan Auto Group, concluding that plaintiff had produced no evidence that would support their liability.

On November 7, 2024, several days before the case was set to go to trial, the parties entered a Consent Judgment. See Consent Judgment, ECF No. 81. The agreement disposed of the remaining FCRA claim in exchange for an entry of judgment in favor of plaintiff in the amount of $120,000 and also "preserv[ed] Plaintiff's entitlement to seek recovery of reasonable costs and attorney fees." Id. Defendant Spartan Auto Group likewise "reserve[d] its right to contest the reasonableness of any and all costs and attorney fees claimed by Plaintiff." Id.

Plaintiff subsequently filed the instant motion seeking attorney's fees and costs. Plaintiff requested fees in the amount of $413,989.09 and costs of $22,111.18.[2] See Fee Reply at 10. Defendants opposed on various grounds, arguing that the amount requested was unreasonable and excessive. Defendants asked the Court to reduce the award to $18,975.00, the amount of fees incurred from the case's inception to the date on which plaintiff's attorney discussed defendants' first Offer of Judgment with plaintiff. See Fee Opp. at

---

[2] Plaintiff initially requested $402,006.59 in fees and $21,571.26 in costs. See Plaintiff's Memorandum of Law in Support of Her Petition for Attorney Fees and Costs at 2, ECF No. 85 ("Fee MOL"). Plaintiff later increased the requested amount to account for time spent drafting the reply and for additional expenses incurred since filing the initial motion. See Fee Reply at 3 n.1. Plaintiff indicated that she would not object to defendants filing a sur-reply in light of the updated calculations; however, defendants did not seek to do. See id.

23. In the alternative, defendants asked the Court to reduce any fees awarded after that date by 50 percent "to reflect . . . the excessive rate" and "frivolous and excessive billing undertaken asserting and defending frivolous claims." Id. at 20-21.

## II. Discussion

The Fair Credit Reporting Act (FCRA) provides that, following a "successful action," a defendant "is liable" to the plaintiff in the amount of "the costs of the action together with reasonable attorney's fees as determined by the court." 15 U.S.C. §§ 1681n, 1681o. The parties agree, as stipulated in the Consent Judgment, that plaintiff "litigated a successful action," and is therefore entitled to reasonable attorney's fees and costs. See ECF No. 81. The parties disagree, however, as to the amount of the award.

### A. Attorney's Fees

An award of attorney's fees is calculated using the "lodestar" method, "i.e., the number of hours worked multiplied by the prevailing hourly rates" in the district in which the district court sits. Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 546 (2010); see also Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 183, 190 (2d Cir. 2008). This method generates a "presumptively reasonable fee." Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011) (quoting Arbor Hill, 522 F.3d at 190).[3]

---

[3] Although there is some inconsistency in the use of "the traditional term 'lodestar'" as compared to the Second Circuit's preferred "presumptively reasonable fee," "[f]or all intents and

The first step in this process is to determine the "reasonable hourly rate." Arbor Hill, 522 F.3d at 190. In doing so, the court must "bear in mind all of the case-specific variables that [the Second Circuit] and other courts have identified as relevant to the reasonableness of attorney's fees," including the so-called the Johnson factors.[4] Lilly v. City of New York, 934 F.3d 222, 229-30, 233 (2d Cir. 2019) (emphasis omitted) (quoting Arbor Hill, 552 F.3d at 190). That rate is then multiplied by "the number of hours reasonably expended" in litigating the case. Id. at 230. In "extraordinary circumstances," a district court may adjust the resulting amount if the fee does not adequately account for a factor properly under consideration. Id. Factors "already subsumed in the [initial] calculation," however, generally may not be used to "enhance or cut the lodestar amount."[5] Id. at 231; Perdue, 559 U.S. at 553.

---

purposes, the two terms mean the same thing." Lilly v. City of New York, 934 F.3d 222, 229 n.33 (2d Cir. 2019).

[4] The twelve Johnson factors include: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." Arbor Hill, 522 F.3d at 186 n.3 (citing Johnson v. Ga. Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974), abrogated on other grounds by Blanchard v. Bergeron, 489 U.S. 87 (1989)).

[5] The parties do not strictly adhere their arguments to the framework set forth in Lilly, 934 F.3d 222. Accordingly, to the extent

At the end of the day, the "essential goal" is "to do rough justice, not to achieve auditing perfection," as "the determination of fees 'should not result in a second major litigation.'" Fox v. Vice, 563 U.S. 826, 838 (2011) (quoting Hensley v. Eckerhart, 461 U.S. 424, 437 (1983)). The district court "is not obligated to undertake a line-by-line review of [the prevailing party's] extensive fee application," Marion S. Mishkin L. Off. v. Lopalo, 767 F.3d 144, 150 (2d Cir. 2014), but rather "may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time," Fox, 563 U.S. at 838. Finally, "[t]he party seeking attorneys' fees bears the burden of demonstrating that the claimed rate and number of hours are reasonable." Pascuiti v. New York Yankees, 108 F. Supp. 2d 258, 266 (S.D.N.Y. 2000)

### 1. Hourly Rate

Defendants argue that the claimed hourly rates for two of the attorneys for whom compensation is sought, Ahmad Keshavarz and Emma Caterine, are unreasonable. See Fee Opp. at 5-6. Keshavarz, who was the principal attorney on the case, requests fees at a rate of $550 per hour. See Keshavarz Billing Records at 1, Ex. B, ECF No. 85 ("Keshavarz Billing"). Caterine requests fees at a rate of $350 per hour. Id.

---

that the parties argue that the Johnson factors either support the claimed award or require a reduction in the awarded fee, the Court considers those arguments as bearing on the either the reasonableness of the claimed hourly rates or the reasonableness of the hours expended.

A reasonable hourly rate is "the rate a paying client would be willing to pay . . . bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." Arbor Hill, F.3d at 190. The rate must be "in line with prevailing rates in the community for similar services by lawyers of reasonably comparable skill, expertise and reputation." McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Trust Fund, 450 F.3d 91, 96 (2d Cir. 2006) (per curiam). The burden is on the party seeking the fee award "to produce satisfactory evidence" to justify "the reasonableness of the requested rate or rates." Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984).

Starting with attorney Keshavarz, the Court finds that an hourly rate of $500, rather than $550, is reasonable. Keshavarz has over 20 years of practice experience, including substantial experience undertaking consumer protection work, including under the FCRA and other similar statutes. See Declaration of Ahmad Keshavarz for Attorney's Fee Award ¶¶ 12, 13, Ex. A, ECF No. 85 ("Keshavarz Decl."). He has brought 150 consumer protection lawsuits in federal court, a substantial proportion of which have been prosecuted in this District. Id. ¶¶ 19-22. He also regularly conducts legal training on the FCRA and other consumer protection statutes. Id. ¶ 26.

Keshavarz's hourly rate was most recently approved by this Court in 2016 at $400 per hour. See Samms v. Abrams, 198 F. Supp 3d. 311, 319 (S.D.N.Y 2016). Given that he has accumulated nearly a decade of additional experience, and the "assum[ption] that attorney rates

7

increase with inflation," an increase in his hourly rate since 2016 is warranted. N.G.B. v. New York City Dep't of Educ., No. 21-cv-11211, 2023 WL 2711753, at *10 (S.D.N.Y. Mar. 30, 2023); see also, e.g., Rubin v. HSBC Bank USA, NA, 763 F. Supp. 3d 233, 242-44 (E.D.N.Y 2025) (adjusting attorneys' hourly rates to comport with inflation).

The Court finds, however, that plaintiff's evidence does not adequately support the claimed hourly rate of $550. Although plaintiff has submitted declarations from other practitioners attesting to the reasonableness of Keshavarz's claimed rate, those declarations do not indicate that $550 per hour is consistent with prevailing rates in this District for similar work. See, e.g., Hancock v. I.C. Sys., Inc., 592 F. Supp. 3d 250, 256 (S.D.N.Y. 2022) (reasonable hourly rates for partners in Fair Debt Collection Practices Act (FDCPA) cases range from $300-$450); Lichter v. Bureau of Accts. Control, Inc., No. 19-cv-04476, 2021 WL 5115259, at *5 (S.D.N.Y. Nov. 2, 2021) (awarding $450 hourly rate to partner in FDCPA case). Nonetheless, given Keshavarz's recognized expertise in the field, and the fact that this case involved a novel type of FCRA claim, the Court finds that an hourly rate of $500 is reasonable. See Crowhurst v. Szczucki, No. 16-cv-0182, 2020 WL 133509, at *2 (S.D.N.Y. Jan. 11, 2020) ("The Court of Appeals for the Second Circuit specifically re-affirmed the propriety of using the novelty or complexity of a case as a factor in determining an attorney's reasonable hourly rate." (citing Lilly, 934 F.3d at 231-32)).

Defendants' primary objection to Keshavarz's proposed rate is that he cannot justifiably bill $175 per hour more than Andrew Milz, the "lead trial counsel." Fee Opp. at 6. However, Milz billed at a rate of $595 per hour, an hourly rate that is in fact $45 higher than that billed by Keshavarz. See Plaintiff's Memorandum of Law in Support of Her Petition for Attorney Fees and Costs at 14, ECF No. 85 ("Fee MOL"); Fee Reply at 7. The alleged discrepancy in the rates therefore provides no basis for reducing Keshavarz's hourly rate. Additionally, although defendants call into question whether Keshavarz is the "skilled litigator" that plaintiff's filings make him out to be, defendants have not disputed any of the material aspects of Keshavarz's extensive practice experience. Accordingly, the Court finds that an hourly rate of $500 is reasonable.

As for attorney Caterine, the Court is not persuaded that a $350 hourly rate is reasonable. When she began billing, she had been admitted to practice only two years. See Keshavarz Billing at 4; Declaration of Emma Caterine ¶ 4, Ex. J, ECF No. 85 ("Caterine Decl."). The bulk of her billing, for depositions and work on the summary judgment motion, occurred between October 2022 and April 2023, at which point she had under four years of practice experience, placing her experience on par with that of a more experienced junior or mid-level associate. See Keshavarz Billing at 2, 10-19.

Recent decisions from courts in this District reflect "a range of reasonable hourly rates for midlevel and junior associates between $225 and $325." Z.H. v. N.Y.C. Dep't of Educ., No. 23-cv-3081, 2024

9

WL 3385690, at *4 (S.D.N.Y. July 12, 2024); see also Sharbat v. Iovance Biotherapeutics, Inc., No. 20-cv-1391, 2024 WL 2078390, at *8 (S.D.N.Y. May 9, 2024) ("For associates with three or less years of experience, courts generally approve rates ranging from $180 to $355 per hour). Moreover, plaintiff's fee application does not shed light on any additional aspects of Caterine's professional experience that would warrant compensation on the higher end of what is typically awarded for attorneys with a similar number of years of experience. Indeed, attorney Miller, who joined the firm in 2024 with thirteen years of practice experience, nearly all in the field of consumer protection law, is requesting an hourly billing rate of $375. See Declaration of Judith Miller ¶¶ 9, 15, Ex. M, ECF No. 85; Keshavarz Billing at 1. The Court therefore concludes that a moderate reduction in Caterine's billing rate to $300 per hour is reasonable, given her relatively limited experience, and the rates at which the firm's other attorneys billed.

As to the claimed hourly rates for the remaining attorneys, the Court declines to "independently scrutinize" those rates, as defendants have not challenged their reasonableness. See Cerco Bridge Loans 6 LLC v. Schenker, 768 F. Supp. 3d 559, 589-90 (S.D.N.Y. 2025).

### 2. Hours Expended

In addition to disputing the reasonableness of the claimed hourly rates, defendants broadly contend that plaintiff's counsel prolonged the litigation in various ways, unreasonably inflating the number of hours expended. Defendants' complaints are many but roughly accuse

Keshavarz of failing to engage in good-faith settlement negotiations, advancing unsustainable claims, manufacturing discovery disputes, and overall submitting a high number of "wasteful and frivolous" billing entries. See Fee Opp. at 6.

The court's task in reviewing the claimed hours is to make "a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended." Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994). "[T]he essential inquiry is whether a reasonable attorney would have expended similar hours in pursuit of the case." Gonzalez v. Scalintella, Inc., 112 F. Supp. 3d 5, 29 (S.D.N.Y. 2015).

If the court finds that any of the hours expended were "excessive, redundant, or otherwise unnecessary," it should reduce the time for which compensation is awarded. Hensley, 461 U.S. at 434. This can mean excluding time spent on unsuccessful claims, as well as time spent on "inefficient or duplicative" work. Gonzalez, 112 F. Supp. 3d at 29. In doing so, a court may "use a percentage deduction as a practical means of trimming [the] fat." McDonald, 450 F.3d at 96; see also, e.g., Days Inn Worldwide, Inc. v. Amar Hotels, Inc., No. 05-cv-10100, 2008 WL 2485407, at *10 (S.D.N.Y. June 18, 2008) (reducing award by 75% because the bill was "grossly excessive relative to the nature of the work performed").

Plaintiff documents, and requests compensation for, roughly 1,000 hours of work. See Keshavarz Billing at 1; Certification of Andrew M. Milz at 16-17, Ex. D, ECF No. 85 ("Milz Billing"); Fee Reply at 3.

11

Defendants contend that the award should be significantly reduced, and, in particular, request that the award be reduced to compensate for only the work done before defendants made their first settlement offer in July 2022, or at the latest, one of their subsequent settlement offers. In the alternative, defendants contend that any additional hours should be reduced by 50 percent. See Fee Opp. at 20.

The Court declines to reduce the number of hours billed to categorically exclude work undertaken after defendants' various settlement offers. "Absent a showing of bad faith, 'a party's declining settlement offers should [not] operate to reduce an otherwise appropriate fee award.'" Ortiz v. Regan, 980 F.2d 138, 141 (2d Cir. 1992) (quoting Cowan v. Prudential Ins. Co. of Am., 728 F. Supp. 87, 92 (D. Conn. 1990), rev'd on other grounds, 935 F.2d 522 (2d Cir. 1991)); see also Rozell v. Ross-Holst, 576 F. Supp. 2d 527, 542 (S.D.N.Y. 2008) ("Nor is it appropriate to reduce the lodestar on the grounds that the plaintiff might have settled earlier."). Rule 68 sets forth the only circumstance in which the rejection of a settlement offer operates to cut off a party's entitlement to fees.[6] See Rozell, 576 F. Supp. 2d at 542-43; see also Marek v. Chesny, 473 U.S. 1, 9

---

[6] Rule 68 provides in pertinent part: "At any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against the defending party for the money or property or to the effect specified in the offer, with costs then accrued.... If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer." Fed. R. Civ. P. 68.

(1985) (extending Rule 68's operation to the award of attorney's fees.) But defendants, unsurprisingly, do not contend that Rule 68 applies directly in this case, as, even though their settlement offers were made pursuant to that rule, "the judgment finally obtained" by plaintiff was more favorable than any of the settlement offers defendants had made prior.[7] See Fed. R. Civ. P. 68 (precluding the recovery of fees if "the judgment finally obtained . . . is not more favorable than the [rejected] offer"); see also NAACP v. Town of East Haven, 259 F.3d 114, 122 (2d Cir. 2001) ("[I]t is a mistake of law to reduce an award of attorneys' fees . . . in response to a plaintiff's rejection of a defendant's settlement offer when the subsequent judgment exceeds that offer." (quoting Coutin v. Young & Rubicam P.R., 124 F.3d 331, 351 (1st Cir. 1997))). Accordingly, Rule 68 provides no basis for declining to award attorney's fees after any of the dates specified by defendants.

The Court also is not persuaded that plaintiff's rejection of the various settlement offers was in bad faith. Plaintiff has produced evidence that she instructed her counsel to reject each of those

---

[7] Defendant's first Rule 68 settlement offer was made on July 20, 2022, in the amount of $5,010.00 plus reasonable attorney's fees incurred to date. See Offer of Judgment, Ex. R, ECF No. 85. A second offer was made on February 3, 2023, in the amount of $45,000, inclusive of attorney's fees. See Ex. Q, ECF No. 85. On July 24, 2025, defendants increased their offer to $50,100.00 plus reasonable attorney's fees. See Offer of Judgment, Ex. 10, ECF No. 88. Finally, on August 9, 2024, defendants made their final Rule 68 settlement offer for $100,100.00 plus fees. See Offer of Judgment, Ex. 9, ECF No. 88. The settlement finally entered awarded plaintiff $120,000.00 plus reasonable attorney's fees. See Consent Judgment, ECF No. 81.

offers. See Fee Reply at 8. Moreover, although communications between the parties about the possibility of mediation and/or settlement were terse and somewhat tense, both parties appear to have contributed to the tenor of those exchanges by stating non-negotiable demands about the circumstances in which they would agree to mediation and/or settlement. See, e.g., Ex. 5 at 1, ECF No. 88 (stating that "[d]efendants do not, and will not, agree to mediation before Mr. DiBenedetto, period"); id. at 2 (email from plaintiff's counsel stating that "[t]his is not an invitation to further negotiation on the terms of mediation"). Accordingly, the Court will not categorically exclude from compensation the hours billed after defendants' various settlement offers on account of bad faith.

Defendants also argue that the fee award should be substantially reduced because plaintiff was not successful on all her claims. Plaintiff's ultimate monetary recovery was, however, substantial, indicating her overall success in this litigation. The fact that "certain claims fell by the wayside during the course of litigation" does not require a proportionate reduction in the fee. Rozell, 576 F. Supp. 2d at 542. There is no indication that the recovery would have been substantially different, and plaintiffs may in general recover fees for time spent on unsuccessful claims that are sufficiently related to successful ones. See Samms, 198 F. Supp. 3d at 320; see also Lunday, 42 F.3d at 134 ("So long as plaintiff's unsuccessful claims are not wholly unrelated to the plaintiff's successful claims, hours spent on the unsuccessful claims need not be excluded from the

14

[reasonable fee] amount."). This is so because when multiple claims for relief "involve a common core of facts" or are "based on related legal theories[,] [m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." Hensley, 461 U.S. at 435; see also Quarantino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1997).

Each of plaintiff's claims arise from the "common core of facts" that surround LaForest's alleged use of her identity to purchase a car from defendants. It would therefore be impracticable to separate out the hours dedicated to advancing each claim asserted, and the Court declines to reduce the award in that manner. Nonetheless, in determining whether the overall number of hours billed was reasonable, the Court will take into consideration the fact that some of the hours expended were on unsuccessful claims. See, e.g., Doe v. Rye Sch. Dist., No. 22-cv-08898, 2024 WL 1955536, at *9 (S.D.N.Y. May 3, 2024) (noting that the court could not "clearly demarcate" time spent on successful and unsuccessful claims that involved common factual questions but deeming it nonetheless appropriate to impose a percentage deduction to account for plaintiff's partial success).

Finally, the Court notes that although defendants repeatedly emphasize the small value of plaintiff's claims, the disproportionality between the "financial value" of a case and the fees requested is not, in and of itself, a reason to reduce the award. See Kassim v. City of Schenectady, 415 F.3d 246, 252 (2d Cir. 2005); see also Millea, 658 F.3d at 168 ("Absent a purely technical victory

15

in an otherwise frivolous suit, litigation outcomes are only relevant to fee award calculations when they are a direct result of the quality of the attorney's performance."). This is particularly so in the context of consumer protection statutes, such as the FCRA, which were "enacted in part to secure legal representation for plaintiffs whose . . . injury [is] too small, in terms of expected monetary recovery, to create an incentive for attorneys to take the case under conventional fee arrangements." Hancock, 592 F. Supp. 3d at 255 (quoting Rivera v. Corp. Receivables, Inc., 540 F. Supp. 2d 329, 338 (D. Conn. 2008)); see also Kassim, 415 F.3d at 252. Thus, even if plaintiff's recoverable damages were "minimal," as defendants contend, that would not render the number of hours expended unreasonable or require reducing the fee award. Fee Opp. at 2; see also Millea, 658 F.3d at 154 ("The whole purpose of fee-shifting statutes is to generate attorneys' fees that are disproportionate to the plaintiff's recovery").

After carefully reviewing plaintiff's billing records, the Court nonetheless concludes that various deductions are warranted to account for the excessiveness of time billed on certain tasks, the billing of certain tasks at an attorney rate rather than the otherwise used "Para by Atty" rate, and the time spent advancing unsuccessful claims.

Plaintiff's counsel billed a total of 43.4 hours for work on the initial and amended complaints. See Keshavarz Billing at 2. The Court finds this number to be excessive for an attorney experienced in this area of the law, even taking into account the relative novelty of the

16

theory of liability advanced by plaintiff under the FCRA. Additionally, plaintiff's initial complaint included two claims that she later dropped from her amended complaint, after defendants had moved to dismiss those claims. Accordingly, the number of hours billed for work on the complaint weighs in favor of an overall reduction in the award.

Likewise, plaintiff's counsel billed 267.1 hours for depositions and discovery, with small deductions to the requested amount made in the exercise of billing judgment. See Keshavarz Billing at 2; Fee MOL at 18. Given the relatively narrow nature of the factual disputes in this case, the hours spent on discovery were excessive. Additionally, even though plaintiff's lack of success on various discovery motions does not, as defendants contend, require disallowing fees for those disputes, some of the billing entries associated with those disputes are excessive and provide further reason to reduce the reasonable number of hours. See Rozell, 576 F. Supp. 2d at 538 ("[A] court should not disallow fees for every motion that a prevailing party did not win."); see also, e.g., Keshavarz Billing at 9 (billing 1.4 hours for call with opposing counsel, 1.6 hours for "[r]eviewing . . . correspondence with opposing counsel," and 0.6 hours for "[d]rafting application to Court to hold discovery conference" not permitted under the Court's Individual Rules).

As for the 234.43 hours spent on the oppositions to the motions to dismiss, the motion for summary judgment, and the motion for reconsideration, the Court notes that these numbers are relatively high for an experienced attorney in a factually straightforward case

17

involving just two claims. And, as noted above, the Court granted partial summary judgment to the defendants, meaning that at least some of this time was expended developing and defending unsuccessful claims.

Some of the time entries, moreover, indicate duplicative work by attorneys Keshavarz and Caterine, or else an excessive amount of time spent on individual tasks given the purported expertise of counsel. Additionally, other time entries billed at attorney rates should have been more appropriately billed at the otherwise-used "Para by Atty" rate. See, e.g., Keshavarz Billing at 5 (billing at an attorney rate for "download[ing]" documents and "[c]alendaring" case deadlines). These considerations likewise weigh in favor of a reduction in the reasonable number of hours expended.

Finally, the nearly 130 hours billed for work on the fee application is grossly excessive, even taking into account counsel's discretionary billing reductions. See Keshavarz Billing at 2; Milz Billing at 24; Fee Reply a 3. Time spent on the "preparation of [a] fee application [is] compensable." Reed v. A.W. Lawrence & Co., 95 F.3d 1170, 1183 (2d Cir. 1996); see also Hines v. City of Albany, 862 F.3d 215, 223 (2d Cir. 2017) ("Prevailing parties [are] . . . entitled to recover a reasonable fee for preparing and defending a fee application."). However, counsel has experience filing fee applications in similar cases in this District and has not explained why so much time was necessary to file the fee application here. See, e.g., Samms, 198 F. Supp 3d at 322 (concluding that the 41.9 hours spent on a fee application by the same attorney was excessive).

Rather than calculate line-by-line reductions, however, the Court determines that an overall 30 percent reduction in the number of compensable hours is warranted to account for each of the considerations enumerated above.

### 3. Presumptively Reasonable Fee

Taking into account these adjustments, the reasonable rates and hours result in a "presumptively reasonable fee" of $264,561.91.[8] Lilly, 924 F.3d at 229. No "extraordinary circumstances" are present that warrant a further adjustment of this award. See id. at 130. Accordingly, the Court grants plaintiff's request for attorney's fees in the reduced amount of $264,561.91.

---

[8] The Court's calculation is based on applying the reduced hourly rates and the 30 percent across-the-board reduction in hours to the fees actually requested by plaintiff, exclusive of any discretionary billing deductions. The breakdown of the fee awarded is as follows:

| Attorney | Fee Awarded |
| --- | --- |
| Para by Atty | $791.00 |
| A. Keshavarz | $146,921.21 |
| E. Caterine | $64,241.90 |
| N. Moore | $3,353.00 |
| J. Miller | $17,997.00 |
| A. Milz | $29,155.00 |
| J. Lopez-Jacobs | $1,446.90 |
| E. Flitter | $277.55 |
| J. Raughley (Paralegal) | $378.35 |

### B. Costs

The Court also grants plaintiff's request for $22,111.18 in costs, which defendants have not opposed.[9] "[A]ttorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir.1998) (alteration in original) (internal quotation marks omitted).

### III. Conclusion

Based on the foregoing, plaintiff's application for an award of attorneys' fees and costs is granted to the extent that defendants shall pay $264,561.91 in attorney's fees and $22,111.18 in costs.

The Clerk of Court is directed to close the case.

SO ORDERED.

Dated:   New York, NY
         September 23, 2025                    _____
                                               JED S. RAKOFF, U.S.D.J.

---

[9] Even though defendants argue that the Court should "reduc[e] Plaintiff's fee award from $423,577.80[, the amount originally requested inclusive of costs,] to $18,975.00," defendants nowhere dispute or even mention plaintiff's request for costs. See Fee Opp. at 23. Accordingly, the Court considers that request to be unopposed.

20